Hearing Date: May 20, 2019
Hearing Time: 10:00 a.m. (EDT)

Tracy L. Klestadt
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone:  (212) 972-3000
Fax:  (212) 972-2245
tklestadt@klestadt.com

Jeffrey K. Garfinkle (admitted *pro hac vice*)
BUCHALTER Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Fax: (949) 720-0182
jgarfinkle@buchalter.com

Counsel for Defendant
McKesson Corporation

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

_____
| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 15-23007 (RDD) |
| THE GREAT ATLANTIC & PACIFIC TEA ) | |
| COMPANY, INC., *et al.* ) | Jointly Administered |
| ) | |
| Debtor. ) | |
| _____) | |
| The Official Committee of Unsecured Creditors on ) | |
| behalf of the bankruptcy estate of THE GREAT ) | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., ) | |
| *et al.* ) | |
| Plaintiff ) | Adv. Proc. No. 17-08264 (RDD) |
| ) | |
| v. ) | |
| ) | |
| McKESSON CORPORATION ) | |
| ) | |
| Defendant ) | |
| _____) | |

1

# DECLARATION OF LALITHA IRAGAVARAPU IN SUPPORT OF MCKESSON CORPORATION'S MOTION FOR SUMMARY JUDGMENT

I, Lalitha Iragavarapu, declare and state as follows:

1. I am employed by McKesson Corporation ("McKesson") as a Senior Manager of Credit and AR Operations, the business unit involved with the sale of pharmaceutical products from McKesson to The Great Atlantic & Pacific Tea Company, Inc. et al. (the "Debtors" or "A&P"). In this role, I am responsible for monitoring payments made by customers of McKesson.

2. I submit this affidavit in support of McKesson's Motion for Summary Judgment (the "Motion") against Plaintiff Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of the Debtors ("Plaintiff") in connection with the above-captioned adversary proceeding.

3. As to the following facts, except where stated upon information and belief, I know them to be true of my own personal knowledge or based upon my review of McKesson's books, records and files. If called upon to testify in this action as to the matters set forth herein, I could and would testify competently thereto.

4. In my position, I am one of the custodians of the books, records, and files of McKesson (the "Records") as they pertain to the Debtors, and the transactions at issue. I am familiar with the manner in which the Records are prepared and maintained.

5. I am informed and believe that (i) the Records constitute writings taken or made and kept in the course of the regularly conducted business activity of McKesson; (ii) it is the regular practice of McKesson to have these Records made, kept, and preserved; (iii) such Records are made at or near the time of the acts or events recorded, by employees or contractors of McKesson with a business duty to do so; and (iv) the Records are made by, or are made from

2

information transmitted by employees or contractors of McKesson with personal knowledge of the acts and events recorded therein and with a business duty to so record such acts and events. McKesson operates in reliance upon these procedures. In my position, I have a working knowledge regarding the Records and how McKesson records and accounts for the purchases by and the transactions with the Debtors.

6. The records of the transactions between McKesson and A&P are voluminous. During the three years leading up the bankruptcy filings, McKesson and the Debtors conducted extensive daily transactions (purchases and payments) resulting in hundreds of thousands of invoices. In the Preference Period[1] alone, the transactions between the Debtors and McKesson generated over 49,000 invoices for the Pharmaceuticals purchased by the Debtors' pharmacies.

7. Invoices were compiled with a billing statement and provided to the Debtors on a weekly basis. Occasionally, there was a delay in delivering an invoice to the Debtors, usually due to a clerical error by McKesson. In those circumstances, the invoice would be included with the next billing cycle statement and the baseline date of the invoice would be modified so the due date of that invoice would correspond to the due date of all invoices included in the billing statement.

8. Due the enormous number of individual invoices, I prepared a summary of these transactions in an Excel spreadsheet (the "Transaction History Spreadsheet").[2] The Transaction History Spreadsheet covers the one-year period leading up to the commencement of the Debtors' bankruptcy cases on July 19, 2015. Were it to be printed, the Transaction History Spreadsheet would be over 8,000 pages.[3]

---

[1] Defined terms used herein have the same meaning set forth in the Motion.
[2] See Federal Rule of Evidence 1006.
[3] An electronic copy of the Excel spreadsheet was provided to counsel for the Plaintiff and will be provided to the Court in electronic format upon request.

3

9. The Transaction History Spreadsheet is divided into six tabs, summarizing the payment history for (i) Branded Pharmaceuticals during the pre-preference period, (ii) Branded Pharmaceuticals during Preference Period (iii) Generic Pharmaceuticals during the pre-preference period, (iv) Generic Pharmaceuticals during the Preference Period, (v) Promotional Pharmaceuticals during the pre-preference period and (vi) Promotional Pharmaceuticals during the Preference Period.

10. During the one-year prepetition period, the transactions between the Debtors and McKesson resulted in 204,778 individual invoices for a total amount of $295,915,014.44. For each of these invoices, McKesson analyzed the invoice amount, due date, payment date, form and amount of payment, and then calculated the number of days between the due date and payment date. Every single invoice paid during the Preference Period was paid on its exact due date.

11. The four Contemporaneous Daily Payments made between July 14 and 17 were applied to invoices for Pharmaceuticals delivered the previous day as follows:

| Date of Invoices | Date of Payment | Wire Number | Payment Amount |
| --- | --- | --- | --- |
| 7/13/2015 | 7/14/2015 | 4043222 | 1,436,808.53 |
| 7/14/2015 | 7/15/2015 | 4043267 | 1,098,919.73 |
| 7/15/2015 | 7/16/2015 | 4043333 | 883,260.71 |
| 7/16/2015 | 7/17/2015 | 4043354 | 830,735.91 |
|  |  | Total: | $4,249,724.88 |

12. Between July 14, 2015 and July 17, 2015, McKesson generated invoices and delivered Pharmaceuticals to the Debtors in the total amount of $4,654,546.87 as follows:

- July 14, 2015 - $1,108,103.36

4

- July 15, 2015 - $891,779.14

- July 16, 2015 - $842,705.17

- July 17, 2015 - $1,811,959.20

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my personal knowledge and review of McKesson's Records, and if called as a witness I could and would testify competently thereto.

Executed on April 30, 2019 at Irving, Texas.

/s/ *Lalitha Iragavarpu*
Lalitha Iragavarapu

5