Hearing Date: May 20, 2019
Hearing Time: 10:00 a.m. (EDT)

Tracy L. Klestadt
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Fax: (212) 972-2245
tklestadt@klestadt.com

Jeffrey K. Garfinkle (admitted *pro hac vice*)
BUCHALTER Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Fax: (949) 720-0182
jgarfinkle@buchalter.com

Counsel for Defendant
McKesson Corporation

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | Case No. 15-23007 (RDD) |
| | Jointly Administered |
| Debtor. | |
| The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | |
| Plaintiff | Adv. Proc. No. 17-08264 (RDD) |
| v. | |
| McKESSON CORPORATION | |
| Defendant | |

**McKESSON CORPORATION'S LOCAL RULE 7056-1(b) STATEMENT OF
UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| Undisputed Fact | Evidentiary Support |
|---|---|
| 1.   McKesson[1] (NYSE: MCK) is one of the largest wholesale distributors of Pharmaceuticals in the United States. | 1. Declaration of Jenifer Towsley in Support of McKesson Corporation's Motion for Summary Judgment (the "Towsley Declaration") at ¶ 7. |
| 2.   The Debtors were one of the nation's oldest supermarket and food retailers, operating approximately 300 supermarkets, combination food and drug stores, and specialty food stores across six Northeastern states. The Debtors' primary retail operations consisted of supermarkets operated under a variety of well-known trade names including A&P, Waldbaum's, SuperFresh, Pathmark, Food Basics, and The Food Emporium. | 2. Case No. 15-23007 at Docket No. 4 at pg 3. |
| 3.   A majority of these supermarkets also had in-store pharmacies and McKesson was the Debtors' primary supplier of Pharmaceuticals to those pharmacies. | 3. Case No. 15-23007 at Docket No. 4 at pg 24; Towsley Declaration at ¶ 7. |
| 4.   Around the end of the first bankruptcy cases, in the spring of 2012, as the prior assumed supply agreement with McKesson was expiring, McKesson was informed that the Debtors were seeking alternative suppliers to McKesson. | 4. Towsley Declaration at ¶ 12. |
| 5.   In response, during the summer and fall of 2012, the Debtors and McKesson negotiated and reached an agreement for the new Supply Agreement.  The Debtors and McKesson entered into the new and operative Supply Agreement on or about December 6, 2012 and that agreement became effective on October 1, 2012. | 5. Towsley Declaration at ¶ 7, 12, and Ex. 1. |
| 6.   The Debtors employed an automated daily ordering and payment process.  Every day, the inventory control software at each of the Debtors' individual pharmacies would order the required Pharmaceuticals to maintain predetermined inventory levels.  McKesson would deliver the orders the following business day and the Debtors would pay McKesson with Automated Clearing House (ACH) payments debited from the Debtors' bank account on the required Friday due dates established by the terms of the Supply Agreement. | 6. Towsley Declaration at ¶ 8 and 23. |

---

[1] Defined terms herein have the same meaning set forth in McKesson's Motion for Summary Judgment.

| Undisputed Fact | Evidentiary Support |
|---|---|
| 7. The Debtors contracted with McKesson to provide pharmacy enterprise software to manage the Debtors' inventory, product orders and payments. The Pharmaceuticals Management System utilized an electronic daily ordering system. | 7. Towsley Declaration at ¶ 14. |
| 8. When a customer filled a prescription with one of the Debtors' pharmacies, the pharmacy would fill that prescription from inventory on hand or place a special order with McKesson. If the customer's prescription was filled from on-hand supply, the Pharmaceuticals Management System would indicate when supplies fell below the safety stock level and would automatically place an order with McKesson. The system would build a running list of orders throughout the day for each pharmacy. At 8:00 p.m. local time the list would close and a purchase order would be transmitted to the McKesson distribution center assigned to that pharmacy. The pharmacy could also place special orders for Pharmaceuticals not normally carried in the regular inventory. | 8. Towsley Declaration at ¶ 14. |
| 9. After 8:00 p.m., the assigned McKesson distribution center would review each pharmacy's order for that day and finalize each pharmacy's list of products for delivery, generating a purchase order acknowledgment. Any orders placed through the electronic ordering system by 8:00 p.m. local time would qualify for next-business day delivery. In some instances, a product was not immediately available and delivery was delayed until the product became available. | 9. Towsley Declaration at ¶ 15. |
| 10. Once the orders were packaged and an invoice prepared at the distribution center, delivery trucks would transport the Pharmaceuticals to the specific pharmacy that had placed an order. Generally, McKesson would deliver Pharmaceuticals to the Debtors' in-store pharmacies Monday through Friday, with deliveries typically arriving the morning of the next business day after an electronic order was sent to McKesson. In rare instances, a pharmacy might require either immediate same-day delivery or non-business day delivery of a Pharmaceutical that was not in its inventory. Subject to additional charges and product availability, McKesson would fulfill those special orders. | 10. Towsley Declaration at ¶ 16. |

| Undisputed Fact | Evidentiary Support |
|---|---|
| 11. Upon delivery of the Pharmaceuticals, an in-store employee (usually one of the pharmacists) confirmed and accepted the order through either an electronic signature or a signed paper receipt. Employees within the pharmacies would then use the invoice to check the new product into the Pharmaceuticals Management System, which would automatically update the inventory count for each pharmacy. | 11. Towsley Declaration at ¶ 17. |
| 12. The accurate maintenance of inventory records of pharmaceuticals, and related patient/customer records, is essential and strictly regulated. McKesson strictly abides by these Federal and state laws and regulations and works with all of its customers, including the Debtors, to ensure strict compliance. | 12. Towsley Declaration at ¶ 18. |
| 13. McKesson sold Pharmaceuticals to the Debtors on different credit terms based on the category of Pharmaceuticals: (1) non-generic Pharmaceuticals, (2) generic Pharmaceuticals, and (3) in limited instances, extended dating products. | 13. Towsley Declaration at ¶ 19. |
| 14. Payment for Branded Pharmaceuticals was due on the Friday of the week following the date of an invoice. Branded Pharmaceuticals would therefore be paid in a range of terms from 7 days (Friday to following Friday) to 11 days (Monday to following Friday). | 14. Towsley Declaration at ¶ 20. |
| 15. Payment for Generic Pharmaceuticals was due on the sixth following Friday and would therefore be paid in a range of terms from 35 to 39 days. | 15. Towsley Declaration at ¶ 21. |
| 16. Finally, in certain limited instances, McKesson offered longer terms for Promotional Pharmaceuticals where manufacturers of Branded Pharmaceuticals would offer McKesson extended payment terms on a limited product-by-product basis and McKesson passed those extended payment terms to its customers. Payment on extended dating Pharmaceuticals would be due on the applicable Friday payment date for the extended payment terms. | 16. Towsley Declaration at ¶ 22. |

| Undisputed Fact | Evidentiary Support |
|---|---|
| 17. Invoices were compiled with a billing statement and provided to the Debtors on a weekly basis. Occasionally, there was a delay in delivering an invoice to the Debtors, usually due to a clerical error by McKesson. In those circumstances, the invoice would be included with the next billing cycle statement and the baseline date of the invoice would be modified so the due date of that invoice would correspond to the due date of all invoices included in the billing statement. | 17. Declaration of Lalitha Iragavarapu in Support of McKesson Corporation's Motion for Summary Judgment (the "Iragavarapu Declaration") at ¶ 7. |
| 18. With the exception of the four daily payments during the final week preceding the bankruptcy cases, every other payment made during the 90-day preference period conformed to the same credit terms and payment procedures that had been in place for the prior three years. | 18. Towsley Declaration at ¶ 9; Iragavarapu Declaration at ¶ 8 and 10. |
| 19. Due to the processes relied upon by the Debtors and McKesson, every single invoice paid during the Preference Period was paid on its exact due date. | 19. Towsley Declaration at ¶ 9 and 23; Iragavarapu Declaration at ¶ 8 and 10. |
| 20. With the exception of the four daily payments during the week prior to the Petition Date, the Debtors never deviated from paying McKesson on the required Friday due date. | 20. Towsley Declaration at ¶ 9 and 23; Iragavarapu Declaration at ¶ 8 and 10. |
| 21. During the one-year prepetition period, the transactions between the Debtors and McKesson resulted in 204,778 individual invoices for a total amount of $295,915,014.44. | 21. Iragavarapu Declaration at ¶ 10. |
| 22. During the Preference Period, there were thirteen (13) Fridays. On each Friday during the Preference Period, and without any deviation or exception, the Debtors paid McKesson for the aggregate amounts of Branded Pharmaceuticals, Generic Pharmaceuticals and Promotional Pharmaceuticals due that day. | 22. Towsley Declaration at ¶ 24; Iragavarapu Declaration at ¶ 8 and 10. |
| 23. The Debtors never paid by check. In all instances, payment was either via ACH or wire transfer. | 23. Towsley Declaration at ¶ 24. |

| Undisputed Fact | Evidentiary Support |
|---|---|
| 24.     During the spring and summer of 2015, the Debtors' financial difficulties and possible bankruptcy filing were widely reported. The decline in the Debtors' financial condition and the possible bankruptcy filing led McKesson in July of 2015 to exercise its contractual right to modify the supply terms—on a go-forward basis. | 24. Towsley Declaration at ¶ 10 and 25. |
| 25.     Section 4(h) of the Supply Agreements provides that McKesson may "change a payment term (including imposing the requirement of next day electronic payment for Merchandise deliveries) or limit total credit, if (i) McKesson concludes there has been a material adverse change in the A&P's financial condition or an unsatisfactory payment performance; or (ii) A&P ceases to meet McKesson's credit requirements. Upon the occurrence of any of the above-specified events, McKesson further shall be entitled to require that A&P provide adequate assurances of performance as a condition to the shipment of any additional orders to locations." | 25. Towsley Declaration at ¶ 25, fn. 3. |
| 26.     In a July 2, 2015 letter, McKesson notified the Debtors that due to a material adverse change in the Debtors' financial condition, effective July 13, 2015 the Debtors could purchase Pharmaceuticals from McKesson only on one-day sales outstanding terms and limited the Debtors' daily purchases to $1 million. | 26. Towsley Declaration at ¶ 25, Ex. 2. |
| 27.     One-day sales outstanding terms would require the Debtors to pay for Pharmaceuticals no more than one business day after placing an order. | 27. Towsley Declaration at ¶ 25. |
| 28.     Under the supply procedures between McKesson and the Debtors, invoices were generated and product was delivered the day after an order was placed. Thus, one-day sales outstanding terms would have required the Debtors to pay for new product the day it was delivered. | 28. Towsley Declaration at ¶ 25. |
| 29.     Following the notification on July 2, 2015, the Debtors and McKesson negotiated and agreed upon modified terms of up to two-day sales outstanding and limited the Debtors' daily purchases to $2 million, as memorialized by a letter dated July 15, 2015 | 29. Towsley Declaration at ¶ 26 and 27, Ex. 3. |

| **Undisputed Fact** | **Evidentiary Support** |
|---|---|
| 30.    McKesson and the Debtors agreed to an additional day because of the logistical difficulties in ordering and delivering Pharmaceuticals, inspecting the deliveries, logging the Pharmaceuticals into inventory and then remitting payment all within 24 hours.  Due to these operational actualities , two-day sales outstanding terms were intended to require contemporaneous payment one day after delivery of new product (the "Contemporaneous Payment Terms"). | 30. Towsley Declaration at ¶ 10 amd 27. |
| 31.    The Contemporaneous Payment Terms became effective for purchases of Pharmaceuticals made on and after July 13, 2015. | 31. Towsley Declaration at ¶ 28, Ex. 3. |
| 32.    Prior to the Petition Date, the Debtors purchased Pharmaceuticals and made four payments according to the new terms totaling approximately $4.25 million as follows:<br>• Tuesday, July 14, 2015 in the amount of $1,436,808.53<br>• Wednesday, July 15, 2015 in the amount of $1,098,919.73<br>• Thursday, July 16, 2015 in the amount of $883,260.71<br>• Friday, July 17, 2015 in the amount of $830,735.91 | 32. Towsley Declaration at ¶ 11 and 28, Iragavarapu Declaration at ¶ 11. |
| 33. The four Contemporaneous Daily Payments made between July 14 and 17 were applied to invoices for Pharmaceuticals delivered the previous day as follows:<br><br>| Date of Invoices | Date of Payment | Wire Number | Payment Amount |<br>|---|---|---|---|<br>| 7/13/2015 | 7/14/2015 | 4043222 | 1,436,808.53 |<br>| 7/14/2015 | 7/15/2015 | 4043267 | 1,098,919.73 |<br>| 7/15/2015 | 7/16/2015 | 4043333 | 883,260.71 |<br>| 7/16/2015 | 7/17/2015 | 4043354 | 830,735.91 |<br>|  |  | Total: | $4,249,724.88 | | 33. Iragavarapu Declaration at ¶ 11. |

| **Undisputed Fact** | **Evidentiary Support** |
|---|---|
| 34. Between July 14, 2015 and July 17, 2015, McKesson generated invoices and delivered Pharmaceuticals to the Debtors in the total amount of $4,654,546.87 as follows:<br>• July 14, 2015 - $1,108,103.36<br>• July 15, 2015 - $891,779.14<br>• July 16, 2015 - $842,705.17<br>• July 17, 2015 - $1,811,959.20 | 34. Iragavarapu Declaration at ¶ 12. |
| 35. Between July 14, 2015 and July 17, 2015, the Debtors paid McKesson by wire transfer the full amount due for Pharmaceuticals purchased and delivered to the Debtors' pharmacies during the prior day. Those payments did not include any amounts due for Pharmaceuticals purchased on other terms. | 35. Towsley Declaration at ¶ 29. |
| 36. All of the payments at issue in the lawsuit, including the four Contemporaneous Daily Payments, were applied to specifically identified invoices and not any other debts. | 36. Towsley Declaration at ¶ 29. |
| 37. After the Debtors filed for bankruptcy on Monday, July 19, 2015, McKesson continued to supply the Debtors with Pharmaceuticals on the same Contemporaneous Payment Terms. | 37. Towsley Declaration at ¶ 30. |
| 38. With the Supply Agreement set to expire on August 31, 2015, McKesson and the Debtors agreed to extend the term of the Supply Agreement through January 31, 2016 but modified the agreement to incorporate the new Contemporaneous Payment Terms. | 38. Towsley Declaration at ¶ 30. |
| 39. McKesson further agreed that it would not modify the Contemporaneous Payment Terms under section 4(H) of the Supply Agreement for the duration of the liquidation process. | 39. Towsley Declaration at ¶ 30. |
| 40. The Debtors' purchase of Pharmaceuticals from McKesson continued on these terms until the liquidation of the Debtors' pharmacies was completed in early 2016. | 40. Towsley Declaration at ¶ 30. |
| 41. The Debtors did not pay certain invoices governed under the pre-July 13, 2015 credit terms of the Supply Agreement, nor certain invoices dated July 17, 2015, which were governed by the new credit terms. | 41. Towsley Declaration at ¶ 31. |

| Undisputed Fact | Evidentiary Support |
|---|---|
| 42. In total, $3,636,302.30 of Pharmaceuticals were delivered during the twenty days before the Petition Date (June 29, 2015 through July 18, 2015), for which payment was not received. | 42. Towsley Declaration at ¶ 31. |
| 43. Following the commencement of the bankruptcy cases, the Debtors and McKesson entered into that certain Extension of Compliance with Terms of Supply Agreement. Pursuant to the terms of the Extension Agreement, the Debtors paid McKesson a $1 million extension fee, which was applied to McKesson's administrative claim. | 43. Towsley Declaration at ¶ 31. |
| 44. The remaining balance owed on McKesson's administrative claim is $2,636,302.30. In addition to the Administrative Claim, McKesson holds a general unsecured claim in the amount of $1,581,865.96 for Pharmaceuticals delivered prior to June 29, 2015. | 44. Towsley Declaration at ¶ 31. |
| 45. On or about November 24, 2015, McKesson timely filed a series of proofs of claim against the Debtors, which included the claims based on Pharmaceuticals received by the Debtors during the Administrative Claim Period. On March 8, 2016, McKesson filed its first amended proofs of claims against each of the Debtors for both the Administrative Claim and the Unsecured Claim. | 45. Claim Numbers 5880 and 9512. |
| 46. McKesson produced to Plaintiff several emails from May 22, 2015 discussing the fact that the Debtors did not initially make the payment due May 22, 2015. | 46. Towsley Declaration at ¶ 32, Ex. 4. |
| 47. McKesson contacted the Debtors to inquire about the status of the May 22, 2015 payment and whether the Debtors intended to continue adhering to the terms of the Supply Agreement. | 47. Towsley Declaration at ¶ 32, Ex. 4. |
| 48. The Debtors timely made the May 22nd payment and thereafter continued to timely pay invoices throughout the Preference Period. | 48. Towsley Declaration at ¶ 32. |

| Undisputed Fact | Evidentiary Support |
|---|---|
| 49.     In one of the internal McKesson emails written by Jennifer Towsley (McKesson's Vice President of Credit and Financial Services) on May 22, 2015, Ms. Towsley refers to several incidences of missed payments.  That statement refers to several late payments made to one or both of the McKesson corporate affiliates that had entirely separate supply and logistical agreements with the Debtors.  Those entities, McKesson Pharmacy Systems, LLC and McKesson Specialty Distribution LLC, are defendants in two separate preference lawsuits. | 49. Towsley Declaration at ¶ 33. |

DATED: New York, New York
          May 1, 2019

        KLESTADT WINDERS JURELLER SOUTHARD & STEVENS LLP


        By:  /s/ *Tracy L. Klestadt*
        Tracy L. Klestadt, Esq.
        200 West 41st Street, 17th Floor
        New York, New York 10036
        Telephone:  (212) 972-3000
        TKlestadt@Klestadt.com

        and

        BUCHALTER, A Professional Corporation

        Jeffrey K. Garfinkle, Esq.
        (Cal Bar. No. 153496; admitted *pro hac vice*)
        18400 Von Karman Avenue, Suite 800
        Irvine, CA 92612
        Telephone: (949) 760-1121
        jgarfinkle@buchalter.com

        Attorneys for Defendant, MCKESSON CORPORATION