**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA | : | |
| COMPANY, INC., *et al.* | : | Case No. 15-23007 (RDD) |
| | : | |
| Debtors. | : | |
| | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| The Official Committee of Unsecured Creditors on | : | |
| behalf of the bankruptcy estate of THE GREAT | : | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., | : | |
| *et al.* | : | Adv. Proc. No. 17-08264 (RDD) |
| Plaintiff, | : | |
| | : | **DECLARATION OF** |
| v. | : | **TIM CARNAHAN** |
| | : | |
| McKESSON CORPORATION, | : | |
| | : | |
| Defendant. | : | |

----------------------------------------------------------------x

Tim Carnahan, states, under penalty of perjury:

1.      This declaration is offered in support of the opposition of Plaintiff The Official

Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic &

Pacific Tea Company, Inc., *et al.* ("A&P") to defendant McKesson Corporation's ("McKesson")

motion for summary judgment.

2.      I was A&P's Senior Vice President and Chief Financial Officer from August 2014

until May 2016.   My duties and responsibilities included, among other things, overseeing and

managing A&P's accounting, finance, treasury, tax, payroll, and pension departments.   In the

exercise of my duties, I had a responsibility to oversee and participate in the managing of the

financial relationship between A&P and McKesson and its subsidiaries, McKesson Pharmacy

Systems LLC ("MPS") and McKesson Specialty Care Distribution Corporation ("MSCD").

3.      Among other things, I am knowledgeable about the way A&P prepared and maintained books, records, and files in the regular course of its business, including those pertaining to McKesson, and the way A&P would record information or employ contractors to record information in its books, records, and files.

4.      The facts set forth in this Declaration, except where stated upon information and belief, are based upon my personal knowledge, my education, and my work experience.  These facts are also based on my review of relevant documents concerning A&P and its operations as well as relevant documents exchanged in the course of discovery including, but not limited to, those documents annexed as Exhibits to this Declaration.  If called to testify, I would testify competently to the facts set forth in this Declaration.

5.      McKesson was A&P's primary supplier of prescription drugs and other health and beauty care products; MPS provided A&P with, among other things, licensed computer software and ongoing pharmacy systems services; and MSCD provided A&P with specialty drugs and other pharmaceutical products.

6.      McKesson, MPS, and MSCD were integral parts of A&P's pharmacy business.

7.      A&P's pharmacy business contributed to a complete customer offering and was critical to the health of many of its customers.

8.      During the Preference Period, it was very important that A&P preserve the value of its businesses in the months before commencing its Chapter 11 bankruptcy cases.  So, A&P strove to keep its businesses, including its pharmacy business, operating in its usual course of business without any interruptions.

9.        In the months leading up to A&P's commencement of its Chapter 11 bankruptcy

cases, A&P was aware that its Supply Agreement with McKesson was to expire on August 31,

2015.

### Threats of Non-Delivery of Merchandise

10.        During the Preference Period, there were several occasions as discussed below

when McKesson threatened A&P with non-delivery of Merchandise[1] if A&P did not make

payment to McKesson on the exact due date.

11.        For instance, on May 22, 2015, the Friday before Memorial Day weekend, A&P

received a threat of non-delivery of Merchandise from McKesson.  *See* annexed as **Exhibit "A",**

a true and correct copy of an email without attachment from Jenifer Towsley, VP Credit and

Financial Services, U.S. Pharmaceutical, McKesson ("Towsley"), to Robin M. Page[2], RPh., Vice

President of Pharmacy, The Great Atlantic & Pacific Tea Company, Inc. ("Page")(May 22, 2015

9:39 A.M.); and annexed as **Exhibit "B",** a true and correct copy of an email from Towsley to

Tim Carnahan, Senior Vice President and Chief Financial Officer , The Great Atlantic & Pacific

Tea Company, Inc. ("Carnahan")(May 22, 2015 10:56 A.M.) produced by McKesson in

discovery.

12.        On May 22, 2015, A&P was to pay McKesson its Friday payment for

Merchandise.  *See* annexed as **Exhibit "D"**, a true and correct copy of an email with attachments

from Page to Carnahan (May 20, 2015 8:59 A.M.); and an email from Claire Workman,

Accounts Receivable, McKesson ("Workman") to Pat Aleman, Administrative Coordinator,

---

[1] Term is defined at paragraph 1(A) of the Supply Agreement dated December 6, 2012, a copy of which is annexed to the Declaration of Dawn DeVito ("DeVito Declaration") as Exhibit "H".
[2] It is my understanding that Robin Page went to work for McKesson after her tenure with A&P ended, and upon information and belief, she still works for McKesson.

Treasury and Inventory Control, The Great Atlantic & Pacific Tea Company, Inc., ("Aleman")

(May 20, 2015 8:51 A.M.).

13.    A&P had initiated two Automated Clearing House ("ACH") payments on May

22, 2015 in the amounts of $3,840,125.40 for non-Generics Merchandise and $552,809.19 for

Generics Merchandise; and, McKesson would have received these payments on May 26, 2015.

*See* annexed as **Exhibit "E"**, a true, correct and redacted copy of an email from Nancy Brown,

Financial Analyst, The Great Atlantic & Pacific Tea Company, Inc. to Joe Laureni, Manager of

Treasury and Inventory Control, The Great Atlantic & Pacific Tea Company, Inc. (May 22, 2015

12:00 P.M.).

14.    On May 22, 2015, I became aware that McKesson was concerned that payment

had not yet arrived from A&P as payment was due that day.  *See* annexed as **Exhibit "A"**, a true

and correct copy of an email without attachment from Page to Carnahan, Eric Kanterman, Chief

Merchandising Officer, The Great Atlantic & Pacific Tea Company, Inc. ("Kanterman"), and

Joan Baker, Director of Treasury and Inventory Control, The Great Atlantic & Pacific Tea

Company, Inc. ("Baker")(May 22, 2015 9:44 A.M.).

15.    I also became aware that McKesson threatened that if it did not receive a wire

payment that day, it would "be holding shipment immediately."  Annexed as **Exhibit "A",** a true

and correct copy of an email without attachment from Towsley to Page (May 22, 2015 9:39

A.M.).

16.    I learned from Robin Page, A&P's Vice President of Pharmacy, who was

responsible for overseeing A&P's pharmacy operations, that McKesson threatened to "hold up

… [A&P's] shipments today which is HUGE since … [A&P] would not be able to get anything

till maybe Tuesday." Annexed as **Exhibit "A"**, a true and correct copy of an email without

attachment from Page to Carnahan, Kanterman, and Baker (May 22, 2015 9:44 A.M.).

17.     It would have been a significant problem for A&P and its customers if McKesson

Merchandise shipments were held up.

18.     In an effort to de-escalate this situation and to provide assurances that payment

was forthcoming, I told Jenifer Towsley, McKesson's VP Credit and Financial Services, U.S.

Pharmaceutical, that "[w]e will be able to get the ACH notification to you today for payment

Tuesday so there is no interruption of service" and apologized for the inconvenience. Annexed

as **Exhibit "B"**, a true and correct copy of an email from Carnahan to Towsley (May 22, 2015

7:48 A.M.[3]) produced by McKesson in discovery.

19.     Ms. Towsley though demanded that I "arrange for a wire payment, not an ACH,

today in order to continue service." Annexed as **Exhibit "B"**, a true and correct copy of an

email from Towsley to Carnahan  (May 22, 2015 10:56 A.M.) produced by McKesson in

discovery.

20.     I clearly understood that to mean that if A&P did not immediately wire the

payment for receipt by McKesson on Friday, May 22, 2015, that McKesson would have stopped

shipment of essential McKesson Merchandise to A&P's pharmacies.

21.     A threat of this nature from McKesson, A&P's primary pharmaceutical supplier,

was treated very seriously.

22.     Therefore, to ensure that there would be no such disruptions of service, which was

critical to A&P's business, A&P was forced to wire its payment to McKesson that day.  *See*

---

[3] Upon information and belief, the time stamp for this email is not EST, but for another time zone.

annexed as **Exhibit "B"**, a true and correct copy of an email from Carnahan to Towsley (May 22, 2015 8:41 A.M.[4]) produced by McKesson in discovery.

23.      As a result, A&P cancelled the ACH payments in process to McKesson and paid McKesson by wire in the total amount of $4,392,934.59 on May 22, 2015.  *See* **Exhibit "E"**, and annexed as **Exhibit "F"**, a true, correct and redacted copy of "824 Application Advice Report", a confirmation of transaction acceptance for A&P's wire transaction to McKesson effective May 22, 2015.

24.      McKesson's threat of immediate non-shipment of Merchandise on May 22, 2015 was a change in the way that the parties had previously dealt with one another when A&P was late or it was thought A&P was going to be late with a payment to McKesson.

25.      From what I recall, in prior instances, during the pre-Preference Period, when A&P was late with a payment or McKesson thought that A&P was going to be late with a payment, A&P either paid McKesson by wire so that the payment arrived on the exact due date and was not late, or if payment was late, A&P may have been subjected to additional charges as a result under the Supply Agreement.  *See e.g.* annexed as **Exhibit "G"**, a true and correct copy of an email from Carnahan to Carnahan (February 26, 2015 6:36 P.M.) produced by McKesson in discovery; a true and correct copy of an email from Lalitha Iragavarapu, Sr. Manager, Accounts Receivable, McKesson ("Iragavarapu") to Christian Baker, McKesson; and Dan Jefferies, McKesson (February 27, 2015 12:07 P.M.) produced by McKesson in discovery; a true and correct copy of an email from Iragavarapu to Meg Mitchell, Director, Strategic Solutions, McKesson Retail National Accounts, McKesson ("Mitchell"); Dan Jefferies, McKesson; and Christian Baker, McKesson (February 27, 2015 1:01 P.M.) produced by McKesson in discovery;

---

[4] Upon information and belief, the time stamp for this email is not EST, but for another time zone.

a true and correct copy of an email from Shivani Sharma, McKesson ("Sharma") to Iragavarapu; Meg Mitchell, Director, Strategic Solutions, McKesson Retail National Accounts, McKesson ("Mitchell"); Dan Jefferies, McKesson; and Christian Baker, McKesson (February 27, 2015 1:11 P.M.) produced by McKesson in discovery; and a true and correct copy of an email from Iragavarapu to Sharma and Mitchell (February 27, 2015 9:14:29 P.M.) produced by McKesson in discovery; annexed as **Exhibit "H"**, a true and correct copy of an email from Iragvarapu to Towsley; Workman; and Courtney Voirin, Supervisor, Accounts Receivable Management, McKesson ("Voirin")(March 3, 2015 10:10 A.M.); a true and correct copy of an email from Towsley to Iragavarapu; Workman; and Voirin (March 3, 2015 12:25 P.M.) produced by McKesson in discovery; annexed as **Exhibit "I"**, a true and correct copy of an email without attachment from Voirin to Aleman (March 27, 2015 8:16 A.M.), and a true and correct copy of an email without attachment from Towsley to Carnahan (March 27, 2015 11:48 A.M.); and annexed as Exhibit "H" to the DeVito Declaration, Supply Agreement at Section 4(E).  In each of these instances, I do not recall McKesson ever threatening A&P with non-delivery of Merchandise.

26.      Then, on or about June 10, 2015, I participated in a telephone conference call with McKesson representatives.  *See* annexed as **Exhibit "C",** a true and correct copy of an email from Page to Carnahan and Kanterman (June 10, 2015 5:34 P.M.).

27.      McKesson representatives told A&P that if McKesson did not receive payment that Friday, then A&P would not receive its Merchandise delivery that following Monday.  *See id.*

28.      Again, to ensure the continuation of delivery of Merchandise, among other things, A&P paid McKesson via ACH on the exact due date of June 12, 2015 in the amount of $4,086,597.70 for non-Generics Merchandise and in the amount of $1,595,482.76 for Generics

Merchandise.  *See* annexed as **Exhibit "J"**, a true and correct copy of a "824 Application Advice Report", a confirmation of transaction acceptance of A&P's ACH transaction to McKesson scheduled for June 12, 2015.

29.     Based on my conversations with McKesson on or about May 22, 2015 and June 10, 2015, it was clear to me that if A&P did not promptly pay McKesson on the exact due date, then A&P risked non-delivery of Merchandise to its pharmacies, which was essential to A&P's business and its customers.

30.     Then, on July 1, 2015, I learned from Robin Page that Ms. Towsley was following up with A&P to ensure McKesson would be paid on Thursday July 2, 2015, as Ms. Towsley thought that Friday, July 3, 2015 was a bank holiday.  *See* annexed as **Exhibit "K"**, a true and correct copy of an email from Page to Carnahan and Kanterman (July 1, 2015 11:33 A.M.); and a true and correct copy of email from Towsley (July 1, 2015 7:58 A.M.).  Ms. Towsley was mistaken though, which was later acknowledged, as the banks were open on Friday, July 3, 2015. *See* **Exhibit "K"**, a true and correct copy of an email from Towsley to Kimberly Evans, Team Lead, Accounts Receivable Management, McKesson, ("Evans")(July 1, 2015 11:26 A.M.).

31.     A&P did pay McKesson via ACH with payment arriving on the exact due date of Friday, July 3, 2015.  *See* annexed as **Exhibit "L"**, a true and correct copy of a "824 Application Advice Report", a confirmation of transaction acceptance for A&P's ACH transaction to McKesson scheduled for July 3, 2015.

32.     I do not recall an instance during the pre-Preference Period when a senior McKesson representative such as Jenifer Towsley, Vice President of Credit and Finance Services, U.S. Pharmaceutical, McKesson Corporation, contacted A&P a day or more in advance of a McKesson payment due date to ensure that McKesson would be paid by the exact due date.

33.     On July 9, 2015, I learned that Meg Mitchell, Director, Strategic Solutions, McKesson Retail National Accounts, of McKesson, contacted A&P's Robin Page, the day before the Friday, July 10, 2015 payment due date to ensure that McKesson would be paid by then. *See* annexed as **Exhibit "M"**, a true and correct copy of an email from Mitchell to Page (July 9, 2015 3:35 P.M.).

34.     At that time, Robin Page, wrote to me and Eric Kanterman, A&P's Chief Merchandising Officer, that it seems McKesson is "going to ask every week" whether A&P is going to make its Friday payment. **Exhibit "M"**, a true and correct copy of an email from Page to Carnahan and Kanterman (July 9, 2015 3:41 P.M.).

35.     I thought that as well.

36.     A&P did pay McKesson via ACH with payment arriving on the exact due date of Friday, July 10, 2015. *See* annexed as **Exhibit "L"**, a true, correct and redacted copy of the relevant portions of a "824 Application Advice Report", a confirmation of transaction acceptance for A&P's ACH transaction to McKesson scheduled for July 10, 2015.

37.     Again, I do not recall an instance during the pre-Preference Period when a senior McKesson representative such as Meg Mitchell, Director, Strategic Solutions, McKesson Retail National Accounts, contacted A&P a day or more in advance of a McKesson payment due date to ensure that McKesson would be paid by the exact due date.

38.     By this time, I had the clear, ongoing understanding that if A&P failed to make prompt payment to McKesson by the exact due date that McKesson would not deliver Merchandise that was much needed by A&P and its customers.

39.     Being that McKesson was A&P's primary pharmaceutical supplier, and that A&P was trying to preserve the value of its business and to continue to satisfy customer needs, A&P

could not risk non-delivery of Merchandise leading up to the commencement of its Chapter 11

bankruptcy cases or afterwards.

40.      Thus, in response to the mounting pressure from McKesson, A&P was forced to

comply with McKesson's demands in order to ensure that Merchandise continued to be delivered

to its pharmacies and was forced to prioritize payment to this creditor over others.  This

continued up to the commencement of A&P's Chapter 11 bankruptcy cases.

### Change of Terms

41.      My understanding of the payment terms under the Supply Agreement for non-

Generics Merchandise is that invoices dated from Monday through Friday of a week were due

and payable by Friday of the following week, and for Generics Merchandise, invoices dated

Monday through Friday of a week were due and payable on the sixth following Friday.  *See*

annexed as Exhibit "H" of the DeVito Declaration, the Supply Agreement at Section 4(A).

42.      Generally, non-Generics Merchandise was paid on six (6) day terms, and

Generics Merchandise on forty-one (41) day terms.  *See e.g.,* **Exhibit "D"**, a true and correct

copy of an email with attachments from Workman to Aleman (May 20, 2015 8:51 A.M.);

**Exhibit "I",** a true and correct copy of an email without attachment from Workman to Aleman

(March 25, 2015 7:53 A.M.); **Exhibit "K"**, a true and correct copy of an email without

attachment from Evans to Aleman (July 1, 2015 7:44 A.M.).

43.      During the Preference Period, A&P paid McKesson subject to the aforementioned

payment terms until July 13, 2015 when McKesson changed terms on a go-forward basis.  *See*

annexed as **Exhibit "N"**, a true and correct copy of a letter dated July 2, 2015 from Towsley to

Christopher McGarry, Exec. Vice Pres. (sic), Legal Services (sic), The Great Atlantic & Pacific

Tea Company, Inc. ("McGarry"); Carnahan; Mike Mills (sic), Exec. Vice Pres.(sic), Chief

Merchandising Officer (sic), The Great Atlantic & Pacific Tea Company, Inc. ("Mills"); and

Page (the "July 2nd Letter").

44.    As per the July 2nd Letter, McKesson's Ms. Towsley, informed A&P that

"effective on and after July 13, 2015, as to all future purchases, A&P's credit terms are reduced

to one (1) day sales outstanding ("**DSO**") with a maximum daily credit limit of $1 million." *Id.*

The stated reasons for this credit reduction was McKesson's assertion of an "adverse material

change in A&P's financial situation and the fact that A&P ha[d] ceased to meet McKesson's

credit requirements." *Id*.

45.    I had questions for McKesson after receiving this letter.  Nevertheless, it was

clear to me that McKesson was demanding the unilateral and drastic compression of A&P's

payment and credit terms.  I was very concerned about the impact this would have on A&P's

cash flow and ability to operate.

46.    After the July 2nd Letter, McKesson and A&P discussed, among other things, the

mechanics of McKesson's payment and credit terms reduction.

47.    On July 13, 2015, Ms. Towsley provided "a very high level summary of the

expectations [for the new payment and credit terms] so that … [McKesson] can make sure …[it]

get[s] payment."  Annexed as **Exhibit "O",** a true and correct copy of an email provided by

McKesson from Towsley to Carnahan, Page, Kanterman, and Mitchell (July 13, 2015 2:15:21

P.M.).  Ms. Towsley informed me, in part, that "McKesson … expect[ed] payment via a wire,

rather than an ACH, on the day following shipment." *Id*.  Later that day, I was provided an excel

spreadsheet of the approximated total amount of McKesson's deliveries on July 13, 2015 with

payment due on July 14, 2015.  *See* annexed as **Exhibit "P"**, a true and correct copy of an email

with attachment from Towsley to Carnahan, Page, Kanterman, and Mitchell (July 13, 2015 2:34

P.M.).

48.     I understood that, as of July 13, 2015, terms were changed such that Merchandise

would be delivered by McKesson on one day and payment would be received by McKesson the

day after the delivery of Merchandise via wire and not ACH.  Prior to July 13, 2015, it had been

A&P's standard procedure to ACH payment to McKesson as opposed to sending a wire

payment.  *See e.g.*, **Exhibits "J" and "L"**.

49.     To the best of my knowledge, the July 2nd Letter was not preceded by any

discussion between A&P and McKesson regarding these "credit terms" (as referenced in the July

2nd Letter).  **Exhibit "N"**.  As A&P's Chief Financial Officer, I would have expected to have

been involved in any such discussion along with A&P's Chief Merchandising Officer.

50.     On July 15, 2015, McKesson sent A&P another letter, stating in part that

"[f]ollowing the July 2, 2015 letter, McKesson and A&P have spoken about these credit terms

and the resulting logistical issues from these terms.  To address these issues, A&P's credit terms

are increased to two (2) DSO with a maximum daily credit limit of $2 million.  These revised

credit terms are effective immediately."  Annexed as **Exhibit "Q"** a true and correct copy of a

letter dated July 15, 2015 from Towsley to McGarry, Carnahan, Mills (sic), and Page (the "July

15th Letter").

51.     Notably, the letter drafted by McKesson does not expressly state that A&P

willingly consented to these compressed terms.

52.     A&P was put in a position where it was forced to acquiesce to McKesson's

demand for a change in terms, and thus, A&P had no choice but to accept these new, unilateral,

compressed terms.  Continuity was critical to A&P's business and customer service and finding a

new primary pharmaceutical supplier would have been impossible in such a constricted time frame.

53.     Although McKesson drastically and unilaterally changed terms, McKesson nevertheless continued to extend credit to A&P although McKesson began to enforce a maximum daily credit limit after sending the July 2, 2015 Letter.  *See* **Exhibit "N"**.

54.     I did not understand the terms change imposed by McKesson to mean that A&P's payment for Merchandise was to be contemporaneous with the delivery of said Merchandise.

55.     I did understand though that these change in terms imposed by McKesson would constrain, and did constrain, A&P's ability to manage its cash flow especially since the payments to McKesson were one of the largest vendor payments that A&P had to make on an ongoing basis.  *See e.g.* **Exhibit "M"**.

56.     I was very concerned about A&P's ability to keep up with the financial demands and constraints that these new terms imposed on A&P.

57.     While this was going on, I recall being keenly aware of the fact that (1) A&P was looking to renew its contract or extend its terms with McKesson, as the Supply Agreement was set to expire on August 31, 2015; (2) McKesson relayed that it would not be able to move forward with contract renewal discussions given the status of A&P's finances and McKesson's concerns; and (3) at this time, A&P's ability to find an alternate primary pharmaceutical vendor would be extremely difficult if not impossible.  *See* annexed as **Exhibit "R"**, a true and correct copy of an email calendar invite provide by McKesson from Page to Page, Carnahan, Kanterman, and Mitchell (July 2, 2015 7:33:15 P.M); and annexed as **Exhibit "S"**, a true and correct copy of an email provided by McKesson from Mitchell to Jeffrey Ball, Vice President of Strategic Sourcing, The Great Atlantic & Pacific Tea Company, Inc. (July 2, 2015 9:50:07 P.M.).

58.    In order to continue to make McKesson's payments on 41 and 6 day terms and now meet the new terms imposed on and after July 13, 2015 by McKesson on a go-forward basis, A&P was put in a position where it was forced to accommodate McKesson and prioritize payments to McKesson over and above other creditors.

59.    I declare under the penalty of perjury that to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 5th day of September 2019.

/s/ *Tim Carnahan*
TIM CARNAHAN

# EXHIBIT A

| | |
|---|---|
| **From:** | Page, Robin |
| **Sent:** | Friday, May 22, 2015 9:44 AM |
| **To:** | Carnahan, Tim; Kanterman, Eric; Baker, Joan |
| **Subject:** | FW: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15 |
| **Attachments:** | AnP_Pathmark  05.10.15-05.16.15 Due 05.22.15.xls; ATT00001.htm |
| | |
| **Importance:** | High |

Are we holding payment? They are saying they will hold up our shipments today which is HUGE since we would not be able to get anything till maybe Tuesday.

Please let me know

Thanks,

Robin

---

**From:** Towsley, Jenifer [mailto:Jenifer.Towsley@McKesson.com]
**Sent:** Friday, May 22, 2015 9:39 AM
**To:** Page, Robin
**Subject:** Fwd: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15

Robin:
Lots of chatter on the fact that you all have retained FTI.

Obviously with a $10m exposure, McKesson is concerned with the recent increase in missed payments and this news related to a likely restructuring.

Please confirm for me that we will be receiving a payment today. Additionally I would like to have a call set up with your CFO as soon as possible. McKesson was a strong partner for you through the restructure in 2010. I would expect that with our significant investment in trade terms that there be some proactive discussion between us. Can you set this call up or send me in the right direction to set this up?

If we do not receive a wire payment today, we will be holding shipment immediately. I know this is a holiday weekend, and would like to get this resolved as early as possible today.

Thank you,
**Jenifer Towsley**
VP Credit and Financial Services
U.S. Pharmaceutical

**McKesson Corporation**
One Post Street, 20th Floor
San Francisco, CA 94104

415.983.9333 ph
415.420.2024 cell

1

**Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt Sent from my iPhone**

Begin forwarded message:

**From:** "Workman, Claire" <Claire.Workman@McKesson.com>
**To:** "'Klug, Mary'" <Klugm@APTEA.com>, "'alemanp@aptea.com'" <alemanp@aptea.com>, "Voirin, Courtney" <Courtney.Voirin@McKesson.com>, "'Page, Robin'" <PageR@APTEA.com>, "Iragavarapu, Lalitha" <Lalitha.Iragavarapu@McKesson.com>, "Baker, Joan" <BAKERJ@APTEA.com>, "Towsley, Jenifer" <Jenifer.Towsley@McKesson.com>
**Subject: FW: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15**

Good morning,


Could someone please confirm that McKesson will receive wire payment today - as I do not show that McKesson received today's payment $4,587,431.62 via ACH.

Payment in the amount of $3,840,125.40 is due Friday, 05/22/15.
The generic total is $747,306.22 and is due on 05/22/15.



Wire Payments Only

Listed below are the new WIRE INSTRUCTIONS (only) (NOT ACH CREDIT INSTRUCTIONS).
        Please make sure the customer is asking for WIRE Instructions and not ACH Instructions.


BANK NAME:                          Bank of America, Concord, CA
Transit Routing Number:
Account Number:
Account Name:                       CGSF Funding Corporation,
                                    An indirect subsidiary of McKesson, Inc.


Thank you,
Claire



From: Workman, Claire
Sent: Wednesday, May 20, 2015 7:50 AM
To: 'alemanp@aptea.com'
Cc: Hauf, Lisa; Korbish, Debbie; 'Page, Robin'; 'Klug, Mary'; Haynes, Cathy; Towsley, Jenifer; Korbish, Debbie; 'foxp@aptea.com'; 'CompuesA@APTEA.com'; Voirin, Courtney; Evans, Kimberly; Hughes, Erin; Joslyn, Denise

Subject: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15

Good morning Pat,

Attached are the A&P / Pathmark reports for week ending 05/16/15.  Doc dates are 05/10/15 through 05/16/15.

Payment in the amount of $3,840,125.40 is due Friday, 05/22/15.  The generic total is $886,529.16 and is due on 06/26/15.

Thank you,

Claire Workman
Accounts Receivable

McKesson Corporation
McKesson Financial Center
McKesson Pharmaceutical
1220 Senlac Drive
Carrollton TX 75006

972-389-3392 Tel
972-446-5782 Fax
claire.workman@mckesson.com<mailto:claire.workman@mckesson.com>

Confidentially Notice:  This email message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

# EXHIBIT B

**From:**      Carnahan, Tim [carnahat@APTEA.com]
**Sent:**      5/22/2015 9:31:02 PM
**To:**        Towsley, Jenifer [jenifer.towsley@mckesson.com]
**Subject:**   RE: Payment Issue

Hi Jenifer.
Can we target the week after next.  Maybe on June 3 or 4?
Thanks.
Tim

---

**From:** Towsley, Jenifer [mailto:Jenifer.Towsley@McKesson.com]
**Sent:** Friday, May 22, 2015 11:46 AM
**To:** Carnahan, Tim
**Cc:** Page, Robin
**Subject:** Re: Payment Issue

Much appreciated Tim.

I would like to set up a call with you in the next week or so to include McKesson's CFO, Britt Vitalone.

We would definitely like to be on the proactive side of things.

**Jenifer Towsley**
VP Credit and Financial Services

U.S. Pharmaceutical


**McKesson Corporation**

One Post Street, 20th Floor

San Francisco, CA 94104


415.983.9333 ph
415.420.2024 cell


**Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt from disclosure under applicable laws. Any unauthorized review, copying, use, disclosure or distribution is prohibited. If you are not the intended recipient and have received this communication in error, please notify the sender by reply e-mail, delete this e-mail from your system and destroy all copies of the original message. Thank you**


On May 22, 2015, at 8:41 AM, Carnahan, Tim <carnahat@APTEA.com> wrote:

Jenifer –
We will be making the wire today and monitoring this closely over the coming months to be sure we are in sync.
Regards,
Tim

---

**From:** Towsley, Jenifer [mailto:Jenifer.Towsley@McKesson.com]
**Sent:** Friday, May 22, 2015 10:56 AM
**To:** Carnahan, Tim

McKesson-0001337

**Cc:** Page, Robin
**Subject:** Re: Payment Issue

You will need to arrange for a wire payment, not an ACH, today in order to continue service. This is the third instance of this happening in the recent past.

Please call me with any questions.

**Jenifer Towsley**
VP Credit and Financial Services

U.S. Pharmaceutical


**McKesson Corporation**

One Post Street, 20th Floor

San Francisco, CA 94104


415.983.9333 ph
415.420.2024 cell


**Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt from disclosure under applicable laws. Any unauthorized review, copying, use, disclosure or distribution is prohibited. If you are not the intended recipient and have received this communication in error, please notify the sender by reply e-mail, delete this e-mail from your system and destroy all copies of the original message. Thank you**


On May 22, 2015, at 7:48 AM, Carnahan, Tim <carnahat@APTEA.com> wrote:

Jenifer,
We will be able to get the ACH notification to you today for payment Tuesday so there is no interruption of service. We are sorry for the inconvenience.
Regards,
Tim

Tim Carnahan
Chief Financial Officer
The Great Atlantic and Pacific Tea Company
2 Paragon Drive
Montvale, NJ 07645
T: 201-571-4363
C: 202-436-6912

McKesson-0001338

# EXHIBIT C

**From:**              Page, Robin
**Sent:**              Wednesday, June 10, 2015 5:34 PM
**To:**                Carnahan, Tim; Kanterman, Eric
**Subject:**           Notes from Fast call with McKesson

**Importance:**        High

They never received the fiscal year end Financials, would like to see them before we can have our next call

Issues
1. Over the past 6 months they received payments late 3 times
   a. If they do not receive payment on Friday we will not be receiving our drug delivery Monday
   b. Eric assured them this would not happen again

2. STI Coming on board
   a. What options are they looking at
   b. Reason we brought them on board

3. Sourcing contract
   a. Without getting the financials they cannot agree to extending the terms
   b. Meg wanted to make sure that Jeff Ball was informed that she could not get counter/answer the MOU till after Jennifer gives the go ahead

Take away:
1. Tim to get Jennifer the Financials ASAP
2. Robin will schedule another call Friday at 4pm if they get the financials by tomorrow am
3. Eric will reach out to Jeff Ball to explain why McKesson is not responding to the MOU
4. Jennifer will try to get her questions to Tim prior to the meeting

Robin M Page, RPh.
Vice President of Pharmacy
The Great Atlantic & Pacific Tea Co., Inc.
2 Paragon Drive
Montvale, NJ 07645
Phone 201.571.8324
Fax 201.571.8335

***Confidentiality Notice***
This electronic message transmission contains information belonging to The Great Atlantic & Pacific Tea Co. that is solely for the recipient named above and which may be confidential or privileged. THE GREAT ATLANTIC & PACIFIC TEA CO. EXPRESSLY PRESERVES AND ASSERTS ALL PRIVILEGES AND IMMUNITIES APPLICABLE TO THIS TRANSMISSION. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this electronic transmission in error, please notify me by telephone at 201-571-4248. Thank you.








# EXHIBIT D

**From:** Page, Robin
**Sent:** Wednesday, May 20, 2015 8:59 AM
**To:** Carnahan, Tim
**Subject:** Fwd: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15
**Attachments:** AnP_Pathmark  05.10.15-05.16.15 Due 05.22.15.xls; Copy of GX Chain 013-940 Dating Report_20_05_2015_Report.xls

As we discussed. This is how mckeson informs what is due when

Thank you,
Robin
Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: "Workman, Claire"
Date:05/20/2015 8:51 AM (GMT-05:00)
To: "Aleman, Pat"
Cc: "Hauf, Lisa" , "Korbish, Debbie" , "Page, Robin" , "Klug, Mary" , "Haynes, Cathy" , "Towsley, Jenifer" , "Korbish, Debbie" , "Fox, Patti" , "Compuesto, Aimee" , "Voirin, Courtney" , "Evans, Kimberly" , "Hughes, Erin" , "Joslyn, Denise"
Subject: A&P_Pathmark weekly report for 05.10.15-05.16.15 Due 05.22.15

Good morning Pat,

Attached are the A&P / Pathmark reports for week ending 05/16/15.  Doc dates are 05/10/15 through 05/16/15.

Payment in the amount of $3,840,125.40 is due Friday, 05/22/15.  The generic total is $886,529.16 and is due on 06/26/15.

Thank you,

**Claire Workman**
Accounts Receivable

**McKesson Corporation**
McKesson Financial Center
McKesson Pharmaceutical
1220 Senlac Drive
Carrollton TX 75006

972-389-3392 Tel
972-446-5782 Fax
claire.workman@mckesson.com

Confidentially Notice:  This email message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

The attachment(s) to the foregoing e-mail were produced in native format and are available at The Clerk of the Court.

# EXHIBIT E

**From:** Brown, Nancy
**Sent:** Friday, May 22, 2015 12:00 PM
**To:** Laureni, Joe
**Cc:** Roselli, Tonie
**Subject:** Mc Kesson bank info

| Transaction Date | Transaction Time | Payee Name | Payee Bank Number | Payee Account Number | Batch Number | Transaction Number | Effective Date | Payment Method | Transaction Amount SUM | Sum Ct SUM | Sum Amt SUM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 05-22-2015 | 08:41 | MC KESSON DRUG CO | | | Friday-US052215-4W-1 | 176288 | 26-May-2015 | ACH | 3,840,125.40 | 57 | 9075799 |
| 05-22-2015 | 08:41 | MC KESSON DRUG CO | | | Friday-US052215-4W-1 | 176289 | 26-May-2015 | ACH | 552,809.19 | 57 | 9075799 |

Hi Joe,
Please recall these ACHs. They are being sent by wire on a different account number.

Thank you

Nancy L. Brown
Financial Analyst
Great A&P Tea Co
201-571-4031 phone
201-571-4900 fax

    

1

# EXHIBIT F

# 824 Application Advice Report

**Payor Bank Name:** WFNDEBI01
**Transaction Date:** 05-22-2015
**Transaction Time:** 11:36

## Transaction Detail:

**Payee Name:** MC KESSON DRUG CO ███████████
**Payee Bank Number:**
**Payee Account Number:**
**Batch Number:**
**Transaction Number:** 176314
**Effective Date:** 05-22-2015
**Payment Method:** FWT
**Transaction Amount:** $4,392,934.59
**Status Message:** OK - Transaction Accepted

## Batch Summary:

# EXHIBIT G

| | |
|---|---|
| **From:** | Iragavarapu, Lalitha [/O=MCKESSON/OU=NORTH AMERICA/CN=RECIPIENTS/CN=E28E1FD] |
| **Sent:** | 2/27/2015 9:14:29 PM |
| **To:** | Sharma, Shivani [shivani.sharma@mckesson.com]; Mitchell, Meg [meg.mitchell@mckesson.com] |
| **CC:** | Jefferies, Dan [dan.jefferies@mckesson.com]; Baker, Christian [christian.baker@mckesson.com] |
| **Subject:** | RE: ACH Payments from A&P |

According to the information I have, we should be charging A&P **.0493% per day** as service charges
So $4,039,731.75 * 0.0493 = **$199,158.78 for one day.** Not sure what the terms are for calculating on weekends. I will have to get back to office on Monday to verify.

Thank you,

**Lalitha Iragavarapu**
Sr. Manager
Accounts Receivables Management

---

**From:** Sharma, Shivani
**Sent:** Friday, February 27, 2015 1:11 PM
**To:** Iragavarapu, Lalitha; Mitchell, Meg; Jefferies, Dan; Baker, Christian
**Subject:** RE: ACH Payments from A&P

Also, we need to assess our take on service charges if we know they will be late in paying.

Lalitha - can you tell us the estimated potential service charges based on the assumption that they pay on 3/2?

Thanks,

Shivani


Happy Connecting. Sent from my Sprint Samsung Galaxy S® 5


-------- Original message --------
From: "Iragavarapu, Lalitha" <Lalitha.Iragavarapu@McKesson.com>
Date: 02/27/2015 1:01 PM (GMT-06:00)
To: "Mitchell, Meg" <Meg.Mitchell@McKesson.com>, "Jefferies, Dan" <Dan.Jefferies@McKesson.com>, "Baker, Christian" <Christian.Baker@McKesson.com>
Cc: "Sharma, Shivani" <Shivani.Sharma@McKesson.com>
Subject: RE: ACH Payments from A&P


If they do make the payment as stated on Monday March 2nd, it will still put McKesson in a past due balance for month end. Please let me know if there is anything else we can do.

Thanks a lot for checking Meg.

Regards,
Lalitha

---

**From:** Mitchell, Meg
**Sent:** Friday, February 27, 2015 12:58 PM
**To:** Iragavarapu, Lalitha; Jefferies, Dan; Baker, Christian
**Cc:** Sharma, Shivani
**Subject:** RE: ACH Payments from A&P

Their fiscal year ends tomorrow and all of the exec's are behind closed doors right now.  Robin did say they were in the process of changing banks, so maybe that's the issue.  She assured me they have money.

*Meg Mitchell*

Director, Strategic Solutions
McKesson Retail National Accounts
P-508.434.0318  c-508.735.4345

---

**From:** Iragavarapu, Lalitha
**Sent:** Friday, February 27, 2015 1:56 PM
**To:** Jefferies, Dan; Baker, Christian; Mitchell, Meg
**Cc:** Sharma, Shivani
**Subject:** RE: ACH Payments from A&P

We were not informed, our contact at A&P had NO idea that this message came to us. I am still unable to reach them directly, left voice messages.

**Meg**, we will wait to hear back from you.

Thank you,

**Lalitha Iragavarapu**
Sr. Manager
Accounts Receivables Management

---

**From:** Jefferies, Dan
**Sent:** Friday, February 27, 2015 12:08 PM
**To:** Iragavarapu, Lalitha; Baker, Christian; Mitchell, Meg
**Cc:** Sharma, Shivani
**Subject:** RE: ACH Payments from A&P

Did they bother saying why?

Meg,
FYI....

---

**Dan Jefferies** | O: 972.446.4140 | C: 940.268.7604

---

**From:** Iragavarapu, Lalitha
**Sent:** Friday, February 27, 2015 12:07 PM
**To:** Baker, Christian; Jefferies, Dan
**Cc:** Sharma, Shivani
**Subject:** FW: ACH Payments from A&P

Chris/ Dan,

Keeping you in loop as well. We received an email from Tim Carnahan CFO at A&P that we will not receive our ACH payment for today and it would be paid on Monday March 2nd. This will put us in a past due balance of **$4,039,731.75** for

McKesson-0000441

the month end.  We  followed up with them to wire the payment if possible but no response. This has been escalated to Jennifer Towsley as well.

Please let me know if you have additional questions.

Thank you,

**Lalitha Iragavarapu**
Sr. Manager
Accounts Receivables Management

---

**From:** Voirin, Courtney
**Sent:** Friday, February 27, 2015 9:24 AM
**To:** 'Klug, Mary'
**Cc:** Evans, Kimberly; Workman, Claire; Iragavarapu, Lalitha; Towsley, Jenifer
**Subject:** RE: ACH Payments from A&P

Mary,

Do you know why ACH cannot be processed? Can you process a wire payment today? We would receive the funds same day when you process by wire.
Please confirm if wire payment can be processed. This is month end and  the A&P account will show past due without this payment.

**Wire Payments ONLY**

Listed below are the new **WIRE INSTRUCTIONS (only)** **(NOT ACH CREDIT INSTRUCTIONS)**.
        Please make sure the customer is asking for WIRE Instructions and not ACH Instructions.

|  |  |
|---|---|
| **BANK NAME:** | **Bank of America, Concord, CA** |
| **Transit Routing Number:** | |
| **Account Number:** | |
| **Account Name:** | **CGSF Funding Corporation,** |
|  | **An indirect subsidiary of McKesson**, Inc. |

**Courtney Voirin**
Supervisor
Accounts Receivable Management
Quote to Cash Solutions
972.446.4676   telephone
916.267.6210   facsimile
**McKesson Corporation**
**McKesson Financial Center**
1220 Senlac Drive
Carrollton, Texas 75006
www.mckesson.com

Achieving Excellence through connectedness!

McKesson-0000442

**From:** Workman, Claire
**Sent:** Friday, February 27, 2015 9:09 AM
**To:** Voirin, Courtney; Iragavarapu, Lalitha; Towsley, Jenifer
**Cc:** Evans, Kimberly
**Subject:** FW: ACH Payments from A&P

FYI – See below- per Tim Carnahan at A&P, we will not receive payment today as scheduled.  We will be past due at month end $4,039,731.75.  Please advise next steps.


Thanks,
Claire


---

**From:** Carnahan, Tim [mailto:carnahat@APTEA.com]
**Sent:** Thursday, February 26, 2015 6:36 PM
**To:** Carnahan, Tim
**Subject:** ACH Payments from A&P

To: Distribution

All-
Please note that you will be receiving the ACH notification of payment tomorrow morning. We apologize for the slight delay and will be back on schedule with processing Friday for Monday.
Thank you in advance for your patience.
Regards,
Tim

Tim Carnahan
Chief Financial Officer
The Great Atlantic and Pacific Tea Company
2 Paragon Drive
Montvale, NJ 07645
T: 201-571-4363
C: 202-436-6912

McKesson-0000443

# EXHIBIT H

| | |
|---|---|
| **From:** | Iragavarapu, Lalitha [/O=MCKESSON/OU=NORTH AMERICA/CN=RECIPIENTS/CN=E28E1FD] |
| **Sent:** | 3/3/2015 9:13:57 PM |
| **To:** | Towsley, Jenifer [jenifer.towsley@mckesson.com] |
| **CC:** | Sharma, Shivani [shivani.sharma@mckesson.com]; Baker, Christian [christian.baker@mckesson.com] |
| **Subject:** | RE: ACH Payments from A&P |

Jennifer,

Yes, it did hit the account. We were informed that the delay was because it was their year end. We reached out to the RNA VP of the account who is working with us on the issue.

Thank you,
Lalitha

---

**From:** Towsley, Jenifer
**Sent:** Tuesday, March 03, 2015 12:25 PM
**To:** Iragavarapu, Lalitha; Workman, Claire; Voirin, Courtney
**Cc:** Evans, Kimberly; Sharma, Shivani
**Subject:** RE: ACH Payments from A&P

Any further explanation on the delay?
We need to charge them the late fee, please let me know that it hit the account. Should be about $2000 charge

**Thank you,**

**Jenifer**

---

**From:** Iragavarapu, Lalitha
**Sent:** Tuesday, March 03, 2015 10:10 AM
**To:** Towsley, Jenifer; Workman, Claire; Voirin, Courtney
**Cc:** Evans, Kimberly; Sharma, Shivani
**Subject:** RE: ACH Payments from A&P

Jennifer,

Yes, we did receive the payment yesterday Monday 3/2/2015.

Thank you,

**Lalitha Iragavarapu**
Sr. Manager
Accounts Receivables Management

---

**From:** Towsley, Jenifer
**Sent:** Tuesday, March 03, 2015 12:07 PM
**To:** Workman, Claire; Voirin, Courtney; Iragavarapu, Lalitha
**Cc:** Evans, Kimberly
**Subject:** RE: ACH Payments from A&P

Did we get this worked out? Or get any explanation for the delay?

**Thank you,**

**Jenifer Towsley**
VP Credit and Financial Services
U.S. Pharmaceutical

McKesson-0001313

**McKesson Corporation**
One Post Street, 20th Floor
San Francisco, CA 94104

415.983.9333 ph
415.420.2024 cell

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt from disclosure under applicable laws. Any unauthorized review, copying, use, disclosure or distribution is prohibited. If you are not the intended recipient and have received this communication in error, please notify the sender by reply e-mail, delete this e-mail from your system and destroy all copies of the original message. Thank you

**From:** Workman, Claire
**Sent:** Friday, February 27, 2015 7:09 AM
**To:** Voirin, Courtney; Iragavarapu, Lalitha; Towsley, Jenifer
**Cc:** Evans, Kimberly
**Subject:** FW: ACH Payments from A&P

FYI – See below- per Tim Carnahan at A&P, we will not receive payment today as scheduled.  We will be past due at month end $4,039,731.75.  Please advise next steps.

Thanks,
Claire

**From:** Carnahan, Tim [mailto:carnahat@APTEA.com]
**Sent:** Thursday, February 26, 2015 6:36 PM
**To:** Carnahan, Tim
**Subject:** ACH Payments from A&P

To: Distribution

All-
Please note that you will be receiving the ACH notification of payment tomorrow morning. We apologize for the slight delay and will be back on schedule with processing Friday for Monday.
Thank you in advance for your patience.
Regards,
Tim

Tim Carnahan
Chief Financial Officer
The Great Atlantic and Pacific Tea Company
2 Paragon Drive
Montvale, NJ 07645
T: 201-571-4363
C: 202-436-6912

# EXHIBIT I

| | |
|---|---|
| **From:** | Towsley, Jenifer <Jenifer.Towsley@McKesson.com> |
| **Sent:** | Friday, March 27, 2015 11:48 AM |
| **To:** | Carnahan, Tim |
| **Cc:** | Aleman, Pat |
| **Subject:** | Fwd: A&P_Pathmark weekly report for 03.15.15-03.21.15 Due 03.26.15 |

Tim:
I will be giving you a call shortly to discuss, but we will need a wire processed today for this payment.

**Thank you,**

**Jenifer Towsley**
VP Credit and Financial Services
U.S. Pharmaceutical

**McKesson Corporation**
One Post Street, 20th Floor
San Francisco, CA 94104

415.983.9333 ph

415.420.2024 cell


Begin forwarded message:

**From:** "Voirin, Courtney" <Courtney.Voirin@McKesson.com>
**Date:** March 27, 2015 at 8:19:58 AM PDT
**To:** "Towsley, Jenifer" <Jenifer.Towsley@McKesson.com>
**Subject: RE: A&P_Pathmark weekly report for 03.15.15-03.21.15 Due 03.26.15**

Jenifer,

Just talked to Patti Fox at A&P and she said that they are having problems with payment transmissions because of some upgrades to their system yesterday.She said they are working on it but does not have an ETA.

Courtney Voirin
Supervisor
Accounts Receivable Management
Quote to Cash Solutions
972.446.4676   telephone
916.267.6210   facsimile
McKesson Corporation
McKesson Financial Center
1220 Senlac Drive
Carrollton, Texas 75006
www.mckesson.com

Achieving Excellence through connectedness!

-----Original Message-----
On Mar 27, 2015, at 8:16 AM, Voirin, Courtney <Courtney.Voirin@McKesson.com> wrote:

Good Morning Pat,

I do not show McKesson received today's payment $4,731,048.02. Can you please confirm?

Payment in the amount of $3,858,143.67 is due Friday, 03/27/15.
The generic total is $872,904.35 and is due on 03/27/15.

If needed, you can process wire payment:

Wire Payments

Listed below are the new WIRE INSTRUCTIONS (only) (NOT ACH CREDIT INSTRUCTIONS).
        Please make sure the customer is asking for WIRE Instructions and not ACH Instructions.


BANK NAME:                          Bank of America, Concord, CA
Transit Routing Number:
Account Number:
Account Name:                       CGSF Funding Corporation,
                                    An indirect subsidiary of McKesson, Inc.


Courtney Voirin
Supervisor
Accounts Receivable Management
Quote to Cash Solutions
972.446.4676   telephone
916.267.6210   facsimile
McKesson Corporation
McKesson Financial Center
1220 Senlac Drive
Carrollton, Texas 75006
www.mckesson.com<http://www.mckesson.com/>

Achieving Excellence through connectedness!


From: Workman, Claire
Sent: Wednesday, March 25, 2015 7:53 AM
To: 'alemanp@aptea.com'
Cc: 'Feinerman, Marc'; Hauf, Lisa; Korbish, Debbie; 'Page, Robin'; garciame@aptea.com'; 'Klug, Mary';
Haynes, Cathy; Towsley, Jenifer; Korbish, Debbie; 'foxp@aptea.com'; 'CompuesA@APTEA.com'; Voirin,

Courtney; Evans, Kimberly; 'Ramalingam, Raj'; Pickell, Shari; Hughes, Erin
Subject: A&P_Pathmark weekly report for 03.15.15-03.21.15 Due 03.26.15

Good morning Pat,

Attached are the A&P / Pathmark reports for week ending 03/21/15.  Doc dates are 03/15/15 through 03/21/15.

Payment in the amount of $3,858,143.67 is due Friday, 03/27/15.  The generic total is $944,591.15 and is due on 05/01/15.

Thank you,

Claire Workman
Accounts Receivable

McKesson Corporation
McKesson Financial Center
McKesson Pharmaceutical
1220 Senlac Drive
Carrollton TX 75006

972-389-3392 Tel
972-446-5782 Fax
claire.workman@mckesson.com<mailto:claire.workman@mckesson.com>

Confidentially Notice:  This email message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

<A&P_Pathmark weekly report for 02.08.15-02.14.15 Due 02.20.15.eml>

# EXHIBIT J

# 824 Application Advice Report

**Payor Bank Name:** WFNDEBI01
**Transaction Date:** 06-11-2015
**Transaction Time:** 13:30

## Transaction Detail:

> **Payee Name:** MC KESSON DRUG C
> **Payee Bank Number:**
> **Payee Account Number:**
> **Batch Number:** 091000011207899
> **Transaction Number:** 180108
> **Effective Date:** 06-12-2015
> **Payment Method:** ACH
> **Transaction Amount:** $4,086,597.70
> **Status Message:** OK - Transaction Accepted
>
> **Payee Name:** MC KESSON DRUG C
> **Payee Bank Number:**
> **Payee Account Number:**
> **Batch Number:** 091000011207898
> **Transaction Number:** 180107
> **Effective Date:** 06-12-2015
> **Payment Method:** ACH
> **Transaction Amount:** $1,595,482.76
> **Status Message:** OK - Transaction Accepted

# EXHIBIT K

| | |
|---|---|
| **From:** | Page, Robin <IMCEAEX-_O=APTEA_OU=MONNTADM_CN=RECIPIENTS_CN=PAGER@namprd13.prod.outlook.com> |
| **Sent:** | Wednesday, July 01, 2015 11:33 AM |
| **To:** | Carnahan, Tim; Eric Kanterman (KANTERME@APTEA.com) |
| **Subject:** | FW: **URGENT Clarification**Re: A&P_Pathmark weekly report for 06.21.15-06.27.15 Due 07.03.15 |

---

From: Towsley, Jenifer [Jenifer.Towsley@McKesson.com]
Sent: Wednesday, July 01, 2015 11:26 AM
To: Evans, Kimberly
Cc: Aleman, Pat; Hauf, Lisa; Korbish, Debbie; Page, Robin; Klug, Mary; Haynes, Cathy; Fox, Patti; Compuesto, Aimee; Voirin, Courtney; Hughes, Erin; Joslyn, Denise; Workman, Claire
Subject: Re: **URGENT Clarification**Re: A&P_Pathmark weekly report for 06.21.15-06.27.15 Due 07.03.15

Team:
Apologies, I was working from an outdated bank holiday listing and have confirmed out bank is open.

Jenifer

On Jul 1, 2015, at 7:58 AM, Towsley, Jenifer <Jenifer.Towsley@McKesson.com> wrote:

**Urgent Clarification**

All:
Friday is a holiday. This payment is expected tomorrow, July 2nd. Please confirm that we will see payment tomorrow. If you are unable to initiate an ACH this evening, we will expect a wire payment.

Thank you,
Jenifer Towsley
VP Credit and Financial Services
McKesson Corporation
425.420.2024

On Jul 1, 2015, at 7:44 AM, Evans, Kimberly <Kimberly.Evans@McKesson.com> wrote:

Good morning Pat,

Attached are the A&P / Pathmark reports for week ending 06/27/15.  Doc dates are 06/21/15 through 06/27/15.

Payment in the amount of $ $  4,069,543.77  is due Friday, 07/03/15.  The generic total is $846,593.47 and is due on 08/07/15.

Thank you,
Kimberly Evans
Team Lead
Accounts Receivable Management
Quote to Cash Solutions
972-446-5462   telephone
916-267-6210   facsimile
McKesson Corporation
McKesson Financial Center
1220 Senlac Drive
Carrollton, Texas 75006
www.McKesson.com<../../../../ej160xk/My%20Documents/Customer%20Engagement-Joy/www.McKesson.com>

This e-mail message, including any attachments, is for the sole use of the intended recipients and may contain confidential and/or privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail, delete this message and destroy all copies thereof.

<AnP_Pathmark 06.21.15-06.27.15 Due 07.03.15.xls>  <GX Chain 013-940 Dating Report_01072015_Report (2).xls>

# EXHIBIT L

# 824 Application Advice Report

**Payor Bank Name:** WFNDEBI01
**Transaction Date:** 07-02-2015
**Transaction Time:** 13:30

## Transaction Detail:

**Payee Name:** MC KESSON DRUG C
**Payee Bank Number:**
**Payee Account Number:**
**Batch Number:** 091000017458111
**Transaction Number:** 184266
**Effective Date:** 07-03-2015
**Payment Method:** ACH
**Transaction Amount:** $859,138.86
**Status Message:** OK - Transaction Accepted

**Payee Name:** MC KESSON DRUG C
**Payee Bank Number:**
**Payee Account Number:**
**Batch Number:** 091000017458110
**Transaction Number:** 184265
**Effective Date:** 07-03-2015
**Payment Method:** ACH
**Transaction Amount:** $4,069,543.77
**Status Message:** OK - Transaction Accepted

# 824 Application Advice Report

**Payor Bank Name:** WFNDEBI01
**Transaction Date:** 07-09-2015
**Transaction Time:** 13:30

## Transaction Detail:





**Payee Name:** MC KESSON DRUG C
**Payee Bank Number:**
**Payee Account Number:**
**Batch Number:** 091000011947761
**Transaction Number:** 185435
**Effective Date:** 07-10-2015
**Payment Method:** ACH
**Transaction Amount:** $3,504,264.07
**Status Message:** OK - Transaction Accepted

**Payee Name:** MC KESSON DRUG C
**Payee Bank Number:**
**Payee Account Number:**
**Batch Number:** 091000011947760
**Transaction Number:** 185434
**Effective Date:** 07-10-2015
**Payment Method:** ACH
**Transaction Amount:** $865,317.11
**Status Message:** OK - Transaction Accepted



# EXHIBIT M

**From:**                  Page, Robin
**Sent:**                  Thursday, July 09, 2015 4:36 PM
**To:**                    Kanterman, Eric
**Subject:**               RE: Can you verify that tomorrow's payment is coming?

I sent that to you already - that was her 1st email

She has a call tonight with Jen and Britt

Thanks,

Robin

-----Original Message-----
From: Kanterman, Eric
Sent: Thursday, July 09, 2015 4:16 PM
To: Page, Robin
Subject: RE: Can you verify that tomorrow's payment is coming?

She e mailed you on this but no response to your prior e mail?

-----Original Message-----
From: Page, Robin
Sent: Thursday, July 09, 2015 3:41 PM
To: Carnahan, Tim; Kanterman, Eric
Subject: FW: Can you verify that tomorrow's payment is coming?

Seems they are going to ask every week

Thanks,

Robin

-----Original Message-----
From: Mitchell, Meg [mailto:Meg.Mitchell@McKesson.com]
Sent: Thursday, July 09, 2015 3:39 PM
To: Page, Robin
Subject: Re: Can you verify that tomorrow's payment is coming?

1

Thanks!

Sent from my iPhone

> On Jul 9, 2015, at 3:36 PM, "Page, Robin" <PageR@APTEA.com> wrote:
>
> Yes - there have not been any issues at all
>
> Thanks,
>
> Robin
>
>
> -----Original Message-----
> From: Mitchell, Meg [mailto:Meg.Mitchell@McKesson.com]
> Sent: Thursday, July 09, 2015 3:35 PM
> To: Page, Robin
> Subject: Can you verify that tomorrow's payment is coming?
>
>
>
> Sent from my iPhone

# EXHIBIT N

# MCKESSON

..........................................................................................................................................................

July 2, 2015

VIA ELECTRONIC, FACSIMILE AND OVERNIGHT MAIL

| | |
|---|---|
| Christopher McGarry | Tim Carnahan |
| Exec. Vice Pres., Legal Services | Senior Vice President, Chief Financial Officer |
| The Great Atlantic & Pacific Tea Company, Inc. | The Great Atlantic & Pacific Tea Company, Inc. |
| 2 Paragon Drive | 2 Paragon Drive |
| Montvale, NJ 07645 | Montvale, NJ 07645 |
|     Email: McGarry@APTEA.com |     Email: carahat@APTEA.com |
| | |
| Mike Mills | Robin Page |
| Exec. Vice Pres., Chief Merchandising Officer | Vice President, Pharmacy |
| The Great Atlantic & Pacific Tea Company, Inc. | The Great Atlantic & Pacific Tea Company, Inc. |
| 2 Paragon Drive | 2 Paragon Drive |
| Montvale, NJ 07645 | Montvale, NJ 07645 |
|     Email: MillsM@APTEA.com |     Email: PageR@APTEA.com |

> *Re:    Changes to Payment and Credit Terms under the Supply Agreement between A&P and McKesson*

Ladies and Gentlemen:

As you know, McKesson Corporation ("**McKesson**"), The Great Atlantic & Pacific Tea Company, Inc. ("**Opco I**") and A&P Live Better LLC ("**Opco II**") are parties to that certain Supply Agreement, dated December 6, 2012 (as amended, supplemented, restated or otherwise modified from time to time, the "**Supply Agreement**"). Each of Opco I and Opco II is a subsidiary of Montvale-Para Holdings ("**Holdco**"), which in turn has guaranteed certain obligations of Opco I and Opco II under the Supply Agreement. Holdco and each of its direct and indirect majority owned subsidiaries, including Opco I and Opco II and each of their Pharmacies and Warehouses (as those terms are defined in the Supply Agreement) are referred to collectively in the Supply Agreement and in this letter as "**A&P.**"

Pursuant to Section 4(H)(1) of the Supply Agreement, McKesson, in its reasonable discretion and following ten (10) days written notice, has the right to change any payment term (including imposing a requirement of cash payment upon delivery) or limit total credit if "(i) McKesson concludes there has been a

**McKesson Corporation**
One Post Street
San Francisco, CA 94104

www.mckesson.com

McKesson-0001263

**McKESSON**

...........................................................................................................................................................

material adverse change in A&P's financial condition or an unsatisfactory payment performance; or (ii) A&P ceases to meet McKesson's credit requirements."

McKesson had determined that there have been material adverse changes in A&P's financial condition and that A&P ceases to meet McKesson's credit requirements. In making those determinations, McKesson considered, among other things, the consolidated financial statements of Holdco and its subsidiaries as of February 28, 2015 (the "**2.28.15 Financial Statements**"), and the accompanying Independent Auditor's Report dated May 29, 2015 from PricewaterhouseCoopers LLP. McKesson's determination was based on a variety of factors, including the following:

- Based on the 2.28.15 Financial Statements, A&P showed a net loss of ($305 million) for the 53 weeks ended February 28, 2015 ("**FY 2015**"), as compared with a net loss of ($68 million) for the 52 weeks ended February 22, 2014 ("**FY 2014**").

- Based on the 2.28.15 Financial Statements, in the fiscal year ended February 28, 2015, A&P generated a negative EBIT of -1.9% of sales or ($105 million) in FY 2015, as compared a positive EBIT of 1.1% of sales or $62 million in FY 2014.

- Based on the 2.28.15 Financial Statements, in the fiscal year ended February 28, 2015, A&P generated positive EBITDA of 0.9% of sales or $48 million in FY 2015, significantly lower than the EBITDA of $264 million generated in FY 2014.

- Based on the 2.28.15 Financial Statements, A&P generated free operating cash of negative ($82 million) in FY 2015, compared with positive free operating cash of $147 million generated in FY 2014.

- A&P has experienced a continuing deterioration in its financial condition.

- According to public reports, A&P has engaged restructuring advisors and is actively exploring potential sales, which could occur through provisions of the Bankruptcy Code.

Based upon the increased risks to McKesson due to the adverse material change in A&P's financial situation and the fact that A&P has ceased to meet McKesson's credit requirements, McKesson has determined that effective on and after July 13, 2015, as to all future purchases, A&P's credit terms are reduced to one (1) day sales outstanding ("**DSO**") with a maximum daily credit limit of $1 million.

Section 4(H)(1) of the Supply Agreement requires A&P to provide "adequate assurances of performance as a condition to the shipment of any additional orders to Locations." A&P should immediately provide McKesson with a detailed proposal to meet that requirement and provide adequate assurance of performance. We are available at any time to work to resolve any issues that might arise in your adequate assurance proposal.

McKesson-0001264

**MCKESSON**

................................................................................................................................

McKesson reserves all of the rights and remedies provided to it under the Supply Agreement, and under any and all other agreements between the parties, as well as all rights and remedies accorded McKesson under applicable law and equity.  All such rights and remedies are specifically reserved and may not be waived or modified in any respect except only in a writing signed by an authorized representative of McKesson.  Among the rights reserved is the right for adequate assurance of performance.

Please feel free to contact the undersigned if you have any questions or comments.

McKesson Corporation

Jenifer Towsley / hh with permission

Jenifer Towsley
Vice President, Credit and Financial Services
US Pharmaceutical

cc:  Britt Vitalone
     Meg Mitchell
     Jeffrey Garfinkle, Esq

McKesson-0001265

# EXHIBIT O

| | |
|---|---|
| **From:** | Towsley, Jenifer [/O=MCKESSON/OU=NORTH AMERICA/CN=RECIPIENTS/CN=0535A9FD] |
| **Sent:** | 7/13/2015 2:15:21 PM |
| **To:** | Tim Carnahan [carnahat@APTEA.com]; Robin Page [PageR@APTEA.com]; Eric Kanterman [KANTERME@APTEA.com]; Mitchell, Meg [meg.mitchell@mckesson.com] |
| **Subject:** | Supply Agreement between A&P and McKesson; Changes to Payment and Credit Terms |

Hi Tim;
I know we have a call today, and we can go over the details of the new terms process live, however I wanted to give a very high level summary of the expectations so that we can make sure to get payment.

1) McKesson will expect payment via a wire, rather than an ACH, on the day following shipment.

2) McKesson is able to send high level summary by 11am ET each day for that's days shipments (I am looking into the requested 10am ET) so that A&P is able to set up a wire for the following day. I will have the high level summary shortly for tomorrow's wire. Today this summary will come directly from me.

3) McKesson will be able to send the detail as A&P receive today on the day following shipment (to back up the summary from the day prior).

All existing payables prior to today's shipment will be due on their regular scheduled due date.

I will have all details for you on the call re: contacts for the reporting, wire instructions (same as you have used in the past). Following the call I will also detail in writing the parameters of the process and the terms.

Thank you,
Jenifer Towsley
415.983.9333 ph
415.420.2024 cell

McKesson-0001290

# EXHIBIT P

| From: | Carnahan, Tim |
|---|---|
| Sent: | Monday, July 13, 2015 3:24 PM |
| To: | Baker, Joan; Klug, Mary |
| Subject: | FW: Supply Agreement between A&P and McKesson; Changes to Payment and Credit Terms |
| Attachments: | ap 07.13.15 combined.xlsx |

fyi

-----Original Message-----
From: Towsley, Jenifer [mailto:Jenifer.Towsley@McKesson.com]
Sent: Monday, July 13, 2015 2:34 PM
To: Carnahan, Tim; Page, Robin; Kanterman, Eric
Cc: Mitchell, Meg
Subject: RE: Supply Agreement between A&P and McKesson; Changes to Payment and Credit Terms

Tim:
Please see attached. Total amount for today's deliveries: $1,447,016.35

This is an example of the high level summary we can provide on the day prior to a wire.  Two things to consider:
    1) It is not possible to provide until 11am, in order to capture the correct daily invoices.
    2) The amount will not match exactly the amount needed to be wired, because of credits and other items that hit the account.  The exact amount needed via wire can be sent by 10am the day following.

We can discuss on today's call.

Here are the wiring instructions:

Wire Payments

Listed below are the new WIRE INSTRUCTIONS (only) (NOT ACH CREDIT INSTRUCTIONS).

    BANK NAME                 Bank of America, Concord, CA
    Transit Routing Number:      █████████
    Account Number:            █████████
    Account Name:           CGSF Funding Corporation,  An indirect subsidiary of McKesson, Inc.

Thank you,

Jenifer Towsley

VP Credit and Financial Services
U.S. Pharmaceutical

McKesson Corporation
One Post Street, 20th Floor
San Francisco, CA 94104

415.983.9333 ph
415.420.2024 cell

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information that is exempt from disclosure under applicable laws. Any unauthorized review, copying, use, disclosure or distribution is prohibited. If you are not the intended recipient and have received this communication in error, please notify the sender by reply e-mail, delete this e-mail from your system and destroy all copies of the original message. Thank you

-----Original Message-----
From: Towsley, Jenifer
Sent: Monday, July 13, 2015 7:15 AM
To: Tim Carnahan; Robin Page; Eric Kanterman; Mitchell, Meg
Subject: Supply Agreement between A&P and McKesson; Changes to Payment and Credit Terms

Hi Tim;
I know we have a call today, and we can go over the details of the new terms process live, however I wanted to give a very high level summary of the expectations so that we can make sure to get payment.

1) McKesson will expect payment via a wire, rather than an ACH, on the day following shipment.

2) McKesson is able to send high level summary by 11am ET each day for that's days shipments (I am looking into the requested 10am ET) so that A&P is able to set up a wire for the following day. I will have the high level summary shortly for tomorrow's wire. Today this summary will come directly from me.

3) McKesson will be able to send the detail as A&P receive today on the day following shipment (to back up the summary from the day prior).

All existing payables prior to today's shipment will be due on their regular scheduled due date.

I will have all details for you on the call re: contacts for the reporting, wire instructions (same as you have used in the past). Following the call I will also detail in writing the parameters of the process and the terms.

Thank you,
Jenifer Towsley
415.983.9333 ph
415.420.2024 cell

The attachment(s) to the foregoing e-mail were produced in native format and are available at The Clerk of the Court.

# EXHIBIT Q

**MᶜKESSON**

..............................................................................................................................................

July 15, 2015

VIA ELECTRONIC, FACSIMILE AND OVERNIGHT MAIL

Christopher McGarry
Exec. Vice Pres., Legal Services
The Great Atlantic & Pacific Tea Company, Inc.
2 Paragon Drive
Montvale, NJ 07645
        Email: McGarry@APTEA.com

Tim Carnahan
Senior Vice President, Chief Financial Officer
The Great Atlantic & Pacific Tea Company, Inc.
2 Paragon Drive
Montvale, NJ 07645
        Email: carahat@APTEA.com

Mike Mills
Exec. Vice Pres., Chief Merchandising Officer
The Great Atlantic & Pacific Tea Company, Inc.
2 Paragon Drive
Montvale, NJ 07645
        Email: MillsM@APTEA.com

Robin Page
Vice President, Pharmacy
The Great Atlantic & Pacific Tea Company, Inc.
2 Paragon Drive
Montvale, NJ 07645
        Email: PageR@APTEA.com

>    *Re:    Changes to Payment and Credit Terms under the Supply Agreement between*
>    *A&P and McKesson*

Ladies and Gentlemen:

        As you know, McKesson Corporation ("**McKesson**"), The Great Atlantic & Pacific Tea Company, Inc. ("**Opco I**") and A&P Live Better LLC ("**Opco II**") are parties to that certain Supply Agreement, dated December 6, 2012 (as amended, supplemented, restated or otherwise modified from time to time, the "**Supply Agreement**"). Each of Opco I and Opco II is a subsidiary of Montvale-Para Holdings ("**Holdco**"), which in turn has guaranteed certain obligations of Opco I and Opco II under the Supply Agreement. Holdco and each of its direct and indirect majority owned subsidiaries, including Opco I and Opco II and each of their Pharmacies and Warehouses (as those terms are defined in the Supply Agreement) are referred to collectively in the Supply Agreement and in this letter as "**A&P**."

        Pursuant to Section 4(H)(1) of the Supply Agreement, McKesson, in its reasonable discretion and following ten (10) days written notice, has the right to change any payment term (including imposing a requirement of cash payment upon delivery) or limit total credit if "(i) McKesson concludes there has been a

**McKesson Corporation**
One Post Street
San Francisco, CA 94104

www.mckesson.com

McKesson-0001304

**McKESSON**

...........................................................................................................................................................

material adverse change in A&P's financial condition or an unsatisfactory payment performance; or (ii) A&P ceases to meet McKesson's credit requirements."

As McKesson explained in its letter of July 2, 2015, McKesson determined that there have been material adverse changes in A&P's financial condition and that A&P ceases to meet McKesson's credit requirements. Based upon the increased risks to McKesson due to the adverse material change in A&P's financial situation and the fact that A&P has ceased to meet McKesson's credit requirements, McKesson determined that effective on and after July 13, 2015, as to all future purchases, A&P's credit terms are reduced to one (1) day sales outstanding ("**DSO**") with a maximum daily credit limit of $1 million. A&P was advised of these changed credit terms in the July 2, 2015 letter.

Following the July 2, 2015 letter, McKesson and A&P have spoken about these credit terms and the resulting logistical issues from these terms. To address these issues, A&P's credit terms are increased to two (2) DSO with a maximum daily credit limit of $2 million. These revised credit terms are effective immediately.

McKesson reserves all of the rights and remedies provided to it under the Supply Agreement, and under any and all other agreements between the parties, as well as all rights and remedies accorded McKesson under applicable law and equity. All such rights and remedies are specifically reserved and may not be waived or modified in any respect except only in a writing signed by an authorized representative of McKesson. Among the rights reserved is the right to modify these credit terms and for adequate assurance of performance.

Please feel free to contact the undersigned if you have any questions or comments.

McKesson Corporation

*Jenifer Towsley / mh with permission*

Jenifer Towsley
Vice President, Credit and Financial Services
US Pharmaceutical

cc:  Britt Vitalone
     Meg Mitchell
     Jeffrey Garfinkle, Esq.

McKesson-0001305

# EXHIBIT R

| | |
|---|---|
| **From**: | Page, Robin [PageR@APTEA.com] |
| **Sent**: | 7/2/2015 7:33:15 PM |
| **To**: | Page, Robin [PageR@APTEA.com]; Carnahan, Tim [carnahat@APTEA.com]; Kanterman, Eric [KANTERME@APTEA.com]; Mitchell, Meg [meg.mitchell@mckesson.com] |
| **Subject**: | McKesson Call |
| **Location**: | 8667985160;2015718324# or in Eric's office |
| **Start**: | 7/8/2015 1:00:00 PM |
| **End**: | 7/8/2015 1:30:00 PM |
| **Show Time As**: | Busy |
| **Recurrence**: | (none) |

Agenda:
Status of A&P Finances and McKesson's concerns on the contract.
How the above may impact the renewal

McKesson-0001287

# EXHIBIT S

| | |
|---|---|
| **From:** | Mitchell, Meg [/O=MCKESSON/OU=NORTH AMERICA/CN=RECIPIENTS/CN=ENPLMP7] |
| **Sent:** | 7/2/2015 9:50:07 PM |
| **To:** | Ball, Jeffrey [ballj@APTEA.com] |
| **CC:** | Kanterman, Eric [KANTERME@APTEA.com]; Page, Robin [PageR@APTEA.com]; Thompson, Sam [sam.thompson@mckesson.com]; Towsley, Jenifer [jenifer.towsley@mckesson.com] |
| **Subject:** | MOU Response |

Jeff,

Per my voice message, I don't want to assume anything so I wanted to let you know that McKesson issued an official "Change in Payment Terms" to A&P this afternoon due to the current financial concerns.  The notice was sent to Eric Kanterman, Tim Carnahan, Chris McGarry and Robin Page.

Unfortunately, until we come to an agreement on the current contractual obligations and commitments, we will not be able to move forward with renewal discussions.  I have a meeting scheduled this Wednesday with Robin, Tim and Eric to discuss "next steps".  I'm hopeful we will be able to resolve these financial matters quickly and move towards a successful renewal.

As always, please feel free to call me to discuss any of your concerns.

Appreciative,

Meg Mitchell
Director, Strategic Solutions
McKesson Retail National Accounts
P-508.434.0318   c-508.735.4345

McKesson-0001426