**GRIFFIN HAMERSKY** LLP
ATTORNEYS AT LAW

March 31, 2020

<u>**Via ECF and E-mail**</u>

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

    Re:  **The Official Committee of Unsecured Creditors v. McKesson Corp. (Adv. Pro. 17-08264 (RDD));**
        **The Official Committee of Unsecured Creditors v. McKesson Pharmacy Systems LLC (Adv. Pro. 17-08265 (RDD)); and**
        **The Official Committee of Unsecured Creditors v. McKesson Specialty Care Distribution Corp. (Adv. Pro. 17-08266 (RDD))**

Dear Judge Drain:

  On behalf of Plaintiff, the Official Committee of Unsecured Creditors of The Great Atlantic & Pacific Tea Company, Inc., we write in opposition to the request for a discovery conference that the above-referenced defendants ("McKesson") filed just before 10 p.m. last night.

  McKesson's request should be denied because it violates this Court's rules and is premised on two demonstrably incorrect statements. McKesson did not "tr[y] to resolve discovery issues" as its letter states, or "make a good faith effort to resolve the dispute" as this Court's rules require. In fact, as set forth below and in Exhibit A to this letter, McKesson refused to do so.

  McKesson's claim that Plaintiff's counsel is somehow violating an agreement made with Plaintiff's former counsel is equally incorrect. McKesson provides no written evidence of *any* agreement to limit discovery. Instead, it relies on a statement of former counsel made before the parties' mediation or McKesson's summary judgment motion, and that was plainly *not* a binding agreement. Also, in an email at 9:27 a.m. on March 20, 2020, McKesson incorrectly informed the Court that Plaintiff had agreed to limit discovery before August 2018. That claim is disproved by Exhibit B.

  For these reasons, the Court should summarily deny McKesson's unjustified request for a 90-day "abatement" of these proceedings. McKesson has refused to discuss any lesser "abatement" as the Court directed, and its all-or-nothing request should therefore be denied. In the alternative, and at a minimum, McKesson should be directed to answer the questions annexed as Exhibit C to this letter to the best of McKesson's knowledge, information and belief within one week, and then promptly to negotiate in good faith concerning search terms and what documents it can produce without undue hardship. Until then, any discovery conference would be premature. This alternative, frankly, would prejudice Plaintiff – McKesson's refusal to negotiate will have gained it a long, unfair delay. However, it would, at least, move discovery forward.



I.   McKesson's Refusal to Confer Concerning Discovery Issues

On March 20, 2020, this Court emailed the parties that it expected them to "speak … to narrow the issues" before the Court scheduled a telephonic conference to consider McKesson's abatement request.  (*See* email from Court, 3/20/2020, annexed hereto as Exhibit A, Email 3.)

Nevertheless, McKesson refused to schedule a time for the parties to speak – though it promised Plaintiff and the Court that it would do so on March 20, 2020, and Plaintiff followed up with emailed scheduling requests on March 24, 25 and 26, 2020.  (*See* Exhibit A, Emails 4, 5, 7, 10, 11.)

Further, McKesson refused to provide crucial information which, as Plaintiff emailed on March 24, is necessary to enable the parties to negotiate productively concerning document production.  The requested information is necessary to determine whether McKesson would incur undue hardship from producing documents – even though it has already turned over documents to a litigation support firm – and whether McKesson has imposed a "litigation hold" that would protect Plaintiff from prejudice.  By email on March 24 and 26, 2020, Plaintiff asked:

1. ***What types of documents does McKesson have?***  McKesson has only produced emails, email attachments, and allegedly certain accounting files. Accordingly, Plaintiff asked whether McKesson prepared memoranda or reports about A&P, retains central files in addition to individual employees' files, and whether it records telephone calls.  McKesson refused to respond, saying instead that "[t]he next step is to bring all of this to Judge Drain's attention."  (*See* Exhibit A, Email 12.)[1]

2. ***"In what format has the imaged information been stored?" "What searches … have been performed so far?"*** McKesson refused to respond to the first question and provided information too vague to be useful in response to the second.  (*See* Exhibit A, Emails 7, 12.)

3. ***"What types of searches is McKesson capable of performing on the stored data?"***  Because McKesson has turned over relevant documents to the Consilio litigation support firm, Plaintiff also asked, "Please ask Consilio to inform us what its search capabilities are so that we can propose appropriate search terms as the Court suggested."  McKesson refused to respond.  (*See* Exhibit A, Emails 7, 11, 12.)

4. ***Given that McKesson identified the wrong person as having "handled the day-to-day aspects of the credit relationship with A&P" and the wrong personnel as subject to a "litigation hold," can McKesson provide a clarification***?  McKesson emailed that it has imaged four computers, has preserved a fifth computer, and has placed a "litigation hold" on

---

[1] All quotations in the numbered paragraphs, and the facts concerning McKesson's refusal to negotiate, are in the annexed Exhibit A, which includes all of the parties' email traffic from my email at 1:24 p.m. on Friday, March 20 to date.  Exhibit A was prepared for the Court's convenience as a good faith effort to include all of the text of the parties' emails without duplications and extraneous matter such as headings and signature blocks.

2

twelve individuals' documents. However, McKesson's document production did not include any documents from, to or mentioning six of the individuals whose documents were placed on litigation hold and one of the four persons whose computers were imaged. Plaintiff listed eighteen personnel who actually were identified as important witnesses in McKesson's documents and requested a clarification. McKesson refused. (*See* Exhibit A, Emails 11, 12.)

5. ***Is Plaintiff correct that McKesson produced no documents concerning defendant McKesson Pharmacy Systems? Also, who were its key personnel, and are their documents subject to a "litigation hold"?*** McKesson did not identify any Pharmacy Systems personnel or state that any of its documents were on hold. It responded only that "No document production requests were propounded on McKesson Specialty Distribution or McKesson Pharmacy Systems." However, Plaintiff's request for documents from McKesson Corp. on March 13, 2018 calls for documents concerning payments to and communications with "you," defined to include "any entities affiliated with, or owned or controlled, in whole or in part, by" Defendant McKesson Corporation. Plaintiff has not identified any timely objection to this definition or the scope of Plaintiff's document request. (*See* Exhibit A, Emails 11, 12.)

II. McKesson's Pattern of Delay and False Chronology

McKesson's refusal to cooperate in discovery is part of a long-established pattern, as set forth above, in Exhibit A, Email 1, and elsewhere. To deflect the Court's attention from its refusal to negotiate during the past ten days, and to conceal its pattern of delay, McKesson has provided the Court with a false chronology. That chronology is both irrelevant because it ends before the Court directed the parties to confer, and inaccurate because it is contradicted by the record.

For example, McKesson's chronology states that Plaintiff's first document request was served in "Spring 2018," though it was actually dated March 13, 2018, and that "McKesson timely produced approximately 1,500 pages" in August 2018 – five months later – though Plaintiff's counsel complained in a letter dated October 12, 2018 of a "long unexcused delay in production." That letter, which is annexed as Exhibit B and was sent to McKesson as an attachment to Exhibit A, Email 1, states:

> On March [13], 2018, I served you with a document request in the above-referenced matter. On June 27, 2018, following a long unexcused delay in production, I advised you that I would accept a limited production without prejudice to my right to later seek full production. That limited production still did not arrive for nearly another two months… I now insist upon the full document production by October 26, 2018.

McKesson's chronology is also misleading in other ways, including its summary of the open factual disputes. For example, the summary omits disputes concerning the amount McKesson delivered to A&P just before bankruptcy, A&P's right to recover from McKesson Pharmacy Systems and Specialty Care, A&P's entitlement to rebates and credits and whether, as McKesson's documents indicate, A&P's payments to McKesson Corp. were less regular than McKesson claims.

3

420 Lexington Avenue, 4th Floor, New York, NY 10170
Tel: 646-998-5580 | Fax: 646-998-8284 | info@grifflegal.com | www.grifflegal.com

III.     McKesson, Not Plaintiff, Seeks to Renege on an Agreement Concerning Discovery

McKesson accuses Plaintiff of "reneging" on "prior agreements between counsel" and states that Plaintiff should be "constrained" by prior agreements.  Yet McKesson does not and cannot identify any agreement in which Plaintiff agreed to limit its discovery.  As noted above, Exhibit B contradicts McKesson's account of a purported agreement to limit McKesson's document production before August 2018.  Now McKesson claims that a statement of former counsel in November 2018 – before mediation and McKesson's summary judgment motion further developed the issues in dispute – should constrain discovery.  Yet that statement was *not* an agreement, and McKesson did not rely on it.

In any event, in a conference call on January 31, 2020, the parties did reach an agreement concerning discovery – they agreed that bilateral discovery should go forward, and accordingly, about three weeks later, the parties submitted an agreed scheduling order.  Further, Plaintiff provided consideration for that agreement.  At the conclusion of the Court's summary judgment hearing on September 16, 2019, McKesson informed the Court that it required further discovery, but Plaintiff's counsel countered that document discovery was complete.  The Court directed the parties to work things out and to determine whether McKesson had waived any further discovery.  After Plaintiff's current counsel took over, we determined to agree to bilateral document discovery rather than to seek to preclude further discovery by McKesson, as former counsel had suggested he would do.  (*See* Transcript of September 16, 2019, Adv. Pro. 08264, at 54-59.)  Now McKesson is seeking to renege.

IV.     A Discovery Conference Without Answers to Plaintiff's Questions Would Be Premature

McKesson asks the Court to schedule a conference to resolve "disputes surrounding" Plaintiff's document request.  Yet McKesson has not previously identified any specific discovery disputes, and it has never asked Plaintiff to limit the document requests it lists in its Exhibit 3.  Instead, McKesson has insisted on a non-negotiable, 90-day "abatement."

The real question is not how many categories of documents Plaintiff has requested, or even whether any particular request seems overbroad, but whether searching for the documents Plaintiff has requested would impose an undue burden.  McKesson has refused to discuss search terms or to provide Plaintiff with the most basic information necessary to propose search terms:  What documents do you have, in what form do you have them, how can you search them, and how can we avoid duplicating the searches you did before.  Those are the questions Plaintiff asked McKesson on March 24 and 26, and those are the questions it refused to answer.  These questions, accordingly, are repeated somewhat more specifically in Exhibit C so that the Court can determine whether they have been properly answered.  Plaintiff's additional questions primarily concern whether McKesson implemented a proper litigation hold to protect Plaintiff from prejudice, because it appears that it did not do so.

A just resolution of these proceedings on the merits requires that we restart discovery now.  McKesson's document production is far from complete:  McKesson admits that it did not provide documents relevant to two of Plaintiff's adversary proceedings; it has only produced emails,

4

attachments, and accounting files (which Plaintiff's accountants advise are inaccurate and incomplete); its production to date appears to omit internal documents and communications concerning its efforts to pressure A&P into paying McKesson preferentially; it produced no documents concerning the parties' post-petition agreement to reduce McKesson's 503(b)(9) claim by $1 million; the documents produced do not allow A&P to compute the sums it is owed for rebates and returns; there is an approximately $1 million dispute about the value of the goods McKesson delivered to A&P just before bankruptcy, and so on. Tens of millions of dollars are at stake in these proceedings, yet McKesson has produced less than 1,500 pages plus some attachments.

McKesson has failed to comply with this Court's direction that the parties confer to narrow the issues, and McKesson has failed to provide any specific reason why it cannot make a full and timely document production. Given these facts, its misrepresentations, and its pattern of delay, McKesson's request for an unjustified 90-day "abatement" of these proceedings should be summarily denied. At a minimum, McKesson should be required to provide the information requested in Exhibit C as suggested above, and to negotiate in good faith concerning search terms and other discovery issues, as a condition of any discovery conference.

Respectfully,

/s/ Richard Milin

Richard K. Milin

cc: Jeffrey K. Garfinkle, Esq.
    Tracy L. Klestadt, Esq.

5

420 Lexington Avenue, 4th Floor, New York, NY 10170
Tel: 646-998-5580  |  Fax: 646-998-8284  |  info@grifflegal.com  |  www.grifflegal.com

# EXHIBIT A

**Email 1**: 3/20/20 1:24 p.m. from R. Milin:

Your Honor:

We plan to respond to Your Honor's question, which will require some hours' work, in further detail later today. For now, just a few points.

***First, Mr. Garfinkle's narration of the parties' negotiations is contradicted by the record***. Former counsel wrote to McKesson on October 18, 2018 -- two months after McKesson's second production in August 2018 -- to express dissatisfaction about the lateness and incompleteness of McKesson's production. That letter, which I attach, contradicts Mr. Garfinkle's account of the parties' agreement, saying that Plaintiff only agreed to accept a limited production *without prejudice*. It concludes, "I insist upon the full document production by October 26, 2018." I understand from former counsel that Mr. Garfinkle did not respond to this letter, and his email to Court does not mention any further document production. I myself have reviewed all of the documents produced to date, and believe McKesson's production to be incomplete in important ways.

***Second, McKesson has consistently delayed the progress of these adversary proceedings***, as the attached letter records and more recent incidents have confirmed.

***Third, McKesson again provides no specific reasons to justify a lengthy delay of these actions***. Mr. Garfinkle states that the key computers have been "imaged" -- which suggests that no substantial work would be required by McKesson personnel to produce the imaged documents -- and there is no reason to conclude that Mr. Garfinkle himself would be required to review every page. It is therefore by no means clear that no work on discovery at all can be done for another 90 days. Also, there is no need to exclude documents previously produced if McKesson considers that burdensome -- there were only 1474 pages -- and they were produced in non-searchable PDF format, whereas McKesson appears to have searchable, imaged copies.

McKesson's counsel should be willing to provide us with the facts concerning its prior document production and any objections to our document requests without involving the Court. We certainly are reasonable, and we are willing to discuss and narrow any unduly burdensome requests. McKesson, however, asks the Court to shut down the entire litigation without providing genuine cause to do so. That request should be denied.

Respectfully,

Richard Milin

**Email 2**: 3/20/20 2:33 p.m. from T. Klestadt:

Your Honor:

Rather than engage in a further e-mail exchange, we respectfully request a telephone conference with the Court at the Court's convenience.

Tracy Klestadt

**Email 3**: 3/20/20 2:40 p.m. from the Court:

Fine, although I expect that the attorneys most directly involved in this discovery matter will speak to each other in the meantime to narrow the issues. Please arrange the call through Ms. Li.

**Email 4**: 3/20/20 2:50 p.m. from J. Garfinkle:

Dear Judge Drain:

Early next week, we will arrange a call with plaintiff's counsel. If, after we have spoken there is further need for your involvement, we will arrange a scheduling conference with the Court.

**Email 5**: 3/20/20 2:54 from J. Garfinkle:

Richard:

Today and over the next several days, I am addressing multiple emergency matters. They include the State of California's proposed leasing of several hospitals in the Verity Health system (which is in bankruptcy).

I will let you know my windows of availability over the weekend.

**Email 6**: 3/20/20 2:56 p.m. from R. Milin:

Ok, thanks.

**Email 7**: 3/24/20 12:57 p.m. from R. Milin:

Jeff and Tracy:

　Please send us your "windows of availability" for a call, which you told us you would send over the weekend. We understand that you are busy, but we would like to get something on the calendar.
　In the meantime, we request that you provide us by email with the following information before we speak so that our call can be shorter and more productive:

2

1. What documents has McKesson preserved to date?

   a. You stated McKesson has imaged several computers, "including" those of Towsley, Mitchell, Iragavarapu, Corcoran. What other computers did McKesson image?

   b. Does McKesson maintain credit files or other central files in addition to whatever documents have been preserved on individual, imaged computers? If so, have relevant files been imaged and preserved?

   c. Does McKesson sometimes prepare memoranda or reports about the credit status of its customers, and did anyone ever prepare a memorandum or report about A&P? To date, McKesson has produced only emails and their attachments.

   d. Does McKesson ever create or retain recordings of telephone calls or voice mails? If so, have relevant recordings been preserved?

   e. Can McKesson generate an accounting file which includes all and only payments, credits, returns and other transactions between A&P and McKesson? An accounting file would present no privilege or relevance issues, and therefore would require very little client or attorney time to produce.

2. Has McKesson used an outside firm to store, preserve, search or otherwise process the information that McKesson preserved with respect to this matter?

3. In what format has the imaged information been stored? For example, are the emails stored in Outlook format?

4. What searches on the preserved information have been performed so far?

5. What types of searches is McKesson capable of performing on the stored data? Is Boolean searching permitted? What "operators" -- such as and, or, and not -- can be used in drafting searches?

6. Can you please send a copy of the privilege log you told the Court you produced in this matter? Unfortunately, we and former counsel have been unable to locate McKesson's privilege log to date. Perhaps you sent it as an email attachment and it did not make its way to the file.

The foregoing basic information will assist us significantly in formulating search terms and narrowing our document requests within reasonable guidelines as suggested by Judge Drain. Accordingly, we request that you send us this information as soon as you reasonably can. We would like to confer, and attempt to reach agreement, this week. And the week is half-way through.

Thanks,
Richard

3

**Email 8**: 3/24/20 2:52 p.m. from T. Klestadt

Richard:

Jeff has contacted the appropriate individuals at McKesson and we will get back to you as soon as possible.

Tracy

**Email 9**: 3/25/20 2:46 p.m. from J. Garfinkle:

Richard:

While I can answer some of your questions now, we have posed others to McKesson.

As to the imaged computers, here is the list of individuals whose computers were imaged (which, in part, corrects the partial list provided to the Court last week).

    i)      Jenifer Towsley;
    ii)     Marie Leou;
    iii)    Jeffrey Biskadorous; and
    iv)    Meg Mitchell.

In my e-mail to the court, I indicated that Lalitha Iragavarapu's computer had been imaged. That was incorrect. While she handled some aspects of the credit relationship, Ms. Iragavarapu's primary involvement with the A&P pharmaceutical account occurred after commencement of the second bankruptcy case. Rather, from 2013 and 2015, Marie Leou and Jeffrey Biskadorous handled the day-to-day aspects of the credit relationship with A&P. Their computers were imaged. Ms. Iragavarapu is included within the broader group of McKesson credit, finance, and business employees subject to a continuing litigation hold.

As to Dave Corcoran, the retired head of credit for McKesson Specialty Distribution, his computer has been preserved and is available for imaging and search.

In addition to the five individuals listed above, a litigation hold was placed on the following additional individuals:

    i)      Pamela Craik;
    ii)     Albert Franco;
    iii)    Lalitha Iragavarapu;
    iv)    Abby McCray;
    v)     Sean Murphy;
    vi)    Shirley Yu; and
    vii)   Ben Zimmerman.

As a result of this litigation hold, these individuals' documents/e-mails related to A&P have been preserved. The litigation hold remains in place.

McKesson uses an outside vendor (Consilio) as the custodian for the imaged computers and to conduct searches of the imaged computers.

In response to the first document production propounded on McKesson (that contained six categories of requested documents) and using the agreed upon time frame (January 1, 2015 through July 18, 2015), McKesson retrieved responsive documents. Word searches were conducted using the following terms "A P", "A&P", "Aptea.com", and "Atlantic w/1 Pacific."

On August 17, 2018, my office sent a letter (which attached the privilege log to Mr. Michaelson). A copy of that letter is attached. As indicated in this letter, 1,427 pages of documents responsive were available to be downloaded from Consolio's website.

One important point to emphasize. The search terms "A P" and "A&P" were very problematic, in that the search of these term picks up many documents with the term "AP," the common shorthand for "accounts payable." In the search of these two terms, many documents were located that had no relationship whatsoever to the Debtor.

In response to question 1.e., you are mistaken about the amount of time and effort required to produce the accounting records of the entire relationship between McKesson and A&P. Producing McKesson's accounting records for its entire relationship with A&P (beyond the one year of accounting data already produced) would be a monumental undertaking. As to just the one year of accounting data already produced, over 200,000 individual accounting transactions needed to be retrieved. Just during the 90-day preference period, there were nearly 50,000 invoices and other transactions (such as credits). McKesson's accounting software system (SAP) had great difficulty aggregating this massive data set. This retrieval process required many, many hours of McKesson employees. After resolving the data aggregation problems, McKesson downloaded the prior year to bankruptcy raw data. This data was split into two data files—one for the preference period and the other for the nine month pre-preference period. McKesson produced those data files. These two data files covered the entire year leading up to the commencement of A&P's bankruptcy cases on July 19, 2015 and itemized about 200,000 transaction entries (again, for just one year). Were they to be printed, these data files would be about ten thousand pages. Are you asking for those data files to be produced again?

Having said all of this, you should re-read what your prior counsel told Judge Drain on November 18, 2018 (transcript attached). At pages 22 through 23 of the 11/16/18 transcript, in response to Judge Drain's direct question about whether document production was "done," Plaintiff's prior counsel stated:

> MR. MICHAELSON: [I]t will be helpful, Your Honor, if I describe what is involved in the claim. There are basically three elements to the claim. One is ordinary course of -- from the defense point of view, there is a claim of ordinary course of business. There is a contemporaneous exchange defense. And there is a new value defense.

5

> The contemporaneous -- the ordinary course defense and the new value defense are really just a matter of looking at documents which are available to both parties and have always been available to both parties. You look at the invoices, you look at it, it's clear. While there are a lot of documents and they all haven't been produced, the simple fact is that it's easy enough for the parties to figure out.
>
> The thorniest issue here is the contemporaneous exchange defense. All documentation that we as the Plaintiff need have been produced. The focus of the depositions would be on that defense. Now, I don't believe I'm going to learn anything in those depositions that are not already in those documents. This would be a way of validating that information.

Based on what Mr. Michaelson told Judge Drain on November 16, 2018 , the nearly 1,500 pages of produced documents, and the massive amount of accounting data transmitted by McKesson, the second document production against McKesson—containing 68 categories of documents—is nothing short of litigation harassment.

In light of the foregoing, we ask that you reconsider your second document request and narrow its scope to what is truly needed. And we again ask you to consent to a 90 day abatement of deadlines in these lawsuits as the national emergency is getting more widespread.

**Email 10**: 3/25/20 10:32 p.m. from R. Milin:

Jeff:

Thanks for this information, and we look forward to the further information you have promised. We expect to send comments on the information in your email tomorrow.

Please also let us know when you expect to have the remaining information you can get from McKesson in relatively short order and when you can be available for the call we have been emailing about.

Thanks,

Richard


**Email 11**: 3/26/20 4:31 p.m. from R. Milin

Jeff and Tracy:

Thank you for the information below. We understand your request for an "abatement" but respectfully disagree. We are trying to develop a plan that reasonably balances both parties' interests, and we would like to begin our conversation with you as soon as you are free. In that connection:

1. We are puzzled by your lists of the McKesson personnel whose computers were imaged and who were instructed about the "litigation hold" for our proceedings. Can you please verify based on the following comments:

  -- Your email says that Jeffrey Biskadorous's computer was imaged and that he "handled the day-to-day aspects of the credit relationship with A&P." However, no documents were produced even mentioning Mr. Biskadouros. Can you please explain?
  -- Your email says that Lalitha Iragavarapu's computer was not imaged as you had previously advised because "Ms. Iragavarapu's primary involvement with the A&P pharmaceutical account occurred after commencement of the second bankruptcy case." However, that appears to be incorrect. McKesson has produced several important emails to or from Ms. Iragavarapu. Fortunately, you do say that she was included in the "litigation hold." Accordingly, please double-check whether her computer was imaged, and preserve it if it was not imaged. Thank you for informing us that Mr. Corcoran's computer was preserved.
  -- Ms. Leou is mentioned in the documents McKesson produced only as a recipient of less than ten emails, I believe, and she did not send any that have been produced. It therefore makes sense to reconfirm whether her computer was imaged as you informed us.
  -- Your email says that "a litigation hold was placed on the following individuals": Craik, Franco, Iragavarapu, McCray, Murphy, Yu and Zimmerman. However, I believe that no documents have been produced from, to or mentioning *any* of these people except Iragavarapu. Can you please explain? Does your list actually reflect the list of those who were placed on litigation hold? Should we expect to receive documents reflecting their role in the relevant events?
  -- Your list of people placed on litigation hold omits the vast majority of the people who, based on McKesson's document production, were most important to our adversary proceedings. Those people, based on a quick review of the non-searchable documents McKesson has produced, appear to be, not only Towsley, Mitchell and Iragavarapu, but also: Voirin, Vitalone, Workman, Evans, Baker, Willaman, Lavin, Jefferies, Tsai, Sharma, Thompson, Thomas, Badri, Washburn, Gallagher, Lau, Dickey and Hughes among others. We note that Vitalone is a "cc:" on the July 2 letter notifying A&P that McKesson is changing its credit terms to one-day, and on its July 15 follow up, but is not included in your list of individuals on litigation hold or whose computers have been imaged. Can you please inform us whether all of the listed individuals were included in the litigation hold and whether any of their computers were imaged? If not, can you take appropriate remedial action?

2. Please ask Consilio to inform us what its search capabilities are so that we can propose appropriate search terms as the Court suggested. Consilio's web site suggests that it has very sophisticated capabilities. We will take on board your concern about "AP" bringing up documents about accounts payable. Also, your email indicates that "w/" or "within a number of words of" format can be used, which is helpful, particularly in excluding "accounts payable" documents. We look forward to receiving further information of that type.

3. We are not exactly sure what you are advising us in response to our question, "Can McKesson generate an accounting file which includes all and only payments, credits, returns and other transactions between A&P and McKesson?" You seem to say that there are two electronic files you could produce to us, and which you believe you have produced to us. In my experience,

7

producing electronic files of any size is not difficult. Accordingly, please do produce those files, or reactivate a link so that we can retrieve them. I understand you to say that generating the files took a great deal of effort, which we appreciate, but I think providing them to us should be relatively straightforward. We are willing to pay for a flash drive or external hard drive if you are certain that we are asking for something you already provided.

4. We have not located any documents that McKesson produced about McKesson Pharmacy Systems, and cannot identify which individuals at McKesson Pharmacy dealt with A&P. Please let us know, so we can both ensure a litigation hold is in place and suggest searches.

5. FYI, for the sake of your litigation hold, a limited number of post-bankruptcy documents is centrally relevant to our claims. These include: (a) documents about the $1 million that should be deducted McKesson's 503(b)(9) claim; (b) documents about payments still owed to A&P for pre-bankruptcy credits and returns; and (c) any documents prepared during the 3 months after A&P's bankruptcy that discuss A&P.

6. Presumably because you need info from McKesson, you did not yet answer our questions 1b, 1c, 1d, 3, 4 or 5. We do appreciate your sending along the privilege log in response to question 6.

Thanks for getting back to us relatively promptly. We look forward to receiving more information and to scheduling a call tomorrow or, if necessary, early next week.

Richard

**Email 12**: 3/27/20 12:28 p.m. from J. Garfinkle:

Richard:

Here are the specific categories of documents requested by Plaintiff in the first document production request propounded on McKesson Corporation:

Request for Production No. 1:

All documents that you intend to offer into evidence at the trial in this matter.

Request for Production No. 2:

All documents that reflect any direct or indirect transfers of money or property by the Debtor or any other business operated or owned by the Debtor, to you, on your behalf, or for your benefit, at any time since July 1, 2009.

Request for Production No. 3:

All documents that reflect any direct or indirect transfers of money or property by you to the Debtor or any other business operated or owned by the Debtor, at any time since July 1, 2009.

8

Request for Production No. 4:

All documents pertaining to or reflecting in any way any contracts, engagement letters, or other agreements between you and the Debtor, or any other business owned or operated by the Debtor, at any time since July 1, 2009.

Request for Production No. 5:

All documents reflecting communications between you and the Debtor, or any other business operated or owned by the Debtor, at any time since July 1, 2009.

Request for Production No. 6:

Any documents relating in any way to the Debtor's solvency at the time when any of the transfers referenced in paragraphs 2 and 3, above, were made.

Per agreement with Plaintiff's prior counsel, we agreed to limit the accounting records to one year before the bankruptcy case. We also agreed to limit Request No. 5 (communications between McKesson and the Debtor) to the period January 1, 2015 through July 18, 2015 and that those communications would be limited to credit matters. As to Request No. 4, Plaintiff's prior counsel and I agreed that McKesson would only need to produce the supply agreement and documents related to the reduction in credit terms that occurred during the Summer of 2015. And, as to Request Nos. 2 and 5, Plaintiff's prior counsel and I agreed that documents and communications related to day-to-day product orders, product deliveries, invoices, returns, product exchanges, rebates, and the related paperwork for these items would not need to be produced.

To be clear, McKesson produced all of the non-privileged documents requested in the 6 categories of documents, as limited by the agreement between me and Plaintiff's prior counsel.

No document production requests were propounded on McKesson Specialty Distribution or McKesson Pharmacy Systems.

If you want another copy of the accounting data already produced, just ask.

Again, I direct you to what prior counsel told Judge Drain on November 16, 2018 about documents related to the McKesson Corp. lawsuit. He told Judge Drain that Plaintiff had all of the necessary documents. You opted to not respond.

The next step is to bring all of this to Judge Drain's attention, along with our request for a 3 month abatement.

9

# **EXHIBIT B**



**ROBERT N. MICHAELSON**

Direct 646.453.7853
Cell 917.992.5006
Fax 212.913.9642
Email rmichaelson@r3mlaw.com

October 12, 2018

Jeffrey K. Garfinkle
Scott Smith
BUCHALTER Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612

Re: **The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC. ,*et al.* v. McKesson Corporation, Adv. Proc. No.: 17-08264 (RDD)**

Gentlemen:

On March 3, 2018, I served you with a document request in the above-referenced matter. On June 27, 2018, following a long unexcused delay in production, I advised you that I would accept a limited production without prejudice to my right to later seek full production. That limited production still did not arrive for nearly another two months.

The reason for accepting a limited production was to see if it was possible to focus on a narrow set of facts pertaining to a relatively small portion of the prayer for relief in A&P's complaint in the anticipation that this would facilitate good faith settlement discussions. Regrettably, I was wrong. All of my repeated and documented efforts to engage you in such discussions through direct client negotiation or third party mediation were ignored or rejected. Accordingly, I now insist upon the full document production by October 26, 2018.

Very truly yours,

/s/ *Robert N. Michaelson*

Robert N. Michaelson

cc: Tracy Klestadt

**Exhibit C**

**Discovery-Related Questions for the McKesson Defendants**

**Note**: "McKesson," "document" and other terms used below are defined as in Plaintiff's Second Request for Production of Documents dated March 12, 2020, the definitions and instructions of which are incorporated here by reference.  The questions below are directed to all three McKesson defendants.

1. *What types of documents does McKesson have?*  McKesson has only produced emails, attachments, and perhaps two accounting files.  Accordingly:

    a. Does McKesson prepare memoranda, reports or other non-email documents concerning the credit status of its customers, and did it do so about A&P?

    b. Did McKesson prepare any memoranda, reports, analyses or other non-email documents concerning the renewal or possible renewal of any contract with A&P?

    c. Does McKesson retain central files in addition to individual employees' files and, if so, did it do so for A&P?

    d. Does McKesson ever record telephone calls or retain voice mails and, if it did so, did it record any calls or voice mails concerning A&P?

    e. Does McKesson have any documents which are not in electronic form and which are potentially relevant to the claims or defenses in these proceedings or responsive to Plaintiff's document requests?

    f. If the answer to any of questions 1(a) through 1(e) is in the affirmative, has McKesson preserved all of those documents to the extent they are potentially relevant to the claims or defenses in these proceedings or responsive to Plaintiff's document requests?

2. *In what format has the information McKesson imaged for the A&P adversary proceedings been stored?*  McKesson has only produced non-searchable PDFs of the emails it produced.

    a. Does McKesson retain the emails it produced (or may produce) in Outlook or other searchable form?  If so, in what form?

    b. Apart from PDF and Excel, in what formats are McKesson's potentially responsive documents preserved or accessible?

3. *What searches has McKesson performed so far and on what documents?*

    a. To the extent that McKesson seeks to avoid duplicative searches, what searches on potentially responsive documents has it performed so far?  If this question is difficult

to answer and may be of limited importance because McKesson's document production will be subjected to a "de-duplication" procedure, please provide that information instead. It appears that McKesson's initial production was subjected to unusually rigorous "de-duplication."

4. ***What types of searches is McKesson capable of performing on documents that may be responsive to Plaintiff's document requests?*** To date, McKesson has only indicated that searches may be performed using "and," "or" and "within a certain number of words."

    a. What "operators" -- such as "and," "or," and "within" -- can be used in drafting searches? Can "not" be used to exclude certain search terms? Can parentheses be used, and how are they interpreted by the search engine?

    b. Who can we contact at the Consilio litigation support firm, to which McKesson turned over computers and relevant documents, to learn about its search capabilities?

    c. What kind of "de-duping" did McKesson perform on its document production, and what kind of "de-duping" can it perform? Some relevant emails appear only in the early portions of lengthy email chains that McKesson produced.

5. ***Can McKesson generate an accounting file which includes all and only payments, credits, returns and other transactions between A&P and McKesson? Subject to any undue burden, when can McKesson produce the file? Also, how were the accounting files generated that McKesson produced to date***? Although McKesson has informed Plaintiff by email that it previously produced two accounting files, the only such file Plaintiff has identified was discussed in the Declaration of Lalitha Igaravarapu dated April 30, 2019 which accompanied McKesson's summary judgment papers. Ms. Igaravarapu describes the file she prepared as a "summary," not as a complete record, and Plaintiff's accounting personnel have previously described it – under oath – as having "inconsistencies," "discrepancies" and "deficiencies." (*See* Declaration of Dawn DeVito dated September 9, 2019, Adv. Pro. 17-08264 (RDD), Dkt. No. 36.) We have also been informed that, among other things, it lacks information related to the application of A&P payments to invoices and information related to credit memos. (*Id.*) Nevertheless, in addition to the questions above, Plaintiff reiterates its request, emailed on March 26, 2020 in the paragraph numbered 3, for the accounting files McKesson referred to in its emails to Plaintiff's counsel.

6. ***Given that McKesson appears to have identified the wrong person as having "handled the day-to-day aspects of the credit relationship with A&P" and the wrong personnel as subject to a "litigation hold," can McKesson provide a clarification***? Please provide the information requested in the paragraph numbered 1 and its five sub-paragraphs in Plaintiff's counsel's email to McKesson's counsel on March 26, 2020. That email is reprinted in Exhibit A as Email 11.

2

7. ***When can McKesson produce the documents called for in Plaintiff's first document request concerning defendants McKesson Pharmacy Systems and McKesson Specialties?*** McKesson emailed Plaintiff's counsel on March 27, 2020 that "No document production requests were propounded on McKesson Specialty Distribution or McKesson Pharmacy Systems." However, Plaintiff's request for documents from McKesson Corp. on March 13, 2018 calls for documents concerning payments to and communications with "you," defined to include "any entities affiliated with, or owned or controlled, in whole or in part, by" Defendant McKesson Corporation. That includes, Plaintiff understands, McKesson Pharmacy Systems and McKesson Specialties.

8. ***Have the documents concerning A&P in the possession, custody or control of defendants McKesson Pharmacy Systems or McKesson Specialties, or their officers or employees, been subject to a "litigation hold"? When did the litigation hold begin?***

9. ***Are the documents dated or created after A&P's bankruptcy filing that are relevant to these proceedings subject to a litigation hold? When did the litigation hold begin?*** These documents include: (a) documents about the $1 million that should be deducted McKesson's 503(b)(9) claim; (b) documents about payments still owed to A&P for pre-bankruptcy credits and returns; and (c) any documents prepared during the 3 months after A&P's bankruptcy that discuss A&P.

To: Jeffrey K. Garfinkle, Esq.
    Tracy L. Klestadt, Esq.