GRIFFIN HAMERSKY LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Richard K. Milin
Michael D. Hamersky

*Counsel for The Official Committee of Unsecured
Creditors on behalf of the bankruptcy estate of
The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|   |   |   |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA | : | |
| COMPANY, INC., *et al.*, | : | Case No. 15-23007 (RDD) |
| Debtors. | : | |

------------------------------------------------------------------x
|   |   |   |
|---|---|---|
| | : | |
| The Official Committee of Unsecured Creditors on | : | |
| behalf of the bankruptcy estate of THE GREAT | : | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | : | |
| | : | Adv. Proc. No. 17-08264 (RDD) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| McKESSON CORPORATION, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR
## <u>LEAVE TO FILE AN AMENDED COMPLAINT</u>

## **Table of Contents**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 4

   A.   Procedural History .............................................................................................. 4

   B.   Plaintiff's Investigation of Rebate and Credit Issues.......................................... 6

   C.   The Amended Complaint .................................................................................. 10

ARGUMENT .................................................................................................................. 10

   A.   The Amended Complaint is not offered in bad faith or after undue delay ....................... 11

   B.   Defendant will not be unduly prejudiced by Plaintiff's filing the amended complaint.... 11

   C.   The Amended Complaint asserts meritorious claims ....................................... 12

      A.   The Seized Property ..................................................................................... 13

      B.   The Medturns ............................................................................................... 16

CONCLUSION................................................................................................................ 19

# Table of Authorities

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 113728 ................................................... 12

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..................................................... 12

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ......... 12

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001) ....................................................... 10

*Picard v. Estate of Mendelow (In re BLMIS)*, 560 B.R. 208 (Bankr. S.D.N.Y. 2016) ................. 10

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ...................................................................... 13

**Statutes**

11 U.S.C. § 541 ............................................................................................................................ 15, 18

11 U.S.C. § 542 ........................................................................................................................ 15, 16, 18

**Rules**

Fed. R. Bankr. P. 7012 ...................................................................................................................... 12

Fed. R. Bankr. P. 7015 ................................................................................................................... 4, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 12, 13, 14

Fed. R. Civ. P. 15 ................................................................................................................ 4, 10, 15, 18

Fed. R. Civ. P. 30(b) .......................................................................................................................... 11

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR
## <u>LEAVE TO FILE AN AMENDED COMPLAINT</u>

Plaintiff, The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc. ("<u>Plaintiff</u>"), by its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion for Leave to File an Amended Complaint (the "<u>Motion</u>") against Defendant McKesson Corporation ("<u>Defendant</u>") and represents as follows:

## <u>PRELIMINARY STATEMENT</u>

Plaintiff makes this motion to seek an affirmative remedy for Defendant's egregious misconduct in taking almost $1 million of the Debtor's money after the Debtor's bankruptcy without the Debtor's consent, the Court's permission or a genuine justification. Defendant took the money in two separate incidents without giving adequate notice or explaining, let alone attempting to justify, its actions. Instead, Defendant sought to conceal its misconduct.

First, Defendant seized $569,860.02 of the Debtor's money in or soon after November 2015. On July 16, 2015, three days before The Great Atlantic & Pacific Tea Co., Inc. ("<u>A&P</u>") filed its bankruptcy petition, Defendant paid it $562,832.91 as a rebate on its June 2015 purchases (the "<u>Rebate</u>"). Defendant itself calculated the amount of the Rebate and paid it in the ordinary course of the parties' business.

Four months later, after A&P filed its bankruptcy petition, Defendant seized the money back. It did so unilaterally, without providing A&P with prior notice or an explanation, by deducting the Rebate from sums Defendant admitted it owed to A&P under a post-petition contract in November, 2015.

1

A&P objected to Defendant's seizing the money at the time, but the issue remained unresolved. Defendant then stonewalled Plaintiff's efforts to investigate the facts through discovery. Ultimately, as far as Plaintiff has been able to determine, Defendant never informed A&P that it intended to keep the Rebate for its own purposes, or offered any written explanation for its seizure of A&P's money, until mid-2021. When Defendant finally did so, it was immediately apparent that its justification lacked merit – for reasons A&P had raised in November 2015.

Also, although Defendant now argues that A&P was not entitled to the Rebate because it failed to pay for any of the merchandise the Rebate was based on, Defendant has never produced records to support that claim, and A&P's records show the contrary. Defendant also took an additional $7,027.11 of A&P's money at the same time in substantially the same way as the Rebate, thereby seizing a total of $569,860.02 (the "Seized Property").

In the second incident, Defendant seized $413,054.18 it owed to A&P for pharmaceutical returns, referred to as "medturns," at some time after July 28, 2015 (the "Medturns"). Since 2012, Defendant had paid A&P for its returns of product in the ordinary course of their business in accord with the parties' Supply Agreement. The Supply Agreement expired as of August 31, 2015, six weeks after A&P's Petition Date, but it was formally extended, with certain exceptions, by an Extension Agreement dated as of September 8, 2015 (the "Extension Agreement").

The Extension Agreement specifically addressed medturns in Section 8, stating, "McKesson agrees that it will continue to honor exchanges and returns in the ordinary course of business, as it did under the [Supply] Agreement, regardless of whether the Merchandise to be returned or exchanged was purchased before or after the Extension Effective Date…"

Contrary to Section 8, Defendant secretly and unilaterally determined on July 28, 2015 – six weeks earlier, while the Supply Agreement was still in effect – that it would ***not*** honor A&P's returns in the ordinary course of business. Defendant's emails show that it calculated

2

approximately $400,000 in Medturns as due to A&P at the end of July, but then consulted

bankruptcy counsel on July 28 and changed course.  On that day, Defendant decided that the

Medturns would be "issued to [A&P's] account," but "not be given to the customer."  Defendant

did not inform A&P of this fact, however, and sought to conceal its misconduct thereafter.

Defendant even attempted to conceal its misconduct by making a crucial misrepresenta-

tion in the Extension Agreement.  As quoted above, Section 8 expressly stated that Defendant

had "honor[ed] exchanges and returns in the ordinary course of business … under the [Supply]

Agreement."  Consequently, A&P had no reason to know that Defendant had actually deviated

from its past practice five weeks earlier by withholding $413,000 in Medturns that were due to

A&P.  As far as A&P knew, because Defendant was often slow in processing medturns, those

Medturns would soon be available.  Indeed, Section 8 promised that they would be available.

Further, the sole justification Defendant has offered for its misconduct to date – that A&P

waived its right to Medturns in Section 4 of the Extension Agreement by waiving "the right to

receive" credits that accrued prior to the Petition Date – is clearly without merit:  A&P had a

right to rely on Defendant's specific, written contractual representation that it had been honoring

A&P's returns and would continue to do so.

Based on these facts, Plaintiff's proposed Amended Complaint asserts claims under

Section 542 of the Bankruptcy Code for turnover of property of the Debtor.  Defendant had no

right to keep A&P's Rebate and Medturns, which it seized without consent, justification or Court

permission in violation of the automatic stay. The Amended Complaint alleges that, under

Section 542, Defendant should be ordered to give the money back.

Plaintiff's Amended Complaint also asserts claims under Section 541 of the Bankruptcy

Code for breach of contract.  Defendant violated the Supply Agreement by failing to pay A&P's

Medturns when due, and violated the Extension Agreement both by continuing to withhold the

3

Medturns and by refusing to pay the full sum it owed to the Debtor in November 2015, deducting the rebate instead. These causes of action belong to A&P under Section 541.

Even though McKesson's misconduct first occurred in 2015, this is not a case where a Plaintiff has "slept on its rights." Defendant did not admit that it was keeping almost $1 million of A&P's money until 2021, and it impeded Plaintiff's investigations before then. Moreover, the Supply and Extension Agreements are both governed by New York law, and the breaches of contract that the Amended Complaint alleges occurred within New York's six-year limitations period. At a minimum, Defendant cannot claim that it was prejudiced by Plaintiff's delay because, as discussed further below, Defendant's own actions caused that delay.

Rule 15 of the Federal Rules of Civil Procedure, made applicable here by Fed. R. Bankr. P. 7015, provides that "the court should freely give leave [to amend a complaint] when justice so requires." Given Defendant's egregious misconduct, and subsequent concealment of that mis-conduct, justice requires that the Court grant Plaintiff leave to file its Amended Complaint here.

## **FACTUAL BACKGROUND**

### A.  **Procedural History**

On July 19, 2015 (the "Petition Date"), Plaintiff and numerous affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court. No trustee or examiner has been appointed in these Bankruptcy Cases.

On July 24, 2015, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. The Committee consists of (i) l 199SEIU Health Care Employees Pension Fund, (ii) Basser-Kaufman, Inc., (iii) C&S Wholesale Grocers, Inc., (iv) CBA Industries,

4

Inc., (v) Defendant McKesson Corporation, (vi) Pension Benefit Guaranty Corporation and (vii) United Food and Commercial Workers International Union.

Pursuant to its Order (A) Approving Global Settlement Agreement and (B) Further Amending Debtors' Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363(c)(2) (ECF No. 2868) (the "Settlement Order"), the Court granted authority for the Committee to prosecute avoidance actions on behalf of the Debtors' estates, with settlement authority to be determined by the Committee, Debtors and Lenders (collectively, the "*Review Parties*"). Settlement Order, at ¶ 5.[1]

Pursuant to its Order Authorizing Final Resolution of Debtors' Cases and Granting Related Relief [Case Docket No. 4810] (the "Case Resolution Order"), the Court granted the Committee authority to continue to prosecute this adversary proceeding and all claims and defenses that may properly be asserted therein under applicable law on behalf of The Great Atlantic & Pacific Tea Company, Inc. in accordance with the Global Settlement Agreement.

Plaintiff filed its complaint commencing this adversary proceeding on July 13, 2017 [Case Docket No. 3705]. After an unsuccessful mediation, Defendant filed a motion for summary judgment on May 19, 2019 [A.P. Docket No. 24]. The Court denied Defendant's motion, with very limited exceptions, at a hearing on September 16, 2019.

On December 6, 2019, the Committee asked the Court to substitute Griffin Hamersky LLP as counsel in this action [Case Docket No. 4484]. On January 2, 2020, the Court entered an order authorizing the Committee to retain Griffin Hamersky as special conflicts counsel going forward [Case Docket No. 4493].

---

[1] Terms not otherwise defined herein shall have the meaning ascribed to them in the Global Settlement Agreement.

**B.  <u>Plaintiff's Investigation of Rebate and Credit Issues</u>**

On March 11, 2020, soon after the undersigned counsel was retained, Plaintiff served a substantial document request on Defendant.  At the time, Plaintiff was aware that rebates and credits could be a significant issue in the proceeding because, at a minimum, they could provide a substantial offset against Defendant's claim under Section 503(b)(9) of the Bankruptcy Code. Plaintiff also was aware that credits had been deducted from at least one of the preferential payments Plaintiff alleged and sought to determine whether other credits were due, but not deducted, in a departure from past practice during the preference period.

Accordingly, Plaintiff's document request sought documents concerning credit and rebate issues.  Plaintiff requested five categories of documents concerning those issues, including "[a]ll documents concerning any rebate or credit owed, earned, paid or to be paid – or potentially owed, earned, paid or to be paid – to A&P."  Plaintiff also requested, "[a]ll documents concerning communications between or among A&P and Erin Hughes – or … anyone working with Erin Hughes … concerning any credits, rebates or payments on account of returns due, actually or potentially, to A&P."  (*See* Plaintiff's Second Request for Production Nos. 11, 17-20, annexed to the Declaration of Richard K. Milin dated August 19, 2021 ("<u>Milin Decl.</u>") as Exhibit 1.)  Erin Hughes was an employee of Defendant who forwarded its June 2015 Monthly Rebate Report, which calculated the $562,832.91 Rebate due to A&P, on July 14, 2015.

McKesson refused to produce documents in response to these and related document requests, asserting that "McKesson Corporation is not producing any documents in response to this Request."  (*See* Milin Decl., Exh. 2.)

After the parties exchanged correspondence and conferred concerning Plaintiff's document request, Plaintiff's counsel wrote to Defendant concerning rebates and credits as follows:

Your letter also states that McKesson will produce its non-privileged documents gene-
rated by searches concerning returns, credits and rebates, which we appreciate. We note,
however, your letter does not specifically state whether it is withdrawing the objections
we questioned in our correspondence or will produce all documents responsive to RFPs
11 and 17-20. Nevertheless, your letter can fairly be interpreted as an agreement to do
so, and we will interpret it in that way. We also interpret your letter as an assurance that
all responsive communications between Claire Workman or Erin Hughes and A&P will
be included.  If our interpretations are inaccurate, please let us know.

(*See* Milin Decl., Exh. 3.)

Defendant did not respond.  Nevertheless, Plaintiff's searches in the documents

Defendant produced did not identify documents sufficient for Plaintiff to determine what

happened to the Debtor's $562,832.91, whether Defendant had ever paid the money back, or why

Defendant had seized the Debtor's money unilaterally and without permission.

On April 14, 2021, the parties' counsel discussed McKesson's seizure of the

$562,832.91.  Plaintiff's counsel followed up by sending some of the few relevant documents

Plaintiff could locate to Defendant's counsel and requesting further information.  Defendant's

counsel did not provide further information.

On May 21, 2021, Plaintiff served a Third Request for Documents which specifically

requested documents about the $562,832.91 Rebate in nine separate requests.  (*See* Milin Decl.,

Exh. 4.) These requests included:  "All documents concerning McKesson's actions, and whether

it took any actions, concerning or in connection with, its payment to the Debtor of $562,832.91,

or substantially that amount, in June or July 2015, including any action to adjust or reduce a

postpetition payment to the Debtor."  The requests also included, "[a]ll documents concerning

any action McKesson took to pay, credit or reimburse itself, or set off, any payment that

Defendant had previously made to A&P, including any action to pay, credit or reimburse itself,

or set off, approximately $562,000."  Defendant responded to all nine requests: "McKesson

Corporation will not produce documents in response to this Request."  (*See* Milin Decl., Exh. 5.)

7

Plaintiff's Third Request for Documents also requested information about the Medturns: "All documents concerning any rebate or credit due, or potentially due, to A&P, irrespective of whether McKesson determined to pay the rebate or credit or determined that payment was not in fact due." In addition, Plaintiff requested documents concerning "[a]ny sums that any Defendant segregated for possible credit or payment to, or because of actual or potential claims by, A&P, and the sources, disposition and current location of those funds." McKesson responded: "McKesson Corporation will not produce documents in response to this Request." (*See* Milin Decl., Exh. 5.)

The parties exchanged letters and conferred about Defendant's response to Plaintiff's Third Request for Documents. Plaintiff pointed out that the documents concerned Defendant's inequitable conduct and were relevant, at a minimum, to Defendant's claims under Section 503(b)(9) of the Bankruptcy Code and alleged right to assert an equitable right of setoff. As of the date of the Amended Complaint, Defendant has produced no documents concerning the Medturns or Rebate in response to Plaintiff's Third Request for Documents and, in a conference on August 17, 2021, it confirmed that it will not do so.

On June 16, 2021, Plaintiff served interrogatories and requests for admission on Defendants expressly concerning the Rebate and Medturns. For example, Plaintiff's Interrogatory 8 asked Defendant to "[i]dentify and calculate all credits and rebates A&P would have been entitled to receive under its Supply Agreement with McKesson for June and July 2015, assuming that A&P did not breach or had not breached the Supply Agreement…" The interrogatory also asked, "if McKesson took any steps to reimburse itself for any credits or rebates that it paid to A&P before July 19, 2015, describe those steps, … when they took place, why those steps were taken…and what notice McKesson provided to A&P concerning McKesson's determination that the money definitively belonged to McKesson." Defendant's only substantive response was,

8

"McKesson answers that it mistakenly paid A&P approximately $562,000 in July, 2015. This was an error. A&P was not entitled to this payment under the Supply Agreement."  Defendant does not state why.  Defendant also fails to address the $400,000 in Medturns, which fall within the scope of Interrogatory 8, in its response.

After an exchange of letters and a conference, Defendant agreed that it would respond to Plaintiff's interrogatories.  It did so, in part and subject to numerous objections, on August 5, 2021.  Those responses continued Defendant's strategy of asserting that its seizure of A&P's Rebate was proper but refusing to provide facts or a justification.  (*See* Milin Decl. Exh. 6.)

The first deposition in this matter was taken on May 25, 2021.  Defendant's deposition pursuant to Fed. R. Civ. P. 30(b)(6), for which Jenifer Towsley was Defendant's designated representative, took place on June 21, 2021.   Ms. Towsley was asked about the Rebate and Medturn credits, but was not prepared to respond sufficiently to answer Plaintiff's questions.  Plaintiff then requested a continued deposition concerning those issues.  Defendant has refused.

On April 30, 2021, Defendant submitted an expert report calculating the amounts of Defendant's 503(b)(9) claim.  That report does not discuss the Rebate or Medturns except (1) it admits that Defendant's accounting system "includes returns and offset amounts," (2) addresses selected returns and credits that A&P received during the pre-preference and preference period, and (3) states, in a footnote, that:  "Pursuant to the Extension … Agreement paragraph 4, A&P acknowledges and agrees that it does not have right to receive Rebates, refunds, or other amounts which accrued prior to the Petition Date …."  Accordingly, the report does not reduce Defendant's Section 503(b)(9) claim by the Rebate, Medturns or other sums that remain due to A&P.

### C.  **The Amended Complaint**

The Amended Complaint does not materially change Plaintiff's allegations with respect to its preference claims, except to correct the total of Plaintiff's transfers in accord with both parties' expert reports.  (*See* Milin Decl., Exh. 7 and blackline, Milin Decl. Exh. 8.)

The Amended Complaint does, however, add two new claims for relief based on Defendant's improper, post-petition seizure of almost $1 million of A&P's money in the form of the Seized Property and the Medturns without consent, Court approval or a genuine justification. Those claims were summarized in the Preliminary Statement and are further discussed below.

## ARGUMENT

## PLAINTIFF SHOULD BE GRANTED
## LEAVE TO FILE ITS AMENDED COMPLAINT

Federal Rule of Civil Procedure 15, made applicable here by Federal Rule of Bankruptcy Procedure 7015, provides that, when a party seeks to amend its pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As this Court has stated, "amendments are favored because they 'tend to facilitate a proper decision on the merits.'" *Picard v. Estate of Mendelow (In re BLMIS)*, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016) (citation omitted).

The Second Circuit has held that leave "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The burden is on the party opposing leave to amend to demonstrate that one or more of the grounds supporting denial exists. *See, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 WL 113728, at *3-4 (S.D.N.Y. Jan. 13, 2014) (discussing futility and undue prejudice).  None of the grounds for denying leave to amend exist here.

10

**A.  <u>The Amended Complaint is not offered in bad faith or after undue delay</u>**

Plaintiff does not seek to file the Amended Complaint in bad faith or after undue delay.

The new claims for relief in the Amended Complaint are based on the documentary record and

Defendant's admissions obtained after almost eighteen months of discovery.  There are few

remaining factual disputes, and Plaintiff has fully considered Defendant's legal arguments, as

discussed below.  In addition, Plaintiff has not delayed its investigation or somehow attempted to

gain an unfair advantage by delay.  Instead, as recounted above, Plaintiff repeatedly sought the

facts concerning Defendant's seizure of the Rebate and Medturns, asked Defendant to explain its

position concerning them, and once its investigation was sufficiently complete – despite

Defendant's many delays in responding – it asked Defendant to consent to Plaintiff's filing an

Amended Complaint. When consent was denied, Plaintiff filed the present motion.  There has

been no bad faith or undue delay on Plaintiff's part here, and leave to amend should be granted.

**B.  Defendant will not be unduly prejudiced
     by Plaintiff's filing the amended complaint**

The issues of credits and rebates have been important in this case ever since Defendant

answered plaintiff's complaint on August 10, 2017 and asserted affirmative defenses of "offset"

and recoupment.  As a result, Plaintiff's Motion for leave to file an Amended Complaint asserti-

ng affirmative claims based on Defendant's misconduct with respect to credits and rebates is in

no way prejudicial.  At a minimum, Plaintiff has made clear that rebates and credits were an

important issue through its discovery requests going back to March 2020, and if Defendant had

not stonewalled concerning the facts, the Amended Complaint could have been filed long ago.

Also, Plaintiff gave Defendant ample notice of its concern about the Rebate and credits in

discovery requests served before the deposition of Defendant's designee pursuant to Fed. R. Civ.

P. 30(b).  Indeed, Plaintiff's May 14, 2021 notice for that deposition called for testimony

concerning, "[a]ny credits or rebates that any Defendant owed to, or paid to, or currently may

owe to, A&P," "[a]ny payment any Defendant made to A&P, or credit it gave to A&P, in June or

July 2015 on account of, or in connection with, rebates or credits of approximately $562,000,"

and "[a]ny action any Defendant took to pay or credit itself, or set off, any payment that the

Defendant had previously made to A&P, including any action to pay or credit itself, or set off,

approximately $562,000."

Given that Plaintiff's claims concerning the Rebates and Medturns almost exclusively

concern Defendant's own conduct, it does not appear that additional discovery will be required

to litigate the claim – though Defendant owes significantly overdue responses to prior discovery

requests.  The Amended Complaint should therefore have only a minimal impact on this

litigation.  Defendant accordingly has no good faith claim that the Amended Complaint would

subject it to undue prejudice.

### C.  <u>The Amended Complaint asserts meritorious claims</u>

Plaintiff should not be denied leave to file its Amended Complaint because the new

claims Plaintiff asserts in that Complaint are meritorious, not futile.  When evaluating whether a

claim is futile in deciding a motion for leave to amend, the Court must determine whether the

amended pleading could survive a Rule 12(b)(6) motion to dismiss.  *See Dougherty v. Town of

N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  The standard for a

motion to dismiss under Rule 12(b)(6), made applicable here by Federal Rule of Bankruptcy

Procedure 7012, is well settled: the court must "constru[e] the complaint liberally, accepting all

factual allegations in the complaint as true, and drawing all reasonable inferences in the

plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation

omitted). At this stage, "the issue is not whether a plaintiff will ultimately prevail but whether the

12

[plaintiff] is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (citation omitted).

A.  The Seized Property

The Amended Complaint's claims based on the Seized Property can easily survive a motion to dismiss.  Defendant has offered three arguments that those claims are flawed, but they all lack merit.

1.  Defendant's three arguments that it properly seized the Seized Property lack merit.

Defendant has repeatedly argued that it was entitled to seize the Rebate in November 2015 because A&P did not pay for the merchandise on which the Rebate was paid.  However, Defendant has never provided contractual support for that argument, and the facts are disputed: Defendant has not merely failed – but affirmatively refused – to provide support for it.  Moreover, A&P's records indicate that it did pay for, at a minimum, a very substantial portion of the merchandise at issue.  In any event, because this argument turns on facts, it cannot support a motion to dismiss under Rule 12(b)(6).

Defendant next asserts that A&P waived its right to the Rebate in Section 4 of the Extension Agreement.  Section 4 provides, "A&P acknowledges and agrees that it does not have the right to receive Rebates, refunds, or other amounts which accrued prior to the Petition Date…"

This argument is flawed for a reason A&P pointed out back in November 2015:  Section 4 states that A&P waives the right to "receive" rebates, not that it agrees to forfeit rebates it has already received.   A&P received the Rebate at issue here almost two months before the Extension Agreement was signed on July 16, 2015, and A&P was therefore entitled to keep the Rebate whether or not it waived the right to "receive" any more.

13

Moreover, it would be absurd to read Section 4 to require the forfeiture of "Rebates, refunds, or other amounts that accrued prior to the petition date" that A&P had already received. That reading would require A&P to forfeit every rebate and refund it had received over the past several years, amounting to many millions of dollars. There is no evidence that the parties intended such a broad forfeiture. At a minimum, because Section 4 does not unambiguously support Defendant's arguments, it cannot justify dismissal under Rule 12(b)(6).

Finally, Defendant argues that it was entitled to seize the Rebate and other Seized Property as a recoupment. However, because Defendant cannot show that A&P owed Defendant a genuine debt in the amount of the Seized Property, Defendant had no right to recoup that non-existent debt against the money it owed to A&P.

Defendant also had no genuine right of recoupment because recoupment is only permissible when offsetting debts arose from the same transaction. Even if A&P had genuinely owed Defendant the return of the Rebate – and it did not – that could only have been because Defendant made a purported error in paying the Rebate under the prepetition Supply Agreement. A&P did not owe the Rebate back because of any purchases or other conduct by A&P itself. Thus, if Defendant actually tried to "recoup" the Rebate by deducting it from money it owed to A&P because of A&P's purchases under the Extension Agreement, it would be improperly setting off debts owed because of very different transactions. Recoupment therefore – even if A&P had actually owed Defendant the return of the Rebate – would be highly improper. In addition, and at a minimum, Defendant's "recoupment" argument is highly fact dependent and not a ground for dismissal under Rule 12(b)(6).

14

2.  The Amended Complaint's claims under Sections 541 and 542 of
    <u>the Bankruptcy Code based on the Seized Property are meritorious.</u>

Defendant's lack of a plausible justification for its seizure of more than $560,000 of

A&P's property without prior notice, consent, Court permission or even a written explanation –

let alone a computation showing that any of the merchandise for which Defendant originally

provided the Rebate was not paid for by A&P – shows that the Seized Property properly

belonged to A&P and that Defendant violated the automatic stay by taking it.  Consequently,

Defendant owes Plaintiff the return of that Property under Section 542 of the Bankruptcy Code.

Defendant's unilateral seizure of the Seized Property was also a clear breach of the

Extension Agreement.  Defendant itself computed how much money it owed to A&P in

November 2015, then subtracted the Rebate and paid only the remainder.  Because Defendant

failed to pay A&P the full amount it owed in November 2015 – even though it had no genuine

right to deduct the amount of the Rebate – it is liable to Plaintiff for the amount of the Rebate

plus interest.

3.  <u>Plaintiff's claims based on the Seized Property are timely.</u>

Plaintiff's claim under 11 U.S.C. Section 541 for breach of the Extension Agreement is

timely.  The Extension Agreement, like the Supply Agreement, was governed by New York law,

and was entered into by a debtor in a New York bankruptcy proceeding.  New York's statute of

limitations for breach of contract actions is six years, and Defendant breached the Extension

Agreement less than six years ago, at some time after November 2015, when Defendant first

withheld the amount of the Rebate from the sums it admittedly owed.  Even if Plaintiff's claims

did not satisfy the statute of limitations, moreover, Plaintiff's claims would relate back to the

date of the Complaint in 2017 under Fed. R. Civ. P. 15(c).

15

Plaintiff's claim for turnover under 11 U.S.C. Section 542 is also timely.  Defendant's

stonewalling, not Plaintiff's neglect, has delayed the filing of the Amended Complaint, and

Defendant has no genuine argument of prejudice.  The doctrine of laches, therefore, provides no

basis for dismissing Plaintiff's turnover claim.

     B.  <u>The Medturns</u>

The Amended Complaint's claims based on the Medturns, like its claims based on the

Seized Property, can easily survive a motion to dismiss.  Defendant has offered only two

arguments to suggest that the Medturns claims are flawed, and they are baseless.

     1.  <u>Defendant's two arguments that it properly seized the Medturns lack merit.</u>

Defendant argues that Plaintiff's claims based on the Medturns lack merit because A&P

purportedly waived its right to Medturns under Section 4 of the Extension Agreement.  Defen-

dant is plainly incorrect:  As discussed above, Section 8 of the Extension Agreement is an

express representation that Defendant had been honoring A&P's returns and would continue to

do so.  Any argument that Section 4 waived the Medturns would be directly contrary to Section

8's promise to continue honoring A&P's returns, and because Section 8 deals specifically with

returns whereas Section 4 does not mention returns, Section 8 controls.

Moreover, if Defendant had actually been honoring A&P's returns in the ordinary course

of business when the Extension Agreement was signed – as Section 8 represents it was – then

A&P would already have received all of its medturns for the prepetition period.  As a result,

Section 4 would not have waived any rights to medturns at all.  Consequently, if Section 4 is

construed as a waiver of the Medturns at issue here, that can only be because Defendant's

representation that it had been honoring A&P's returns was false.  Defendant cannot properly

rely on its own fraud to show that A&P waived the right to its Medturns.

16

In addition, Defendant's documents indicate that A&P had already "received" the Medturns when the Extension Agreement was signed in that they had already been posted to A&P account.  Accordingly, Section 4 did not waive the Medturns, because A&P did not "receive" them after the Extension Agreement was signed.  For these and other reasons, therefore, Section 4 provides no basis for dismissing Plaintiff's claims.

Defendant's second argument for dismissal is similarly baseless.  Once again, Defendant asserts that it had the right simply to seize A&P's property, without consent, Court permission or even an explanation, and recoup it against debts that A&P owed to Defendant.  This argument fails for at least three reasons.  First, Defendant has provided no evidence that it has actually set off or recouped the Medturns to date.  Second, recoupment is an equitable remedy, and Defendant's conduct with respect to the Medturns was inequitable at best – it secretly decided not to "give" the Medturns to A&P on July 28 and, to the extent Defendant argues that Section 4 was a waiver of A&P's right to Medturns, it is seeking to profit from fraud.

Third, Defendant has made no showing, and Plaintiff believes it cannot make a showing, that the Medturns arose from the same transaction as any debt that A&P owes to Defendant.  A&P was entitled to the Medturns for very specific products that A&P paid for in very specific transactions.  Defendant's asserted right to "recoupment," therefore, could only be exercised against debts arising from those same transactions.  However, A&P paid its debts arising from those transactions in full, because the Medturns would not have been owed otherwise.  Consequently, Defendant has no right to recoup the Medturns, and its recoupment argument provides no basis for dismissing Plaintiff's Medturn claims.

2. The Amended Complaint's claims under Sections 541 and 542
   of the Bankruptcy Code based on the Medturns are meritorious.

Plaintiff's claim for turnover of the Medturns under Section 542 of the Bankruptcy Code

is meritorious. Defendant's own records show that it considered the Medturns to be owed to

A&P at the end of July 2015 and Defendant posted them to A&P's account beginning on July 29,

2015. By doing so, Defendant acknowledged the Medturns to be A&P's property and it should

have turned them over as Section 542 requires.

Plaintiff's claims for breach of the Supply and Extension Agreements are also meritori-

ous. The Medturns were owed to A&P under the Supply Agreement at the end of July 2015, as

that Agreement and Defendant's records show. Also, Section 8 of the Extension Agreement

expressly represented that Defendant had been honoring and would continue to honor A&P's

returns. Defendant's failure to do so therefore breached both Agreements. Accordingly,

Plaintiff's claims based on the Medturns are neither futile nor vulnerable to a motion to dismiss.

3. Plaintiff's claims based on the Medturns are timely.

Plaintiff's claims based on the Medturns are timely for the same reasons that its claims

based on the seized property are timely. Plaintiff's claim under Section 542 is timely because

Plaintiff did not "sleep on its rights" and Defendant has not been prejudiced by the delay – in

fact, Defendant itself caused delay. Plaintiff's claims under Section 541 are also timely, because

Defendant's earliest arguable breach of its contracts with A&P occurred on July 28, 2015, less

than six years ago. In any event, Plaintiff's claims relate back to the date of its current complaint

under Fed. R. Civ. P. 15(c).

For all of the reasons discussed above, Plaintiff's claims for Defendant's egregious

misconduct in seizing almost $1 million of A&P's property after A&P's Petition Date –

unilaterally, and without A&P's consent, Court permission or a genuine justification – are far

18

from futile.  In the interests of justice, the Court should grant Plaintiff leave to file its Amended Complaint.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety and grant it leave to file its Amended Complaint, and such other and further relief as may be just and proper.

Dated:  August 19, 2021

GRIFFIN HAMERSKY LLP

By: /s/ **_Richard Milin_**
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
rmilin@grifflegal.com
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284

*Counsel for The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc., et al.*