**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

August 20, 2021

**Via ECF and E-mail**

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

> Re:  **The Official Committee of Unsecured Creditors v. McKesson Corp.
> (Adv. Pro. 17-08264 (RDD));
> The Official Committee of Unsecured Creditors v. McKesson Pharmacy
> Systems LLC (Adv. Pro. 17-08265 (RDD)); and
> The Official Committee of Unsecured Creditors v. McKesson Specialty Care
> Distribution Corp. (Adv. Pro. 17-08266 (RDD))**

Dear Judge Drain:

On behalf of Plaintiff, the Official Committee of Unsecured Creditors of The Great Atlantic & Pacific Tea Company, Inc., we ask the Court to schedule a telephonic conference pursuant to Local Rule 7007 to address the refusal of Defendant McKesson Corporation to provide discovery responses to which Plaintiff is entitled.  The parties' current discovery cut-off is August 27, 2021.  After months of correspondence and "meet and confer" conferences, Defendant flatly refused this week to provide further documents and information that Plaintiff is entitled to. Defendant also refused to provide proper interrogatory responses or testimony concerning topics about which its corporate representative designated pursuant to Rule 30(b)(6), Fed. R. Civ. P., was unprepared to testify.

## I.      **Document Production**

Plaintiff served its Third Document Request on May 21, 2021.  Defendant responded on June 21 by agreeing to produce documents, subject to broad objections, with respect to only 9 of Plaintiff's 39 requests and refusing to produce any documents at all in response to 30.  *See* Exhibit 1.  The parties exchanged emails and correspondence and conferred about Defendant's response on at least four occasions.  On Tuesday, August 17, after several recent conferences, McKesson finally and flatly refused to produce most of the documents Plaintiff requested.

The main problems with McKesson's Responses to Plaintiff's Third Request were outlined in the attached letter to Defendant's counsel dated July 6, 2021.  *See* Exhibit 2.  Some documents in response to the Request have now been produced.  The following are the most important remaining issues:

1.  ***Documents concerning McKesson's improper seizure of $562,832.91, Requests 8-16.***

In mid-November 2015, Defendant unilaterally decided that it had paid a rebate of $562,832.91 "in error" on July 16, 2015, three days before the Petition Date, and took the money back.  Without

consent, Court permission or any written justification, Defendant simply deducted the amount of the rebate it had paid to A&P before its bankruptcy from sums Defendant owed to A&P under a post-petition contract. It then deflected all of Plaintiff's discovery requests and informal inquiries about its actions. In this adversary proceeding alone, those inquiries stretch back to at least March 2020. Defendant finally admitted that it had taken the money and kept it at a deposition on June 21, 2021.

Plaintiff's Third Document Request – which was served one month before that deposition – includes nine separate requests about the rebate and any similar actions Defendant may have taken. Defendant asserted that these requests were "irrelevant" and responded to each: "McKesson Corporation will not produce documents in response to this Request." *See* Exhibit 1.

Plaintiff replied in its letter of July 6 that the documents are indeed relevant because "McKesson's actions constitute, at a minimum, an equitable defense to any setoff McKesson seeks to assert." Plaintiff has also pointed out that the documents are relevant to the amount of McKesson's $1.7 million claim under Section 503(b)(9) of the Bankruptcy Code, because McKesson owes the Debtor $562,832.91 which should be set off against that claim. This Tuesday, Defendant sent its final response, which was intended to cover the $562,832.91: "We will not be providing documents or witnesses related to rebates, refunds, or other amounts which accrued prior to the Petition Date…." Actually, Defendant's seizure of the $562,832.91 was a breach of a post-petition contract, because Defendant improperly deducted the money from post-petition sums it admitted it owed to A&P.

Plaintiff filed a motion yesterday seeking to amend its complaint to assert affirmative claims for the return of the $562,000 under Sections 541 and 542 of the Bankruptcy Code and New York contract law. However, Defendant's inequitable seizure of A&P's property has always been relevant to Plaintiff's defenses. Accordingly, Defendant should be compelled to produce documents in response to Requests 8-16 of Plaintiff's Third Document Request. *See* Exhibit 3.

2. ***Documents concerning unpaid credits or rebates, Request 17***

Defendant also improperly withheld at least $413,000 in credits for prepetition returns. Two weeks after A&P's Petition Date, Defendant changed its procedures and determined that it would issue the $413,000 in credits to A&P's account but not "give" them to A&P to use in paying for its post-petition purchases, as A&P had always done prepetition. Defendant might have had the right to hold the credits, at least if it had mentioned them to A&P, if it had not expressly represented in the parties' September 8, 2015 Extension Agreement that Defendant had "honor[ed] exchanges and returns in the ordinary course of business … under the [Supply] Agreement" – which was in effect when the credits were issued – and would continue to do so. Withholding the credits made that contractual representation false. Moreover, the few relevant documents produced to date indicate that Defendant owed the $413,000 for returns only through July 6, 2015, and Plaintiff has been unable to determine how much more it was owed for following two weeks before the Petition Date. The credit issues are included in Plaintiff's proposed Amended Complaint.

420 Lexington Avenue, 4th Floor, New York, NY 10170
Tel: 646-998-5580 | Fax: 646-998-8284 | info@grifflegal.com | www.grifflegal.com

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

Plaintiff has been requesting documents about the credits since March 2020. Defendant's response has been consistent: "McKesson Corporation will not produce documents in response to this Request." *See* Exhibit 1. Defendant also reiterated that position this Tuesday. However, documents about sums Defendant still owes to Plaintiff – and inequitable conduct in concealing those sums – are plainly relevant to defending against McKesson's 503(b)(9) claim and setoff defense, and they should be produced. If Defendant had "given" A&P its credits in July 2015 when they were due, it could have used them to pay for its purchases of pharmaceuticals. Now Defendant maintains they are worthless.

3. ***Documents about McKesson's treatment of other struggling retailers, Requests 25-28, 34-35 and 37.***

On July 6, Plaintiff wrote: "McKesson now asserts that the preferential transfers it received are shielded from avoidance because it dealt with A&P on the same "ordinary business terms" that it applied to other major retailers. Nevertheless, McKesson has objected to producing any documents concerning its treatment of other retailers as having "no probative value," which is logically inconsistent. (*See* McKesson's Responses to Requests 25-28, 34-35, 37.)" Defendant still maintains that Plaintiff's preferential transfers are shielded because they were on "ordinary business term" – meaning drastic, unilateral reductions in payment terms and threats to stop shipment if A&P was only one day late – and it still insists, as of three days ago, that "[w]e will not be providing documents or witnesses related to … other customers." Defendant should either be compelled to produce document in response to Requests 25-28, 34-35 and 37, which concern this issue, or should precluded from arguing that A&P's preferential transfers were on "ordinary business terms."

4. ***Jenifer Towsley's deposition transcripts and declarations, Request 25.***

Plaintiff requested the deposition transcripts and declarations of Defendant's corporate representative Jenifer Towsley, who was a key actor in the events at issue. Defendant responded that "McKesson Corporation will produce two declarations from significant bankruptcy cases" – which, over Plaintiff's objection, it would choose unilaterally. As of three days ago, Defendant notified Plaintiff that it would produce only one declaration, and no transcripts. Defendant should be compelled to produce all responsive documents it has not yet produced.

## II.    Deposition Testimony

On August 4, 2021, Plaintiff wrote to Defendant "concerning a series of issues that we specified in our Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure." The letter, annexed as Exhibit 4, identified seven topics about which Defendant's witness was not actually prepared to testify, and requested that Defendant either provide a witness who was sufficiently prepared or, in many cases, provide the information by alternative means. Defendant refused to discuss how it would provide the information even during telephone conferences. Instead, Defendant informed Plaintiff on Tuesday that Defendant simply would not respond, except to say that Defendant's prior interrogatory responses serve as an adequate response. Of course, they do not.

3

GRIFFIN HAMERSKY LLP

ATTORNEYS AT LAW

Defendant's designated witness knew almost nothing about the $413,000 credit discussed above, and very little about the $562,000 rebate, as Plaintiff wrote on August 4. Yet Defendant's interrogatory responses are even less informative. The responses say nothing about the $413,000 credit, though information about it is called for by Interrogatory No. 8. Also, Defendant's only substantive response about the $562,000 rebate is to say that it was "mistakenly paid" in "error" without explaining why. *See* Interrogatory Responses, Exhibit 5. Defendant should be required to provide testimony concerning the topics discussed in Plaintiff's letter of August 4, 2021.

III.    Interrogatory Responses

Defendant has failed or refused to produce documents and information called for by Plaintiff's interrogatories. Although Defendant's interrogatories responses fail to comply with the governing rules in several ways, the most important is, Plaintiff submits, also the clearest. Defendant has refused to produce ***any*** documents in response to the interrogatories, and several items of information specifically called for, without any genuine justification.

One key example is Interrogatory 5, which asked Defendant to "[i]dentify any strategic retail customer of a major pharmaceutical wholesaler to which that retailer threatened to discontinue shipments at any time between January 1, 2013 and July 1, 2016 because that strategic retail customer failed to make one or more payments." (*See* Exhibit 5.) The Interrogatory also called for information about the wholesaler's and customer's identity, the amount and contracts at issue, any negotiations concerning the late payment and the date of the threat. Further, the Interrogatory asked Defendant to "Produce all documents about the threat" or, if the wholesaler was Defendant, a subset of those documents.

Defendant's response identified thirteen retailers, and named their wholesalers – for four of the retailers, the wholesaler was Defendant itself. However, Defendant did not provide other information called for by Interrogatory 5 and provided no documents, even though its response implies that it must have had documents available. (*See* Exhibit 6.) Defendant also responded to Interrogatories 4 and 6 in the same way. Defendant should either be compelled to provide all responsive documents and information in their possession, custody or control responsive to Interrogatories 4-6 or be precluded from offering documents or information at trial that they failed to provide in response to interrogatories.

For these reasons, we ask the Court to schedule a conference to address McKesson's refusal to comply with its discovery obligations.

Respectfully,

/s/ Richard Milin

Richard K. Milin

cc: Jeffrey K. Garfinkle, Esq.
    Tracy L. Klestadt, Esq.

4

# EXHIBIT 1

Jeffrey K. Garfinkle (admitted *pro hac vice*)
Daniel H. Slate (California Bar No. 78173)
BUCHALTER Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Fax: (949) 720-0182
jgarfinkle@buchalter.com
dslate@buchalter.com

Tracy Klestadt
Klestadt Winders Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone:  (212) 972-3000
Fax:  (212) 972-2245
tklestadt@klestadt.com

Counsel for Defendant
McKesson Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 15-23007 (RDD)<br><br>Jointly Administered |
| The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*<br><br>Plaintiff<br><br>v.<br><br><br><br>McKESSON CORPORATION<br><br>Defendant | Adv. Proc. No. 17-08264 (RDD)<br><br>**MCKESSON CORPORATION'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS** |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

**DEFENDANT'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

BN 45978795v1

1    Defendant McKesson Corporation, a Delaware corporation ("**McKesson Corporation**")

2    by and through its undersigned counsel, hereby provides its Objections and Responses (the

3    "**Responses**") to the Third Request for Production of Documents (the "**Request**") by the Official

4    Committee of Unsecured Creditors (the "**Committee**") of the bankruptcy estate of the Great

5    Atlantic & Pacific Tea Company, Inc. ("**A&P**").[1]

6                                    **PRELIMINARY STATEMENT**

7    Any response by McKesson Corporation is made with McKesson Corporation's good

8    faith understanding of the Request.  The Responses are made solely for the purpose of, and in

9    relation to, the above-captioned Adversary Proceeding and solely on behalf of McKesson

10   Corporation.  Each Response is given subject to all appropriate objections (including objections

11   concerning competency, relevancy, materiality, propriety and admissibility), which would require

12   the exclusion of any statement contained herein if made by a witness present and testifying in

13   court.  All such objections and grounds therefore are reserved and may be interposed at the time

14   of trial.

15   The Responses are governed by the following rules as each may, from time to time be

16   amended (collectively, the "**Rules**"):

17          (i)      The Federal Rules of Civil Procedure (the "**FRCP**");

18          (ii)     The Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**");

19          (iii)    The Local Civil Rules of the United States District Court, Southern District

20                   of New York ("**LCR**"); and

21          (iv)     The Local Bankruptcy Rules of the United States Bankruptcy Court for the

22                   Southern District of New York (the "**LBR**").

23   McKesson Corporation reserves its rights under Rule 26(b) of the FRCP (made applicable

24   to the Adversary Proceeding pursuant to Bankruptcy Rule 7026), and specifically the limits on

25   electronically stored information as set forth in Rule 26(b)(2)(B) of the FRCP.  That provision

26   states that a party need not provide information from sources that are "not reasonably accessible

27   _____

28   [1] For purposes of the Responses, McKesson Corporation responds as if all 21 debtor entities in the bankruptcy cases
     have been substantively consolidated as well as jointly administered as Case No. 15-23007.

2

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

because of undue burden or cost." McKesson Corporation reserves the right not to provide information upon a showing that the information is not reasonably accessible because of undue burden or cost.

McKesson Corporation reserves the right to introduce at trial any and all evidence previously produced or any evidence that will be produced by the parties in this Adversary Proceeding or by any third party that supports or tends to support McKesson Corporation's contentions at trial or in support of or in opposition to any motion in this case. To the extent that McKesson Corporation identifies facts in response to the Requests, it does so without prejudice to establishing at a later date any additional facts that may be discovered as a result of any additional investigation and discovery.

Any Response does not constitute a waiver of any applicable privilege, nor does any Response waive any objection, including relevancy, to the admission of such Responses or responsive documents in evidence.

By providing the Responses, McKesson Corporation does not concede the relevance or materiality of any of the Requests or the subject matter as to which the Requests pertain. In addition, the fact that McKesson Corporation has responded or provided documents to part or all of any Request is not intended and shall not be construed to be a waiver by McKesson Corporation of all or any part of any objection to any Request.

Discovery is ongoing, and McKesson Corporation reserves the right (without any obligation) to supplement its production of documents as discovery continues and additional documents are obtained or located. McKesson Corporation reserves the right to revise, amend, correct, modify or supplement its Responses after additional investigation and discovery in this action.

## **GENERAL OBJECTIONS**

McKesson Corporation incorporates each of the following general objections into each of its Responses as if set forth in full.

1.    McKesson Corporation responds to the Requests based upon its investigation in the time available since service of the Requests. As a result, McKesson Corporation bases its

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

Responses upon information now known to it (available through a reasonable investigation) and which McKesson Corporation believes to be relevant to the subject matter covered by the Requests.

2.    McKesson Corporation reserves all objections or other questions as to the competency, relevance, materiality, or admissibility as evidence in any hearing or trial in this Adversary Proceeding for any purpose whatsoever of these Responses and objections and any document or thing identified in any Response.

3.    Nothing contained in these Responses shall be construed as an admission relative to the existence or non-existence of any document, and no Response is to be considered an admission respecting the relevance, authenticity or admissibility of any documents sought.

4.    To a large extent, the Requests are vague, overbroad, ambiguous and unintelligible.  McKesson Corporation will undertake a good faith attempt to provide Responses with a broad understanding of the scope of the Request.  The Responses are made in a good faith effort to supply as much factual information as is presently known, but in no way prejudices McKesson Corporation's ability to engage in further discovery, research or analysis.

5.    Certain of the Requests seek documents in possession, custody or control of the Committee or A&P and appear to be intended to harass McKesson Corporation and force it to produce documents A&P or the Committee has, or should have, in its possession, custody or control.  McKesson Corporation objects to the Requests as an undue burden and expense on McKesson Corporation.  Specifically, the Requests seek to impose an obligation on McKesson Corporation to produce documents already within A&P or the Committee's custody and control (especially as to communications originating from A&P or transfers of money or property from A&P) and impose on McKesson Corporation obligations that far exceed those required by law. To that extent, McKesson Corporation specifically reserves all rights under Rule 26(b)(2) of the FRCP.

6.    To the extent the Requests seek information properly protected as attorney-work product, privileged confidential attorney-client communications or trial preparation materials, McKesson Corporation will not provide that information.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

4

DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

7.    <u>The definitions in the Requests are objectionable</u>.

To the extent the Requests define a term that is also defined in Rule 26.3 of the LCR (which applies to this Adversary Proceeding pursuant to Rule 7026-1 of the LBR) and the two definitions are different, McKesson Corporation shall use the definition in the LCR.

a.    <u>The definition of "**McKesson**" in the Requests is overbroad, improper, and ambiguous</u>.

McKesson Corporation objects to the Requests as overbroad, improper, ambiguous and vague based on the Committee's definition of the term "McKesson." The Adversary Proceeding names only one defendant, McKesson Corporation. While it is true that in two other adversary proceedings, the Committee is seeking preference recoveries from two affiliates of McKesson Corporation, McKesson Pharmacy Systems LLC and McKesson Specialty Care Distribution Corporation, the Committee defines the term "McKesson" as including "any past or present parent, subsidiary or affiliate of McKesson Corporation . . . and other [*sic*] entity having common ownership or control with McKesson Corporation. . . [and] any person acting for or on behalf of any of the foregoing, or claiming to do so." McKesson Corporation has existed since 1833; there are many subsidiaries and otherwise related entities.

The Committee goes even beyond that to suggest that the term "McKesson" should include "any person acting for or on behalf" of McKesson Corporation (or, indeed, any of its affiliates) and would include attorneys. As a result, the Committee seeks materials properly protected as attorney-work product or privileged as confidential attorney-client communications.

Finally, the Committee includes "any person" claiming to act for or on behalf of McKesson Corporation. McKesson Corporation cannot reasonably comply with this "definition" because McKesson Corporation has no way of knowing if, when or who has ever "claimed" to act for or on behalf of the myriad of potential entities covered by the Committee's proposed definition of "McKesson."

McKesson Corporation responds to the Requests as required by the definition of "Parties" in Rule 26.3(c)(5) in the LCR, and "mean[s] the party and, where applicable, its officers,

BUCHALTER
A Professional Corporation
Los Angeles

BN 45978795v1                                                        5

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

directors, employees, partners, corporate parent, subsidiaries or affiliates.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation."

  b. The definition of "**A&P**" and "**Debtor**" in the Requests is overbroad and ambiguous.

  McKesson Corporation objects to the Requests as vague and ambiguous due the Committee's definition of the terms "A&P" and "Debtor."  The Committee defines those terms as including (i) "any past or present parent, subsidiary, or affiliate of, or successor to The Great Atlantic & Pacific Tea Company, Inc.;" (ii) any entity having common ownership or control with any of the foregoing; and (iii) any officer, director, member, employee, attorney, accountant, consultant, partner, principal, representative, advisor or agent of any of the foregoing.  The terms "A&P" and "Debtor" also include any person acting for or on behalf of any of the foregoing."

  In large part, McKesson Corporation has no reasonable basis to determine who is, and who is not included within the definition.  In responding to the Requests, McKesson Corporation will respond as if the terms "A&P" and "Debtor" mean only the debtors in bankruptcy, and to the extent known, the then-current officers, directors, members, employees, agents, subsidiaries and affiliates.

  c. The definition of "**payment**" in the Requests is overbroad and ambiguous.

  McKesson Corporation objects to the Requests as vague and ambiguous due the Committee's definition of the term "payment."  The Committee defines "payment" as "any transfer, transmission, or provision of anything of value from one person, party or entity to, for or for the benefit of another. . . . Each 'Transfer' as defined in this document is also a 'payment.'"  The Committee then proceeds to define "transfer" as "any transfer or payment made by Debtor to McKesson that is alleged in the Complaint."  The Committee's "definitions" of "payment" and "transfer" are circularly phrased and designed to impermissibly broaden the scope of document production beyond the requirements of the Rules.

  In responding to these Requests, the term "payment" is construed to mean "performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."  *See* Black's Law Dictionary (11th ed. 2019).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

6

DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

d. <u>A number of "definitions" in the Requests are inherently ambiguous as each is at odds with the comparable and controlling definition in the Rules.</u>

The term "**document**" is defined in the Request as "synonymous in meaning and equal in scope" to the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the FRCP.  That rule defines the scope as "any designated documents or electronically stored information-including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations-stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."  The definition of "document" in the Request is ambiguous in that it states that the term document "is synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information'" in Rule 34(a) of the FRCP, but then purports to expand upon the referenced definition with 186 additional words.  McKesson Corporation responds to the Requests using that term as defined in the Rules.

The term "**concerning**" is defined in Rule 26.3(c)(7) of the LCR as "relating to, referring to, describing, evidencing, or constituting."  The Committee purports to expand on that definition by adding:  "[i]t also means alluding to, supporting, providing, disproving, connected with, commenting on, in respect of, about, regarding, discussing, showing, reflecting, recording, analyzing, summarizing, or memorializing."  McKesson Corporation responds to the Requests using that term as defined in the Rules.

The term "**communication**" is defined in Rule 26.3(c)(1) of the LCR as "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)."  Conversely, the Committee defines "communication" as "any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken work, face-to-face exchange, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other electronic transmission.  The term 'communication' also includes any contact between two or more persons by any means."  McKesson Corporation responds to the Requests using that term as defined in the Rules.

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

The term "**all**" is described as "in accord" with Rule 26.3 of the LCR, but the Request goes on to state "the terms 'all,' 'any' and 'each' should be interpreted as broadly as possible to include anyone or anything that would be included if a different one of those terms had been used." On the other hand, Rule 26.3(d)(1) of the LCR states "[t]he terms 'all,' 'any,' and 'each' shall each be construed as encompassing any and all." McKesson Corporation responds to the Requests using any such term as defined in Rule 26.3(d)(1) of the LCR.

The terms "**and**" and "**or**" are defined in the Requests, claiming to be "in accord with" Rule 26.3 of the LCR, but yet states "the words 'and' and 'or' should both be construed as 'and/or' if that broadens a Request, definition or instruction." Rule 26.3(d)(2) of the LCR states "[t]he connectives 'and' and 'or' shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope." McKesson Corporation responds to the Request using any such term as defined in Rule 26.3(d)(1) of the LCR.

The term "**significant customer**" is confusing and ambiguous, and for that reason will be ignored.

Similarly, each term defined in the Bankruptcy Code but not defined in the Responses has the meaning ascribed to the term in the Bankruptcy Code.

## RULES OF CONSTRUCTION

1.      The Requests start with a section entitled "Rules of Construction," and correctly refers to Local Civil Rule 26.3 ("Rule 26.3"). Rule 26.3 provides, among other things, that "[n]o discovery request shall use broader definitions or rules of construction than those set forth in paragraphs (c) and (d)." The prefatory statement in paragraph (d) of Rule 26.3 reads: "[t]he following rules of construction apply to all discovery requests." The Requests fail to rely on the terms described in Rule 26.3 and instead use different words for two of the three rules of construction. In responding to the Requests, McKesson Corporation will not use the language in the "Rules of Construction" part of the Requests and instead relies entirely upon the language in Rule 26.3(d).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                    8
**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

2.      Except as specifically referenced in response to certain Requests, McKesson Corporation responds only to the extent that documents are generated on or after April 1, 2014 through December 31, 2015, inclusive (the "**Time Frame**").  The Time Frame has been agreed to among the Committee and the McKesson Entities.

3.      The terms "**include**" and "**including**" are not limiting.

4.      The term "**or**" is not exclusive.

**RESPONSES TO THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

All communications with any expert witness or potential expert witness.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      The Request seeks protected information in violation of FRCP 26;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad;

4.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame; and

5.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 2:**

All documents concerning any expert retained, or potentially to be retained, in connection with these Adversary Proceedings, including any contract or draft contract.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      The Request seeks protected information in violation of FRCP 26;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

9

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad;

4.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame; and

5.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, and relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning actual or potential compensation of any expert retained, or potentially to be retained, in connection with these Adversary Proceedings.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      The Request is ambiguous and impermissibly vague; and

2.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, and relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**

All documents concerning any facts, data or assumptions that McKesson's counsel provided and that the expert considered in forming his opinions.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                          10
**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      The Request is ambiguous and impermissibly vague.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and any other materials provided to any expert witness retained, or potentially to be retained, in connection with an Adversary Proceeding, including all documents listed in Appendix B to each of Mr. Berk's expert reports and all documents listed in Exhibit B to Timothy Kosty's expert report.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

McKesson Corporation objects to this Request for each of the following reasons:

1.       The Request seeks protected information in violation of FRCP 26;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad;

4.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame; and

5.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 6:**

All Microsoft Excel spreadsheet reports from McKesson's SAP enterprise software systems for the period of January 1, 2014, to April 17, 2020.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

11

DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

McKesson Corporation objects to this Request for each of the following reasons:

1.  The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.  The Request is ambiguous and impermissibly vague;

3.  The Request is unreasonably broad; and

4.  The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

To the extent not already produced, subject to an acceptable confidentiality agreement and without waiving these objections, and to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 7:**

All Microsoft Excel spreadsheet reports from McKesson Specialty's SAP enterprise software systems for the period of April 1, 2014, to April 19, 2015.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

McKesson Corporation objects to this Request for each of the following reasons:

1.  The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.  The Request is ambiguous and impermissibly vague;

3.  The Request is unreasonably broad; and

4.  The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

To the extent not already produced, subject to an acceptable confidentiality agreement and without waiving these objections, and to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive,

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                12

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

1   non-privileged, relevant documents, if any, within its possession, custody, or control following a

2   reasonable search.

3   **REQUEST FOR PRODUCTION NO. 8:**

4         All documents concerning McKesson's payment to the Debtor of $562,832.91, or

5   substantially that amount, in June or July 2015.

6   **OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

7         McKesson Corporation objects to this Request for each of the following reasons:

8         1.     Any inquiry into any such claimed credit is beyond the scope of the pleadings in

9   the Adversary Proceedings, and irrelevant to the issues;

10         2.     The Request is ambiguous and impermissibly vague;

11         3.     The Request is unreasonably broad; and

12         4.     The Request seeks a voluminous amount of information and is unlikely to lead to

13   admissible material.

14         McKesson Corporation will not produce documents in response to this Request.

15   **REQUEST FOR PRODUCTION NO. 9:**

16         All documents concerning McKesson's actions, and whether it took any actions, concerning

17   or in connection with, its payment to the Debtor of $562,832.91, or substantially that amount, in June

18   or July 2015, including any action to adjust or reduce a post-petition payment to the Debtor.

19   **OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

20         McKesson Corporation objects to this Request for each of the following reasons:

21         1.     Any inquiry into any such claimed credit is beyond the scope of the pleadings in

22   the Adversary Proceedings, and irrelevant to the issues;

23         2.     The Request is ambiguous and impermissibly vague;

24         3.     The Request is unreasonably broad; and

25         4.     The Request seeks a voluminous amount of information and is unlikely to lead to

26   admissible material.

27         McKesson Corporation will not produce documents in response to this Request.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

13

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning the deduction or apparent deduction of $562,833 mentioned in Document McKesson-0001709.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

All documents concerning any action McKesson took to pay, credit or reimburse itself, or set off, any payment that the Defendant had previously made to A&P, including any action to pay, credit or reimburse itself, or set off, approximately $562,000.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                    14

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 12:**

All documents, including accounting records, concerning the "June pre-petition prepayment" referenced in Document McKesson-0068099 and any reimbursement or credit McKesson took or received concerning, as a result of, or in connection with that "prepayment."

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning the approximately $562,000 that McKesson paid to the debtor on or about July 16, 2015 as referenced in Document McKesson-0001725 to McKesson-0001726, including all documents concerning Mr. Carnahan's email dated November 24, 2015 mentioning "$562k" which is included in that document.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                    15
**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning the "June credits issued" referenced in Document McKesson-0068099.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 15:**

All documents concerning whether each of the amounts listed in Document McKesson-0068099 in the column headed "July after 7/19" were paid to the Debtor in whole or in part.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning whether payment of any of the amounts listed in Document McKesson-0068099 in the column headed "July after 7/19" were or should be, or should have

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                        16

DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

1  been, reduced on account of any of the sums appearing in parentheses in that column, or any other

2  sum, before payment.

3  **OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

4      McKesson Corporation objects to this Request for each of the following reasons:

5      1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in

6  the Adversary Proceedings, and irrelevant to the issues;

7      2.      The Request is ambiguous and impermissibly vague;

8      3.      The Request is unreasonably broad; and

9      4.      The Request seeks a voluminous amount of information and is unlikely to lead to

10  admissible material.

11      McKesson Corporation will not produce documents in response to this Request.

12  **REQUEST FOR PRODUCTION NO. 17:**

13      All documents concerning any rebate or credit due, or potentially due, to A&P,

14  irrespective of whether McKesson determined to pay the rebate or credit or determined that

15  payment was not in fact due.

16  **OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

17      McKesson Corporation objects to this Request for each of the following reasons:

18      1.      Any inquiry into any such claimed credit is beyond the scope of the pleadings in

19  the Adversary Proceedings, and irrelevant to the issues;

20      2.      The Request is ambiguous and impermissibly vague;

21      3.      The Request is unreasonably broad; and

22      4.      The Request seeks a voluminous amount of information and is unlikely to lead to

23  admissible material.

24      McKesson Corporation will not produce documents in response to this Request.

25  **REQUEST FOR PRODUCTION NO. 18:**

26      All documents concerning whether A&P was due, entitled to, potentially due, or

27  potentially entitled to – or was given or credited for – a price or cost of goods sold reduction

28  because of its payment in accord with McKesson's revised credit terms in July 2015.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                    17
**DEFENDANT'S OBJECTIONS AND RESPONSES TO**
**PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 18**:

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed discount based on a costs of goods adjustment is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 19**:

All documents concerning whether A&P should be given a discount price or cost of goods sold reduction because it paid any invoice in July 2015 more promptly than A&P had typically paid its invoices before McKesson changed A&P's payment terms.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed discount based on a costs of goods adjustment is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 20**:

All documents concerning the "COGS" or "cost of goods sold" adjustment referenced in Documents McKesson-0001471, McKesson-0102424 or McKesson-0104927, including all documents concerning whether A&P was ever provided with a cost of goods sold adjustment in or after July 2015.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                18

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed discount based on a costs of goods adjustment is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to identify each Debtor Account.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed balance in any "Debtor Account" is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to establish the balance, and any change in the balance, of any Debtor Account.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed balance in any "Debtor Account" is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

19

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 23:**

Any sums that any Defendant segregated for possible credit or payment to, or because of actual or potential claims by, A&P, and the sources, disposition and current location of those funds.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed balance in any "Debtor Account" is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

4.      The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning bank account number 066828 referenced in document McKesson-0001703, or any other account to which any sums from account number 066828 were transferred, or any other account which served in the place of account number 066828.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      Any inquiry into any such claimed balance in any "Debtor Account" is beyond the scope of the pleadings in the Adversary Proceedings, and irrelevant to the issues;

2.      The Request is ambiguous and impermissibly vague;

3.      The Request is unreasonably broad; and

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

4.       The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All depositions transcripts and declarations that McKesson submitted from Jenifer Towsley in any other bankruptcy case or adversary proceeding, or appeal from a bankruptcy case or adversary proceeding, after January 1, 2015.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

Notwithstanding the objections to this Request, McKesson Corporation will produce two declarations from significant bankruptcy cases.  McKesson Corporation will not produce any other documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 26:**

All depositions transcripts and declarations that McKesson submitted after January 1, 2015 in any other bankruptcy case or adversary proceeding, or appeal from a bankruptcy case or adversary proceeding, mentioning or concerning McKesson's business, credit or payment terms, or any change in those terms.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to
admissible material.

Notwithstanding the objections to this Request, McKesson Corporation will produce two declarations from significant bankruptcy cases.  McKesson Corporation will not produce any other documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 27:**

All declarations submitted in a bankruptcy court by any party after January 1, 2015 which state or allege, in substance, that McKesson's conduct contributed to the debtor's financial problems or was one of the causes of its bankruptcy.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal
issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to
admissible material.

Notwithstanding the objections to this Request, McKesson Corporation will produce two declarations from significant bankruptcy cases.  McKesson Corporation will not produce any other documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 28:**

Each of McKesson's contracts with significant customers with whom McKesson did business during any part of the period from January 1, 2014 through the Petition Date, including the provisions of those contracts or any amendments of those contracts with respect to (a) the customer's actual or possible financial difficulty or (b) McKesson's payment or credit terms, (c) McKesson's right to change payment or credit terms and (d) the customer's actual or potential failure or inability to pay any sum when due.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                22

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

McKesson Corporation objects to this Request for each of the following reasons:

1.  The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.  The Request is ambiguous and impermissibly vague;

3.  The Request is unreasonably broad; and

4.  The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to identify each customer of McKesson which used McKesson Connect software and which if any of those customers replaced McKesson with a different supplier.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

McKesson Corporation objects to this Request for each of the following reasons:

1.  The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.  The Request is ambiguous and impermissibly vague;

3.  The Request is unreasonably broad; and

4.  The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 30:**

Documents sufficient to identify each customer of McKesson which used EnterpriseRX and which if any of those customers replaced McKesson with a different primary supplier.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

McKesson Corporation objects to this Request for each of the following reasons:

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to identify each customer of McKesson which used McKesson's Relay software and which if any of those customers replaced McKesson with a different supplier.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 32:**

Documents sufficient to identify each company which used EnterpriseRX, McKesson Connect or McKesson's Relay software for which McKesson was not its primary supplier of pharmaceuticals at the time.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1

24

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

3. The Request is unreasonably broad; and

4. The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 33:**

Documents sufficient to identify each company which used EnterpriseRX, McKesson Connect or McKesson's Relay software for which McKesson was not its primary supplier of prescription drugs at the time.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

McKesson Corporation objects to this Request for each of the following reasons:

1. The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2. The Request is ambiguous and impermissibly vague;

3. The Request is unreasonably broad; and

4. The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to identify any customer who negotiated, or attempted to negotiate, contractual provisions different from A&P's concerning (a) the customer's actual or possible financial difficulty or (b) a Defendant's right to change payment or credit terms, or (c) the customer's actual or potential failure or inability to pay any sum when due.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

McKesson Corporation objects to this Request for each of the following reasons:

1. The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2. The Request is ambiguous and impermissibly vague;

3. The Request is unreasonably broad; and

DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

4.   The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to identify each of McKesson's significant customers whose payment or credit terms changed between January 1, 2014 and April 17, 2020 and, for each such customer, documents sufficient to identify: (a) how the payment terms were changed, (b) whether the customer ever objected to the change, and on what grounds, (c) whether the parties negotiated concerning the change in payment terms; and (d) the final payment terms which McKesson imposed or to which the parties agreed.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.   The Request is ambiguous and impermissibly vague;

3.   The Request is unreasonably broad; and

4.   The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning any memorandum or other document stating McKesson's policy concerning conduct or procedures for addressing customers' actual or potential financial distress or failure, or potential failure, to make payment when due.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is ambiguous and impermissibly vague;

2.   The Request is unreasonably broad; and

3.   The Request seeks a voluminous amount of information and is unlikely to lead to

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 45978795v1                                    26
DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

admissible material.

McKesson Corporation already produced certain responsive documents to this request, including its credit department practice manual.  McKesson Corporation will not produce any other documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 37:**

Documents sufficient to identify each of McKesson's significant customers whose credit terms at any time required them to prepay, pay C.O.D., pay on the same day as merchandise was delivered, or pay within one day after merchandise was delivered. For each such customer, produce contracts, agreements, correspondence or other document or communications sufficient to identify the significant customer's payment terms, any reasons for those terms, and any reasons for any change in those terms.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

McKesson Corporation objects to this Request for each of the following reasons:

1.  The Request is vexatious with no probative value relevant to the factual and legal issues associated with the Adversary Proceeding;

2.  The Request is ambiguous and impermissibly vague;

3.  The Request is unreasonably broad; and

4.  The Request seeks a voluminous amount of information and is unlikely to lead to admissible material.

McKesson Corporation will not produce any documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 38:**

All documents requested in the email from Richard Milin to Jeffrey K. Garfinkle and others on Wednesday, April 28, 2021, including the 58 requested invoices and "J. Knipper's records of shipment and delivery."

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

McKesson Corporation objects to this Request for each of the following reasons:

1.   The Request is ambiguous and impermissibly vague;

2.      The Request is unreasonably broad; and

**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

3.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

**REQUEST FOR PRODUCTION NO. 39:**

All documents that Plaintiff's counsel requested from McKesson's counsel by email on May 4, 2021, or that Jeffrey K. Garfinkle agreed to provide to Plaintiff's counsel in his responding email of May 4, 2021, that have not yet been produced.

**OBJECTION AND RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

McKesson Corporation objects to this Request for each of the following reasons:

1.      The Request is ambiguous and impermissibly vague;

2.      The Request is unreasonably broad; and

3.      The Request is overbroad in that it seeks documents without any limit as to time. McKesson Corporation will respond to the Request only to the extent of the Time Frame.

Subject to an acceptable confidentiality agreement and without waiving these objections, to the extent McKesson Corporation understands this Request, McKesson Corporation will produce or make available for inspection all responsive, non-privileged, relevant documents, if any, within its possession, custody, or control following a reasonable search.

DATED:  June 21, 2021                          BUCHALTER, A Professional Corporation


By:   _/s/ Jeffrey K. Garfinkle_
Jeffrey K. Garfinkle, Esq.
(Cal Bar. No. 153496; admitted *pro hac vice*)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Fax: (949) 720-0182
jgarfinkle@buchalter.com
Attorneys for MCKESSON
CORPORATION

BUCHALTER
A Professional Corporation
Los Angeles

BN 45978795v1                                    28
**DEFENDANT'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

# EXHIBIT 2

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

July 6, 2021

<u>Via E-mail</u>

Jeffrey Garfinkle, Esq.
Buchalter
18400 Von Karman Drive, Suite 800
Irvine, CA 92612

   **Re:** **The Official Committee of Unsecured Creditors v. McKesson Corp.**
      **(Adv. Pro. 17-08264 (RDD));**
      **The Official Committee of Unsecured Creditors v. McKesson Pharmacy**
      **Systems LLC (Adv. Pro. 17-08265 (RDD)); and**
      **The Official Committee of Unsecured Creditors v. McKesson Specialty Care**
      **Distribution Corp. (Adv. Pro. 17-08266 (RDD))**

Dear Jeff:

   We write in response to McKesson's Objections and Responses (the "Responses") to Plaintiff's Third Request for the Production of Documents (the "Requests," and each of the numbered requests within that document, a "Request"). We also address certain assertions in McKesson's letter of June 14, 2021, which preceded it.

   As a preliminary matter, Plaintiff's Third Request is not a Request for "the moon and the stars," as McKesson poetically but inaccurately claims. Rather, Plaintiff's Requests are narrowly tailored to address specific issues such as those raised by McKesson's newly disclosed experts, factual issues that Plaintiff was only able to identify after review of McKesson's document production, and issues that the parties emailed about for months but McKesson ultimately chose to ignore, such as McKesson's improper post-petition seizure of more than $562,000 of A&P's money in violation of the automatic stay. McKesson finally admitted that it took A&P's money at Ms. Towsley's deposition in June but refuses to provide documents about it.

   Further, McKesson's repeated complaints that Plaintiff's Third Request seeks "irrelevant" information are based on a self-servingly narrow and completely unjustified view of the issues. For example, McKesson now asserts that the preferential transfers it received are shielded from avoidance because it dealt with A&P on the same "ordinary business terms" that it applied to other major retailers. Nevertheless, McKesson has objected to producing any documents concerning its treatment of other retailers as having "no probative value," which is logically inconsistent. (*See* McKesson's Responses to Requests 25-28, 34-35, 37.) Also, McKesson claims the right to exercise an equitable setoff of more than $1.7 million, but refuses to provide documents concerning its grossly inequitable seizure of A&P's $562,000 in violation of the automatic stay, claiming that whether McKesson behaved inequitably is somehow "irrelevant to the issues." We are confident that the Court will disagree.

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

Similarly, McKesson's Responses are by no means a "good faith effort to supply as much factual information as is presently known" as McKesson claims.  Here are four additional examples of McKesson's baseless objections:

- McKesson objects to producing its communications with its experts based on the extraordinary assertion that "[w]e are not sure how a 'communication' can be produced." (McKesson's letter of June 14, 2021 at 4.)  Yet the term "communication" is specifically defined in the applicable Local Rules, communications are routinely produced in substantially every litigation, and thousands of emails, which are undeniably "communications," have already been produced in Plaintiff's adversary proceedings (the "Adversary Proceedings").  There is no genuine mystery concerning how to produce communications.

- Plaintiff's Request 3 asks for documents concerning McKesson's compensation of its experts, which McKesson is required to produce under Fed. R. Civ. P. 26.  McKesson's Response falsely objects that Request 3 is "without limit as to time" and states that it will only provide documents "generated" before December 31, 2015 – before Plaintiff's adversary proceedings had even been commenced.  Thus, McKesson's objection would deny Plaintiff documents that the Rules of Civil Procedure specifically entitle it to obtain and is obviously improper.

- McKesson's employees believed that McKesson was contractually required to reduce the prices it charged A&P because of McKesson's unilateral reduction of A&P's credit terms in July 2015.  It appears that A&P was never given the benefit of this price reduction, even though McKesson has repeatedly asserted that its actions were in the "ordinary course of business" because it fully complied with its contracts with A&P.  Yet McKesson's Responses refuse to produce any documents concerning A&P's possible entitlement to a price reduction because they are purportedly "irrelevant."

- Local Rule 26.3 provides that "[t]his rule is not intended to broaden or narrow the scope of discovery permitted by the Federal Rules of Civil Procedure."  Nevertheless, McKesson indicates that it will rely on this Rule as a basis for restricting its document production.

Given the timing, and the large number of baseless objections in McKesson's Responses, this letter will respond selectively below.  The remaining issues will best be addressed in a conference call.  Subject to the points discussed below, Plaintiff is willing to negotiate concerning any definition, instruction or Request that appears to be unreasonably broad.

1.      ***Documents concerning experts, Requests 1-5***.  Documents responsive to Requests 1-5 should be produced immediately.  We recognize McKesson's right to take advantage of the exclusions from production specified in Fed. R. Civ. P. 26, but after those documents have been excluded, no further "reasonable search" should be necessary, and the parties already have a confidentiality order in

2

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

place.  We reserve the right to object to McKesson's admission of its expert reports into evidence because of its delay, and to amend our own expert reports based on McKesson's late disclosures.

McKesson's objections to Requests 1-5, except as permitted by Fed. R. Civ. P. 26(b)(4), are baseless.  For example, McKesson objects to Request 1, 2, 3 and 5, which seek communications with experts, documents concerning experts' compensation, facts or other materials provided to experts, and similar documents because the Requests are purportedly "without limit as to time."  That is factually untrue.  Plaintiff's Requests do specify a time limit, and Requests 1-5 are inherently limited as to time because they are bounded by your consultation and retention of experts for the Adversary Proceedings.  Also, McKesson goes on to state that it will only produce documents "generated" through December 31, 2015, more than eighteen months before Plaintiff's Adversary Proceedings were even commenced.  McKesson even objects that it is "not sure how a 'communication' can be produced," which is disingenuous at best.

We further note that McKesson objects to producing the documents that its experts identified in Appendix B to their respective reports as materials they considered, asserting that Plaintiff's "Request seeks protected information in violation of FRCP 26."  Yet Federal Rule of Civil Procedure 26(a)(2) actually *requires* McKesson to produce those materials as "facts or data considered by the witness" in forming an opinion.

Please also inform us if McKesson plans to withhold any documents based on its objections to Requests 1 through 5 so that we can promptly seek judicial assistance.  To the extent that McKesson retained its experts in Plaintiff's adversary proceedings for other litigations as well, such that Plaintiff's Requests would encompass a large number of documents that McKesson in good faith considers irrelevant, please produce each report that each expert submitted in those litigations and an identification of which other litigations McKesson's experts worked on for McKesson, or a group including McKesson, but did not submit reports.  The parties can then discuss whether any additional documents concerning the experts' retention in other litigations should be produced.

2.    ***Spreadsheets from McKesson's SAP system, Requests 6-7***.  McKesson objects to producing spreadsheets from its SAP system as, inter alia, "vexatious" and of "no probative value." Plaintiff reserves the right to object to McKesson's introduction of any such spreadsheets into evidence on these same grounds.  Plaintiff further reserves its right to reply to McKesson's objections to Requests 6 and 7 after the planned meeting of the parties' accountants to attempt to resolve numerical issues in the Adversary Proceedings.  Finally, Plaintiff of course only seeks spreadsheets concerning A&P.  The omission was inadvertent – as a simple inquiry could have determined – and not a ground for the pretended outrage expressed in McKesson's letter of June 14.

3.    ***Documents concerning McKesson's improper seizure of $562,832.91, Requests 8-16***. McKesson has refused to produce any documents concerning its improper seizure of approximately $562,000 from A&P after A&P's Petition Date.  According to McKesson, these Requests are "beyond the scope of the pleadings" and "irrelevant."  That is plainly incorrect – McKesson's actions constitute, at a minimum, an equitable defense to any setoff McKesson seeks to assert.  Further, Requests 8 through

3

16 request subsets of the documents Plaintiff requested previously in Requests 11 and 13 of its Second Request for Production dated March 11, 2020 which McKesson failed to produce.  Accordingly, please confirm that McKesson will produce the requested documents, or we will be forced to seek judicial assistance.

4. ***Documents concerning unpaid credits or rebates, Request 17***.  McKesson has refused to produce documents concerning credits or rebates as "beyond the scope of the pleadings" and "irrelevant."  However, there is evidence that McKesson improperly seized at least $7,000 paid for "June credits issued" in addition to the $562,000 discussed above.  Plaintiff understands that there is a waiver of certain post-petition payments of pre-petition rebates and credits in the parties' Extension Agreement.  Nevertheless, Plaintiffs are entitled to the documents specified in Request 17 to determine both whether McKesson inequitably seized additional sums as well as whether McKesson changed its procedures with respect to rebates and credits prior to the Petition Date, which is relevant to McKesson's "ordinary course of business" defense.  Accordingly, if you intend to continue to refuse to produce documents in response to Request 17, please inform us so that we can seek judicial assistance.

5. ***Documents concerning a cost of goods sold reduction, Requests 18-20***.  McKesson has refused to produce documents concerning the cost of goods sold reduction that McKesson's Jenifer Towsley discussed in McKesson document 0001471 as "beyond the scope of the pleadings" and "irrelevant."  In that document, Ms. Towsley stated, "We need to talk about COGS adjustment.  Per the contract, we need to give [A&P] a basis point adjustment for the new terms."  The adjustment Ms. Towsley mentions is relevant, at a minimum, to whether McKesson's change in payment terms complied with the parties' Supply Agreement and was, as McKesson claims, in the ordinary course of business.  Accordingly, if you intend to continue to refuse to produce documents in response to Requests 18-20, please inform us so that we can seek judicial assistance.

6. ***Documents concerning McKesson's A&P accounts, Requests 21-24***.  McKesson has refused to produce documents concerning its accounts for A&P, and possible segregation of amounts potentially due to A&P, as "beyond the scope of the pleadings" and "irrelevant."  However, Plaintiff is entitled to these documents to determine whether McKesson engaged in additional misconduct in violation of the automatic stay, to determine whether McKesson has segregated or paid itself the sums it improperly seized from the Debtor, whether McKesson is entitled to equitable setoff or recoupment, and whether McKesson altered its procedures in handling payments to and from A&P from its prior ordinary course of business.  Accordingly, if you intend to continue to refuse to produce documents in response to Requests 21-24, please inform us so that we can seek judicial assistance.

7. ***Jenifer Towsley's deposition transcripts and declarations, Request 25***.  McKesson has refused to produce more than two declarations of its own choosing in response to Plaintiffs' request for Ms. Towsley's deposition transcripts and declarations submitted in other bankruptcy proceedings.  These documents may be highly probative concerning McKesson's conduct with respect to other major, "strategic" retailers as well as concerning McKesson's conduct with respect to other financially struggling companies.  They also may indicate whether Ms. Towsley's position has remained consistent.

420 Lexington Avenue, 4th Floor, New York, NY 10170
Tel: 646-998-5580  |  Fax: 646-998-8284  |  info@grifflegal.com  |  www.grifflegal.com

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

McKesson has not specified how many deposition transcripts or declarations are responsive to Request 25, and it has no right to choose among them for its own self-serving purposes. Accordingly, Plaintiff requests that McKesson immediately produce the two offered declarations and provide a list of proceedings in which Ms. Towsley has submitted declarations or deposition testimony. Absent this information, Plaintiff has no basis for compromise concerning which declarations or testimony McKesson should produce.

8.     ***McKesson deposition transcripts and declarations, Request 26***.  McKesson has refused to produce more than two declarations of its own choosing in response to Plaintiffs' request for deposition transcripts and declarations submitted in other bankruptcy proceedings "mentioning or concerning McKesson's business, credit or payment terms, or any change in those terms."  Yet McKesson contends that it treated A&P on ordinary business terms, just as it treated other similarly situated retailers.  If McKesson wants to contend that it treated A&P as it treated others, it has an obligation to produce documents concerning whether that is, in fact, the case.  The documents Plaintiff has requested may be highly probative concerning McKesson's conduct with respect to other major, "strategic" retailers as well as concerning McKesson's conduct with respect to other financially struggling companies.

Also, McKesson has not specified how many deposition transcripts or declarations are responsive to Request 26, and it has no right to choose among them for its own self-serving purposes. Accordingly, Plaintiff requests that McKesson immediately produce the two offered declarations and provide a list of proceedings in which McKesson has submitted declarations or deposition testimony "mentioning or concerning McKesson's business, credit or payment terms, or any change in those terms."  Absent this information, Plaintiff has no basis for compromise concerning which declarations or testimony McKesson should produce.

9.     ***Declarations submitted in bankruptcy court which allege that McKesson contributed to struggling companies' financial problems or caused their bankruptcy, Request 27***.  McKesson has refused to produce more than two declarations of its own choosing in response to Request 27, asserting that the Request is "vexatious with no probative value," which is patently incorrect, and "seeks a voluminous amount of information" which, if true, would be telling.  McKesson has introduced the issue into the Adversary Proceedings whether McKesson treated A&P on "ordinary business terms" which are the same as McKesson and other pharmaceutical wholesalers treat other major "strategic" retailers.  As a result, Plaintiff is entitled to know how other debtors have alleged that McKesson treated them, and Request 27 is narrowly tailored to that issue.  McKesson has no right to choose among its responsive documents for its own self-serving purposes.  Accordingly, Plaintiff requests that McKesson immediately produce the two offered declarations and provide a list of bankruptcy proceedings in which a declarant has alleged that McKesson contributed to the debtor's financial problems or was one of the causes of its bankruptcy.  Absent this information, Plaintiff has no basis for compromise concerning which declarations or testimony McKesson should produce.

10.     ***McKesson's contracts with similar retailers, Request 28***.  McKesson has refused to produce any contracts with its customers similar to A&P with whom it did business during the 19

5

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

months before A&P's bankruptcy even though McKesson contends that it treated A&P just as it treated other similar retailers.  According to McKesson, Plaintiff's request to review its contracts with other similar retailers is "vexatious with no probative value," which is patently incorrect, and "seeks a voluminous amount of information."  However, McKesson's deposition testimony indicates that the number of its customers similar to A&P was extremely small, and its contracts tend to be short.  Accordingly, please inform us (a) how many strategic retail customers similar to A&P McKesson had during the specified time period, and (b) how many pages of documents are responsive to Request 28.  Plaintiffs estimate that the number of pages called for by Request 28 is likely to be no more than between 500 and 1,000.  However, Plaintiffs are willing to reduce the number of contracts if McKesson can show that Request 28 calls for truly irrelevant documents.  In the meantime, please produce the McKesson's contracts with the strategic retail customers Ms. Towsley identified at her deposition.

11.     ***Documents identifying McKesson's customers who use Enterprise RX, McKesson Connect or Relay software, Requests 29-33***.  McKesson has refused to produce documents sufficient to identify which of its customers use its software or which of those customers have switched to a different pharmaceutical supplier.  McKesson contends that Plaintiff's Requests for these documents are "vexatious with no probative value."  Yet, as you know, McKesson contends that A&P could have replaced McKesson as its supplier with relative ease, whereas Plaintiff contends the contrary.  As you also know, Plaintiff contends that McKesson's software was one of the means by which McKesson retained its excessive control over A&P.  Plaintiff is willing, however, to agree to a significant narrowing of Requests 29-33.  Please produce documents sufficient to identify any strategic retailer which McKesson did business with in McKesson's Time Frame or the year thereafter which used Enterprise RX software yet replaced McKesson as its primary pharmaceutical supplier.

12.     ***McKesson customers who negotiated or attempted to negotiate different contractual provisions than A&P concerning financial difficulty, inability to pay, or changes in credit terms, and strategic customers for whom those terms changed after January 1, 2014, Requests 34 and 35***.  McKesson contends that Plaintiff's Requests 34 and 35 – which call for documents that identify McKesson customers who negotiated contractual provisions for addressing financial difficulty, inability to pay or changes in credit terms that were different from A&P's – are "vexatious with no probative value."  McKesson similarly refuses to produce documents concerning strategic retail customers' changes in credit terms.  McKesson is plainly incorrect.  Once again, McKesson contends that it treated A&P according to "ordinary business terms," yet it is unwilling to produce documents which relate directly to that issue.  Nevertheless, Plaintiffs are willing to narrow Requests 34 and 35 and to treat them as subsets of Request 28.  If McKesson fails to produce the documents Plaintiff has requested in Request 28, Plaintiff reserves the right to ask the Court to strike McKesson's "ordinary business terms" defense for failure to fulfill its discovery obligations.

13.     ***McKesson's credit manual, Request 36***.  McKesson contends that it has produced "certain responsive documents" in response to Request 36, including McKesson's "credit department practice manual," and flatly refuses to provide more.  It has no basis for doing so.  However, please provide  us with the Bates number for any "credit department practice manual" McKesson has produced and Plaintiff is likely to accept those documents in satisfaction of Request 36.

6

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

14.        ***Documents sufficient to identify McKesson's significant customers whose credit terms
required them to pay on specified terms, Request 37***.  McKesson once again has refused to produce
documents that are crucial for Plaintiff to test McKesson's contention that it treated A&P just like it
treated other strategic retail customers that were struggling financially.  Plaintiff is willing to negotiate
concerning the breadth of Request 37, but the starting point is for McKesson to identify which of its
relatively few strategic retail customers at or around the time of A&P's financial struggles were required
to pay within one day of delivery.  Please provide that information.


Plaintiff reserves its rights with respect to other issues.  Please provide us with the information
requested in this letter and let us know when you are available to confer in an attempt to resolve
outstanding discovery issues.  As I noted above, we are running up against important deadlines, and
McKesson's objections, which are untenable for the reasons stated above, risk materially prejudicing
Plaintiff in a way that will require judicial intervention.  Further, McKesson has so far made no offer
even to begin producing the documents it has agreed to produce.  We ask it to do so now.

Very truly yours,

/s/Richard Milin

Richard K. Milin

cc:  Tracy L. Klestadt, Esq.

7

# EXHIBIT 3

GRIFFIN HAMERSKY LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Richard K. Milin
Michael D. Hamersky

*Counsel for The Official Committee of Unsecured
Creditors on behalf of the bankruptcy estate of
The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : |  |
|  | : | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA | : |  |
| COMPANY, INC., *et al.*, | : | Case No. 15-23007 (RDD) |
| Debtors. | : |  |

---------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| The Official Committee of Unsecured Creditors on | : |  |
| behalf of the bankruptcy estate of THE GREAT | : | Adv. Proc. No. 17-08264 (RDD) |
| ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| McKESSON CORPORATION, | : |  |
|  | : |  |
| Defendant. | : |  |

---------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| The Official Committee of Unsecured Creditors on | : |  |
| behalf of the bankruptcy estate of THE GREAT | : | Adv. Proc. No. 17-08265 (RDD) |
| ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| McKESSON PHARMACY SYSTEMS LLC, | : |  |
|  | : |  |
| Defendant. | : |  |

---------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| The Official Committee of Unsecured Creditors on | : |  |
| behalf of the bankruptcy estate of THE GREAT | : | Adv. Proc. No. 17-08266 (RDD) |
| ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : | **PLAINTIFF'S THIRD** |
|  | : | **REQUEST FOR DOCUMENTS** |
| McKESSON SPECIALTY CARE | : |  |
| DISTRIBUTION CORPORATION, | : |  |
|  | : |  |
| Defendant. | : |  |

---------------------------------------------------------------------x

### PLAINTIFF'S THIRD REQUEST
### FOR PRODUCTION OF DOCUMENTS

Plaintiff The Official Committee of Unsecured Creditors ("**Plaintiff**"), on behalf of the Bankruptcy Estate of The Great Atlantic & Pacific Tea Company, Inc., *et al.*, its successors and assigns ("**A&P**"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable here by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, and the Rules of this Court, hereby requests that Defendants McKesson Corporation, McKesson Pharmacy Systems LLC and McKesson Specialty Care Distribution Corporation ("**Defendants**") produce the following documents and electronically stored information for inspection and copying by the undersigned attorneys for Plaintiff at the offices of Griffin Hamersky LLP, 420 Lexington Avenue, Suite 400, New York, New York 10170, within thirty days hereof.  Plaintiff further demands that Plaintiff supplement its response to this Request for Production in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, made applicable here by Rule 7026 of the Federal Rules of Bankruptcy Procedure.  Plaintiff intends to object at the time of trial to any documents or information responsive to these Requests that was not timely produced in response to these Requests.

### RULES OF CONSTRUCTION

In interpreting the following definitions, instructions and requests for production (the "**Requests**"), in accord with Local Civil Rule 26.3 of the United States District Court for the Southern District of New York (the "**Local Rule**"), made applicable here by Local Bankruptcy Rule 7026-1 of this Court, three rules of construction apply:

(i)        the words "and" and "or" should both be construed as "and/or" if that broadens a Request, definition or instruction.

1

(ii)     the terms "all," "any" and "each" should be interpreted as broadly as possible to include anyone or anything that would be included if a different one of those terms had been used; and

(iii)     the singular of any word should be interpreted to include the plural and vice versa.

## DEFINITIONS

The following definitions apply to each of the definitions, instructions and Requests herein, subject to, and in addition to, the Uniform Definitions in the Local Rule:

1.     The terms "**A&P**" and "**Debtor**" mean (a) The Great Atlantic & Pacific Tea Company, Inc.; (b) any past or present parent, subsidiary or affiliate of The Great Atlantic & Pacific Tea Company, Inc.; (c) the bankruptcy estates of The Great Atlantic & Pacific Tea Company, Inc. and of the other debtors in or formerly in this Chapter 11 case; (d) The Great Atlantic & Pacific Tea Company, Inc. and other debtors in or formerly in this Chapter 11 case operating or which operated as debtors in possession; (e) any entity having common ownership or control with any of the foregoing; (f) any successor or assign of any of the foregoing; and (g) any officer, director, member, employee, attorney, accountant, consultant, partner, principal, representative, advisor or agent of any of the foregoing.  The terms "**A&P**" and "**Debtor**" also include any person acting for or on behalf of any of the foregoing.

2.     The term "**Adversary Proceeding**" means any one or more of the adversary proceedings currently pending in this bankruptcy case against Defendant or any of its affiliates.

3.     The term "**communication**" means any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken word, face-to-face exchange, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other

2

electronic transmission. The term "communication" also includes any contact between two or more persons by any means. The term "**Communicate**" means to make or transmit a "communication" as defined above.

4.      The term "**Complaint**" means any or all of Plaintiff's Complaints in an Adversary Proceeding.

5.      The term "**concerning**" means relating to, referring to, describing, evidencing or constituting.  It also means alluding to, supporting, proving, disproving, connected with, commenting on, in respect of, about, regarding, discussing, showing, reflecting, recording, analyzing, summarizing, or memorializing.

6.      The term "**contract**" means any written or oral agreement, draft agreement or proposed agreement. The term "contract" also means any draft of, or potential or proposed modification, amendment, revision or replacement of, (a) a written or oral agreement, or (b) any term of a written or oral agreement. An "MOU" or memorandum of understanding is an "agreement" for purposes of this definition.

7.      The term "**Debtor Account**" means any internal or external account in which McKesson kept or recorded sums due or paid to, or potentially due or to be paid to, or segregated potentially for or in connection with, a Debtor.

8.      The term "**document**" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes all communications of any kind, as well as any written, printed, typed, electronic or other recorded matter of any type or nature, however produced or reproduced, including information recorded in paper, digital, analog, graphic, magnetic, electronic or photographic form; writings; diaries; emails and email attachments together with all identifying headers, addresses and routing information indicating recipients and authors or the date or dates

3

of creation, modification receipt or transmission; drawings; graphs; tables; photographs; telephone logs and records; electronic or computerized information, data or data compilations; computer files; term sheets; pitch books; financial records and books of account; journals; ledgers; audio recordings; video recordings; transcripts; memoranda; calendars; tables; invoices; appointment books; computer databases; PowerPoint or other presentations; CDs, DVDs or blu-ray discs; pamphlets; personnel files; correspondence; notes; bills and invoices. A draft or non-identical copy is a separate "document" within the meaning of that term. Also, any document bearing highlighting or annotations that are not identical to, and limited to, the highlighting or annotations on another document that has already been produced is a separate "document" within the meaning of that term.

9.       The term "**includes**" means "includes but is not limited to," and "**including**" means "including but not limited to."

10.      The term "**McKesson**" means Defendants McKesson Corporation, McKesson Pharmacy Systems LLC and McKesson Specialty Care Distribution Corporation; and any past or present parent, subsidiary, or affiliate of any of them; and any other entity having common ownership or control with them; and any present or former officer, director, member, employee, attorney, accountant, consultant, partner, principal, representative, advisor or agent of any of the foregoing. The term "**McKesson**" also includes any person acting for or on behalf of any of the foregoing, or claiming to do so.

11.      The term "**payment**" means any transfer, transmission, or provision of anything of value from one person, party or entity to, for, or for the benefit of another. The transfer, transmission or provision may be accomplished, among other means, by recording it in a book of account. For purposes of this definition, "value" includes any money, merchandise, goods, services, credit, rebate, reduction of sums due or potentially to be due, or deduction from

4

or offset against sums due or potentially to be due.  Each "Transfer" as defined in this document is also a "payment."

12.     The term "**payment terms**" means the means by which payment is made, the time payment is due, or any other specification concerning how one person or entity is to pay another.  The term "payment terms" also includes credit terms.

13.     The term "**person**," as defined in the Local Rule, means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14.     The term "**Petition Date**" means July 19, 2015, the day on which Debtor commenced its Bankruptcy Case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

15.     The term "**Plaintiff**," as defined in the first sentence of this document, means the Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of Debtor, or its successors or assigns.

16.     The term "**Preference Period**" means the period commencing with the date that is ninety (90) days before the Petition Date and ending with the Petition Date, inclusive.

17.     The term "**significant customer**" means a customer of McKesson that was managed by any of the same relationship managers as A&P, or which had four or more locations and purchased more than $50 million from McKesson in any year.

18.     The noun "**Transfer**" means any transfer or payment made by Debtor to McKesson that is alleged in the Complaint.

19.     The term "**you**" means, and term "**your**" refers to, "McKesson" as defined above.

5

## INSTRUCTIONS

1.       In response to each Request, produce all responsive documents within your possession, custody or control. Include any responsive documents in the possession, custody or control of your past or present officers, directors, members, employees, attorneys, accountants, representatives, consultants, advisors or agents and others within the definition of "your" above.

2.       In response to each Request, produce all responsive documents dated, created, sent, received, or reviewed during the period from January 1, 2014 to the present, or concerning any part of that period, unless a specific Request states otherwise.

3.       If any responsive document is maintained in electronic or computerized form, or in a database, produce the document in its electronic or computerized form in addition to any hard copies. Any documents in Word, PDF, Outlook or Excel format should be produced in that format.

4.       If any responsive document is produced in electronic or other intangible form – other than Word, PDF, Outlook or Excel – identify the device, program or operating system required to review, translate or interpret it.

5.       All documents should be produced as they are kept in the usual course of business or organized and labeled to correspond to the categories in the Requests.

6.       Each Request shall be deemed to include a request for any and all file folders within which each responsive document was contained as well as transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

7.       Documents attached to each other should not be separated.

6

8.      The fact that a document has been produced by another party or may be in another party's possession, custody or control does not relieve you of the obligation to produce your copy of the same document, even if the two are identical.

9.      If any document responsive to a Request is withheld under a claim of privilege or immunity from disclosure, furnish a list specifying each such document and setting forth the information required to be furnished by Fed. R. Civ. P. 26 and Local Rule 26.2 of the United States District Court for the Southern District of New York, irrespective of whether the Local Rule would otherwise apply.

10.     If any Defendant objects to any Definition, Rule of Construction, Instruction or Request in this Request for Production of Documents, or any part of it:  (i) state with specificity all grounds for its objection; (ii) identify with specificity any documents or information withheld pursuant to its objection; and (iii) provide all documents and information responsive to all portions of the Request to which Defendant does not state an objection or to which the objection does not apply. Any ground not stated in an objection within the time provided by the applicable rules, or any extension thereof, shall be deemed to be waived.

11.     If any Defendant at any time had possession, custody or control of a document or information that may be responsive to any Request and the document or information has been lost, destroyed – or is otherwise not presently in Defendant's possession, custody or control – state, with respect to each such document:  (i) the last date the document was in Defendant's possession, custody or control; (ii) the circumstances surrounding its loss, destruction, or separation from Defendant's possession, custody or control; (iii) the type of document (*e.g.*, letter, memo, email, computer disk, etc.) (iv) a description of the document to the best of Defendant's recollection; (v) all drafters, senders, receivers and custodians of the document, and (vi) Defendant's best recollection of the subject matter of the document.

7

12.     Each Request shall be continuing, and supplemental responses shall be served immediately as required by, and in accord with, Rule 26(e) of the Federal Rules of Civil Procedure.

13.     No claim of ambiguity with respect to any Definition, Instruction, Rule of Construction or Request in this Request for Production of Documents shall be relied upon as a basis for refusing to produce any responsive document or information unless Defendants expressly and timely object to the alleged ambiguity in the Definition, Instruction, Rule of Construction or Request and, in stating the objection, (i) specifically identify the ambiguity, and (ii) state the interpretation of the ambiguous language that the Defendants used in responding to the Request. Further, Defendants should resolve any ambiguity so as to give each Request the broadest possible scope consistent with Fed. R. Civ. P. 34 and Fed. R. Bankr. P. 7034.

14.     To the extent that there is any apparent conflict between applicable rules, Definitions, Instructions or Rules of Construction, each Request should be interpreted so as to give it the broadest possible scope consistent with Fed. R. Civ. P. 34 and Fed. R. Bankr. P. 7034.

## **DOCUMENTS TO BE PRODUCED**

Plaintiff requests that you produce the following documents:

1.     All communications with any expert witness or potential expert witness.

2.     All documents concerning any expert retained, or potentially to be retained, in connection with these Adversary Proceedings, including any contract or draft contract.

3.     All documents concerning actual or potential compensation of any expert retained, or potentially to be retained, in connection with these Adversary Proceedings,

4.     All documents concerning any facts, data or assumptions that McKesson's counsel provided and that the expert considered in forming his opinions.

8

5.      All documents and any other materials provided to any expert witness retained, or potentially to be retained, in connection with an Adversary Proceeding, including all documents listed in Appendix B to each of Mr. Berk's expert reports and all documents listed in Exhibit B to Timothy Kosty's expert report.

6.      All Microsoft Excel spreadsheet reports from McKesson's SAP enterprise software systems for the period of January 1, 2014, to April 17, 2020.

7.      All Microsoft Excel spreadsheet reports from McKesson Specialty's SAP enterprise software systems for the period of April 1, 2014, to April 19, 2015.

8.      All documents concerning McKesson's payment to the Debtor of $562,832.91, or substantially that amount, in June or July 2015.

9.      All documents concerning McKesson's actions, and whether it took any actions, concerning or in connection with, its payment to the Debtor of $562,832.91, or substantially that amount, in June or July 2015, including any action to adjust or reduce a post-petition payment to the Debtor.

10.     All documents concerning the deduction or apparent deduction of $562,833 mentioned in Document McKesson-0001709.

11.     All documents concerning any action McKesson took to pay, credit or reimburse itself, or set off, any payment that the Defendant had previously made to A&P, including any action to pay, credit or reimburse itself, or set off, approximately $562,000.

12.     All documents, including accounting records, concerning the "June pre-petition prepayment" referenced in Document McKesson-0068099 and any reimbursement or credit McKesson took or received concerning, as a result of, or in connection with that "prepayment."

9

13.     All documents concerning the approximately $562,000 that McKesson paid to the debtor on or about July 16, 2015 as referenced in Document McKesson-0001725 to McKesson-0001726, including all documents concerning Mr. Carnahan's email dated November 24, 2015 mentioning "$562k" which is included in that document.

14.     All documents concerning the "June credits issued" referenced in Document McKesson-0068099.

15.     All documents concerning whether each of the amounts listed in Document McKesson-0068099 in the column headed "July after 7/19" were paid to the Debtor in whole or in part.

16.     All documents concerning whether payment of any of the amounts listed in Document McKesson-0068099 in the column headed "July after 7/19" were or should be, or should have been, reduced on account of any of the sums appearing in parentheses in that column, or any other sum, before payment.

17.     All documents concerning any rebate or credit due, or potentially due, to A&P, irrespective of whether McKesson determined to pay the rebate or credit or determined that payment was not in fact due.

18.     All documents concerning whether A&P was due, entitled to, potentially due, or potentially entitled to – or was given or credited for – a price or cost of goods sold reduction because of its payment in accord with McKesson's revised credit terms in July 2015.

19.     All documents concerning whether A&P should be given a discount price or cost of goods sold reduction because it paid any invoice in July 2015 more promptly than A&P had typically paid its invoices before McKesson changed A&P's payment terms.

20.     All documents concerning the "COGS" or "cost of goods sold" adjustment referenced in Documents McKesson-0001471, McKesson-0102424 or McKesson-0104927,

10

including all documents concerning whether A&P was ever provided with a cost of goods sold adjustment in or after July 2015.

21.     Documents sufficient to identify each Debtor Account.

22.     Documents sufficient to establish the balance, and any change in the balance, of any Debtor Account.

23.     Any sums that any Defendant segregated for possible credit or payment to, or because of actual or potential claims by, A&P, and the sources, disposition and current location of those funds.

24.     All documents concerning bank account number 066828 referenced in document McKesson-0001703, or any other account to which any sums from account number 066828 were transferred, or any other account which served in the place of account number 066828.

25.     All depositions transcripts and declarations that McKesson submitted from Jenifer Towsley in any other bankruptcy case or adversary proceeding, or appeal from a bankruptcy case or adversary proceeding, after January 1, 2015.

26.     All depositions transcripts and declarations that McKesson submitted after January 1, 2015 in any other bankruptcy case or adversary proceeding, or appeal from a bankruptcy case or adversary proceeding, mentioning or concerning McKesson's business, credit or payment terms, or any change in those terms.

27.     All declarations submitted in a bankruptcy court by any party after January 1, 2015 which state or allege, in substance, that McKesson's conduct contributed to the debtor's financial problems or was one of the causes of its bankruptcy.

28.     Each of McKesson's contracts with significant customers with whom McKesson did business during any part of the period from January 1, 2014 through the Petition

11

Date, including the provisions of those contracts or any amendments of those contracts with respect to (a) the customer's actual or possible financial difficulty or (b) McKesson's payment or credit terms, (c) McKesson's right to change payment or credit terms and (d) the customer's actual or potential failure or inability to pay any sum when due.

29.    Documents sufficient to identify each customer of McKesson which used McKesson Connect software and which if any of those customers replaced McKesson with a different supplier.

30.    Documents sufficient to identify each customer of McKesson which used EnterpriseRX and which if any of those customers replaced McKesson with a different primary supplier.

31.    Documents sufficient to identify each customer of McKesson which used McKesson's Relay software and which if any of those customers replaced McKesson with a different supplier.

32.    Documents sufficient to identify each company which used EnterpriseRX, McKesson Connect or McKesson's Relay software for which McKesson was not its primary supplier of pharmaceuticals at the time.

33.    Documents sufficient to identify each company which used EnterpriseRX, McKesson Connect or McKesson's Relay software for which McKesson was not its primary supplier of prescription drugs at the time.

34.    Documents sufficient to identify any customer who negotiated, or attempted to negotiate, contractual provisions different from A&P's concerning (a) the customer's actual or possible financial difficulty or (b) a Defendant's right to change payment or credit terms, or (c) the customer's actual or potential failure or inability to pay any sum when due.

12

35.     Documents sufficient to identify each of McKesson's significant customers whose payment or credit terms changed between January 1, 2014 and April 17, 2020 and, for each such customer, documents sufficient to identify: (a) how the payment terms were changed, (b) whether the customer ever objected to the change, and on what grounds, (c) whether the parties negotiated concerning the change in payment terms; and (d) the final payment terms which McKesson imposed or to which the parties agreed.

36.     All documents concerning any memorandum or other document stating McKesson's policy concerning conduct or procedures for addressing customers' actual or potential financial distress or failure, or potential failure, to make payment when due.

37.     Documents sufficient to identify each of McKesson's significant customers whose credit terms at any time required them to prepay, pay C.O.D., pay on the same day as merchandise was delivered, or pay within one day after merchandise was delivered.  For each such customer, produce contracts, agreements, correspondence or other document or communications sufficient to identify the significant customer's payment terms, any reasons for those terms, and any reasons for any change in those terms.

38.     All documents requested in the email from Richard Milin to Jeffrey K. Garfinkle and others on Wednesday, April 28, 2021, including the 58 requested invoices and "J. Knipper's records of shipment and delivery."

39.     All documents that Plaintiff's counsel requested from McKesson's counsel by email on May 4, 2021, or that Jeffrey K. Garfinkle agreed to provide to Plaintiff's counsel in his responding email of May 4, 2021, that have not yet been produced.

13

Dated:  May 21, 2021

GRIFFIN HAMERSKY LLP

By: /s/ ***Richard Milin***
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284

*Counsel for The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc., et al.*

# EXHIBIT 4

GRIFFIN HAMERSKY LLP

ATTORNEYS AT LAW

August 4, 2021

**<u>Via E-mail</u>**

Jeffrey Garfinkle, Esq.
Buchalter
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612

> Re:     **The Official Committee of Unsecured Creditors v. McKesson Corp.
> (Adv. Pro. 17-08264 (RDD));
> The Official Committee of Unsecured Creditors v. McKesson Pharmacy
> Systems LLC (Adv. Pro. 17-08265 (RDD)); and
> The Official Committee of Unsecured Creditors v. McKesson Specialty Care
> Distribution Corp. (Adv. Pro. 17-08266 (RDD))**

Dear Jeff:

I write to follow up on Plaintiff's request for testimony from the McKesson Defendants concerning a series of issues that we specified in our Notice of Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure on May 14, 2021 (the "Notice"). As you know, the McKesson Defendants designated Jenifer Towsley as their witness with respect to all of the topics listed in the Notice, and Ms. Towsley testified at her deposition that she was prepared to testify about those topics. (*See* Towsley Tr. at 19.) However, she also testified that she had not reviewed any documents to prepare for her deposition apart from her own Declaration. (*See* Towsley Tr. at 22.) During her deposition, Ms. Towsley proved unable to testify about several key topics listed in the Notice, and we reserved Plaintiff's rights to seek further testimony at the end of her deposition. (*See* Towsley Tr. at 268.)

We do not intend to seek further deposition testimony with respect to every issue Ms. Towsley was unable to testify about, and we will only discuss the most important issues in this letter. Also, as discussed below, we are willing to consider written responses in the form of interrogatory answers rather than deposition testimony when that makes sense. We would like to obtain the information we need by means that do not impose unnecessary costs on either side.

The main issues about which Ms. Towsley was designated to testify, but apparently lacked sufficient information to answer Plaintiff's questions, include the following:

Notice Topic 1: "Each claim and defense that any Defendant has asserted or intends to assert in an Adversary Proceeding, including any new value or ordinary course of business defense and any asserted right of setoff."

- Ms. Towsley was unable to testify concerning which affirmative defenses Defendants assert or whether Defendants are continuing to pursue all affirmative defenses stated in

their answers to Plaintiffs' three Complaints.  (*See* Towsley Tr. at 215-16.)  Defense counsel indicated to Ms. Towsley that she should just stand by the allegations in Defendants' answers, and she appeared to follow his lead.  However, she plainly lacked any significant knowledge concerning Defendants' affirmative defenses and was unprepared to answer substantive questions about them.  As she testified, "I haven't refamiliarized myself with them"  (Towsley Tr. at 218.)

We are willing to consider written answers concerning Defendants' affirmative defenses in lieu of testimony.  Our main concern at this point is to limit and specify all of the issues to be litigated significantly in advance of trial.  As a result, if the Defendants agree to stipulate that the only affirmative defenses they intend to litigate are the defenses specifically identified in the Berk and Kosty reports, that may suffice.

Notice Topic 2: "Each Defendant's factual contentions in each Adversary Proceeding, including contentions concerning deliveries, payment, and communications and agreements with A&P."

- Ms. Towsley testified that she did not know what McKesson sold to A&P other than generic or branded prescription drugs.  (*See* Towsley Tr. at 54.)  She also did not know McKesson Specialty's payment terms for A&P or why McKesson Specialty's final sale to A&P during the preference period, after Specialty had at one point changed A&P's terms to pre-pay, was not invoiced on pre-pay terms.  (*See* Towsley Tr. at 120, 219-20.)  Further, Ms. Towsley did not know whether A&P was contractually entitled to a "COGS" adjustment from McKesson Corp. after its payment terms were shortened.  (*See* Towsley Tr. at 201-03, 208.)

We are willing to consider accepting written answers concerning each of these issues in lieu of testimony.

Notice Topic 6: "Each Defendant's sales and deliveries of goods or services to A&P."
Notice Topic 7: "Each Defendant's receipt of funds from, credits from, or payments from, A&P."

- Ms. Towsley was unable to testify concerning whether the transfer information alleged in the Exhibits to any of Plaintiff's three complaints was correct.  (*See* Towsley Tr. at 214-18.)  She also did not know how long it had been true, as of February 2015, that McKesson had not had any late payment issues with A&P.  (*See* Towsley Tr. at 79-80.)  Similarly, she did not remember whether anyone at McKesson had asked A&P to pay by wire instead of ACH before February 27, 2015 or whether A&P had wired payment more than once before May 22, 2015.  (*See* Towsley Tr. at 83, 98.)

It may be that the "meeting of accountants" process will answer these questions, but if answers are not provided soon, we will need written answers or deposition testimony to provide the foregoing facts that Ms. Towsley could not provide as well as to identify any

2

GRIFFIN HAMERSKY LLP
ATTORNEYS AT LAW

issues that the McKesson Defendants intend to raise with respect to the transfer allegations in Plaintiff's complaints.

Notice Topic 4: "Each affidavit, declaration and expert report submitted or prepared for submission in any of the Adversary Proceedings."

Notice Topic 5: "Each expert who prepared an expert report for submission in any of the Adversary Proceedings, and communications with them."

- Ms. Towsley testified that the only document she had looked at in preparation for her deposition was her own declaration. (*See* Towsley Tr. at 22.) Consequently, Plaintiff determined that Ms. Towsley was unprepared to answer questions about expert reports, which she had not read, and that questioning her about them would be pointless.

  We are willing to defer any deposition testimony from the McKesson defendants about this issue until after the Berk deposition, but we reserve our rights.

Notice Topic 8: "Each Defendant's payments to, or transfer of funds to, A&P."

Notice Topic 9: "Any credits or rebates that any Defendant owed to, or paid to, or currently may owe to, A&P."

Notice Topic 11: "Any sums that any Defendant segregated for possible credit or payment to, or because of actual or potential claims by, A&P, and the sources, disposition and current location of those funds."

Notice Topic 12: "Any payment any Defendant made to A&P, or credit it gave to A&P, in June or July 2015 on account of, or in connection with, rebates or credits of approximately $562,000."

Notice Topic 13: "Any action any Defendant took to pay or credit itself, or set off, any payment that the Defendant had previously made to A&P, including any action to pay or credit itself, or set off, approximately $562,000."

Notice Topic 25: "Transactions and contracts between any Defendant and A&P after the commencement of this bankruptcy case."

- Ms. Towsley was questioned at length about credits and rebates due, or potentially due, to A&P. The questions concerned McKesson's treatment of credits generally, including credits in the approximate amounts of $400,000 and $134,000, as well as McKesson's actions in paying A&P approximately $562,000 for June rebates before the Petition Date, then taking the money back without consent or Court approval in or after November 2015. (*See* Towsley Tr. at 224-36, 245-46, 252-54.)

  Ms. Towsley was unprepared to answer a large number of key questions about these topics. For example, Ms. Towsley testified that McKesson took the $562,000 but did not know when McKesson took the money or whether it has been segregated or mingled with McKesson's other accounts for general use. She also testified that she did not know why McKesson believed it was entitled to take the money or whether McKesson had provided A&P with a contractual justification for its decision to take the $562,000 in response to

3

A&P's request for that justification.  Instead, she referred Plaintiff to McKesson's "rebates department" for further information about the $562,000.  (*See* Towsley Tr. at 224-36.)

Ms. Towsley also testified about a $400,000 credit that, according to a McKesson document, was "issued to [A&P's] account" but not "given" to A&P.  Ms Towsley did not know whether the money was ever given to A&P or instead was being held by McKesson and "waiting for a setoff if appropriate."  (*See* Towsley Tr. at 252-54.)

These are very important issues to A&P, and they may be worth approximately $1 million.  Accordingly, please designate someone to testify about them who will truly be knowledgeable, or educate Ms. Towsley about them, so that we can continue our 30(b)(6) deposition with respect to those issues.  We are willing to consider an alternative mode of proceeding, however, if McKesson can propose a suitable means of providing a documented account of the relevant facts.

Notice Topic 14: "Each Defendant's contracts with A&P and other large or similar customers, including the provisions of those contracts with respect to (a) the customer's actual or possible financial difficulty or (b) the Defendant's right to change payment or credit terms, or (c) the customer's actual or potential failure or inability to pay any sum when due."

Notice Topic 19: "The payment and credit terms each Defendant offered its customers."

- Ms. Towsley did not know what payment terms McKesson Specialty or McKesson Pharmacy offered to strategic customers other than A&P in 2015. (*See* Towsley Tr. at 220-22.)  We are willing to consider written answers concerning these issues in lieu of testimony.

Notice Topic 17: "McKesson's conduct concerning, and procedures for addressing, customers' actual or potential financial distress."

Notice Topic 18: "Each Defendant's actions and procedures for addressing concerns about the financial condition of A&P or any other customer, or a customer's failure or potential failure to make payment when due."

Notice Topic 22:  "The differences between the Defendants' contract with, or method of doing business with, or conduct with respect to, A&P and other customers."

- Ms. Towsley was asked several questions concerning McKesson's treatment of strategic retailers other than A&P that were having financial difficulty.  However, she remembered very little.  For example, she did not know which strategic retailers McKesson gave more time to pay their debts before May 22, 2015, though she testified that had occurred.  She also was not certain whether McKesson had stopped shipping to any of its strategic retail customers other than Phar-Mor between 2014 and 2016, or whether McKesson threatened to stop shipping to any strategic retail customers before May 22, 2015, and if so, which they were.  (*See* Towsley Tr. at 53, 98-100.)

4

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

Given McKesson's contention that it treated A&P just as it treated other similar customers – and its submission of an entire expert report on that topic – Ms. Towsley's inability to testify about McKesson's treatment of other strategic retailers is highly material.

Nevertheless, in the interests of compromise, we are willing to consider accepting written answers concerning each of these issues in lieu of testimony. If you agree, we will prepare a very short list of questions on this topic that we asked, or would have asked if Ms. Towsley had been sufficiently informed, for McKesson's written response.

Please inform us who the McKesson Defendants wish to designate to address the issues we have identified above. Alternatively, if McKesson would prefer to provide written responses as suggested above, we are willing to discuss that with you so that we can agree whether a deposition will be necessary and, if so, schedule it promptly.

Very truly yours,

/s/ *Richard Milin*

Richard K. Milin

cc:  Tracy L. Klestadt, Esq.
     Daniel H. Slate, Esq.

5

420 Lexington Avenue, 4th Floor, New York, NY 10170
Tel: 646-998-5580  l  Fax: 646-998-8284  l  info@grifflegal.com  l  www.grifflegal.com

# EXHIBIT 5

GRIFFIN HAMERSKY LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Richard K. Milin
Michael D. Hamersky

*Counsel for The Official Committee of Unsecured
Creditors on behalf of the bankruptcy estate of
The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                                  :

                                                                         :   Chapter 11

THE GREAT ATLANTIC & PACIFIC TEA                 :

COMPANY, INC., *et al.*,                                     :   Case No. 15-23007 (RDD)

                                         Debtors.               :

-------------------------------------------------------------x

The Official Committee of Unsecured Creditors on      :

behalf of the bankruptcy estate of THE GREAT      :

ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,   :   Adv. Proc. No. 17-08264 (RDD)

                                                                         :

                           Plaintiff,                             :

            v.                                                          :

                                                                         :

McKESSON CORPORATION,                               :

                                                                         :

                           Defendant.                           :

-------------------------------------------------------------x

                                                                         :

The Official Committee of Unsecured Creditors on      :

behalf of the bankruptcy estate of THE GREAT      :

ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,   :   Adv. Proc. No. 17-08265 (RDD)

                                                                         :

                           Plaintiff,                             :

            v.                                                          :

                                                                         :

McKESSON PHARMACY SYSTEMS LLC,            :

                                                                         :

                           Defendant.                           :

-------------------------------------------------------------x

                                                                         :

The Official Committee of Unsecured Creditors on      :

behalf of the bankruptcy estate of THE GREAT      :

ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,   :   Adv. Proc. No. 17-08266 (RDD)

                                                                         :

                           Plaintiff,                             :

            v.                                                          :   **PLAINTIFF'S FIRST**

                                                                         :   <u>**SET OF INTERROGATORIES**</u>

McKESSON SPECIALTY CARE                           :

DISTRIBUTION CORPORATION,                         :

                                                                         :

                           Defendant.                           :

-------------------------------------------------------------x

**PLAINTIFF'S FIRST
SET OF INTERROGATORIES**

Plaintiff The Official Committee of Unsecured Creditors ("**Plaintiff**"), on behalf of the

Bankruptcy Estate of The Great Atlantic & Pacific Tea Company, Inc., *et al.*, its successors and

assigns ("**A&P**"), pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made

applicable here by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, and the Rules

of this Court, hereby requests that Defendants McKesson Corporation, McKesson Pharmacy Systems

LLC and McKesson Specialty Care Distribution Corporation ("**Defendants**") respond to the

following interrogatories (the "**Interrogatories**") in writing within thirty days hereof.   Plaintiff

further requests that Plaintiff supplement its response to these Interrogatories in accordance with Rule

26(e) of the Federal Rules of Civil Procedure, made applicable here by Rule 7026 of the Federal

Rules of Bankruptcy Procedure.   Plaintiff intends to object at the time of trial to any documents or

information responsive to these Interrogatories that was not timely produced in response to these

Interrogatories.

## RULES OF CONSTRUCTION

In interpreting the following definitions, instructions and Interrogatories, in

accord with Local Civil Rule 26.3 of the United States District Court for the Southern District of

New York (the "**Local Rule**"), made applicable here by Local Bankruptcy Rule 7026-1 of this

Court, three rules of construction apply:

(i)       the words "and" and "or" should both be construed as "and/or" if that

broadens an Interrogatory, definition or instruction.

(ii)      the terms "all," "any" and "each" should be interpreted as broadly as

possible to include anyone or anything that would be included if a different one of those terms

had been used; and

1

(iii)    the singular of any word should be interpreted to include the plural and vice versa.

## DEFINITIONS

The following definitions apply to each of the definitions, instructions and Interrogatories herein, subject to, and in addition to, the Uniform Definitions in the Local Rule:

1.    The terms "**A&P**" and "**Debtor**" mean (a) The Great Atlantic & Pacific Tea Company, Inc.; (b) any past or present parent, subsidiary or affiliate of The Great Atlantic & Pacific Tea Company, Inc.; (c) the bankruptcy estates of The Great Atlantic & Pacific Tea Company, Inc. and of the other debtors in or formerly in this Chapter 11 case; (d) The Great Atlantic & Pacific Tea Company, Inc. and other debtors in or formerly in this Chapter 11 case operating or which operated as debtors in possession; (e) any entity having common ownership or control with any of the foregoing; (f) any successor or assign of any of the foregoing; and (g) any officer, director, member, employee, attorney, accountant, consultant, partner, principal, representative, advisor or agent of any of the foregoing.  The terms "**A&P**" and "**Debtor**" also include any person acting for or on behalf of any of the foregoing.

2.    The term "**Adversary Proceeding**" means any one or more of the adversary proceedings currently pending in this bankruptcy case against a Defendant or any of its affiliates.

3.    The term "**communication**" means any transmission of words, images, facts, numbers or ideas, including but not limited to any transmission in or by means of a document (as defined below), spoken word, face-to-face exchange, conversation, conference, discussion, interview, audio or video recording, report or meeting, or any email, telephone, facsimile or other electronic transmission. The term "communication" also includes any contact between two or more persons by any means. The term "**Communicate**" means to make or transmit a "communication" as defined above.

2

4.      The term "**Complaint**" means any or all of Plaintiff's Complaints in an Adversary Proceeding.

5.      The term "**concerning**" means relating to, referring to, describing, evidencing or constituting.  It also means alluding to, supporting, proving, disproving, connected with, commenting on, in respect of, about, regarding, discussing, showing, reflecting, recording, analyzing, summarizing, or memorializing.

6.      The term "**contract**" means any written or oral agreement, draft agreement or proposed agreement. The term "contract" also means any draft of, or potential or proposed modification, amendment, revision or replacement of, (a) a written or oral agreement, or (b) any term of a written or oral agreement. An "MOU" or memorandum of understanding is an "agreement" for purposes of this definition.

7.      The term "**Debtor Account**" means any internal or external account in which McKesson kept or recorded sums due or paid to, or potentially due or to be paid to, or segregated potentially for or in connection with, a Debtor.

8.      The term "**describe**" means (a) provide a complete, detailed account of the facts and circumstances concerning the subject matter to be described, including an explanation of the facts and circumstances and sufficient information to make clear why any persons whose actions are described acted as they did, and (b) produce documents sufficient to establish the facts and circumstances, including the actions and motivations of the persons whose actions are described.

9.      The term "**document**" is synonymous in meaning and equal in scope to the the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and includes all communications of any kind, as well as any written, printed, typed, electronic or other recorded matter of any type or nature, however produced or reproduced,

3

including information recorded in paper, digital, analog, graphic, magnetic, electronic or photographic form; writings; diaries; emails and email attachments together with all identifying headers, addresses and routing information indicating recipients and authors or the date or dates of creation, modification receipt or transmission; drawings; graphs; tables; photographs; telephone logs and records; electronic or computerized information, data or data compilations; computer files; term sheets; pitch books; financial records and books of account; journals; ledgers; audio recordings; video recordings; transcripts; memoranda; calendars; tables; invoices; appointment books; computer databases; PowerPoint or other presentations; CDs, DVDs or blu-ray discs; pamphlets; personnel files; correspondence; notes; bills and invoices.  A draft or non-identical copy is a separate "document" within the meaning of that term.  Also, any document bearing highlighting or annotations that are not identical to, and limited to, the highlighting or annotations on another document that has already been produced is a separate "document" within the meaning of that term.

10.     When referring to a person, "**to identify**" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this definition, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

11.     When referring to documents, "**to identify**" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

4

12.     The term "**includes**" means "includes but is not limited to," and "**including**" means "including but not limited to."

13.     The term "**major pharmaceutical wholesaler**" means McKesson (as defined below), AmerisourceBergen or Cardinal Health.

14.     The term "**McKesson**" means Defendants McKesson Corporation ("**McKesson Corporation**"), McKesson Pharmacy Systems LLC ("**McKesson Pharmacy**") and McKesson Specialty Care Distribution Corporation ("**McKesson Specialty**"); and any past or present parent, subsidiary, or affiliate of any of them; and any other entity having common ownership or control with them; and any present or former officer, director, member, employee, attorney, accountant, consultant, partner, principal, representative, advisor or agent of any of the foregoing. The term "**McKesson**" also includes any person acting for or on behalf of any of the foregoing, or claiming to do so.

15.     The term "**payment**" means any transfer, transmission, or provision of anything of value from one person, party or entity to, for, or for the benefit of another. The transfer, transmission or provision may be accomplished, among other means, by recording it in a book of account. For purposes of this definition, "value" includes any money, merchandise, goods, services, credit, rebate, reduction of sums due or potentially to be due, or deduction from or offset against sums due or potentially to be due.  Each "Transfer" as defined in this document is also a "payment."

16.     The term "**payment terms**" means the means by which payment is made or to be made, the length of time after invoicing or delivery on which payment is due, or any other specification concerning how or when one person or entity is to pay another.  The term "payment terms" also includes credit terms, any interest to be charged for late payment, and remedies for non-payment.

5

17.     The term "**person**," as defined in the Local Rule, means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

18.     The term "**Petition Date**" means July 19, 2015, the day on which Debtor commenced its Bankruptcy Case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

19.     The term "**Plaintiff**," as defined in the first sentence of this document, means the Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of Debtor, or its successors or assigns.

20.     The term "**Preference Period**" means the period commencing with the date that is ninety (90) days before the Petition Date and ending with the Petition Date, inclusive.

21.     The term "**Request for Admission**" refers to any request for admission included in Plaintiff's First Set of Requests for Admissions.

22.     The term "**strategic retail customer**" means a customer for pharmaceuticals which had four or more locations under centralized management and purchased more than $50 million from McKesson in any year.

23.     The noun "**Transfer**" means any transfer or payment made by Debtor to McKesson that is alleged in a Complaint, irrespective of whether the Complaint erroneously describes one or more aspects of the transfer or payment.

24.     The term "**you**" means, and the term "**your**" refers to, "McKesson" as defined above.

## **INSTRUCTIONS**

1.     In response to each Interrogatory, produce all responsive documents and information within your possession, custody or control.   Include any responsive

6

documents or information in the possession, custody or control of your past or present officers, directors, members, employees, attorneys, accountants, representatives, consultants, advisors or agents and others within the definition of "your" above.

2.     In response to each Interrogatory, produce all responsive documents and information dated, created, sent, received, or reviewed during the period from January 1, 2014 to the present, or concerning any part of that period, unless a specific Interrogatory states otherwise.

3.     If any responsive document is maintained in electronic or computerized form, or in a database, produce the document in its electronic or computerized form in addition to any hard copies. Any documents in Word, PDF, Outlook or Excel format should be produced in that format.

4.     If any responsive document is produced in electronic or other intangible form – other than Word, PDF, Outlook or Excel – identify the device, program or operating system required to review, translate or interpret it.

5.     The fact that a document or item of information has been produced previously, or by another party, or may be in another party's possession, custody or control does not relieve you of the obligation to produce the document or information.

6.     If any document or information responsive to an Interrogatory is withheld under a claim of privilege or immunity from disclosure, furnish a list specifying each such document or item of information and setting forth the information required to be furnished by Fed. R. Civ. P. 26 and Local Rule 26.2 of the United States District Court for the Southern District of New York, irrespective of whether the Local Rule would otherwise apply.

7.     If any Defendant objects to any Definition, Rule of Construction, Instruction or Interrogatory, or any part of it:  (i) state with specificity all grounds for its

objection; (ii) identify with specificity any documents or information withheld pursuant to its objection; and (iii) provide all documents and information responsive to all portions of the Interrogatory to which Defendant does not state an objection or to which the objection does not apply. Any ground not stated in an objection within the time provided by the applicable rules, or any extension thereof, shall be deemed to be waived.

8.      If any Defendant at any time had possession, custody or control of a document or information that may be responsive to any Interrogatory and the document or information has been lost, destroyed – or is otherwise not presently in Defendant's possession, custody or control – state, with respect to each such document:  (i) the last date the document or information was in Defendant's possession, custody or control; (ii) the circumstances surrounding its loss, destruction, or separation from Defendant's possession, custody or control; (iii) the type of document or information (*e.g.*, letter, memo, email, computer disk, etc.) (iv) a description of the document or information to the best of Defendant's recollection; (v) all drafters, senders, receivers and custodians of the document or information, and (vi) Defendant's best recollection of the subject matter of the document or information.

9.      Each Interrogatory shall be continuing, and supplemental responses shall be served immediately as required by, and in accord with, Rule 26(e) of the Federal Rules of Civil Procedure.

10.      No claim of ambiguity with respect to any Definition, Instruction, Rule of Construction or Interrogatory shall be relied upon as a basis for refusing to produce any responsive document or information unless Defendants expressly and timely object to the alleged ambiguity in the Definition, Instruction, Rule of Construction or Interrogatory and, in stating the objection, (i) specifically identify the ambiguity, and (ii) state the interpretation of the ambiguous language that the Defendants used in responding to the Interrogatory. Further, Defendants should resolve

8

any ambiguity so as to give each Interrogatory the broadest possible scope consistent with Fed. R. Civ. P. 33 and Fed. R. Bankr. P. 7033.

11. To the extent that there is any apparent conflict between applicable rules, Definitions, Instructions or Rules of Construction, each Interrogatory should be interpreted so as to give it the broadest possible scope consistent with Fed. R. Civ. P. 33 and Fed. R. Bankr. P. 7033.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

If your response to any Request for Admission is anything other than an unqualified admission, state all facts and identify all documents (a) concerning your response, (b) which explain, justify or support your response, or (c) concerning your reasons for responding with something other than an unqualified admission.

### **INTERROGATORY NO. 2:**

If you contend that any Defendant intended any payment or Transfer identified in any of Plaintiff's Complaints to be a contemporaneous exchange for new value given to the Debtor, state all facts and identify all documents concerning or supporting that contention.

### **INTERROGATORY NO. 3:**

If you contend that the Debtor intended any payment or Transfer identified in any of Plaintiff's Complaints to be a contemporaneous exchange for new value given to the Debtor, state all facts and identify all documents concerning or supporting that contention.

### **INTERROGATORY NO. 4:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler discontinued shipments at any time between January 1, 2013 and July 1,

9

2016 because the strategic retail customer failed to make one or more payments on time.  For each such discontinuation:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler discontinued shipments.

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before shipments were discontinued.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the discontinuation or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the discontinuation.

**INTERROGATORY NO. 5:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler threatened to discontinue shipments at any time between January 1, 2013 and July 1, 2016 because the strategic retail customer failed to make one or more payments.  For each such threat:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler threatened to discontinue shipments.

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before the threat to discontinue shipments.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the threat or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the threat.

**INTERROGATORY NO. 6:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler threatened to discontinue shipments at any time between January 1, 2013 and July 1, 2016 because the major pharmaceutical wholesaler was concerned that the strategic retail customer might be unable to pay the wholesaler's invoices in the near future or because the wholesaler determined that the retail customer's financial position had materially changed. For each such threat:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler threatened to discontinued shipments

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

11

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before the threat to discontinue shipments.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the threat or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the threat.

## INTERROGATORY NO. 7:

If you contend that McKesson is entitled to the benefit of any affirmative defense other than "ordinary course of business" or "new value" under 11 U.S.C. §§ 547(c)(1), 547(c)(2) or 547(c)(4), identify all facts and documents supporting that contention.

## INTERROGATORY NO. 8:

Identify and calculate all credits and rebates A&P would have been entitled to receive under its Supply Agreement with McKesson for June and July 2015, assuming that A&P did not breach or had not breached the Supply Agreement, and describe:

(a) how much A&P was owed for those credits and rebates,

(b) whether and how much A&P was paid for those credits and rebates,

(c) how and when A&P was paid for those credits and rebates,

(d) when A&P would have been entitled to be paid for those credits and rebates if it had not breached the Supply Agreement,

12

(e) whether any of those credits or rebates were segregated by McKesson in a specific account,

(f) whether and when McKesson decided not to pay any sums to A&P that had previously been calculated or segregated by McKesson as actually or potentially due to A&P,

(g) whether McKesson took any steps to reimburse itself for any credits or rebates that it paid to A&P before July 19, 2015, and

(h) if McKesson took any steps to reimburse itself for any credits or rebates that it paid to A&P before July 19, 2015, describe those steps, including what those steps were, when they took place, why those steps were taken, when and how any of the money was transferred into or out of any account, where the money was located when it was transferred, where the money was transferred to, when the money was recorded as definitively belonging to McKesson rather than A&P, and what notice McKesson provided to A&P concerning McKesson's determination that the money definitively belonged to McKesson.

## INTERROGATORY NO. 9:

Identify each person who participated in preparing the answers to these Interrogatories by stating the complete name, position or title, address, and phone number of such person, and indicate the subject matter with respect to which such person has provided answers.

## INTERROGATORY NO. 10:

Identify and describe each occasion between January 1, 2014 and August 1, 2015 on which McKesson informed A&P that, if it did not make a specific payment on time, McKesson would discontinue shipments to A&P, and in doing so, identify the person who stated that McKesson would discontinue shipments, identify the person(s) to whom McKesson made the

statement, state whether the statement was oral or in writing, identify all other person(s) who were present when the statement was made or who received the statement either by copy or forwarding if it was in writing, and produce all documents concerning the statement.

**INTERROGATORY NO. 11:**

State how much merchandise or other new value McKesson provided to A&P during the period from July 17, 2015 through July 19, 2015; provide a calculation of that amount; identify how much of the merchandise or new value was provided to A&P on each of the three days from July 17 through July 19, 2015; and produce documents sufficient to establish that the calculation is accurate.

Dated:  June 16, 2021

GRIFFIN HAMERSKY LLP

By: /s/**Richard Milin**
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284

*Counsel for The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc., et al.*

14

# EXHIBIT 6

Jeffrey K. Garfinkle (admitted *pro hac vice*)
Daniel H. Slate (California Bar No. 78173)
BUCHALTER Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Fax: (949) 720-0182
jgarfinkle@buchalter.com
dslate@buchalter.com

Tracy Klestadt
Klestadt Winders Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone:  (212) 972-3000
Fax:  (212) 972-2245
tklestadt@klestadt.com

Counsel for Defendants

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ) | Case No. 15-23007 (RDD) |
| THE GREAT ATLANTIC & PACIFIC TEA ) | |
| COMPANY, INC., *et al.* ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| ) | |
| The Official Committee of Unsecured Creditors on ) | |
| behalf of the bankruptcy estate of THE GREAT ) | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., ) | Adv. Proc. No. 17-08264 (RDD) |
| *et al.* ) | |
| Plaintiff ) | **OBJECTIONS AND RESPONSES** |
| v. ) | **TO PLAINTIFF'S FIRST SET OF** |
| McKESSON CORPORATION ) | **INTERROGATORIES** |
| Defendant ) | |
| The Official Committee of Unsecured Creditors on ) | |
| behalf of the bankruptcy estate of THE GREAT ) | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., ) | |
| *et al.* ) | |
| Plaintiff ) | Adv. Proc. No. 17-08265 (RDD)) |
| v. ) | |
| ) | |
| McKESSON PHARMACY SYSTEMS LLC ) | |
| Defendant ) | |
| ) | |

**DEFENDANTS OBJECTIONS AND RESPONSES
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

<table>
<tr><td>

The Official Committee of Unsecured Creditors on<br>
behalf of the bankruptcy estate of THE GREAT<br>
ATLANTIC & PACIFIC TEA COMPANY, INC.,<br>
*et al.*<br>
Plaintiff <br>
v. <br>
McKESSON SPECIALTY CARE<br>
DISTRIBUTION CORPORATION<br>
Defendant

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

Adv. Proc. No. 17-08266 (RDD)

</td></tr>
</table>

Defendants McKesson Corporation, a Delaware corporation ("**McKesson Corporation**"), McKesson Pharmacy Systems, LLC ("**Systems**"), and McKesson Specialty Care distribution Corporation ("**Specialty**", and together with Systems and McKesson Corporation, "**McKesson**"), by and through their undersigned counsel, hereby provides their Objections and Responses (the "**Responses**") to the Plaintiff's First Set of Interrogatories (the "**Interrogatories**") by the Official Committee of Unsecured Creditors (the "**Committee**") of the bankruptcy estate of the Great Atlantic & Pacific Tea Company, Inc. ("**A&P**").[1]

### PRELIMINARY STATEMENT

Any response by McKesson is made with McKesson's good faith understanding of the Interrogatory.

The Responses are made solely for the purpose of, and in relation to, the above-captioned Adversary Proceedings and solely on behalf of McKesson. Each Response is given subject to all appropriate objections (including objections concerning competency, relevancy, materiality, propriety and admissibility), which would require the exclusion of any statement contained herein if made by a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

The Responses are governed by the following rules as each may, from time to time be amended (collectively, the "**Rules**"):

---

[1] For purposes of the Responses, McKesson Corporation responds as if all 21 debtor entities in the bankruptcy cases have been substantively consolidated as well as jointly administered as Case No. 15-23007.

1

(i)      The Federal Rules of Civil Procedure (the "**FRCP**");

(ii)     The Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**");

(iii)    The Local Civil Rules of the United States District Court, Southern District of New York ("**LCR**"); and

(iv)     The Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "**LBR**").

McKesson reserves its rights under Rule 26(b) of the FRCP (made applicable to the Adversary Proceeding pursuant to Bankruptcy Rule 7026), and specifically the limits on electronically-stored information as set forth in Rule 26(b)(2)(B) of the FRCP.  That provision states that a party need not provide information from sources that are "not reasonably accessible because of undue burden or cost." McKesson reserves the right not to provide information upon a showing that the information is not reasonably accessible because of undue burden or cost.

McKesson reserves the right to introduce at trial any and all evidence previously produced or any evidence that will be produced by the parties in this Adversary Proceedings or by any third party that supports or tends to support McKesson's contentions at trial or in support of or in opposition to any motion in this case.  To the extent that McKesson identifies facts in response to the Interrogatories, it does so without prejudice to establishing at a later date any additional facts that may be discovered as a result of any additional investigation and discovery.

Any Response does not constitute a waiver of any applicable privilege, nor does any Response waive any objection, including relevancy, to the admission of such Responses or responsive documents in evidence.

By providing the Responses, McKesson does not concede the relevance or materiality of any of the Interrogatories or the subject matter as to which the Interrogatories pertain.  In addition, the fact that McKesson has responded to part or all of any Interrogatory is not intended and shall not be construed to be a waiver by McKesson of all or any part of any objection to any Interrogatory.

To a great degree, the information related to the Interrogatories is already within the possession, custody or control of A&P and the Committee.  McKesson objects to the Interrogatories as an undue

2

burden and expense on McKesson.  Specifically, the Interrogatories seek to impose an obligation on McKesson to consider information already within the custody and control of A&P or the Committee (especially as to communications originating from A&P or transfers of money or property from A&P) and impose on McKesson obligations that far exceed those required by law.  To that extent, McKesson specifically reserves all rights under Rule 26(b)(2) of the FRCP.

Discovery is ongoing, and McKesson reserves the right (without any obligation) to supplement its Responses as discovery continues and additional information is obtained or located.  McKesson reserves the right to revise, amend, correct, modify or supplement its Responses after additional investigation and discovery in this action.

## **GENERAL OBJECTIONS**

McKesson incorporates each of the following general objections into each of its Responses as if set forth in full.

1.      McKesson responds to the Interrogatories based upon its investigation in the time available since service of the Interrogatories.  As a result, McKesson bases its Responses upon information now known to it (available through a reasonable investigation) and which McKesson believes to be relevant to the subject matter covered by the Interrogatories.

2.      McKesson reserves all objections or other questions as to the competency, relevance, materiality, or admissibility as evidence in any hearing or trial in the Adversary Proceedings for any purpose whatsoever of these Responses and objections.

3.      Nothing contained in these Responses shall be construed as an admission relative to the existence or non-existence of any document, and no Response is to be considered an admission respecting the relevance, authenticity or admissibility of any documents.

4.      To a large extent, the Interrogatories are vague, overbroad, ambiguous and unintelligible.  McKesson will undertake a good faith attempt to provide Responses with a broad understanding of the scope of the Interrogatory.  The Responses are made in a good faith effort to supply as much factual information as is presently known, but in no way prejudices McKesson's ability to engage in further discovery, research or analysis.

5.      To a large extent, the Interrogatories seek information that is in the possession, custody or control of the Committee or A&P and appear to be intended to harass McKesson and force it to investigate and obtain information that A&P or the Committee has, or should have, in its possession, custody or control.

6.      The time frame imposed in the Interrogatory is from January 1, 2014 "to the present," more than seven years, and is overly broad, burdensome and intended to harass and not intended to ascertain information that is relevant to the legal and factual issues in the Adversary Proceedings.  The transactions in question all occurred during the 90 days before the Petition Date in Spring of 2015, and McKesson shall respond only to the extent related to the period from January 1, 2015 through July 16, 2015.

7.      To the extent the Interrogatories relate to information properly protected as attorney-work product or privileged confidential attorney-client communications, McKesson will not rely upon that information.

8.      The definitions in the Interrogatories are objectionable.  To the extent the Interrogatory defines a term that is also defined in Rule 26.3 of the LCR (which applies to this Adversary Proceeding pursuant to Rule 7026-1 of the LBR) and the two definitions are different, McKesson Corporation shall use the definition in the LCR.  We will rely upon the following definitions in Rule 26.3(c) and ignore the related definition in the Interrogatory:

- "all," "any" and "each" shall be as defined in Rule 26(d)(1) and not as defined in the Interrogatory.

- "and" and "or" shall be as defined in Rule 26.3(d)(2) and not as defined in the Interrogatory.

- "communication" shall be as defined in Rule 26.3(c)(1) and not as defined in the Interrogatory.

- "concerning" shall be as defined in Rule 26.3(c)(7) and not as defined in the Interrogatory.

- "document" shall be as defined in Rule 26.3(c)(2) and not as defined in the Interrogatory.

- "McKesson" shall be considered a "Defendant" as defined in Rule 26.3(c)(5) and not as defined in the Interrogatory.  That use shall also apply in reference to "you" and "your."

- "person" shall be as defined in Rule 26.3(c)(2)(6) and not as defined in the Interrogatory.

- "A&P" and "Debtor" shall also be considered a "Plaintiff" as defined in Rule 26.3(c)(5) and not as defined in the Third Interrogatory.

9.    The definitions of "payment" and "transfer" in the Interrogatories are overbroad and ambiguous.  McKesson objects to the Interrogatories as vague and ambiguous due the Committee's definitions of these terms.  The Committee defines "payment" as "any transfer, transmission, or provision of anything of value from one person, party or entity to, for or for the benefit of another. . . . Each 'Transfer' as defined in this document is also a 'payment.'"  The Committee then proceeds to define "transfer" as "any transfer or payment made by Debtor to McKesson that is alleged in the Complaint."  The Committee's "definitions" of "payment" and "transfer" are circularly phrased and designed to impermissibly broaden the scope of the Interrogatories beyond the requirements of the Rules.  In responding to these Interrogatories, the term "payment" is construed to mean "performance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."  *See* Black's Law Dictionary (11th ed. 2019).

10.    To the extent the word "invoice" is used or incorporated into one or more of the Interrogatories or responses, McKesson Corporation did not issue an "invoice" for each shipment to the Debtor; instead, on a periodic basis, McKesson forwarded to the Debtor what is called a "Pathmark" report, which summarized the material information relevant to goods delivered, and the costs associated with those goods.  In addition, the Pathmark report provided the Debtor with the amounts to be paid for both generic and non-generic goods during each weekly payment cycle (prior to the July 2015 payment term reduction of two days sales outstanding).  The Debtor, in turn, had the ability to confirm the information set forth in the Pathmark report, and to make payment in accordance with the amounts listed in the Pathmark report for the specific billing cycle period.  When responding to the Requests, McKesson shall construe the term "invoice" as including each and every Pathmark report.

11.     Each term defined in the Bankruptcy Code but not defined in the Responses, has the meaning ascribed to the term in the Bankruptcy Code.

## RULES OF CONSTRUCTION

1.     To the extent that an Interrogatory does not specifically set forth a time frame, McKesson Corporation responds only to the extent that documents are generated on or after January 1, 2015 through July 16, 2015, inclusive (the "**Time Frame**").

2.     The terms "**include**" and "**including**" are not limiting.

3.     The term "**or**" is not exclusive.

## RESPONSES TO FIRST SET OF INTERROGATORIES

## INTERROGATORY NO. 1:

If your response to any Request for Admission is anything other than an unqualified admission, state all facts and identify all documents (a) concerning your response, (b) which explain, justify or support your response, or (c) concerning your reasons for responding with something other than an unqualified admission.

## RESPONSE TO INTERROGATORY NO. 1:

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that this request is unduly burdensome and not proportional to the needs of the case.

Subject to these objections, McKesson acknowledges that it has denied request for admissions 78, 81, 82, 83, 89, 90, 91, 97, 98, 108, 109, 111, 112, 114, 115, 116, 117 and 123.  With respect to these denials, McKesson answers as follows:

1.     Request 78.  McKesson denied the request because the request failed to take into account the application of affirmative defenses and that certain payments made in July 2015 were intended to be and

were in fact substantially contemporaneous.  The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.  McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

2.    Request 81.  McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions.  Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous.  The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.  McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

3.    Request 82.  McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions.  Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous.  The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.  McKesson objects to specifically identifying each supporting document, other than to confirm

that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

      4.   Request 83. McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions. Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous. The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27. McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

      5.   Request 90. McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions. Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous. The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27. McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

6.    Request 91.  McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions.  Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous.  The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.  McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

7.    Request 97.  McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions.  Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous.  The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.  McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

8.    Request 98.  McKesson denied the request because it is an incomplete hypothetical and cannot be admitted or denied without making additional assumptions.  Also, the referenced exhibit contains errors, and the request fails to take into account the application of the affirmative defenses

asserted by McKesson or certain payments that were either (i) within 20 days of the Petition Date, and therefore governed by section 503(b)(9) of the Bankruptcy Code, or (ii) made in July 2015 that were intended to be and were in fact substantially contemporaneous. The facts supporting this denial are detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York and McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27. McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

9. Request 108. McKesson contends the Supply Agreement authorizes McKesson to require payment on the same day as deliveries were made. McKesson objects to identifying every legal argument supporting its construction of the Supply Agreement on the ground that this information is privileged under the attorney work product doctrine. Subject to this objection, McKesson points to Section 21.S, which provides the rights and remedies of the parties "in connection with this Agreement are cumulative and not exclusive." New York law expressly allows a seller of goods to demand adequate assurance of future performance, and upon default, permits modification of payment and other terms on a going-forward basis. Likewise, where a party materially breaches its contractual obligations, the non-breaching party may withhold performance.

10. Request 109. McKesson contends the Supply Agreement authorizes McKesson to require A&P to pay cash on delivery. McKesson objects to identifying every legal argument supporting its construction of the Supply Agreement on the ground that this information is privileged under the attorney work product doctrine. Subject to this objection, McKesson points to Section 21.S, which provides the rights and remedies of the parties "in connection with this Agreement are cumulative and not exclusive." New York law expressly allows a seller of goods to demand adequate assurance of future performance, and upon default, permits modification of payment and other terms on a going-forward basis. Likewise, where a party materially breaches its contractual obligations, the non-breaching party may withhold performance.

11.  Request 111.  McKesson contends the Supply Agreement allows it to change the credit limit of A&P without providing ten days prior notice.  McKesson objects to identifying every legal argument supporting its construction of the Supply Agreement on the ground that this information is privileged under the attorney work product doctrine.  Subject to this objection, McKesson points to Section 21.S, which provides the rights and remedies of the parties "in connection with this Agreement are cumulative and not exclusive."  New York law expressly allows a seller of goods to demand adequate assurance of future performance, and upon default, permits modification of payment and other terms on a going-forward basis.  Likewise, where a party materially breaches its contractual obligations, the non-breaching party may withhold performance.

12.  Request 112.  McKesson contends the Supply Agreement authorizes McKesson to require payment on the same day as deliveries were made.  McKesson objects to identifying every legal argument supporting its construction of the Supply Agreement on the ground that this information is privileged under the attorney work product doctrine.  Subject to this objection, McKesson points to Section 21.S, which provides the rights and remedies of the parties "in connection with this Agreement are cumulative and not exclusive."  New York law expressly allows a seller of goods to demand adequate assurance of future performance, and upon default, permits modification of payment and other terms on a going-forward basis.  Likewise, where a party materially breaches its contractual obligations, the non-breaching party may withhold performance.

13. Request 114.  McKesson objects to this request on the ground that the request is improper discovery because it seeks information that is irrelevant and unduly burdensome.  McKesson also notes that this request seeks an expert opinion.  Subject to these objections, McKesson denied the request because the credit relationship between McKesson and A&P were standard within the industry and consistent with industry practice.  The facts supporting this denial are detailed in the expert report of Timothy Kosty.

14. Request 123.  McKesson denied the request because the referenced payment was not a credit or rebate.  McKesson mistakenly paid A&P approximately $562,000 in June, 2015.  This payment was an error.  A&P was not entitled to this payment, as a credit or rebate, under the Supply Agreement.

**INTERROGATORY NO. 2:**

If you contend that any Defendant intended any payment or Transfer identified in any of Plaintiff's Complaints to be a contemporaneous exchange for new value given to the Debtor, state all facts and identify all documents concerning or supporting that contention.

**RESPONSE TO INTERROGATORY NO. 2:**

McKesson incorporates herein all General Objections. McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts. McKesson calculates there are no fewer than 50 discrete questions and arguably many more. McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that this request is unduly burdensome and not proportional to the needs of the case.

Subject to these objections, McKesson answers that McKesson does contend that certain payments constitute a contemporaneous exchange for new value given to the Debtor. The specific payments are identified and detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York (see, in particular, pages 32-33 of Mr. Berk's report) or McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27. McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

**INTERROGATORY NO. 3:**

If you contend that the Debtor intended any payment or Transfer identified in any of Plaintiff's Complaints to be a contemporaneous exchange for new value given to the Debtor, state all facts and identify all documents concerning or supporting that contention.

**RESPONSE TO INTERROGATORY NO. 3:**

McKesson incorporates herein all General Objections. McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules

of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that this request is unduly burdensome and not proportional to the needs of the case.

Subject to these objections, McKesson answers that McKesson does contend that certain payments constitute a contemporaneous exchange for new value given to the Debtor.  The specific payments are identified and detailed in the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York (see, in particular, pages 32-33 of Mr. Berk's report)  or McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27.   McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

**INTERROGATORY NO. 4:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler discontinued shipments at any time between January 1, 2013 and July 1, 2016 because the strategic retail customer failed to make one or more payments on time. For each such discontinuation:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler discontinued shipments.

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before shipments were discontinued.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the discontinuation or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the discontinuation.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 4:

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that this request is unduly burdensome and not proportional to the needs of the case.

McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.  McKesson further objects to this request on the ground that the terms "strategic retail customer" and "major pharmaceutical wholesaler" are vague and ambiguous and call for speculation, particularly since this request is not limited to actions taken by McKesson.  McKesson likewise objects to this request on the ground that actions taken by any "major pharmaceutical wholesaler" (other than McKesson) call for speculation and any answer is limited to public information, to which the Committee has equal access.

McKesson further objects to the Committee's demand herein to produce documents given that this is a special interrogatory, not a request for documents.

Subject to these objections, McKesson answers that it is specifically or generally aware or believes that McKesson, AmerisourceBergen, Cardinal, or other wholesaler discontinued or restricted shipments to the following customers (the date in parentheses is approximately when when the customer filed for bankruptcy):

1. C&K Market, Inc., bankruptcy filed in District of Oregon (November 19, 2013), pharmacies owned in non-debtor subsidiary—C&K Express, Inc.

2. CRC Parent Corp. (Chem RX), bankruptcy filed in Delaware (May 11, 2010), AmerisourceBergen.

3.  DE of Northeastern Ohio (Drug Emporium/Snyder's Drug), bankruptcy filed in N.D. Ohio (Youngstown) (March 26, 2001), McKesson Corp.

4.  Family Pharmacy of Missouri, bankruptcy filed in W.D. Missouri (Springfield) (April 30, 2018), JM Smith Corporation (secured creditor).

5.  Fred's, Inc., bankruptcy filed in D. Del. (September 9, 2019), Cardinal Health.

6.  Haggen Holdings, bankruptcy filed in D. Del. (September 8, 2015), Topco Associates.

7.  Kmart/Sears, bankruptcy filed in S.D.N.Y. (October 29, 2018), Cardinal Health.

8.  Marsh Supermarket Holding, bankruptcy filed in D. Del. (March 11, 2017), AmerisourceBergen.

9.  Phar-Mor, bankruptcy filed in N.D. Ohio (September 24, 2001), McKesson Corp.

10. Southeast Grocers, bankruptcy filed in D. Del. (March 27, 2018), Cardinal Health.

11. Specialty Retail Shops Holding (Shopko), bankruptcy filed in D. Neb. (January 16, 2019), McKesson Corp.

12. The Great Atlantic & Pacific Tea Co., McKesson Corp.

13. Tops Holding II Corp. (Tops Family Market), bankruptcy filed in S.D.N.Y. (February 21, 2018); Topco.

McKesson suspects there have been other discontinuances made by Cardinal and AmerisourceBergen, but this information would be confidential unless this information is made public during, for instance, a bankruptcy proceeding.  McKesson also is informed and believes there also have been discontinuances of other retail customers, such as hospitals, closed-door pharmacies, mail order pharmacies, and specialty pharmacies.

McKesson also references and incorporates the deposition of Jenifer Towsley.  Ms. Towsley testified about instances when McKesson has discontinued shipments.

**INTERROGATORY NO. 5:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler threatened to discontinue shipments at any time between January 1, 2013 and July 1, 2016 because the strategic retail customer failed to make one or more payments. For each such threat:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler threatened to discontinue shipments

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before the threat to discontinue shipments.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the threat or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the threat.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 5:**

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that this request is unduly burdensome and not proportional to the needs of the case.

McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.  McKesson further objects to this request on the ground that the terms "strategic retail customer" and "major pharmaceutical wholesaler" are vague and ambiguous and call for speculation, particularly since this request is not limited to actions taken by McKesson.  McKesson likewise objects to this request on the ground that actions taken by any "major pharmaceutical wholesaler" (other than McKesson) call for speculation and any answer is limited to public information, to which the Committee has equal access.

16

McKesson further objects to the term "threatened" on the ground that it is vague and ambiguous. For purpose of this interrogatory, McKesson will deem "threaten" to mean that the wholesaler directly stated that if the retail customer did not pay timely, that the wholesaler would discontinue or restrict shipments. McKesson further objects to the Committee's demand herein to produce documents given that this is a special interrogatory, not a request for documents.

Subject to these objections, McKesson answers that it is specifically or generally aware or believes that McKesson, AmerisourceBergen, Cardinal, or other wholesaler threatened to discontinue or restrict shipments to the following customers (the date in parentheses is approximately when when the customer filed for bankruptcy):

1. C&K Market, Inc., bankruptcy filed in District of Oregon (November 19, 2013), pharmacies owned in non-debtor subsidiary—C&K Express, Inc.

2. CRC Parent Corp. (Chem RX), bankruptcy filed in Delaware (May 11, 2010), AmerisourceBergen.

3. DE of Northeastern Ohio (Drug Emporium/Snyder's Drug), bankruptcy filed in N.D. Ohio (Youngstown) (March 26, 2001), McKesson Corp.

4. Family Pharmacy of Missouri, bankruptcy filed in W.D. Missouri (Springfield) (April 30, 2018), JM Smith Corporation (secured creditor).

5. Fred's, Inc., bankruptcy filed in D. Del. (September 9, 2019), Cardinal Health.

6. Haggen Holdings, bankruptcy filed in D. Del. (September 8, 2015), Topco Associates.

7. Kmart/Sears, bankruptcy filed in S.D.N.Y. (October 29, 2018), Cardinal Health.

8. Marsh Supermarket Holding, bankruptcy filed in D. Del. (March 11, 2017), AmerisourceBergen.

9. Phar-Mor, bankruptcy filed in N.D. Ohio (September 24, 2001), McKesson Corp.

10. Southeast Grocers, bankruptcy filed in D. Del. (March 27, 2018), Cardinal Health.

11. Specialty Retail Shops Holding (Shopko), bankruptcy filed in D. Neb. (January 16, 2019), McKesson Corp.

12. The Great Atlantic & Pacific Tea Co., McKesson Corp.

13. Tops Holding II Corp. (Tops Family Market), bankruptcy filed in S.D.N.Y. (February 21, 2018); Topco.

McKesson suspects there have been other threats of discontinuances or restrictions made by Cardinal and AmerisourceBergen, but this information would generally be confidential and unknown to McKesson.  McKesson also is informed and believes there have been threats made to other retail customers, such as hospitals, closed-door pharmacies, mail order pharmacies, and specialty pharmacies.

**INTERROGATORY NO. 6:**

Identify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler threatened to discontinue shipments at any time between January 1, 2013 and July 1, 2016 because the major pharmaceutical wholesaler was concerned that the strategic retail customer might be unable to pay the wholesaler's invoices in the near future or because the wholesaler determined that the retail customer's financial position had materially changed. For each such threat:

a) Identify the wholesaler, the retail customer, and the date on which the wholesaler threatened to discontinued shipments

b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases from the wholesaler during the prior two years.

c) Produce any contracts in effect between the wholesaler and retail customer at the time.

d) Describe any negotiations between the wholesaler and the retail customer before the threat to discontinue shipments.

e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

f) Produce all documents concerning the threat or, if the wholesaler was McKesson, produce documents sufficient to establish the facts concerning the threat.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 6:**

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories,

including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that the request is unduly burdensome and not proportional to the needs of the case.

McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.  McKesson further objects to this request on the ground that the terms "strategic retail customer" and "major pharmaceutical wholesaler" are vague and ambiguous and call for speculation, particularly since this request is not limited to actions taken by McKesson.  McKesson likewise objects to this request on the ground that actions taken by any "major pharmaceutical wholesaler" (other than McKesson) call for speculation and any answer is limited to public information, to which the Committee has equal access.

McKesson further objects to the term "threatened" on the ground that it is vague and ambiguous. For purpose of this interrogatory, McKesson will deem "threaten" to mean that the wholesaler directly stated that if the retail customer did not pay timely, that the wholesaler would discontinue or restrict shipments.  McKesson further objects to the Committee's demand herein to produce documents given that this is a special interrogatory, not a request for documents.

Subject to these objections, McKesson answers that it is specifically or generally aware or believes that McKesson, AmerisourceBergen, Cardinal, or other wholesaler threatened to discontinue or restrict shipments to the following customers (the date in parentheses is approximately when when the customer filed for bankruptcy):

1. C&K Market, Inc., bankruptcy filed in District of Oregon (November 19, 2013), pharmacies owned in non-debtor subsidiary—C&K Express, Inc.

2. CRC Parent Corp. (Chem RX), bankruptcy filed in Delaware (May 11, 2010), AmerisourceBergen.

3. DE of Northeastern Ohio (Drug Emporium/Snyder's Drug), bankruptcy filed in N.D. Ohio (Youngstown) (March 26, 2001), McKesson Corp.

4. Family Pharmacy of Missouri, bankruptcy filed in W.D. Missouri (Springfield) (April 30, 2018), JM Smith Corporation (secured creditor).

5. Fred's, Inc., bankruptcy filed in D. Del. (September 9, 2019), Cardinal Health.

6. Haggen Holdings, bankruptcy filed in D. Del. (September 8, 2015), Topco Associates.

7. Kmart/Sears, bankruptcy filed in S.D.N.Y. (October 29, 2018), Cardinal Health.

8. Marsh Supermarket Holding, bankruptcy filed in D. Del. (March 11, 2017), AmerisourceBergen.

9. Phar-Mor, bankruptcy filed in N.D. Ohio (September 24, 2001), McKesson Corp.

10. Southeast Grocers, bankruptcy filed in D. Del. (March 27, 2018), Cardinal Health.

11. Specialty Retail Shops Holding (Shopko), bankruptcy filed in D. Neb. (January 16, 2019), McKesson Corp.

12. The Great Atlantic & Pacific Tea Co., McKesson Corp.

13. Tops Holding II Corp. (Tops Family Market), bankruptcy filed in S.D.N.Y. (February 21, 2018); Topco.

McKesson suspects there have been other threats of discontinuances or restrictions made by Cardinal and AmerisourceBergen, but this information would generally be confidential and unknown to McKesson.  McKesson also is informed and believes there have been threats made to other retail customers, such as hospitals, closed-door pharmacies, mail order pharmacies, and specialty pharmacies.

## INTERROGATORY NO. 7:

If you contend that McKesson is entitled to the benefit of any affirmative defense other than "ordinary course of business" or "new value" under 11 U.S.C. §§ 547(c)(1), 547(c)(2) or 547(c)(4), identify all facts and documents supporting that contention.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 7:

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and

arguably many more. McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that the request is unduly burdensome and not proportional to the needs of the case. McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.

Subject to these objections, McKesson refers to and incorporates the expert report of Charles M. Berk, CBIZ Accounting, Tax & Advisory of New York. Mr. Berk details the defenses relied upon by McKesson, including ordinary course of business, contemporaneous exchanges for new value, and new value, as well as McKesson's administrative claim and its general unsecured claim. McKesson also refers to and incorporates McKesson's papers filed in support of its motion for summary judgment, filed May 1, 2019, docket nos. 24-27. McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers.

**INTERROGATORY NO. 8:**

Identify and calculate all credits and rebates A&P would have been entitled to receive under its Supply Agreement with McKesson for June and July 2015, assuming that A&P did not breach or had not breached the Supply Agreement, and describe:

(a)     how much A&P was owed for those credits and rebates,

(b)     whether and how much A&P was paid for those credits and rebates,

(c)     how and when A&P was paid for those credits and rebates,

(d)     when A&P would have been entitled to be paid for those credits and rebates if it had not breached the Supply Agreement,

(e)     whether any of those credits or rebates were segregated by McKesson in a specific account,

(f)     whether and when McKesson decided not to pay any sums to A&P that had previously been calculated or segregated by McKesson as actually or potentially due to A&P,

(g)     whether McKesson took any steps to reimburse itself for any credits or rebates that it paid to A&P before July 19, 2015, and

(h)     if McKesson took any steps to reimburse itself for any credits or rebates that it paid to A&P before July 19, 2015, describe those steps, including what those steps were, when they took place, why those steps were taken, when and how any of the money was transferred into or out of any account, where the money was located when it was transferred, where the money was transferred to, when the money was recorded as definitively belonging to McKesson rather than A&P, and what notice McKesson provided to A&P concerning McKesson's determination that the money definitively belonged to McKesson.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 8:**

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts.  McKesson calculates there are no fewer than 50 discrete questions and arguably many more.  McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that the request is unduly burdensome and not proportional to the needs of the case.  McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.

McKesson further objects to this request on the grounds that it is an incomplete hypothetical, and it requires McKesson to speculate.  For instance, in the event that A&P were not to have breached the supply agreement, would A&P still have filed for bankruptcy?  Would A&P have continued not to breach the supply agreement in future months?  Would A&P have maintained a sound financial condition?

McKesson further objects to this request on the ground that McKesson has not made the calculations based on this incomplete hypothetical.  It is improper discovery to ask McKesson to make calculations that it has not made.

McKesson further objects to this request on the ground that it seeks irrelevant information.

Subject to these objections, McKesson answers that it mistakenly paid A&P approximately $562,000 in July, 2015. This was an error. A&P was not entitled to this payment under the Supply Agreement.

**INTERROGATORY NO. 9:**

Identify each person who participated in preparing the answers to these Interrogatories by stating the complete name, position or title, address, and phone number of such person, and indicate the subject matter with respect to which such person has provided answers

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 9:**

McKesson incorporates herein all General Objections. McKesson objects to this interrogatory to the extent it seeks privileged information.

Subject to these objections, McKesson answers outside and in-house legal counsel for McKesson and Jenifer Towsley of McKesson.

**INTERROGATORY NO. 10:**

Identify and describe each occasion between January 1, 2014 and August 1, 2015 on which McKesson informed A&P that, if it did not make a specific payment on time, McKesson would discontinue shipments to A&P, and in doing so, identify the person who stated that McKesson would discontinue shipments, identify the person(s) to whom McKesson made the statement, state whether the statement was oral or in writing, identify all other person(s) who were present when the statement was made or who received the statement either by copy or forwarding if it was in writing, and produce all documents concerning the statement.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 10:**

McKesson incorporates herein all General Objections. McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories, including all discrete parts. McKesson calculates there are no fewer than 50 discrete questions and arguably many more. McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that the request is unduly burdensome and not proportional to the needs of the

case.  McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.

Subject to these objections, McKesson directs the Committee to documents produced by McKesson in the course of this proceeding, including McKesson's invoices and all correspondence between representatives of McKesson and A&P.  McKesson also incorporates the deposition testimony of Jenifer Towsley, who addressed this question at her 30(b)(6) deposition.

McKesson further identifies the following correspondence, based on the documents bates-labels: AP 102-103, AP101-02, McK-0001580, P000110, Mck-4663, McK-117049, P000110, McK-00010134, McK0001029, P102-105, McK-0001332, McK-0001332, McK-0001332, McK-0001033, McK-0001028, M0001349, McK-0001106, AP154, AP 334, AP402-403, McK-0001263-1265, AP175, P977, and McK-0001304-1305.

McKesson further identifies the following dates of responsive communications:

a.  2.27.15, involving Ms. Iragavarapu, Mr. Baker, Mr. Jeffries, Ms. Mitchell, Ms. Sharma from McKesson and Mr. Carnahan from A&P.

b.  3.27.15 involving Ms. Voirin, Ms. Towsley and Pat Aleman from McKesson and Mr. Carnahan and Ms. Fox from A&P.

c.  5.22.15 involving Ms. Towsley, Ms. Mitchell, Mr. Vitalone, Mr. Gallagher, and Mr. Baker from McKesson and Mr. Carnahan and Ms. Page from McKesson.

## INTERROGATORY NO. 11:

State how much merchandise or other new value McKesson provided to A&P during the period from July 17, 2015 through July 19, 2015; provide a calculation of that amount; identify how much of the merchandise or new value was provided to A&P on each of the three days from July 17 through July 19, 2015; and produce documents sufficient to establish that the calculation is accurate.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 11:

McKesson incorporates herein all General Objections.  McKesson further objects to the Committee's set of special interrogatories on the grounds they violate Rule 33(a)(1) of the Federal Rules of Civil Procedure, which limits a party from propounding more than 25 written interrogatories,

including all discrete parts. McKesson calculates there are no fewer than 50 discrete questions and arguably many more. McKesson further objects to this interrogatory and the set of the interrogatories in general on the grounds that the request is unduly burdensome and not proportional to the needs of the case. McKesson further objects to this request on the ground that this request seeks privileged information protected by the attorney work product doctrine.

Subject to these objections, McKesson agrees to supplement this answer by identifying all new value provided to A&P from July 17, 2015 through July 19, 2015.

DATED: August 5, 2021                           BUCHALTER
                                                A Professional Corporation

                                                By: _/s/ Jeffrey K. Garfinkle_
                                                Jeffrey K. Garfinkle, Esq.
                                                (Cal Bar. No. 153496; admitted *pro hac vice*)
                                                18400 Von Karman Avenue, Suite 800
                                                Irvine, CA 92612
                                                Telephone: (949) 760-1121
                                                Fax: (949) 720-0182
                                                jgarfinkle@buchalter.com
                                                Attorneys for MCKESSON
                                                CORPORATION SYSTEMS, LLC

## VERIFICATION

I have reviewed the foregoing objections and responses to plaintiff's first set of special interrogatories. I am authorized to sign this verification on behalf of the McKesson defendants. I am informed and believe that the information contained here is true and correct. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                    */s/ Jenifer Towsley*
                                    JENIFER TOWSLEY