# Buchalter

18400 VON KARMAN
AVENUE
SUITE 800
IRVINE, CA 92612
949.760.1121 PHONE
949.720.0182 FAX

File Number: M3515-0018
949.224.6254 Direct
jgarfinkle@Buchalter.com

August 23, 2021

**VIA ECF**

Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the District of New York
300 Quarropas Street
White Plains, NY 10601-4140

> Re:   The Official Committee of Unsecured Creditors vs.
> (i) McKesson Corp. (Adv. Pro. 17-08264);
> (ii) McKesson Pharmacy Systems, LLC (Adv. Pro. 17-08265); and
> (iii) McKesson Specialty Care Distribution Corp. (Adv. Pro. 17-08266)
> (collectively, the "Adversary Proceedings")

Dear Judge Drain:

This letter responds to some of the arguments raised in the August 20 letter (the "8.20.21 Letter") from counsel for Plaintiff (the Creditors' Committee) regarding disputed discovery issues. Each of the three complaints in these Adversary Proceedings contains only two causes of action—both for the recovery of 50 alleged preferential transfers (under 11 U.S.C. §§ 547 and 550(a)), as itemized in the exhibits attached to the complaints (which total approximately 55 transfers). In the 8.20.21 Letter, Plaintiff complains that McKesson is refusing to allow discovery on matters entirely unrelated to the two causes of action in the three pending Adversary Proceedings.

At the same time Plaintiff submitted the 8.20.21 Letter, it filed a motion to amend the complaint in one of the Adversary Proceedings in order to add entirely new claims unrelated to the preference causes of action. *See* Docket No. 71 in Adv. Pro. 17-08264 (the "Motion to Amend Complaint"). The gravamen of these new causes of action is that during 2015 McKesson supposedly breached certain provisions of the then operative Supply Agreement between McKesson and the debtors.

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
San Diego
San Francisco
Scottsdale
Seattle

BN 46641070v3

# Buchalter

Honorable Robert D. Drain
August 23, 2021
Page 2

McKesson believes that in the interest of judicial economy, it makes sense to deal with the discovery concerns raised in the 8.20.21 Letter only after the Court has considered Plaintiff's Motion to Amend Complaint, which is set for hearing on September 20, 2021 at 10:00 a.m.

The Court may recall that the Debtors each commenced chapter 11 cases on July 19, 2015. They immediately undertook to liquidate their stores, including the in-store pharmacies. During that liquidation, McKesson continued to sell pharmaceutical goods under the parties' then-operative Supply Agreement. The Supply Agreement, which ran through January 31, 2016, governed the terms on which pharmaceutical products were sold to the Debtors and other aspects of the supply relationship between the parties, including credits, product returns and rebates.

As the Debtors were completing their pharmacy liquidation and while McKesson continued to sell pharmaceutical goods to the Debtors under the Supply Agreement, McKesson and the Debtors were in frequent discussions regarding the Supply Agreement and the day-to-day business dealings under that agreement. Following completion of the pharmacy liquidations, in a series of emails going back to February 23, 2016 between representatives of the Debtors, including Mr. Carnahan, the debtors' then CFO, and representatives of McKesson, the Debtors requested, and McKesson provided, the information and accounting data related to payments, credits, and offsets.[1] Shortly thereafter, McKesson (through its counsel) provided additional information and accounting data to the Debtors (through counsel).

It is remarkable that more than five and a half years later, Plaintiff (the Creditors Committee) chooses to investigate and now litigate supposed claims arising under the Supply Agreement that were addressed and presumably resolved years ago. To be clear, McKesson intends to oppose the Motion to Amend Complaint asserting, among other things, the four year statute of UCC § 2-725(1) bars any claims related to supposed breaches of the Supply Agreement. UCC § 2-725(1) controls: "Any action for breach of contract for sale must be commenced within *four years* after the cause of action is accrued."

Certain of the discovery which Plaintiff now complains it has not received is entirely unrelated to the preference lawsuits and was refused as irrelevant to the issues actually present in the Adversary Proceedings. Other portions of the discovery which Plaintiff now complains about were refused because it was unduly burdensome. These include Plaintiff's demands that McKesson produce contracts and innumerable documents pertaining to McKesson's tens of thousands of customers. *See e.g.*, the following from Plaintiff's Third Request for Production of Documents:

---

[1] When counsel for Plaintiff was advised of this email exchange, his first reaction was to ask why the emails had not been provided earlier; they had been.

BN 46641070v3

# Buchalter

Honorable Robert D. Drain
August 23, 2021
Page 3

> ➤ No. 28: Produce "[e]ach of McKesson's contracts with significant customers with whom McKesson did business during any part of the period from January 1, 2014 through the Petition Date, ...";
>
> ➤ No. 34: Produce "[d]ocuments sufficient to identify any customer who negotiated, or attempted to negotiate, contractual provisions different from A&P's concerning (a) the customer's actual or possible financial difficulty or (b) a Defendant's right to change payment or credit terms, or (c) the customer's actual or potential failure or inability to pay any sum when due."; and
>
> ➤ No 35: Produce "[d]ocuments sufficient to identify each of McKesson's significant customers whose payment or credit terms changed between January 1, 2014 and April 17, 2020 and, for each such customer, documents sufficient to identify: (a) how the payment terms were changed, (b) whether the customer ever objected to the change, and on what grounds, (c) whether the parties negotiated concerning the change in payment terms; and (d) the final payment terms which McKesson imposed or to which the parties agreed."

McKesson has already produced far in excess of 700,000 documents and roughly a terabyte of accounting data in response to Plaintiff's requests. In fact, many documents and accounting data have been produced on more than a few occasions because, as Plaintiff has said, "what we have, and what we can find are different." In short, McKesson has not played "hide the ball." Far from it. McKesson has produced documents and accounting data that are actually relevant to the issues in Adversary Proceeding and the two causes of action in each of the complaints.

Plaintiff is not content. Instead, it has continually sought documents related to claims it has not asserted, and documents related to McKesson's tens of thousands of customers (in addition to A&P). The Motion to Amend Complaint is the latest effort to expand the scope of discovery far beyond that which is relevant and reasonable in light of the two actual causes of action in the Adversary Proceedings and the 50 alleged preferential transfers.

Based on the foregoing, McKesson urges the Court to defer consideration of Plaintiff's request until after the hearing on September 20 and the Court considers both the Motion to Amend Complaint and McKesson's to-be filed Opposition.

BN 46641070v3

Buchalter

Honorable Robert D. Drain
August 23, 2021
Page 4

      We are available for a telephone conference with the Court if it believes a conference is necessary.

                      Very truly yours,

                      BUCHALTER
                      A Professional Corporation

                      Jeffrey K. Garfinkle

cc:    Tracy Klestadt, Esq.
        Richard K. Milin, Esq.

BN 46641070v3