**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

August 27, 2021

<u>**Via ECF and E-mail**</u>

Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

<div style="margin-left: 2em;">

**Re:**     **The Official Committee of Unsecured Creditors v. McKesson Corp.
(Adv. Pro. 17-08264 (RDD));
The Official Committee of Unsecured Creditors v. McKesson Pharmacy
Systems LLC (Adv. Pro. 17-08265 (RDD)); and
The Official Committee of Unsecured Creditors v. McKesson Specialty Care
Distribution Corp. (Adv. Pro. 17-08266 (RDD))**

</div>

Dear Judge Drain:

On behalf of Plaintiff, the Official Committee of Unsecured Creditors of The Great Atlantic & Pacific Tea Company, Inc., we write in response to the letter from Defendant McKesson Corporation dated today. We also propose a simple, if interim, resolution of the parties' discovery dispute.

Yet again, Defendant misrepresents the facts. Among other things, it provides the Court with its incorrect, self-serving email of August 25 and omits Plaintiff's detailed reply and the parties' many subsequent emails. Defendant does so for two reasons. First, Defendant wants to convince the Court that, as its letter states, "[b]oiled down, the Committee will not meet and confer unless McKesson concedes on all points." Of course that is not our position. Here is what we said in an email yesterday:

<div style="margin-left: 2em;">

[Y]ou misrepresent the facts. I did not insist that Defendant provide ***all*** that we have asked for, but rather that it make a good faith offer of at least ***some*** of what we have asked for, including crucial information about Defendant's improper seizure of hundreds of thousands of dollars in Medturns that Defendant owes to Plaintiff.

</div>

Second, Defendant tells the Court that Plaintiff is "refusing to engage in further meet and confer." The parties' subsequent emails disprove that misstatement. Indeed, as I emailed Defendant yesterday, "this email exchange ***is*** a 'meet and confer.'" *See* the parties' full email exchange from August 24 through this morning, which is annexed to this letter.

Unfortunately, the parties' meeting and conferring this week has been unproductive, just as it has been in the past. Ever since Your Honor's ruling on July 24, Defendant has attempted to convince Plaintiff to extend discovery deadlines by a full month in exchange for an agreement that we merely talk about discovery issues. Plaintiff's response has been: Our conferences have not resolved the issues in the past, so make a good faith offer to produce "at least some of what we have asked for," as my email put it, so that we will have reason to believe that conferring will be worthwhile.

GRIFFIN HAMERSKY LLP
ATTORNEYS AT LAW

Rather than make a good faith offer of any of the information, documents or testimony we have requested – in response to which we would readily have consented to an extension – Defendant chose to write to Your Honor and misrepresent the facts.

The result of our meeting and conferring since Your Honor's ruling has been, unfortunately, substantially nothing.  This morning I summed up Defendant's offer:

> You do not offer a genuine response to Interrogatory 8, which we are entitled to, or mention interrogatories at all.  You do not offer any of the documents or information Defendant refused to provide in response to document requests and interrogatories about pharmaceutical wholesalers' treatment of strategic retailers like the Debtor.  You refer back to your offer of 30(b)(6) testimony about "rebates, product returns and credits," but disingenuously fail to repeat that the witness you offered would testify about Defendant's general practices rather than its specific misconduct in seizing the Debtor's money.

> In fact, your email offers us, if not nothing, then substantially nothing.  As I read it, you are offering only:  Bates numbers for documents already produced, deposition testimony about general procedures rather than the facts at issue, and talk.  We appreciate that offer, but it is no reason to extend discovery by a month or stand down on moving to compel.

Plaintiff proposes that the Court resolve the parties' stalemate as follows.  Plaintiff has no objection to the Court's extending Defendant's deadline by one week, until Friday, September 3rd.  During that week, Defendant should prepare a good faith offer of documents, interrogatory responses and testimony that will likely provide Plaintiff with, if not everything Plaintiff wants, at least what it needs.  Plaintiff has already laid out substantially all of the issues in its last two letters to the Court, and certainly did so in earlier letters, but it is willing to discuss the issues and react to any interim proposal Defendant might make to try to reach resolution.  If Defendant's proposal seems likely to resolve Plaintiff's issues, or to provide a truly good faith basis for doing so, a longer extension will be warranted so that Defendant can actually provide the documents, interrogatory responses and testimony.  If not, Plaintiff should be free to file its motion to compel and for sanctions, which it otherwise would have filed this Monday.

We feel compelled to make one more point.  Unfortunately, even apart from its many misrepresentations, Defendant's letter is emblematic of some of the problems Plaintiff faces in trying to resolve the issues.

First, as I wrote in my letter to Court on Monday, Defendant "addresses only the issues it wants to address, and ignores the rest."  Defendant tells the Court that the parties' "discovery dispute centers on" Plaintiff's Third Document Request and Interrogatories – but it omits all mention of the deposition testimony Plaintiff requested in Point II of our letter to Court last Friday. Defendant does not want to provide deposition testimony from a knowledgeable witness, and has consistently refused to do so, but it is obligated to do so under Rule 30(b)(6), Fed. R. Civ. P., and Second Circuit law.  Accordingly, Defendant remains silent, and makes no offer of testimony in its letter.

2

**GRIFFIN HAMERSKY** LLP

ATTORNEYS AT LAW

Second, the last two pages of Defendant's letter make clear that a further month of negotiations is extremely unlikely to be fruitful.  Instead of offering what Defendant *will* produce to satisfy Plaintiff's requests, Defendant states what it will *not* produce, and it does so based on false statements about Plaintiff's purported "acknowledgements" and objections that are patently absurd if only one knows – as the Court cannot yet know – the relevant facts.  Defendant's letter does not show that it is willing to be constructive; it shows the opposite.

The key example in Defendant's letter is its page-long objection to Plaintiff's Interrogatory 4 as "overbroad and irrelevant."  To show that the Interrogatory is "overbroad," Defendant quotes it substantially in full – but does not point out that the Interrogatory only asks about a financially struggling subset of "strategic retail customers" or that, according to Defendant's own 30(b)(6) witness, the entire set of strategic retail customers is so small that Defendant only had 20 in 2015.  When the Interrogatories were served, Plaintiff was only aware of two potentially relevant entities, one of which was A&P.  As of today, it knows of less than five more.

Moreover, Defendant's assertion that Interrogatory 4 is "irrelevant" is preposterous.  Apparently, Defendant hopes that the Court will forget the last telephonic conference we had, in which Defendant argued that it should be permitted to subpoena one of its competing wholesalers in this matter as well as a strategic retailer.  Also, Defendant argues strenuously that the Debtor's preferential transfers are shielded from avoidance because all three major pharmaceutical wholesalers treat their major, strategic customers as harshly as Defendant treated A&P; Defendant hired an expert to testify to that effect; Defendant subpoenaed its competitor AmerisourceBergen in an attempt to prove that; and Defendant is attempting to set up a "trial by ambush," in which it submits evidence at trial about pharmaceutical wholesalers' behavior and Plaintiff lacks the facts to cross-examine.  Defendant's letter actually tells the Court that, despite its subpoena to AmerisourceBergen, the "relevance of other wholesalers' conduct is very limited."  Is Defendant willing to stipulate that it will not seek to admit such evidence?

Based on the foregoing objections to Interrogatory 4, Defendant indicates that it may be "agreeable" to producing unspecified "reasonable information about its own conduct," though "information regarding the conduct of other wholesalers" would be too burdensome and the "relevance…is limited."  Yet Defendant has flatly refused to produce "any documents" even about its own conduct with respect to strategic retailers in response to Requests 28, 34, 35 and 37 of Plaintiff's Third Document Request.  Plaintiff discussed that issue in Point I.3 of its letter to Court last Friday.

Finally, Defendant once again brings up its transparently baseless argument that the Court should let it continue to conceal information about its improper post-petition seizure of almost $1 million of the Debtor's money without the Debtor's consent, the Court's approval or any sound justification.  Defendant certainly should have hesitated to tell the Court that this information "bears no relationship" to this proceeding and that "any requests for discovery associated with these new claims should wait until the Court has ruled on whether the claims could be brought."  Defendant already addressed that extraordinary and disingenuous argument in its letter to Court this Monday, August 23:

3

GRIFFIN HAMERSKY LLP

ATTORNEYS AT LAW

Defendant asserted a defense of setoff in its complaint; Plaintiff is entitled to argue that Defendant's seizure of approximately $1 million of Plaintiff's property, without consent, Court permission or genuine justification, is an equitable bar to any setoff. Plaintiff is also entitled to argue that the amount Defendant seized should be set off against its 503(b)(9) claim.

In addition, Section 558 of the Bankruptcy Code permits Plaintiff to set off its claims against Defendant's 503(b)(9) claim, even if its "Medturns" claim is considered prepetition. *See Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.)*, 181 B.R. 730, 739-40 (Bankr. S.D.N.Y. 1995) ("Section 558 of the Bankruptcy Code … preserves … any right to setoff the debtor may have" and, applying New York law, a debtor "does not have to establish that the debts between the parties are both prepetition"). A Debtor even has the right under Section 558 to set off a prepetition receivable such as the "Medturns" against a creditor's administrative expense claim. *See In re PSA, Inc.*, 277 B.R. 51, 53-54 (Bankr. D. Del. 2002)

Thus, the simple fact is that Defendant's seizure of $413,000 in "Medturns," which it admitted it owed to the Debtor in July 2015, and its unilateral self-reimbursement in November 2015 for the $562,000 it had paid the Debtor three days before the July 19th Petition Date, have always been issues in this proceeding – whether or not the Court permits Plaintiff to assert additional affirmative claims in an amended complaint.

There is no need for a conference here, and there is certainly no need for a one-month delay so that Defendant can explain yet again why it is refusing to produce documents, information and testi-mony that Plaintiff is entitled to receive under the Federal Rules of Civil and Bankruptcy Procedure. However, Plaintiff is willing to put Defendant to the test. If Defendant uses the next week to show that it has changed its position, and is now willing to provide the discovery that Plaintiff genuinely needs and is entitled to, subject to a reasonable effort to avoid any undue burdens, Plaintiff will be happy to avoid motion practice and to see what the parties can work out. In the alternative, we respectfully suggest that the Court should direct Plaintiff simply to proceed with its motion to compel and for sanctions so that the issues can be fully resolved.

Respectfully,

/s/ Richard Milin

Richard K. Milin

cc: Jeffrey K. Garfinkle, Esq.
    Tracy L. Klestadt, Esq.

4



Katie Warren <kwarren@grifflegal.com>

---

## Fwd: A&P Open discovery issues [IWOV-BN.FID1434304]

**Richard Milin** <rmilin@grifflegal.com>                                    Fri, Aug 27, 2021 at 11:03 AM
To: Katie Warren <kwarren@grifflegal.com>


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue | Suite 400 | New York, NY 10170
T: 646.998.5580 | F: 646.998.8284 | C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


---------- Forwarded message ---------
From: **Richard Milin** <rmilin@grifflegal.com>
Date: Fri, Aug 27, 2021 at 11:03 AM
Subject: Re: A&P Open discovery issues [IWOV-BN.FID1434304]
To: Slate, Daniel H. <dslate@buchalter.com>
Cc: Michael Hamersky <mhamersky@grifflegal.com>, Tracy Klestadt <TKlestadt@klestadt.com>, Garfinkle, Jeffrey K. <jgarfinkle@buchalter.com>, Winick, Steven H. <swinick@buchalter.com>, Harvey, Brian T. <bharvey@buchalter.com>


Dan:


1. **Depositions**.


   A. Defendant is the reason we do not have a deposition schedule.  I repeatedly requested deposition dates from Defendant and did not receive them.  To summarize the history of the last two weeks, I raised the topic on August 13 but you were not prepared to address it.  On August 16 you wrote that you had put out inquiries but did not receive responses.  On August 19 we proposed a schedule which accepted the August 27 date you had proposed for Mr. Berk, offered Ms. DeVito on August 26, and offered Mr. Pederson for the September 7 date you had previously proposed as an alternative for Mr. Berk.  You responded "Not going to work."  On August 24, you incorrectly wrote that "I have yet to hear a date that works for Ms. DeVito" and I corrected you.  I also offered a new proposal, "Dawn on 9/3, Berk on 9/9 and Pederson on 9/10."  You did not respond, and I no longer have time to prepare for those dates.


   B.  Despite this history, the Court may well allow you to depose Mr. Pederson at some stage.  Ms. DeVito's deposition can only fairly take place, if at all, after you have produced documents about the Medturns and the Rebate that Defendant improperly seized from the Debtor after the Petition Date without Court authorization.  We trust that you do not propose to use Ben Zimmerman as a witness at trial because you have not identified him as such.  If that is incorrect, let us know, and he should be offered for deposition.  We have previously indicated that Mr. McGarry, Mr. Carnahan and Ms. DeVito are the only potential fact witnesses we are considering for Plaintiff.  You have previously indicated that you only intend to call Ms. Towsley, I believe, or the other three we deposed: Page, Mitchell and Iragavarapu.


2. **Motion to Compel**


A. One lesson from our email traffic, and from Defendant's long history of failing to provide items it has agreed to provide, is that Defendant is so unwilling to comply with its discovery obligations that it cannot be trusted to do so without a Court

order.  A few examples include Defendant's failure to provide information about the Rebate which Jeff agreed to investigate in April, Defendant's failure to provide information in connection with the "meeting of accountants" we had weeks ago, and Defendant's failure to produce the documents it agreed to produce in response to our Third Document Request until months later.  I remind you that I was unable to review some of the documents Defendant produced about Mr. Kosty before his deposition because they came in such a short time before, and only because I threatened to cancel the deposition.  Also, the documents we need to review for Mr. Berk's deposition were not identified, as Fed. R. Civ. P. 26 and our Third Document Request from May 21 required, until August 10.


B. Another lesson of our email traffic is that Defendant is unwilling to provide the specific items Plaintiff has requested in discovery unless compelled to do so.  We tell you over and over again what we need; we serve discovery requests; we write letters; we explain our requests; we confer; and eventually we are forced to write in response to the Court.  Defendant has proved incapable of providing a voluntary response that fairly meets its obligations under the governing Rules.  Instead, as in your email of last night, you tell us -- but don't and can't show us -- that you have already provided what we're asking for.  No, as I have shown you repeatedly, you haven't.  On the one or two occasions when you have proven right, as when Jeff included information in his August 10 letter that I missed, I have thanked you with embarrassment and agreed.  But your email of last night is absolutely wrong, and not even plausible, in stating that "We believe we have done exactly what you say you want."


You know that is not true.  After all, Defendant flatly refused to produce the documents about rebates and credits I have been asking for, and you have yet to identify any that you produced anyway.  The documents we do know about present only a very partial picture, and we used them at Ms. Towsley's deposition.  If our Third Document Request was simply redundant, you should have objected on that ground and shown us that you were correct, not refused to produce the documents as "irrelevant."


3.  **Defendant's extension request**.


We cannot agree to Defendant's extension request.  We could agree to what the Court told us it would do:  extend time for you to produce what we requested on an item by item basis.  But you are not asking for a month to produce anything.  You are asking for a one-month extension so we can *talk* about producing something.  We do not believe that would be productive given Defendant's past history.  We also do not understand why talking alone should require a full month.  We have repeatedly asked you to make us an offer of at least some of the items we requested.  You have not done so.


4.  **Defendant's less-than-proposal of last night**


Once again, your email offers what Defendant is willing to provide rather than what we requested and are entitled to under the Federal Rules of Civil Procedure.  You do not offer a genuine response to Interrogatory 8, which we are entitled to, or mention interrogatories at all.  You do not offer any of the documents or information Defendant refused to provide in response to document requests and interrogatories about pharmaceutical wholesalers' treatment of strategic retailers like the Debtor.  You refer back to your offer of 30(b)(6) testimony about "rebates, product returns and credits," but disingenuously fail to repeat that the witness you offered would testify about Defendant's general practices rather than its specific misconduct in seizing the Debtor's money.


In fact, your email offers us, if not nothing, then substantially nothing.  As I read it, you are offering only:  Bates numbers for documents already produced, deposition testimony about general procedures rather than the facts at issue, and talk. We appreciate that offer, but it is no reason to extend discovery by a month or stand down on moving to compel.


Even your extremely limited offer is hedged.  You say "if additional testimony is necessary, we are prepared to address each issue on an item-by-item basis."  You write "*if*"?  And "necessary" according to whom?  We have told you repeatedly that additional testimony is necessary.  We wrote you a letter about it on August 4.  I tried to discuss it with you when we conferred, but you would not do so, then flatly refused to provide further testimony by email and on the phone on August 17.  Eventually, we were forced to write to the Court about it, and we again specified what we need.  I have

emailed you about it since.  We couldn't be clearer.  Yet the one thing you haven't done is take our requests seriously enough to address them on an "item-by-item basis."  Defendant is stonewalling, pure and simple.


5.  **Your account of Defendant's prior document production**


We do not agree with your self-serving account of Defendant's prior document production, and we do not believe that, even if it were true, it has any relevance to Defendant's express refusal to provide documents and information in response to our Third Document Request and Interrogatories.  Did you really write that "Consilio generated the complete universe of all documents related to A&P"?  You know that statement is untrue, and certainly not what any rational litigant would ask for.


Further, the information Defendant produced is not complete as to rebates and credits.  We had an email exchange about that.  But if we're wrong -- great!  We only want the information we are entitled to.  We look forward to the Bates numbers you agreed to provide.  When will we receive them?


Richard


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


On Thu, Aug 26, 2021 at 6:41 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

> Richard:
>
> We believe we have done exactly what you say you want.  You will recall that using search terms you approved and the hard drives of individuals you agreed to, Consilio generated the complete universe of all documents related to A&P.  You will recall that you spoke with the Consilio people to confirm that your instructions were understood and for Consilio to answer any of your questions regarding the searches.  Every document in that universe, except only those protected by attorney-client privilege, has been provided to you.  Every one.  Further, you were provided the Consilio report.  You were also provided the entire SAP database for A&P. So the short answer is that you have the documents related to pre and post-petition credits, product returns and rebates.  We are also working to identify the Bates numbers of such documents and will, of course, provide them upon determination.
>
> As to 30(b)(6) testimony, we have offered up an individual who will attest to rebates, product returns and credits.  Further, as to the balance of the discovery issues between the parties, and if additional testimony is necessary, we are prepared to address each issue on an item-by-item basis, as the Court suggested.
>
> Please confirm that the Committee will support a 30 day extension of discovery so that these discovery issues can be discussed, and hopefully resolved, and the depositions can go forward.
>
>
> **Daniel Slate**
> **T** (213) 891-5444
> **C** (213) 716-5227

# Buchalter

**Daniel H. Slate**
Shareholder
**T** (213) 891-5444
**F** (213) 630-5640
dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
www.buchalter.com | Bio | LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Thursday, August 26, 2021 1:48 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K. <jgarfinkle@Buchalter.com>;
Tracy Klestadt <TKlestadt@klestadt.com>; Winick, Steven H. <swinick@buchalter.com>; Harvey, Brian T.
<bharvey@buchalter.com>
**Subject:** Re: A&P Open discovery issues [IWOV-BN.FID1434304]

---

This message has originated from an **External Email**. rmilin@grifflegal.com <rmilin@grifflegal.com>:

---

Dan:

Once again you misrepresent the facts.  I did not insist that Defendant provide ***all*** that we have asked for, but rather that it make a good faith offer of at least ***some*** of what we have asked for, including crucial information about Defendant's improper seizure of hundreds of thousands of dollars in Medturns that Defendant owes to Plaintiff.  And once again, you offer nothing.

Your email even misrepresents Judge Drain!  He did not, as you put it, "invite[] us to initiate "meet and confer" discussions."  He invited defendant to "resolve this discovery dispute on an item-by-item basis":

"If defendant wants to resolve this discovery dispute on an item-by-item basis, which its letter does not suggest, I will extend the discovery cutoff date further for such an attempt to be made before the motion is filed."

So far, Defendant has not offered ***any*** resolution of ***any*** item in dispute.  It has only offered to talk, as we have done so many times in the past.  Moreover, this email exchange ***is*** a "meet and confer."  Your emails have misrepresented our conversations

so many times that I am much more comfortable discussing the issues in writing.  I am willing to discuss details once Defendant has proposed a workable framework but, of course, it hasn't.


As I've said multiple times, make us a reasonable offer to show your good faith, and we will respond.  It seems clear that you are unwilling to do so.  Accordingly, we are proceeding with our motion.


Richard


P.S.  Since you say in paragraph 3 of your email from last night that I didn't "get back to" you to explain the term "medturns," and I use the term above, I refer you to paragraph 10 of the amended complaint we served with our motion back on August 19, which defines the term and uses it throughout.


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


On Thu, Aug 26, 2021 at 4:20 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

Dear Richard,


The Court invited us to initiate "meet and confer" discussions coupled with a continuation of the discovery deadline.  We have accepted this invitation and asked you to meet and confer.  In response, you have resisted our request and instead demanded that we essentially agree to your demands without regard to our actual discovery responses and objections.  In an effort to move the ball forward, we made good faith representations to you regarding our willingness to provide reasonable discovery responses to the five areas that you highlighted.  You claim our representations are inadequate and appear to condition your participation in meet and confer discussions on our concession to produce all that you have requested, without regard to our responses or objections.  Under your approach, there would actually be no need to meet and confer because we would have already had to concede all points.  Obviously, conditioning a negotiation on our agreement to your negotiation demands is inconsistent with the meet and confer process.


So, one final time,  we ask that you agree to extend the discovery deadline for one month to allow the meet and confer process to go forward.  If your answer remains a "no," then we will have no choice but to address the matter with the Court.


Very truly yours,

Dan

**Steven Winick**
**T** (415) 227-3573
**C** (650)219-8413

# Buchalter

---

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

---

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com I Bio I LinkedIn

**From:** Richard Milin [mailto:rmilin@grifflegal.com]
**Sent:** Thursday, August 26, 2021 12:57 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K.
<jgarfinkle@Buchalter.com>; Tracy Klestadt <TKlestadt@klestadt.com>; Harvey, Brian T.
<bharvey@buchalter.com>; Winick, Steven H. <swinick@buchalter.com>
**Subject:** Re: A&P Open discovery issues [IWOV-BN.FID1434304]

> This message has originated from an **External Email**. rmilin@grifflegal.com <rmilin@grifflegal.com>:

---

# Dan:

We disagree with substantially everything you state in your email. More importantly, however, my email of last night stated, "Defendant will have to be willing to offer what we have actually requested, not just what Defendant wants to

provide."  I concluded by saying, "[f]or now, it is time to establish Defendant's ***bona fides***."  Instead, Defendant has done the opposite.

Your email offers us nothing.  It ignores our points, mischaracterizes my email, misrepresents the facts, and purports not to understand discovery requests that are clear on their face and that you have previously refused to discuss on multiple occasions, such as our request for further deposition testimony.  You turn every issue into a task for us instead of a duty for McKesson.  And I am simply astonished by the number of false statements in such a short email.

Perhaps you can convince the Court that you are making a good faith offer to "confer," but we are confident that the Court will understand, as we do, that Defendant's purported willingness to "confer" without making a definite offer of specific documents, information and testimony -- or the Court's entry of an order compelling discovery -- will result in nothing but delay.

We have now exchanged multiple emails, and MsKesson still has not offered any witnesses or information about any material issue, including Defendant's seizure of almost $1 million of the Debtor's assets and the undisclosed amount of Medturns that Defendant seized for the last two weeks before the Petition Date.  We estimate that amount to be more than $160,000.

My email of last night, which my client has now reviewed, stands.  If you really want to advance the ball, we have told you how to do so:  Offer specific information, documents and witnesses on specified issues as we have requested within a reasonable time frame.  That's all there is to it.

Richard

Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com

On Thu, Aug 26, 2021 at 2:49 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

> Richard:

It is disappointing that in response to our request to meet and confer, you once again misconstrue and mischaracterize our statements in order to fit the story you want to present. In your email, you specifically identified five categories as to which you asked for additional documents or information, and we responded to each of those five points.

1.      As to the two areas you now say are "most important," (i) identification of documents in interrogatories and (ii) testimony pursuant to 30(b)(6). As to the first area, it seems to us that offering to produce documents (whether or not we have already produced them) is preferable to identification of those documents. Let us know if you disagree. In any event, the purpose of our communication was to set the table so that we could determine how much time was necessary to meet and confer on the individual discovery requests, many of which we submit are improper.

        As to the second "most important" area, additional testimony pursuant to 30(b)(6), please re-read our response and note that we asked for guidance from you as to what you are looking for. Recall that in your August 4 letter, you identified no less than 22 topics, many of which frankly make no sense (topic 2: "each defendant's factual contentions in each Adversary Proceeding, including contentions concerning deliveries, payment and communications and agreements with A&P" or topic 4: "each affidavit, declaration and expert report submitted or prepared for submission in any of the Adversary Proceedings" or topic 14: "McKesson's conduct concerning, and procedures for addressing, customers' actual or potential financial distress"). You and I talked about those topics and you acknowledged that you had not reviewed either our responses to your requests for admission or our responses to your interrogatories, and suggested that those documents are likely to have addressed the topics, if not covered the area completely. Again, it is impossible for McKesson to respond when we don't know what is being asked of us.

2.      Also, we did not limit our response to a single witness. Again, we asked you what you want in the nature of 30(b)(6) testimony, and if additional testimony is needed, McKesson is certainly open to providing it. You must acknowledge that the 22 topics are way too general and overbroad; we need to understand specifically what you want.

3.      We must agree to disagree on this point. First, you will recall that I asked you on a number of occasions to what Mr. Pederson referred when he noted "$800,000 or more in medturns," since that was a term with which we were not familiar. You have yet to get back to me on that, but we have already provided you with all data reflective of credits, both pre and post-petition. McKesson is not at fault because you can't locate that information.

4.      As to limiting production of documents related to other wholesalers and their credit practices, is it your expectation that McKesson is to provide you with pleadings, SEC filings and other information that is readily available to you for the asking? Again, these are items to be discussed in meet and confer.

5.      Your cavalier attitude toward an enforceable confidentiality provision in an agreement between McKesson and its other customers is troubling. We certainly can't ignore those provisions just because you want information. In any event, we are agreeable to trying to reach an approach as to these confidentiality issues.

The Court ruled that if we wanted to proceed on an "item-by-item" basis, then, at defendant's option, we could do so. We are seeking to reach an agreement on the discovery cutoff date to allow this. In good faith, we responded to your five points and indicated our willingness to provide reasonable responses, without waiving our objections to your specific discovery requests. I am afraid your response did little to move the ball forward and, I am afraid, suggests an unwillingness to engage in reasonable meet and confer.

Our proposal remains that we extend the discovery deadline through the end of September to both allow for reasonable meet and confer and to facilitate any additional discovery the parties agree to. Please get back to me this afternoon so we can begin this process.

**Daniel Slate**

**T** (213) 891-5444
**C** (213) 716-5227

# Buchalter

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com l Bio l LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Wednesday, August 25, 2021 8:42 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K.
<jgarfinkle@Buchalter.com>; Winick, Steven H. <swinick@buchalter.com>; Tracy Klestadt
<TKlestadt@klestadt.com>
**Subject:** Re: A&P Open discovery issues [IWOV-BN.FID1434304]

---

This message has originated from an **External Email**. rmilin@grifflegal.com <rmilin@grifflegal.com>:

---

Dan:

I will consult with my client.  However, I cannot recommend acceptance of your proposal for the
reasons stated below.  Indeed, your proposal's silence concerning the real issues, and its multiple
false or disingenuous statements, undermine our ability to believe that Defendant is truly
attempting to work out the issues in good faith.  Accordingly, your proposal does not allow me to
stop work on our motion to compel, and we reserve our right to seek sanctions, including
compensation for the time we have been forced to spend working on it and must continue to spend
going forward.

Nevertheless, we look forward to your response to this email in the hope that we can indeed agree
to a genuine path forward.  To do so, Defendant will have to be willing to offer what we have
actually requested, not just what Defendant wants to provide.  To date, Defendant has not done so.

1. Most importantly, your proposal does not even mention interrogatories and offers no meaningful deposition testimony.  Our letters to Court requested documents, interrogatory responses and continued deposition testimony pursuant to Fed. R. Civ. P. 30(b)(6).  Yet documents are all that Defendant offers.  It does not suffice.  Defendant's proposal will have to be substantially improved if it is to provide the documents, testimony and information we are entitled to under the Federal Rules of Civil Procedure.

2.  Your proposal offers only a single witness who will only "attest to (i) accuracy of business records provided, and (ii) policies and procedures applicable to rebates and other pre-petition credits."  That is unacceptable.  It is not what we have asked for and it is much less than we are entitled to.  We can only construe your offer as a refusal to provide a witness who can provide informed testimony on behalf of Defendant pursuant to Rule 30(b)(6) about its improper seizure of almost $1 million of the Debtor's money, why it took the money, when it took the money, and the documentary record concerning it.  We also construe your offer as a refusal to provide a witness concerning the other six 30(b)(6) subjects we identified in our letter to you of August 4, 2021.

3.  Your proposal does not even offer to produce documents concerning Defendant's improper seizure of hundreds of thousands of dollars in "medturn" credits that were due to Plaintiff before the Petition Date.  Nor do you offer documents or information about the credits which accrued between July 6 and the Petition Date which, as you record, my email specifically asked about. Instead, you say that, "we believe we have provided substantial documents related to this area." You must know that is not true.  You are asking us to believe that, despite having flatly refused to produce documents about medturn credits in response to both Plaintiff's Second and Third Document Requests, despite Ms. Towsley's inability or unwillingness to provide deposition testimony about them, and despite Defendant's failure to mention them in response to Interrogatory 8, Defendant nonetheless produced "substantial" documents about them.  To the contrary, Plaintiff believes that Defendant is concealing exactly how much it owes to the Debtor for medturns for the period between July 7 and July 19, 2015.

4.  None of your proposal's offers to produce documents agree to produce **all** documents responsive to any of our document requests or even a subset of those documents to be negotiated.  Instead, McKesson offers to produce an unspecified group of documents of its own choosing.  Producing some documents, without any assurance that all responsive documents have been produced whether or not they favor Defendant's position, is not acceptable.  Also, producing only what Defendant decides are "non-public" documents, rather than all of the responsive documents Defendant has in its possession, custody or control, is not acceptable.

5.  Your reference to confidentiality concerns to justify Defendant's refusal to produce documents about its treatment of other strategic retailers, and other wholesalers' treatment of strategic retailers, is disingenuous.  We already have the most Draconian confidentiality agreement I have seen in more than 30 years of practice with -- as I recall -- three increasing levels of confidential treatment.  Besides, all of the retailers Defendant has identified in its interrogatory responses, served more than one month after Ms. Towsley's deposition, filed bankruptcy petitions -- and two of the three McKesson customers other than A&P did so in 2001.  Accordingly, Defendant has no legitimate reason to withhold documents about its own treatment of other strategic retailers, with at most one possible exception.  Moreover, if Defendant has documents about its competitors' treatment of strategic retailers, it is not plausible to suggest that those documents are highly confidential. If they were, Defendant would not have them.

6.  We stand by our request for testimony and information in our 30(b)(6) letter, as I have told you on multiple occasions and as I wrote to the Court.  I will not comment further on your email's

suggestion to the contrary, except to say that it is neither plausible nor correct, and to quote my last email to you, which states:  We need to preview what you intend to produce and when, and whether you intend to continue refusing to produce documents, information *and witnesses about the topics I have identified in our requests and correspondence with the Court*, so that we can make informed decisions (emphasis added).  And the email before that: "is McKesson now willing to provide or identify documents in response to our interrogatories and *provide further 30(b)(6) testimony*?" (Emphasis added.)

Finally, as you know, my email listing the issues you address also refers to additional issues you do not address, and it was meant as a quick response, not a thorough list.  I wrote, " I wanted to get back to you promptly, and those are the items that come to mind."  Nevertheless, if we are able to make progress concerning the issues discussed above, we should be able to resolve the smaller ones.  For now, it is time to establish Defendant's *bona fides*.

Richard

Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com

On Wed, Aug 25, 2021 at 7:34 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

Richard:

This responds to specifically address the five points identified in your email of 8.24 at 6:08pm asking for documents and information related to:

1.   The credits, including information about all credits due for refunds through the petition date, and not just July 6

We believe we have provided substantial documents related to this area (and will work to confirm that).  We are also working to identify an individual(s) who can attest to (i) accuracy of business records provided, and (ii) policies and procedures applicable to rebates and other pre-petition credits.

2.   McKesson's treatment of other strategic retailers who missed payments or had financial problems

We have a substantive problem with this category and the next.  We understand that each supply agreement with each "strategic retailer" has confidentiality provisions comparable to that in paragraph 14A of the Supply Agreement with A&P.  That provision reads:

"Any and all accounts, records, books, files, and lists regarding any transaction provided for or contemplated hereunder, including A&P's financial information, shall be confidential and proprietary to the party creating or generating such information. This Agreement, and the terms and conditions hereof, are confidential. The parties expressly agree to maintain such terms and conditions in confidence, and shall take every precaution to disclose the contents of this Agreement only to those employees of each of the parties who have a reasonable need to know such information."

We are trying to figure out a work around for this.  Subject to confidentiality concerns, as to the strategic retailers identified in Ms. Towsley's deposition, we intend to produce responsive documents within McKesson's custody, possession or control with respect to the time period January 1, 2013, to July 1, 2016.

3.  The twelve entities listed in your responses to interrogatories other than A&P

Again subject to confidentiality concerns described above, we intend to produce non-public documents within McKesson's custody, possession or control with respect to those entities for the time period January 1, 2013, to July 1, 2016.

4.  The $562,000, about which we have no accounting of what has been paid for and almost no internal McKesson correspondence

We believe we have provided substantial documents related to this area (and will work to confirm that), but nevertheless, we will produce responsive documents within McKesson's custody, possession or control with respect to the time period January 1, 2013, to July 1, 2016.

5.  The topics in our 30(b)(6) letter

As to these topics, we need some guidance from you.  When last we spoke on this area, you mentioned that these topics may have been addressed by way of (i) the responses to the requests for admissions, (ii) the response to the first set of interrogatories, and (iii) the expert reports of Mr. Berk and Mr. Kosty.  We believe that to be true, so let us know to the extent you disagree.

Timing:  For reasons you and I have discussed, we will have a better handle on timing next week, but it is our current expectation (assuming the search criteria and the individuals whose hard drives were duplicated do not need to be expanded) that documents will be provided to you on or before September 17, and a witness for testimony related to rebates/credits the week of the 20th of September.  I understand you are not available the week of September 13-17, so hope this timeframe works for you.  Based on this, we hope we can agree that discovery can remain open for all parties through the end of September.

Let me know if you have any questions or concerns.

# Buchalter

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com l Bio l  LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Wednesday, August 25, 2021 11:11 AM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K.
<jgarfinkle@Buchalter.com>; Winick, Steven H. <swinick@buchalter.com>
**Subject:** Re: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to Judge Drain filed July 28, 2021 Inbox [IWOV-BN.FID1434304]

---

This message has originated from an **External Email**. rmilin@grifflegal.com <rmilin@grifflegal.com>:

---

Great, thanks.


Richard


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 l F: 646.998.8284 l C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


On Wed, Aug 25, 2021 at 2:02 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

> Thank you, Richard.  I hope to get back to you this afternoon with a better idea of the approach we suggest.

# Buchalter

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com I Bio I LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Tuesday, August 24, 2021 7:11 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K.
<jgarfinkle@Buchalter.com>; Winick, Steven H. <swinick@buchalter.com>
**Subject:** Re: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to Judge
Drain filed July 28, 2021 Inbox [IWOV-BN.FID1434304]

---

This message has originated from an **External Email.** rmilin@grifflegal.com <rmilin@grifflegal.com>:

---

Dan:

My email was somewhat broadly written, I agree.  Assume that we are willing to narrow our requests when it makes sense to do so, as we have done many times in the past.  You can delete the word "the" before "documents and information" in the paragraph beginning "So," and then I think the rest of the email works. We need to preview what you intend to produce and when, and whether you intend to continue refusing to produce documents, information and witnesses about the topics I have identified in our requests and correspondence with the Court, so that we can make informed decisions.

So once again, in principle, yes.  Thank you for reaching out to us.  Your producing the documents and information, and our extending your time to do so, is our preferred resolution.  We look forward to hearing the details of your proposal.

Richard

Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 340  |  New York, NY 10170
T: 646.998.5580 | F: 646.998.8284 | C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com

On Tue, Aug 24, 2021 at 9:20 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

Richard:  Thank you for getting back to me, but I can't possibly address everything in your email.  I can tell you that
we are trying to determine how accessible responsive information is, related to credits, rebates, etc.  That said, we
remain concerned about the burden associated with the breadth of your requests but remain hopeful that we can
reach an understanding that would avoid the necessity of a motion to compel and give us time to meet and confer
and take the three remaining depositions.

# Buchalter

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com l Bio l LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Tuesday, August 24, 2021 6:08 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K.
<jgarfinkle@Buchalter.com>; Winick, Steven H. <swinick@buchalter.com>
**Subject:** Re: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to
Judge Drain filed July 28, 2021 Inbox [IWOV-BN.FID1434304]

This message has originated from an **External Email**. rmilin@grifflegal.com
<rmilin@grifflegal.com>:

The Judge ruled that "[i]f defendant wants to resolve this discovery dispute on an item-by-item basis, which its letter does not suggest, I will extend the discovery cutoff date further for such an attempt to be made before the motion is filed."

If that is what you McKesson proposing to do, we can of course, as the Court indicates, agree to an extension.  However, we need to know more about what you propose so that we can evaluate how much time is needed.  Too many times, we have negotiated with McKesson only to end up with undue delays followed by flat refusals to produce the documents and information we requested.  The "meeting of accountants" is one example.  My request for testimony or information in response to my 30(b)(6) letter is another.

So, in principle, yes, but we need more specific information.  Since I am currently working on the motion, as I said I would have to, please let me know whether you are willing to produce the documents and information we requested about such topics as:

-- The credits, including information about all credits due for refunds through the petition date, and not just July 6;

-- McKesson's treatment of other strategic retailers who missed payments or had financial problems;

-- The twelve entities listed in your responses to interrogatories other than A&P

-- The $562,000, about which we have no accounting of what has been paid for and almost no internal McKesson correspondence

--  The topics in our 30(b)(6) letter.

Also, is McKesson now willing to provide or identify documents in response to our interrogatories and provide further 30(b)(6) testimony?

How much of an extension is appropriate depends on the answers, and my ability to avoid filing a motion does too.  We only want the information but I'm sure you can understand that we need to make sure that, if we delay things and try yet again to resolve issues consensually, we will actually receive what we have requested and need.

I am tied up tonight, but I wanted to get back to you promptly, and those are the items that come to mind. Please let us know what you propose.  I am happy to avoid a motion if there is an alternative, equally productive course.

Thanks,

Richard

Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170

T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com

On Tue, Aug 24, 2021 at 8:42 PM Slate, Daniel H. <dslate@buchalter.com> wrote:

> Richard:  We are moving toward addressing the discovery issues on an item by item basis and need some clarity
> on discovery.  Seems appropriate to move the discovery cutoff date a month so that the depositions can be taken,
> and we can work to see what additional documents, etc. are to be provided.  Let me know whether this makes
> sense to you.

# Buchalter

**Daniel H. Slate**
Shareholder

**T** (213) 891-5444
**F** (213) 630-5640

dslate@buchalter.com

1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730

www.buchalter.com I Bio I LinkedIn

**From:** Richard Milin <rmilin@grifflegal.com>
**Sent:** Tuesday, August 24, 2021 12:49 PM
**To:** Slate, Daniel H. <dslate@buchalter.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>
**Subject:** Fwd: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to
Judge Drain filed July 28, 2021 Inbox

This message has originated from an **External Email**. rmilin@grifflegal.com
<rmilin@grifflegal.com>:

Dan:

There is a great deal to do and time is short. Accordingly, I expect to begin working on the motion to compel today.  If you tell me that you will have a proposal to resolve at least some of the issues tomorrow, though, I will try to work around that.  Please let me know.


Thanks,


Richard


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


---------- Forwarded message ---------
From: **Richard Milin** <rmilin@grifflegal.com>
Date: Tue, Aug 24, 2021 at 3:42 PM
Subject: Re: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to Judge Drain filed July 28, 2021 Inbox
To: Robert Drain <judge_drain@nysb.uscourts.gov>
Cc: Katie Warren <kwarren@grifflegal.com>, tklestadt_klestadt <tklestadt@klestadt.com>, NYSBml_Drain's_Chambers <rdd.chambers@nysb.uscourts.gov>, Garfinkle, Jeffrey K. <jgarfinkle@buchalter.com>, dslate@buchalter.com <dslate@buchalter.com>, Michael Hamersky <mhamersky@grifflegal.com>


Thank you, Your Honor.  We will proceed accordingly.


Respectfully,


Richard Milin


Richard K. Milin (Bio)
Griffin Hamersky LLP
420 Lexington Avenue  |  Suite 400  |  New York, NY 10170
T: 646.998.5580 I F: 646.998.8284 I C: 917.975.1326
Email: rmilin@grifflegal.com
Website: www.grifflegal.com


On Tue, Aug 24, 2021 at 3:05 PM Robert Drain <judge_drain@nysb.uscourts.gov> wrote:

> Having read the parties' respective letters, I will authorize the plaintiff to file a motion to compel discovery and/or for discovery-related sanctions.  I will also extend plaintiff's discovery cutoff date.  If defendant wants to resolve this discovery dispute on an item-by-item basis, which its letter does not suggest, I will extend the discovery cutoff date further for such an attempt to be made before the motion is filed.

**From:** Katie Warren <kwarren@grifflegal.com>
**Sent:** Monday, August 23, 2021 2:21 PM
**To:** tklestadt_klestadt.com <tklestadt@klestadt.com>
**Cc:** NYSBml_Drain's_Chambers <rdd.chambers@nysb.uscourts.gov>; Garfinkle, Jeffrey K.
<jgarfinkle@buchalter.com>; dslate@buchalter.com; Richard Milin <rmilin@grifflegal.com>; Michael
Hamersky <mhamersky@grifflegal.com>
**Subject:** Re: Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to Judge Drain
filed July 28, 2021 Inbox

**CAUTION - EXTERNAL:**

Dear Chambers,

Please see Plaintiff's letter in reply filed this afternoon.

Respectfully submitted,

Katie Warren

On Mon, Aug 23, 2021 at 12:47 PM Tracy Klestadt <TKlestadt@klestadt.com> wrote:

> Dear Chambers of the Honorable Robert D. Drain:
>
> Please see attached Defendant's responsive letter just filed.
>
> Respectfully submitted,
>
> Tracy Klestadt
>
> ---
>
> **From:** Katie Warren <kwarren@grifflegal.com>
> **Sent:** Friday, August 20, 2021 11:29 AM
> **To:** NYSBml_Drain's_Chambers <rdd.chambers@nysb.uscourts.gov>
> **Cc:** Tracy Klestadt <TKlestadt@Klestadt.com>; Garfinkle, Jeffrey K. <jgarfinkle@buchalter.com>;
> dslate@buchalter.com; Richard Milin <rmilin@grifflegal.com>; Michael Hamersky
> <mhamersky@grifflegal.com>
> **Subject:** Official Committee of Unsecured Creditors of A&P v. McKesson - Letter to Judge Drain
> filed July 28, 2021 Inbox
>
> Dear Chambers,
>
> Attached please find the letter filed this morning by Plaintiff in the above-referenced matter.  This
> letter requests a status conference.

Respectfully submitted,

Katie Warren


--



Katie F. Warren (Bio)
Griffin Hamersky LLP
420 Lexington Avenue I Suite 400 I New York, NY 10170
T: 646.998.5574 I F: 646.998.8284
Email: kwarren@grifflegal.com
Website: www.grifflegal.com



--



Katie F. Warren (Bio)
Griffin Hamersky LLP
420 Lexington Avenue I Suite 400 I New York, NY 10170
T: 646.998.5574 I F: 646.998.8284
Email: kwarren@grifflegal.com
Website: www.grifflegal.com


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.


Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/about/firm-policies/.

**2 attachments**



**Griffin v1.png**
6K

**Griffin v1.png**
6K