Hearing Date & Time: September 20, 2021 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: September 13, 2021 at 4:00 p.m. (Prevailing Eastern Time)
Reply Deadline: September 17, 2021 at 4:00 p.m. (Prevailing Eastern Time)

GRIFFIN HAMERSKY LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Richard K. Milin
Michael D. Hamersky

*Counsel for The Official Committee of Unsecured*
*Creditors on behalf of the bankruptcy estate of*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
In re:                                                                  :
                                                                        :      Chapter 11
THE GREAT ATLANTIC & PACIFIC TEA                                        :
COMPANY, INC., *et al.*,                                                 :      Case No. 15-23007 (RDD)
                                         Debtors.                       :
-----------------------------------------------------------------------x
                                                                        :
The Official Committee of Unsecured Creditors on                       :
behalf of the bankruptcy estate of THE GREAT                           :
ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*,                          :
                                                                        :      Adv. Proc. No. 17-08264 (RDD)
                                         Plaintiff,                     :
         v.                                                             :
                                                                        :
McKESSON CORPORATION,                                                   :
                                                                        :
                                         Defendant.                     :
-----------------------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

# Table of Contents

Page

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

REPLY STATEMENT OF FACTS............................................................................................. 4

ARGUMENT .............................................................................................................................. 5

PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE ITS
AMENDED COMPLAINT, WHICH IT HAS STANDING TO
ASSERT AND IS NEITHER UNTIMELY NOR UNDULY PREJUDICIAL ............................. 5

   I. Plaintiff Has Standing to Assert the New Claims in the Amended Complaint ..................... 6

   II. The Claims Asserted in the Amended Complaint Are Timely ............................................. 7

      A. Plaintiff's Claims under Section 542 of the Bankruptcy Code
        Are Timely Because There Is No Applicable Statute of
        Limitations and Plaintiff's Claims Are Not Barred by Laches ........................................ 8

          1. Plaintiff's Section 542 Claims Are Not Barred by Laches ........................................ 8

          2. Plaintiff's Section 542 Claims Are Not
            Mere "Disguised" Breach of Contract Claims......................................................... 10

      B. Plaintiff's Section 541 Claims for Breach of Contract
        Are Timely Because They Relate Back under Both
        New York Law and Federal Rule of Civil Procedure 15(c) ......................................... 12

          1.   Plaintiff's Section 541 Claims Relate Back
             under Rule 15(c)(1)(A) and New York Law......................................................... 12
          2.   Plaintiff's Section 541 Claims Relate Back under Rule 15(c)(1)(B)..................... 14

      C. Plaintiff's Section 541 Claims Are Timely Because the Statute of
        Limitations Was Tolled and the Claims Arguably Did Not Accrue Until 2021............ 15

   III. Defendant's Assertions of Prejudice Are Baseless ............................................................ 17

   IV. Plaintiff's Newly Asserted Claims Are Not "Substantively Flawed" ................................ 18

CONCLUSION........................................................................................................................ 19

## **Table of Authorities**

Page

**Cases**

*Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000) ................................... 8

*Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 2014 U.S. Dist. LEXIS 91267
    (S.D.N.Y. July 3, 2014) ........................................................................................................... 8

*Cmty. Underwriters of America, Inc. v. Main Line Fire Prot. Corp.,* 2020 WL 5089444
    (S.D.N.Y. Aug. 28, 2020) ....................................................................................................... 6

*Corzin v. Rawson (In re Rawson)*, 40 B.R. 167 (Bankr. N.D. Ohio 1984) ................................. 11

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir. 2002) ........... 6

*Enron Energy Servs., Inc. v. Columbia Gas Transmission Corp.* 2006 WL 2400082 (Bankr.
    S.D.N.Y. June 15, 2006) ........................................................................................................ 11

*Farro v. Schochet*, 190 A.D.3d 698 (2d Dep't 2021) ................................................................. 13

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 5

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160 (E.D.N.Y. 2010)................... 7

*Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311 (Bankr. E.D.N.Y. 2018)................................ 8

*General Stencils v. Chiappa,* 18 N.Y.2d 125 (1966) ................................................................... 16

*Goldsmith v. Macri* (*In re E and G Waterworks*, *LLC*), 571 B.R. 500 (Bankr. D. Mass. 2017) .. 11

*Harris v. Lichtenstein*, 2021 WL 698908 (Sup. Ct. N.Y. Cnty. Feb. 19, 2021) ........................... 12

*Hoffman v. Connecticut (In re Willington Convalescent Home, Inc.,*
    850 F.2d 50 (2d Cir. 1988)...................................................................................................... 11

*In re Cutillo*, 181 B.R. 1 (Bankr. N.D.N.Y. 1995) ...................................................................... 8

*In re G. Survivor Corp.*, 217 B.R. 433 (Bankr. S.D.N.Y. 1998) .................................................. 4

*In re Korvettes, Inc.*, 67 B.R. 730 (S.D.N.Y. 1986)..................................................................... 8

*In re Simone*, 2020 WL 6811939 (Bankr. D. Conn. Oct. 14, 2020) ............................................. 4

*In re WorldCom, Inc.*, 372 B.R. 159 (Bankr. S.D.N.Y. 2007)...................................................... 4

*Krohn v. Burton (In re Swift)*, 496 B.R. 89 (Bankr. E.D.N.Y. 2013) ............................................. 8

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651 (2d Cir.1978) ................... 8

*Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002) ........................................................................ 6

*Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131 (2d Cir. 1998) ...... 15

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001) ........................................................ 5

*Miller v. Janetta (In re Irwin)*, 509 B.R. 809 (Bankr. E.D. Pa. 2014) ......................................... 11

*Mitchell v. Olar*, 138 A.D.3d 1490 (4th Dep't 2016) ................................................................... 13

*Mopex Inc. v. American Stock Exchange*, 2002 WL 342522 (S.D.N.Y. Mar. 5, 2002) .............. 12

*Ortiz v. City of N.Y.*, 755 F. Supp. 2d 399 (E.D.N.Y. 2010) .......................................................... 7

*Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114 (2d Cir. 2012) ........................... 4

*Perino v. Cohen (In re Cohen)*, 98 B.R. 179 (Bankr. S.D.N.Y. 1989) ........................................... 7

*Rogers v. Buchanan*, 2014 WL 4449800 (N.D. Tex. Sept. 9, 2014) ............................................. 7

*Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138 (2d Cir. 2002) ...................................... 2, 15

*Zumpano v. Quinn*, 6 N.Y.3d 666 (2006) .................................................................................... 16

**Statutes**

11 U.S.C. § 503(b)(9) ........................................................................................... 3, 9, 13, 17

11 U.S.C. § 541 ....................................................................................................... 12, 14, 15

11 U.S.C. § 542 ..................................................................................................... 8, 10, 11, 12

**Rules**

Fed. R. Bankr. P. 7015 ...................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 18

Fed. R. Civ. P. 15(a)(2) ....................................................................................................... 3

Fed. R. Civ. P. 15(c)(1) ................................................................................................. 12, 14

Fed. R. Civ. P. 15(c)(1)(A) ............................................................................................... 12

Fed. R. Civ. P. 15(c)(1)(B) ................................................................................................ 14, 15

Fed. R. Civ. P. 30(b)(6)................................................................................................... 3

N.Y. CPLR 203(d) ........................................................................................................ 12, 13

N.Y. U.C.C. § 2-725 ...................................................................................................... 15

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Plaintiff, The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc. ("Plaintiff"), by its undersigned counsel, respectfully submits this Reply Memorandum of Law in further support of its Motion for Leave to File an Amended Complaint (the "Motion") against Defendant McKesson Corporation ("Defendant") and respectfully represents as follows:

**PRELIMINARY STATEMENT**

Defendant asks the Court to deny Plaintiff a remedy for its egregious, post-petition seizure of almost $1 million of the Debtor's money – without the Debtor's consent, the Court's permission or a genuine justification – because Defendant has concealed its actions so success-fully that it is now too late for Plaintiff to assert a claim.  Defendant even seeks to profit from its flat refusals to provide discovery about its misconduct – or to meet with Plaintiff to reconcile accounting issues as it told the Court it would in 2019 – by arguing that to permit discovery and amendment after so much time has passed would be unfairly prejudicial.

The Court should see Defendant's arguments for what they are.  Like the infamous man who murdered his parents then begged for mercy as an orphan, Defendant is asking the Court to reward its own wrongdoing in concealing its improper seizure of the Debtor's $1 million.  The doctrines of tolling and relation back – which Defendant fails to mention – exist to provide a remedy for precisely the type of injustice that Defendant seeks to perpetrate.

Defendant's Opposition (the "Opp.") continues its established pattern of concealing the relevant facts.  For example, Defendant tells the Court that Plaintiff lacks standing to prosecute its amended claims based on the 2016 Global Settlement Agreement, but does not mention the Court's Case Resolution Order, which Defendant objected to in writing only four months ago,

1

and which expressly recognized Plaintiff's right to "prosecute the McKesson Adversary Proceedings and ***all claims and defenses that may properly be asserted therein under applicable law***." (Order Authorizing Final Resolution, May 14, 2021, Case Docket No. 4810 (the "Case Resolution Order"), ¶ 44 (emphasis added).)

Defendant also tells the Court that its seizures of A&P's Rebate and Medturns credits were justified, and that Plaintiff's claims are "fundamentally flawed," but again conceals the facts. (*See* Opp. at 2-4, 14.) For example, Defendant quotes the provision of the September 2015 Extension Agreement it relies on to justify its seizing the Medturns, but fails to mention the more specific provision of that Agreement which contradicts Defendant's argument – even though Plaintiff quotes it twice in the Amended Complaint. (*See* Amended Complaint ¶¶ 9, 72.)

Defendant also tries to convince the Court that the Debtors did not pay for the goods on which the Rebate was paid, but provides no factual support whatsoever, does not mention that A&P's records disagree, and is silent concerning Plaintiff's contrary argument – supported by the fact that Defendant actually ***paid*** the rebate – that the Rebate was genuinely due.

And of course, there is simply no plausible argument that Defendant was entitled to exercise a unilateral "recoupment" by deducting the Rebate it paid to A&P before the Petition Date under a prepetition contract from money Defendant admitted it owed to A&P under a post-petition contract, and doing so in reliance on – not the original contract – but Defendant's belated and disputed decision that it had somehow paid $562,000 four months earlier in "error." *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147-48 (2d Cir. 2002).

Moreover, as noted earlier, Defendant's argument of prejudice is the argument of a self-made orphan. In March 2018, Plaintiff's First Document Request gave Defendant notice that it sought information about all transfers of property back and forth between the parties after July 1, 2009. (*See* Supplemental Declaration of Richard K. Milin dated September 17, 2021 ("Milin

2

Supp. Decl."), Exh. 1.)  In response, Defendant produced only 571 documents.  (Garfinkle Decl. ¶ 17.)  On September 9, 2019, in opposition to summary judgment, Plaintiff submitted a Declaration which stated that the amount of Defendant's seized Medturns, in the lesser amount Plaintiff suspected then, should be deducted from Defendant's claim under 503(b)(9) of the Bankruptcy Code.  In response, Defendant told the Court on September 16, 2019 that it would "sit down with the Debtor to work through the math," but – perhaps because of the Medturns – refused to do so.

In March 2020, after Defendant refused to have a meeting of accountants, Plaintiff requested documents about the Rebate and Medturns; Defendant refused to provide them.  In April 2021, Plaintiff requested information about the Rebate from Defendant's counsel; he provided none.  On May 14, 2021, Plaintiff served its Rule 30(b)(6) deposition notice, which requested testimony specifically about the Rebate and Medturns, but very little relevant testimony was actually provided.  On May 21, 2021, Plaintiff served another document request seeking documents about the Rebate and Medturns; Defendant refused to provide them.  And Plaintiff's discovery efforts have continued, all rebuffed, so that Plaintiff was eventually forced to ask the Court to compel discovery responses and for sanctions.

Defendant now argues simultaneously, in blithe self-contradiction, that Plaintiff sat on its rights by not filing its amended claims earlier and that Defendant properly denied Plaintiff the information it needed to determine those rights.  Amid the turmoil of a bankruptcy and the complexities of regular, extensive, multi-million dollar post-petition transactions, Defendant has played a "shell game":  it hid its improper actions, and hoped that Plaintiff would not notice.  It is time Defendant's wrongdoing came to light.

The Federal Rules of Civil and Bankruptcy Procedure mandate that the courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  For the foregoing reasons, the reasons stated below, and the reasons stated in Plaintiff's original

3

memorandum in support of its motion ("Pl. Mem."), justice unquestionably requires that Plaintiff be granted leave to amend here.

## <u>REPLY STATEMENT OF FACTS</u>

For purposes of a motion to amend, the facts alleged in the amended complaint must be assumed to be true and inferences must be drawn in plaintiff's favor.  *See*, e.g., *Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)*; In re Simone*, 2020 WL 6811939, at *2 (Bankr. D. Conn. Oct. 14, 2020); *In re WorldCom, Inc.*, 372 B.R. 159, 164 (Bankr. S.D.N.Y. 2007); *In re G. Survivor Corp.*, 217 B.R. 433, 438 (Bankr. S.D.N.Y. 1998).

Plaintiff incorporates here the Declaration of Richard K. Milin dated August 31, 2021 in support of Plaintiff's Motion to Compel Discovery [Adv. Pro. Dkt. No. 80] with its exhibits, most of which reflect Plaintiff's efforts to discover the essential facts concerning the Medturns and Rebate at issue here.  Plaintiff also incorporates the Supplemental Declaration of Richard K. Milin dated September 17, 2021, which attaches an additional relevant document.

The Declaration of Dawn DeVito dated September 17, 2021 (the "<u>DeVito 9/21 Decl.</u>") sets out additional relevant facts.  In particular, Ms. DeVito states that substantially all of the Rebate and a portion of the Medturns arose from A&P's purchases from Defendant during the preference period as alleged in Plaintiff's original complaint.  Ms. DeVito also describes the limits of A&P's knowledge about the Rebate and Medturns until mid-2021.

Defendant's Opposition contains too many false assertions of fact to correct them here. For example, Plaintiff's claims do not arise only "under the Supply Agreement" as Defendant states, nor did Defendant seize the Rebate "while the Supply Agreement was still operative." The Supply Agreement had expired, and was replaced by the Extension Agreement, more than two months earlier.  (*See* Opp. at 1-3, 5; Amended Complaint ¶¶ 2, 37-38.)

Further, Defendant's claim that "the Debtors agreed they were not entitled to receive ***the subject credits*** [*i.e.*, the Medturns]… which had accrued prior to the Petition Date pursuant to the express terms of the Extension Agreement of September, 2015," (Opp. at 3 (emphasis added)) is false. Only Defendant knew that it had withheld the "subject credits," and it told A&P the contrary in Section 8 of the Extension Agreement. (*See* Amended Complaint ¶¶ 9-10, 76-77.)

Plaintiff disputes opposing counsel's testimony in his declaration concerning the parties' negotiation of the Extension Agreement as materially incomplete and inaccurate, particularly in ¶¶ 8-10. Counsel provides no documentary support for his summary of the parties' agreements in paragraph 8, which differs significantly from the final Extension Agreement. Further, counsel omits a crucial fact: He does not admit, though he does not deny, that Defendant concealed material information about its withholding the Medturns, and any plans it may have had to seize back the previously paid Rebate, during the parties' negotiations. As Plaintiff contends in ¶¶ 76-77 of the Amended Complaint, Section 8 of the Extension Agreement was materially misleading, a point counsel does not address. (*See* Garfinkle Declaration ¶¶ 8-10.) Plaintiff further disputes all undocumented statements in counsel's self-serving declaration.

## <u>ARGUMENT</u>

### **PLAINTIFF SHOULD BE GRANTED LEAVE TO FILE ITS AMENDED COMPLAINT, WHICH IT HAS STANDING TO <u>ASSERT AND IS NEITHER UNTIMELY NOR UNDULY PREJUDICIAL</u>**

As the courts have repeatedly held, leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, Defendant argues that leave should be denied because Plaintiff lacks standing, because the statute of limitations makes amendment futile and because amending Plaintiff's complaint would be unduly prejudicial. All three of these arguments lack merit.

5

It is well established, as Plaintiff showed in its Memorandum of Law in support of this Motion, that leave to amend should only be denied as futile if the amended complaint cannot survive a motion to dismiss. *See, e.g., Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Cmty. Underwriters of America, Inc. v. Main Line Fire Prot. Corp.,* 2020 WL 5089444, at *7 (S.D.N.Y. Aug. 28, 2020). (*See also* Pl. Mem. at 12.)

Nevertheless, Defendant fails even to mention this high bar in its motion papers. Defendant also makes numerous arguments based on disputed and inaccurate assertions of fact even though, for purposes of this Motion, the allegations in the Amended Complaint must be assumed to be true. For the reasons discussed below, the Amended Complaint would not be subject to dismissal, and leave to amend should therefore be granted.

## I.    Plaintiff Has Standing to Assert the New Claims in the Amended Complaint

Plaintiff has standing to assert the new claims in its Amended Complaint under this Court's Case Resolution Order dated May 14, 2021. That Order provides, in Paragraph 44 and elsewhere, that "the Creditors' Committee shall remain in existence for the … purpose of … prosecuting the McKesson Adversary Proceedings and ***all claims and defenses that may properly be asserted therein under applicable law.*** (Order, Case Docket No. 4810, ¶ 44 (emphasis added); *see also id.* ¶ 26.)

Defendant are well aware of the Case Resolution Order, which they commented on in draft and objected to both in writing and at oral argument. Yet Defendant fails to mention that dispositive Order in arguing that Plaintiff lacks standing. Instead, Defendant only mentions the Global Settlement Agreement ("GSA") entered in 2016 [Case Dkt. No. 2868]. (*See* Opp. at 7.))

Plaintiff notes that some references to Plaintiff's standing in the Case Resolution Order add "according to the GSA" after "applicable law." However, that clause cannot reasonably be

interpreted to limit the express authority the Order grants Plaintiff to prosecute "all claims and defenses." If the Order had intended to limit Plaintiff's standing to claims specifically mentioned in the GSA, which is a long and complex agreement, it would have said so expressly. Moreover, as Defendant must have known, the Debtor added authorization to prosecute new claims in the Case Resolution Order precisely because it was investigating – after emailing with Defendants' counsel about the Rebate issue in April 2021 – whether to assert the claims it has now pled in the Amended Complaint and wanted to ensure that the Order preserved its rights.

## II.    The Claims Asserted in the Amended Complaint Are Timely

As discussed above, permission to amend can only properly be denied as futile if the amended complaint cannot withstand a motion to dismiss. Accordingly, the courts have repeatedly held that a motion to amend should not be denied on statute of limitations grounds if the limitations defense depends on factual issues. *See, e.g., Rogers v. Buchanan*, 2014 WL 4449800, at *2 (N.D. Tex. Sept. 9, 2014) (granting motion to amend because plaintiff's tolling issue depended on disputed factual issues); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (same). *See also Ortiz v. City of N.Y.*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) (because statute of limitations defenses can be highly fact dependent, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations."); *Perino v. Cohen (In re Cohen)*, 98 B.R. 179, 183 (Bankr. S.D.N.Y. 1989) (amendment should be allowed unless "plaintiff can prove no set of facts … which would entitle the plaintiff to relief").

Here, as discussed below, there are material factual issues concerning when Plaintiff's cause of action accrued, whether the statute of limitations should be tolled, and the factual overlap between Plaintiff's Amended Complaint and its original claims. These disputed fact issues alone mandate granting leave to amend, because they preclude dismissal. However, the

7

Court has no need to rely on that interim procedural ground because Defendant's statute of

limitations defense also fails on its merits.

    A.  Plaintiff's Claims Under Section 542 of the Bankruptcy Code
       Are Timely Because There Is No Applicable Statute of
       <u>Limitations and Plaintiff's Claims Are Not Barred by Laches</u>

      1.  <u>Plaintiff's Section 542 Claims Are Not Barred by Laches</u>.

There is no statute of limitations applicable to claims under Section 542 of the Bank-

ruptcy Code because that section "addresses equitable relief." Instead, those claims are subject

to laches. *See, e.g., Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 330 (Bankr. E.D.N.Y.

2018); *Ball v. Soundview Composite Ltd. (In re Soundview Elite Ltd.)*, 2014 U.S. Dist. LEXIS

91267, at *16 (S.D.N.Y. July 3, 2014) (stating that "turnover proceedings are inherently

equitable in nature."); *Krohn v. Burton (In re Swift)*, 496 B.R. 89, 99 (Bankr. E.D.N.Y. 2013)

(stating that "a turnover action is not subject to a statute of limitations" but is subject to laches).

Laches bars the assertion of a claim based upon the plaintiff's unreasonable delay which

prejudices the other party. *Krohn v. Burton (In re Swift)*, 496 B.R. 89, 99 (Bankr. E.D.N.Y.

2013); *Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22, 37-38 (Bankr. E.D.N.Y. 2000); *In re

Cutillo*, 181 B.R. 13, 15 (Bankr. N.D.N.Y. 1995).

"Mere passage of time is insufficient to constitute laches." *Cutillo*, 181 B.R. at 15; *see

Brizinova*, 588 B.R. at 331. Rather, a showing of prejudice is required. *See, e.g.*, *Lottie Joplin

Thomas Trust v. Crown Publishers, Inc.*, 592 F.2d 651, 655 (2d Cir.1978) (laches requires a

showing of prejudice); *In re Korvettes, Inc.*, 67 B.R. 730, 734 (S.D.N.Y. 1986) ("even if laches

were available as a defense, [defendant] would have to establish that it was prejudiced by the

delay")

Here, Defendant does not argue that laches bars Plaintiff's claims; it relies exclusively on

the U.C.C.'s four-year statute of limitations. Further, Defendant cannot assert a plausible laches

defense, because Plaintiff's extraordinary efforts to investigate its Rebate and Medturn claims,

blocked by Defendant at every turn, preclude a finding of laches.  The factual record set out in

the Amended Complaint, and in the Motion to Compel which is currently before this Court,

show beyond dispute that Plaintiff did not sleep on its rights.

To give one example, on September 9, 2019, four years after the Extension Agreement

was signed as of September 8, 2015, A&P's Dawn DeVito submitted a Declaration to Court

which notified Defendant that A&P lacked sufficient information to "to reconcile McKesson's

11 U.S.C. § 503(b)(9) claim" but that A&P's records indicated that the 503(b)(9) claim should be

reduced by $242,259.18 for Medturns.  She stated:

> I tried to reconcile McKesson's 11 U.S.C. § 503(b)(9) claim in the amount of
> $1,748,115.92 based on the records provided by McKesson to date; but, the
> information that I have is insufficient….If McKesson could provide supporting
> information such as complete copies of their Weekly and Daily Summary Invoice
> Reports that were sent to A&P during the Preference Period, then I may be able to
> reconcile McKesson's 11 U.S.C. § 503(b)(9) claim based on McKesson's records
> … Upon review of A&P's records, the remaining 11 U.S.C. § 503(b)(9) claim of
> $1,649,916.86 was further reduced by $242,259.18, which was the total amount
> of Merchandise returned by A&P to McKesson; thus, based on A&P's records,
> McKesson's 11 U.S.C. § 503(b)(9) claim is $1,407,657.68.

(DeVito Declaration dated September 9, 2019, Adv. Pro. Dkt. No. 36, ¶¶ 20-22.)

Further, Ms. DeVito indicated that A&P had made previous, unsuccessful efforts to

obtain the necessary information.  Those efforts yielded "supporting detail … subsequently

provided by McKesson" but insufficient information to reconcile the amount of Defendant's

503(b)(9) claim, which depended in part on analysis of Medturns.  (*See id.* ¶¶ 19-24.)

At oral argument on September 16, 2019, Defendant's counsel offered a solution:  "We

are struggling to understand and reconcile some of the numbers…And we are happy to sit down

with the Debtor to work through the math."  Defendant's counsel further stated that "[w]e can

also work to reconcile" the amount of the 503(b)(9) claim.  (Transcript of Sept. 16, 2016 at 48,

54.)  Yet after the oral argument, despite years of requests, Defendant failed to do so, and

Plaintiff was unable to determine the viability of its claims.  (*See* DeVito 9/21 Decl. ¶¶ 13-18.)

Based on these facts, the Court should rule that any laches defense to Plaintiff's

Amended Complaint is untenable.  Plaintiff did not "sit on its rights"; Defendant denied it the

facts necessary to determine its rights.

### 2.  Plaintiff's Section 542 Claims Are Not Mere "Disguised" Breach of Contract Claims

Rather than argue laches, Defendant's Opposition argues that Plaintiff's claims under

Section 542 of the Bankruptcy Code are untimely because they are not valid claims under

Section 542 at all, but only "dressed up" breach of contract claims.  (*See* Opp. at 9-11.)  Defen-

dant mischaracterizes the facts, and precedent clearly establishes that Defendant is wrong.

According to Defendant, Plaintiff's claims are not "property of the estate" for purposes of

Section 542 because they are only breach of contract claims.  A Section 542 claim, Defendant

correctly states, must seek turnover of property that is "mature, payable on demand, or payable

on order."  (*See* Opp. at 11.)

However, Defendant fails to inform the Court that sums admittedly due under a contract

– such as those at issue here – are sufficiently "mature" to support a Section 542 claim.  Indeed,

this Court has already held – in a case precisely analogous to Plaintiff's – that rebates which the

defendant admitted were due, but which were withheld to exercise a right of recoupment, sup-

ported a Section 542 claim.  *Enron Energy Services, Inc. v. Columbia Gas Transmission Corp.* is

clearly on point:

> The "rate refunds," which EES attempts to recover from TCO, "accrued and/or
> were determined by TCO to be due and owing to EES (and other shippers on the
> TCO system)…
>
> EES alleges that TCO already determined that the refunds were "due and owing
> to EES." (Compl. ¶ 15.) In response, TCO contends "TCO is not obligated to pay
> the refund[s] to EES because EES's claim to these funds is subject to TCO's right

> to recoup the refund[s] against its prepetition claims." … This situation falls
> squarely within section 542(b). According to the pleadings, TCO's debt, in other
> words the obligation to pay the refunds to EES, is matured….TCO's mere refusal
> to pay the refunds to EES "because of a recoupment right does not take the …
> action outside the scope of section 542(b)." *Hoffman v. Connecticut (In re
> Willington Convalescent Home, Inc.)*, 850 F.2d 50, 52 n.2 (2d Cir. 1988) (quoting
> *Corzin v. Rawson (In re Rawson)*, 40 B.R. 167, 169 (Bankr. N.D. Ohio 1984)) …
> Therefore, EES's claim to the refunds pursuant to section 542(b) of the
> Bankruptcy Code shall not be dismissed.

2006 WL 2400082, *5-6 (Bankr. S.D.N.Y. June 15, 2006). Defendant does not cite *Enron* or the

cases it cites, such as the Second Circuit's decision in *Hoffman v. Connecticut (In re Willington

Convalescent Home, Inc.*: "'The mere fact that' Connecticut denies that it owes the matured debt

for Willington's services because of a recoupment right 'does not take the trustee's action outside

the scope of section 542…'" 850 F.2d 50, 52 n.2 (2d Cir. 1988) (quoting *Corzin v. Rawson (In

re Rawson)*, 40 B.R. 167, 169 (Bankr. N.D. Ohio 1984)). Nor does Defendant cite *Goldsmith v.

Macri (In re E and G Waterworks, LLC)*, 571 B.R. 500, 507-08 (Bankr. D. Mass. 2017), which

cites *Enron* in holding that a "'mere refusal to pay'" the amount owed the Debtor under the

Agreement based on its claim that the sums due may be setoff ... "'does not take the ... action

outside the scope of section 542(b).'" Instead, Defendant relies on *Miller v. Janetta (In re

Irwin)*, 509 B.R. 809 (Bankr. E.D. Pa. 2014), a post-trial decision based on inapposite facts.

Plaintiff's claims are ***not***, as Defendant knows, mere breach of contract claims. Defen-

dant did breach contracts by seizing Plaintiff's money, but that money, as in the cases just dis-

cussed, was indisputably due. After all, Defendant not only computed the Rebate to be due but

actually ***paid it*** on July 16, 2015. It only decided four months later that it had somehow made a

"mistake." (*See* Amended Complaint ¶¶ 3-4, 34-36.) Defendant also admitted that the sums it

withheld in November 2015 in order to "recoup" the rebate were properly due.

Similarly, as the Amended Complaint alleges, Defendant computed the Medturns to be

due, and actually posted them to A&P's account, even though it decided not to "give" them to

11

A&P for reasons that still have not been explained.  (*See* Amended Complaint ¶¶ 71-74.)  This

Court therefore should reject Defendant's argument that Plaintiff's Section 542 claims are time-

barred or "legally futile" (Opp. at 12) as utterly without merit.

B.  Plaintiff's Section 541 Claims for Breach of Contract Are Timely Because They
Relate Back under Both New York Law and Federal Rule of Civil Procedure 15(c)

Under Fed. R. Civ. P. 15(c)(1), made applicable here under Fed. R. Bankr. P. 7015, an

amendment to a pleading "relates back to the date of the original pleading when:  (A) the law

that provides the applicable statute of limitations allows relation back;  [or] (B) the amendment

asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or

attempted to be set out – in the original pleading."  Plaintiff's Rebate and Medturns claims relate

back under both tests.

1.  Plaintiff's Section 541 Claims Relate Back under Rule 15(c)(1)(A) and New York Law

The Supply and Extension Agreements on which Plaintiff bases its claim are both

governed by New York law.  New York law provides that, if a party asserts a claim against a

defendant, the defendant's counterclaims and defenses, even if time-barred, are revived.  New

York CPLR 203(d) states, in relevant part:  "A defense or counterclaim is not barred if it was not

barred at the time the claims asserted in the complaint were interposed…"

CPLR 203(d) makes any defense or counterclaim timely if it was timely when the oppos-

ing party's complaint was served and filed.  Thus, in *Harris v. Lichtenstein*, the Supreme Court

of the State of New York, New York County, explained earlier this year that "a counterclaim is

actually deemed interposed for statute of limitations purposes when the main action com-

mences."  2021 WL 698908, at *4 (Sup. Ct. N.Y. Cnty. Feb. 19, 2021).  *See also Mopex Inc. v.

American Stock Exchange*, 2002 WL 342522, at *7 (S.D.N.Y. Mar. 5, 2002) ("Under section

203(d), the statute of limitations on all counterclaims is tolled upon the filing of the complaint.");

*Farro v. Schochet*, 190 A.D.3d 698, 699 (2d Dep't 2021) (holding that fraud-based

counterclaims could reach back six years before the date of plaintiff's complaint, not merely six

years before the date the counterclaim was asserted); *Mitchell v. Olar*, 138 A.D.3d 1490, 1491

(4th Dep't 2016) ("because Crisafulli's cross claim was viable at the time the underlying action

was commenced, there is no need to consider whether the cross claim arose out of the same

transaction or occurrence as the claim asserted in the complaint.")

      Applying CPLR 203(d) here, Plaintiff's Rebate and Medturns claims are timely.

Defendant asserted its 503(b)(9) claim against Plaintiff for $1.7 million in a March 8, 2016

amended proof of claim.  (*See* Proof of Claim #9512.)  Also, in its August 10, 2017 answer to

Plaintiff's complaint [Adv. Pro. Docket No. 4], Defendant asserted "offset" and recoupment

defenses in this proceeding for that same 503(b)(9) claim:

> As … a result of goods sold and delivered to the Debtors by McKesson during the
> twenty days prior to the Petition Date, the Debtors are indebted or may become
> indebted to McKesson, as an administrative expense under section 503(b)(9) of
> the Bankruptcy Code, for the value of the goods …
>
> Alternatively, the transfers alleged by the Plaintiff to be avoidable were each part
> of a singular, unified supply relationship agreed to by the Debtors and McKesson
> before the Petition Date. Under the terms of that relationship, McKesson provided
> goods and services to the Debtors and the Debtors paid for such goods and
> services … As … a result of goods sold and delivered to the Debtors by
> McKesson during the twenty days prior to the Petition Date, the Debtors are
> indebted or may become indebted to McKesson, as an administrative expense
> under section 503(b)(9) of the Bankruptcy Code….

Defendant asserts that the four-year statute of limitations under the New York Uniform

Commercial Code applies to Plaintiff's claims.  Assuming that to be true *arguendo*, Claimant's

claims are well within the applicable limitations period.  The earliest date on which Plaintiff's

Amended Complaint alleges that a breach of contract occurred is July 28, 2015, which is less

than four years before Defendant either asserted its 503(b)(9) claims against the Debtor or

asserted a right of "offset" in this proceeding.  Consequently, all of Plaintiff's Rebate and

Medturns claims under Section 541 of the Bankruptcy Code relate back under New York state

law and Fed. R. Civ. P. 15(c)(1), and they are not time barred.

2.   Plaintiff's Section 541 Claims Relate Back under Rule 15(c)(1)(B)

Rule 15(c)(1)(B) provides that amended claims "relate[] back to the date of the original

pleading" when they "arose out of the conduct, transaction, or occurrence set out … in the

original pleading."  Plaintiff's claim that Defendant breached the Supply Agreement by seizing

its Rebate not only arises out of the same conduct and Agreements as its existing preference

claims, but also out of very same transactions.  The Rebate was money that Defendant paid to the

Debtor on July 16, 2015 as a post-sale price reduction for purchases mainly during the preference

period, so substantially all of the Rebate arose from the same purchase transactions during the

preference period that were alleged in Plaintiff's original complaint.  (*See* DeVito 9/21 Decl. ¶

9.)  Consequently, Plaintiff's claim relates back to the July 13, 2017 date of the original

Complaint, and Defendant's breach was less than two years before.  The claim, therefore, is

timely.

Plaintiff's claim that Defendant breached the Supply Agreement by withholding

Medturns also arose, in part, from the individual purchase transactions alleged in Plaintiff's July

2017 complaint.  A portion of the Medturns that Defendant withheld in July 2015 appears to

have arisen in accord with the Supply Agreement from returns of merchandise that A&P pur-

chased during the preference period.  (*See* DeVito 9/21 Decl. ¶ 12 .)   Consequently, that claim

too relates back to July 2017, within two years of Defendant's breach, and is therefore timely.

Plaintiff's claim that Defendant's seizure of the Rebate breached the Extension Agree-

ment arguably does not arise out of the same transaction as Plaintiff's original complaint, in that

the Extension Agreement was a continuation of the Supply Agreement but not that agreement

14

itself, and the transactions for which Defendant owed Plaintiff money under the Extension Agreement were post-petition.

However, if Defendant maintains that A&P's prepetition purchases under the Supply Agreement and post-petition purchases under the Extension Agreement constituted a sufficiently single, integrated transaction that Defendant had a right to recoup the prepetition Rebate from sums due under the Extension Agreement, it follows that the sums due under the Extension Agreement were part of the same conduct, transaction, or occurrence as the prepetition purchases alleged in the original complaint from which the Rebate arose. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 2002) (recoupment is permissible under New York law only if "'both debts . . . arise out of a *single integrated transaction* so that it would be *inequitable* for the debtor to enjoy the benefits of that transaction without also meeting its obligations.'" (quoting *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir. 1998)).  Further, if Defendant were to convince the Court that Plaintiff's claim for breach of the Extension Agreement does ***not*** arise out of the same conduct, transaction or occurrence as its purchases from Defendant during the preference period, Defendant would be judicially estopped from attempting to justify its purported right of recoupment.

For these reasons, the Section 541 claims alleged in the Amended Complaint relate back to the July 2017 date of Plaintiff's original complaint, and they are therefore timely under Fed. R. Civ. P. 15(c)(1)(B).

C.  Plaintiff's Section 541 Claims Are Timely Because the Statute of Limitations Was Tolled and the Claims Arguably Did Not Accrue until 2021

True to form, Defendant relies on the statute of limitations in N.Y. U.C.C. § 2-725 but fails to mention the last clause of that statute: "This section does not alter the law on tolling of the statute of limitations."  Under New York law, "[t]he doctrine of equitable estoppel applies

15

where it would be unjust to allow a defendant to assert a statute of limitations defense."
*Zumpano v. Quinn,* 6 N.Y.3d 666, 673 (2006).  As the New York Court of Appeals has held,
"'[o]ur courts have long had the power, both at law and equity, to bar the assertion of the ….
Statute of Limitations where it is the defendant's affirmative wrongdoing…which produced the
long delay between the accrual of the cause of action and the institution of the legal proceed-
ing.'"  *Id.* (quoting *General Stencils v. Chiappa,* 18 N.Y.2d 125, 128 (1966))

At a minimum, A&P was delayed by Defendant's affirmative misrepresentation in Sec-
tion 8 of the Extension Agreement, which the Amended Complaint alleges, that Defendant was
continuing to honor Medturns.  A&P was also delayed by Defendant's affirmative representation
to the Court in September 2019 that it would "sit down" with Plaintiff to resolve accounting
issues, which it then refused to do.  There have been additional tolls of New York's limitations
periods due to CoVid-19.

In addition, there are material factual issues concerning when Plaintiff's causes of action
accrued.  The Amended Complaint is deliberately silent on that issue, despite Defendants'
baseless assertions to the contrary, because it is unclear when Defendant changed from segre-
gating the Rebate and Medturns pending reconciliation with the Debtor to taking those sums for
its own benefit in breach of the parties' agreements.  That is one of the issues that Defendant's
refusal to provide relevant discovery has prevented Plaintiff from determining.  In Plaintiff's
view, its claims for the return of its withheld Medturns and Rebate did not accrue until Defen-
dant notified Plaintiff that it was keeping the money at Ms. Towsley's deposition in June 2021.
Given these open issues of disputed fact, to the extent that Plaintiff's other arguments that its
new claims are timely are deemed insufficient, the Amended Complaint nonetheless cannot and
should not be dismissed as untimely.  Therefore, leave to amend should be granted.

16

### III.    Defendant's Assertions of Prejudice Are Baseless

Plaintiff's assertions of undue prejudice are baseless.  Defendant has been aware of the

Medturns and Rebate issues since mid-2015 and, as the Amended Complaint alleges, it has

repeatedly and knowingly deflected Plaintiff's many inquiries about them, which began in 2016.

(*See* DeVito 9/21 Decl. ¶¶ 13.)  If the facts are "stale," as Defendant contends, it has no one to

blame but itself.  Defendants' reference to Meg Mitchell as "no longer readily available" (Opp.

at 12) is particularly inappropriate given the Defendant's counsel has already represented her at

her deposition in this proceeding.  Further, as the Amended Complaint alleges, Plaintiff raised

the Rebate and Medturns issues with specificity long before there were any depositions in this

case.  And of course, Defendant had an obligation to preserve the relevant facts once it asserted

its 503(b)(9) claim in this proceeding as an affirmative defense.

In addition, pursuant to this Court's orders, discovery is currently closed only for

Defendant – Plaintiff has shown in its motion to compel that Defendant owes further discovery

because, among other things, it improperly withheld substantially all information about the

Medturns and Rebate.  Further, substantially all of the facts about the Medturns and Rebate are in

Defendant's sole possession; that, after all, is why Plaintiff has been forced to file an amended

complaint now, after several years of rebuffed inquiries.

Finally, Defendant's assertion that Plaintiff has been "dilatory" is preposterous given the

history of Plaintiff's rebuffed inquiries as alleged in the Amended Complaint and as documented

in Plaintiff's Motion to Compel Discovery.  Where does Defendant's Opposition show that it

notified A&P that it was withholding Plaintiff's Medturns, let alone keeping them, notwithstand-

ing its representation to the contrary in Section 8 of the Extension Agreement?  Where is

Defendant's notice that it was not merely withholding the amount of the Rebate over Plaintiff's

objection, but taking the money for its own account?  Defendant's argument that it should be

permitted to keep almost $1 million of A&P's money merely because A&P lost a rigged shell

game, and was deflected by Defendant's responses to, or failures or refusals to respond to,

Plaintiff's inquiries, could not be more blatantly unjust.

## IV.    Plaintiff's Newly Asserted Claims Are Not "Substantively Flawed"

Defendant does not even attempt to argue that Plaintiff's newly asserted claims are so

"flawed" that they are subject to dismissal under Rule 12(b)(6).  Instead, Defendant appears to

want the Court to believe that its behavior was not egregious – without providing proof.  Indeed,

if Defendant's arguments truly had merit, why did it not seek the Court's or the Debtor's

permission before seizing A&P's money?

Plaintiff's claims are not "flawed."  In fact, Defendant offers no plausible defense at all

for its seizure of the Rebate – it simply asserts as a fact that A&P did not pay for the goods on

which it received the rebate, but offers no proof of that purported fact – and, despite multiple

past requests and Plaintiff's Interrogatory 8, it never has.  Defendant also fails to explain why, if

A&P was not contractually entitled to the Rebate, Defendant paid it in the first place – the issue

is too complex to discuss here, but it is absurd to contend that Defendant paid $562,000, in

accord with Defendant's regularly and widely circulated "Monthly Rebate Report," in "error."

Defendant's defense of its seizure of the Medturns is equally untenable.  As the Amended

Complaint alleges, Section 8 of the Extension Agreement states that "McKesson agrees that it

will continue to honor exchanges and returns in the ordinary course of business, as it did under

the [Supply] Agreement, regardless of whether the Merchandise to be returned or exchanged was

purchased before or after the Extension Effective Date…"  Defendant's decision to withhold the

Medturns in and after July 2015 was contrary to this Section, which affirmatively represents both

that Defendant had "honor[ed] exchanges and returns in the ordinary course of business … under

the [Supply] Agreement" in the past and that it would continue to do so in the future.

Defendant's attempt to carve out an exception to McKesson's usual practice of honoring exchanges and returns specifically for Medturns that accrued prepetition but had not been received by A&P because they were secretly withheld, despite Defendant's representation in Section 8 of the Extension Agreement that Defendant had been honoring A&P's returns all along, is not a viable interpretation of that Agreement.  Instead, it converts that Agreement into a fraud.  Thus, Plaintiff's claims are not only substantively viable.  They are just.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety and grant it leave to file its Amended Complaint, and such other and further relief as may be just and proper.

Dated:  September 17, 2021

GRIFFIN HAMERSKY LLP

By: /s/ ***Richard Milin***
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
rmilin@grifflegal.com
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284

*Counsel for The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate of The Great Atlantic & Pacific Tea Company, Inc., et al.*

19