**Hearing Date & Time: September 20, 2021 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: September 13, 2021 at  4:00 p.m. (Prevailing Eastern Time)**
**Reply Deadline: September 17, 2021 at  4:00 p.m. (Prevailing Eastern Time)**

GRIFFIN HAMERSKY LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
(646) 998-5580
Richard K. Milin
Michael D. Hamersky

*Counsel for The Official Committee of Unsecured*
*Creditors on behalf of the bankruptcy estate of*
*The Great Atlantic & Pacific Tea Company, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA | : | |
| COMPANY, INC., *et al.*, | : | Case No. 15-23007 (RDD) |
| Debtors. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| The Official Committee of Unsecured Creditors on | : | |
| behalf of the bankruptcy estate of THE GREAT | : | |
| ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | : | |
| | : | Adv. Proc. No. 17-08264 (RDD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| McKESSON CORPORATION, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES**
**FROM DEFENDANT McKESSON CORPORATION AND FOR SANCTIONS**

## Table of Contents

Page

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

REPLY STATEMENT OF FACTS........................................................................... 3

ARGUMENT ........................................................................................................... 5

    I.   Defendant Should Be Compelled to Produce Documents,
        Information and Testimony about Credits, Rebates and Its
        Unilateral, Post-Petition Seizure of Almost $1 Million........................................ 5

    II.  Defendant Should Be Compelled to Produce Documents
        and Information Concerning Defendant's and Other
        Pharmaceutical Wholesalers' Treatment of Strategic Retailers ...................................... 10

    III. Defendant Should Be Compelled to Provide Additional Discovery Responses ................ 12

    IV. Defendant's "Legal Points" Do Not Change the Foregoing Conclusions.......................... 14

    V. The Court Should Require Defendant and Its Counsel to Pay
       for the Reasonable Costs of This Motion, Including Attorney's Fees................................ 16

CONCLUSION.......................................................................................................... 18

## Table of Authorities

Page

**Cases**

*Reilly v. Natwest Mkts. Group*, 181 F.3d 253 (2d Cir. 1999) ......................................................... 2

**Statutes**

11 U.S.C. § 503(b)(9) ............................................................................................................... 5, 15

**Rules**

Fed. R. Civ. P. 30(b)(6).......................................................................................................  2, 7, 9, 16

Fed. R. Civ. P. 33(d) ........................................................................................................... 12-13

Fed. R. Civ. P. 37(a)(5)(i) ............................................................................................................ 17

S.D.N.Y. Local Bankr. Rule 7034-1 ............................................................................................ 15

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES
FROM DEFENDANT McKESSON CORPORATION AND FOR SANCTIONS**

Plaintiff, The Official Committee of Unsecured Creditors on behalf of the bankruptcy estate

of The Great Atlantic & Pacific Tea Company, Inc. ("the Debtor"), by its undersigned counsel,

respectfully submits this Reply Memorandum of Law in Further support of its Motion to Compel

Discovery Responses from Defendant McKesson Corporation ("Defendant") and for Sanctions (the

"Motion").  Plaintiff respectfully represents as follows:

## PRELIMINARY STATEMENT

Plaintiff's Motion, in its essence, is relatively simple.  Plaintiff seeks discovery concerning

(1) Defendant's improper post-petition seizure of approximately $1 million of A&P's prepetition

assets which, at a minimum, may justify denying Defendant its equitable defenses of setoff and

recoupment; (2) Defendants' and other wholesalers' treatment of struggling retailers so that Plaintiff

can respond to Defendant's argument that its threats to cut off shipment and unilateral reduction of

A&P's credit terms during the preference period were "standard in the industry" and "ordinary

business terms";  and (3) four narrow, specific issues such as prior statements of Defendant's key

witnesses and whether Plaintiff was entitled to a price adjustment after Defendant drastically short-

ened its payment terms during the month before A&P's Bankruptcy.  (*See* Plaintiff's initial Memo-

randum (the "Memorandum" or "Pl. Mem."), Adv. Pro. Docket No. 81 at 7-33.)

As Plaintiff's Memorandum pointed out, Plaintiff needs the Court's assistance because,

rather than asserting specific objections that could be resolved by negotiation, Plaintiff flatly refused

to provide the requested discovery.  Its Opposition shows that it still refuses.  For that reason, as dis-

cussed below, Plaintiff's Motion to Compel Discovery Responses and for Sanctions should be

granted.

1

Two preliminary comments should perhaps be made.  First, Defendant's Opposition does not convey the message it seems to think it does.  Defendant's name-calling, false statements that it has already produced everything it has repeatedly refused to produce, accusation that Plaintiff has "no excuse" for being unable to locate unlabeled spreadsheets in a "data dump", contention that daring to assert claims against Defendant for its unjustified taking almost $1 million of the Debtor's money is "perhaps sanctionable", and so on, do not show, as Defendant evidently thinks it shows, that it is the victim of an unreasoning, unconscionable Plaintiff.

Rather, once the ***facts*** are examined, the situation becomes clear:  Defendant is simply unable to believe that it might actually be required to comply with its discovery obligations.  Plaintiff brought this Motion because Defendant flatly refused to produce documents in response to 30 of 39 document requests; refused to provide any explanation at all of its seizure of the Debtor's assets, which it now so vigorously defends, in response to interrogatories; and, without providing any justification, simply refused "'to give complete, knowledgeable and binding answers'" from a 30(b)(6) witness which the law requires it to provide.  *Reilly v. Natwest Mkts. Group*, 181 F.3d 253, 268 (2d Cir. 1999) (quoting *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992)).

Once the Court granted Plaintiff permission to move to compel, the parties resumed their negotiations – but it soon became clear that Defendant was unwilling to offer any discovery at all.  Once the Motion was made, negotiations ceased, and Defendant has not offered a single document or proposed any constructive resolution of the parties' dispute since, either in its Opposition or otherwise.  Unfortunately, Defendant will only listen to sanctions.

Second, in substance, Defendant is correct:  it "[w]alked into the Debtors' business at night, broke into the cash box, and left with a fistful of dollars."  (Opp. at 5.)  Defendant apparently thinks this description is so outrageous as to make its actions humorous, but it is actually quite close to the truth.

2

Defendant tells this Court that it only did what other creditors do: "netted the 'due to, due from' as of the Petition Date and filed a proof of claim for the balance." (Opp. at 5.) Yet what "really happened," to use Defendant's phrase (*id.*), is that (a) Defendant reached into the Debtor's "cash box" – rebates and other sums that Defendant agreed it owed post-petition A&P in November 2015 for post-petition transactions, (b) "at night," in that it provided no prior notice or explanation of what it was doing, and (c) took out a very substantial "fistful" of $569,000.

Defendant did not simply engage in "netting," because it was purporting to take back money that was ***already in the Debtor's possession***, and it did so unilaterally, without providing even a subsequent justification that A&P could accept. According to Defendant, it could take A&P's money because it decided, to its own and no one else's satisfaction, that it had paid the money "in error" four months earlier. Defendant came to this baseless conclusion, moreover, even though it paid the money "in error" to the pre-bankruptcy A&P under a pre-petition contract, and took the money back from post-bankruptcy A&P under a post-petition contract. Also, Defendant cannot rely on the Extension Agreement to claim that the money was paid "in error," as it has sometimes purported to do, because the Extension Agreement wasn't entered into until more than six weeks after the money was paid. (*See* Plaintiff's Amended Complaint.)

Defendant's description of its seizure of the Debtor's asset as "netting" that "every creditor does," therefore, is not just misleading. It is false. Besides, if Defendant's actions were actually as innocent, ordinary and fully justified as it wants the Court to believe, why has it fought so hard to block discovery about them? Plaintiff's Motion should be granted.

## REPLY STATEMENT OF FACTS

The key facts relevant to this Motion are provided in the discovery requests, responses and correspondence that accompany Plaintiff's Memorandum. As in that Memorandum, to avoid repetition, the relevant facts are discussed as needed in the Argument section.

3

Because there are many misstatements and mischaracterizations in Defendant's Opposition, and space is limited, Plaintiff states that it generally disputes the "facts" Defendant states unless they are supported by documentary evidence.

Substantially everything that Defendant states about its seizures of Plaintiff's Medturns and Rebate is inaccurate.  Plaintiff respectfully refers the Court to its pending Motion to Amend and related motion papers for its response.  Among other things, Defendant repeatedly asserts that Plaintiff "waived" its right to the Rebate and Medturns, even though it does not argue that Plaintiff "waived" the Rebate in opposing the Motion to Amend, and there was no waiver. Defendant does argue that Plaintiff waived the Medturns, but that argument is even more problematic, because it is based on fraud.

Similarly, substantially everything Defendant states about Plaintiff's willingness to confer concerning or explain its discovery requests is inaccurate.  Plaintiff's time records show an extraordinary number of email exchanges and hours of conferences with Defense counsel, including four extended telephone conferences in August 2021.  The parties were also free to, and sometimes did, confer at their numerous in-person depositions during earlier months.  More fundamentally, it is substantially always in a party's interest to confer with opposing counsel about discovery disputes if there is even a small chance that they can be resolved.

Plaintiff also disputes Defendant's account of other aspects of the history of discovery in this proceeding, which is sometimes false, usually unverifiable and often misleading.  For example, Defendant states that Plaintiff has "the SAP Accounting Database" (Opp. at 12), but it does not. Plaintiff only has selected data from that Database.

Also, Defendant repeatedly complains that it has produced the same documents multiple times.  Given that the entire production has been electronic, and that Defendant has electronic means of avoiding duplication, there is no genuine reason why Defendant should do so.  Plaintiff is not

4

aware on any occasion on which it did.  Further, Plaintiff has no way of verifying the completeness

of Defendant's production or determining what instructions Defendant gave to its document service

Consilio or lawyers reviewing its documents.

In addition, Defendant makes certain grossly misleading statements.  For example, it tells the

Court that it "made one of its finance employees available to answer accounting questions on an

informal basis."  (Opp. at 7.)  In fact, Defendant made its "finance employee" available only once, in

a conference with lawyers participating, and he provided no information at all either during the con-

ference or in response to follow-up requests that Plaintiff provided, as Defendant insisted, in writing.

## ARGUMENT

### Point I
### Defendant Should Be Compelled to Produce Documents, Information and Testimony about Credits, Rebates and Its Unilateral, Post-Petition Seizure of Almost $1 Million

Plaintiff's Memorandum showed that documents and information about Defendant's inequit-

able post-petition seizures of almost $1 million of the Debtor's money have long been relevant to

this proceeding because they provide a reason to deny Defendant the equitable remedies of setoff

and recoupment.  The seized sums should also be set off against Defendant's 503(b)(9) claims, as

Plaintiff told the Court in opposing summary judgment in September 2019.

Defendant's Opposition offers no response to Plaintiff's argument that Defendant's inequit-

able behavior provides a reason to deny it a setoff or recoupment; the word "equity" and its cognates

do not even appear in its Opposition.  The Court should therefore conclude, for the reasons stated in

Plaintiff's Memorandum, that Defendant's seizures of Plaintiff's rebates and credits are relevant to

this adversary proceeding.  In any event, if Plaintiff's Motion to Amend is granted, as it should be,

relevance should no longer be in dispute.

5

Whether or not Defendant concedes the issue of relevance, it continues to refuse to provide

any discovery at all concerning its seizure of Plaintiff's Rebate and Medturns.  Starting with

Plaintiff's document requests, Defendant's three stated reasons for refusing to produce documents

are plainly without merit.

First, Defendant presents one of its most extraordinary arguments: that it should not have to

produce any documents about its seizure of the Rebate or Medturns because it has produced them

already.  After eighteen months of flatly refusing to produced those documents, Defendant now

claims that it "has already provided documents related to the Credits/Rebate Issues" and that it

"properly and thoroughly provided discovery related to the Credits/Rebate issues," and that the

"exact documents" Plaintiff requested "have already been produced by McKesson." (Opp. at 2, 13,

14; *see id.* at 6.)

Apparently, the irrelevance, extraordinary breadth, and undue burdens of Plaintiff's docu-

ment requests that Defendant now objects to were, in the past, not a problem, and Plaintiff's five

"incomprehensible" Requests about the Rebate and Medturns (Opp. at 14) are actually sufficiently

comprehensible that Defendant knows it has already produced the "exact documents" they call for.

(Opp. at 2.)  Defendant's argument simply beggars belief.  As Plaintiff stated in its Memorandum:

> After objecting for almost eighteen months that it would not provide any discovery
> about rebates and credits because they are "irrelevant," Defendant is now claiming
> that it has **already** provided all available discovery about them.  In other words,
> Defendant switched from saying "we won't produce anything" to "we have already
> produced everything" without missing a beat – or providing the slightest evidence to
> support its new position. Defendant's letters, deposition transcripts, and responses to
> document requests and interrogatories prove otherwise.  This Court should not
> tolerate such frivolous conduct.

(Pl. Mem. at 4.)

Despite telling the Court that it has already produced everything it has repeatedly refused to

provide, Defendant makes no effort to show that its statement is true.  It does not state when it

6

provided discovery about the Rebate and Medturns, or identify from whose computers it obtained that discovery, or identify search terms it used to identify documents about the Rebate or Medturns, or provide Bates numbers, or make any other effort to show that it actually provided the relevant discovery. It also does not explain why it refused to provide the documents in responding to Plaintiff's Second and Third Document Requests but produced the documents anyway.

In addition, although Defendant states that it has provided "all of its accounting data" (Opp. at 1), Plaintiff's accountant disagrees, and Defendant's counsel has admitted that the data produced so far has limitations. At a minimum, when Plaintiff requested accounting information in and after the parties' telephonic "meeting of accountants," no such information was provided.

The key issues, in any event, are not just accounting data. Plaintiff is entitled to know, among other things, how much in Medturns Defendant has withheld, when and why it withheld it, what notice it provided to A&P of its actions and whether the money remained segregated pending resolution of the parties' dispute or was mingled with other assets for Defendant's general use. Accounting records are simply not enough.

Even if Defendant's far from credible argument that it has already produced everything were sincere, it could have offered a simple, low-cost solution to resolve this dispute. If Plaintiff provides search terms, Defendant can identify duplicates, remove those duplicates as it has done in the past, and produce responsive documents, if any, that have not yet been produced. Defendant has not offered this solution. Instead, it has insisted that it will not produce any documents about the Medturns or Rebate at all because they are purportedly "irrelevant."

Moreover, Defendant's 30(b)(6) witness testified in June that Plaintiff should seek discovery from the "Rebate" department, yet Defendant has not confirmed that it searched for that department's responsive documents. It should, at a minimum, be compelled to search them now.

In addition, Defendant included 10 documents about what appear to be the Medturns on its privilege log even though they do not identify counsel as drafter or recipient and do not otherwise indicate that their subject matter was legal advice.  These documents are dated between July 20 and July 31, 2015, when the Medturns were posted to A&P's account but not "given" to A&P in accord with the parties' past practice.  If these documents are not genuinely privileged, they seem likely to shed considerable light on relevant events.  Plaintiff asked Defendant about the basis for its assertion of privilege on September 6 but, to date, it has provided no substantive response.

Defendant's second stated justification for its refusal to provide documents is an old one:  it repeats its earlier boilerplate objections.  (Op. at 14.)  However, it is too late, having refused to produce documents altogether, to argue that a back-up boilerplate objection, which has now been waived as a matter of law, actually had merit.  As Plaintiff showed on page 16 of its Memorandum, Boilerplate objections are meaningless and waived, and they provide no reason to deny Plaintiff's Motion.  If a request is unclear, Plaintiff will be happy to explain it.  If a request is overly broad, Plaintiff will be happy to narrow it.  Boilerplate objections are normally easy to resolve.  The problem here is different:  Defendant flatly refused to provide any documents at all, forcing Plaintiff to incur the expense of this Motion.

Third, Defendant argues at some points that documents and information concerning the Rebate and Medturns should not be produced because Plaintiff's claims based on them are without merit or were purportedly "waived."  (*See, e.g.*, Pl. Opp. at 1-2, 6, 9.)  Plaintiff's Motion to Amend shows otherwise.  Indeed, Defendant does not even make its "waiver" argument with respect to the Rebate.  Further, given that Plaintiff did not even attempt to argue that Plaintiff's Rebate and Medturns claims are subject to dismissal in response to Plaintiff's Motion to Amend, it should not be heard to suggest that those claims are subject to dismissal as a reason to withhold discovery here.

8

Accordingly, Defendant should be compelled to produce documents in response to the Requests the Motion identifies, Nos. 8-17 and 23.

Turning to Plaintiff's Interrogatory 8, which concerns the Medturns and Rebate, Defendant objects that it is overly broad. (*See* Pl. Opp. 12.)  That is no excuse for Defendant's wholly inadequate response:  "McKesson answers that it mistakenly paid A&P approximately $562,000 in July, 2015. This was an error. A&P was not entitled to this payment under the Supply Agreement." (Milin Decl. Exh. 13 at 22-23.)  Defendant does not provide any response about the Medturns, though they also fall within the scope of Interrogatory 8.

Defendant should be compelled to answer Interrogatory 8 for the reasons discussed in Plaintiff's Memorandum at 16-19.  To the extent Defendantt can show that the Interrogatory is plainly and unreasonably overbroad – and Plaintiff does not believe it can – Plaintiff will agree to narrow it.

Defendant should also be compelled to provide deposition testimony concerning the Medturns and Rebate in accord with the topics in Plaintiff's notice.  Plaintiff did not object to those topics either when they were served or at Ms. Towsley's Rule 30(b)(6) deposition, and they are not, in fact, objectionable.  For the reasons stated in Plaintiff's Memorandum, a witness who can provide knowledgeable testimony, which Ms. Towsley should have been able to provide but could not because she had not reviewed the relevant facts, should now be made available.  To the extent Defendant genuinely requires guidance concerning what information Plaintiff is looking for, Plaintiff will be happy to provide it.

For the foregoing reasons, Defendant should be compelled to provide the documents and information that it was required to provide, but did not provide, in response to Plaintiff's document requests, interrogatory and deposition notice.  Defendant has been shielding key aspects of its actions without justification for far too long.  The Motion should be granted.

9

**Point II**
**Defendant Should Be Compelled to Produce Documents and Information Concerning**
**Defendant's and Other Pharmaceutical Wholesalers' Treatment of Strategic Retailers**

Plaintiff's Memorandum showed that Defendant has improperly refused to provide any material discovery concerning its treatment of strategic retailers, or other wholesalers' treatment of strategic retailers, even though it maintains that the preferential transfers it received were shielded because its harsh treatment of A&P was "standard in the industry" and on "ordinary business terms." As a result, Defendant has been attempting to use its expertise in the pharmaceutical industry, and experience in relevant bankruptcies, to obtain an unfair advantage and conduct a "trial by ambush."

In its Opposition, Defendant presents a wholly implausible argument:  that Plaintiff's requests are unduly broad, and can be read to request confidential information, so Defendant will not, and need not, produce anything at all.  (Opp. at 3, 16-20.)  That is not the way discovery works, and it is why Plaintiff has been forced to move to compel.

This adversary proceeding is governed by the most elaborate and restrictive confidentiality order Plaintiff's counsel has seen.  Confidentiality is not, as Defendant disingenuously claims, an issue. (Opp. at 3, 16-20.)

Further, Defendant's argument of overbreadth is a disingenuous straw man, based on a deliberate misreading of Plaintiff's Requests which Plaintiff had already addressed in its Memorandum. According to Defendant, "[t]hese requests can only be characterized as harassment, designed to burden McKesson with the Herculean task of reviewing the files of its many thousands of customers." (Opp. at 17; *see id.* at 3.)  True to form, Defendant spends two pages quoting Plaintiff's Requests, but fails to quote the definition of "significant customer" which restricts their scope.  As Plaintiff's Memorandum explained, because of the definition of "significant customer," the actual number of relevant customers is not "many thousands."  It is approximately 20.  (*See* Pl. Mem. at 24.)

10

Defendant's argument with respect to Plaintiff's interrogatories is the same: Quote an inter-rogatory, but not the definitions, and claim that no information at all should be provided because the interrogatory is too broad. (Opp. at 18.) Oddly, Defendant actually did provide some limited information in response to these Interrogatories, but it was insufficient for reasons discussed in the Memorandum. Defendant should be compelled to provide a further response to Interrogatories 4-6 for the reasons stated there, which the Opposition does not address.

Defendant's argument that it should not have to provide deposition testimony is even more disingenuous. After extensive negotiations, Defendant refused to provide any deposition testimony at all, and did not even explain why, which is one of the reasons Plaintiff was forced to file this Motion. Defendant never objected to any of Plaintiff's deposition topics before this Motion. Yet now it argues that it should not have to provide testimony because the topics are "so general as to be useless." (Opp. 19.) And Defendant does not even stop there. It further complains: "Plaintiff refused to give any understanding of what it seeks, despite numerous requests from McKesson." Of course, Plaintiff did not "refuse" to clarify its deposition topics, because that would have been contrary to its own interest. The truth is, having refused to provide deposition testimony about anything at all, Defendant never asked.

In sum, Defendant asks this Court to allow it to argue that its harsh treatment of A&P did not constitute undue pressure because it was standard in the industry, but also allow it to withhold all of the documents and information it proposes to use to prove that claim, based on disingenuous, meritless arguments. The Court should deny Defendant the ability to conduct its hoped-for trial by ambush, and should compel it to produce the discovery concerning this issue that Plaintiff requested for the reasons stated in Plaintiff's Memorandum. To the extent that Plaintiff's requests actually do seek documents or information about entirely irrelevant customers, of course, Plaintiff will gladly narrow them in both parties' interest.

11

**Point III**
**Defendant Should Be Compelled to Provide Additional Discovery Responses**

Point III of Plaintiff's Memorandum showed that Defendant should also be compelled to respond to four very specific groups of discovery requests. Each is addressed below.

1. Documents concerning Jenifer Towsely, Document Request 25. This is a narrow request for deposition transcripts and declarations from Defendant's key witness Ms. Towsley. The Memorandum pointed out that Defendant offered two, then reduced it to one. The Opposition does not address the specific issue the Memorandum raises, and accordingly, Defendant should be compelled to respond to this document request.

2. Contention Interrogatories 2 and 3. Contention Interrogatories 2 and 3 ask for facts and documents concerning or supporting Defendant's contention with respect to the narrow question of whether the parties intended any payment or transfer to be a contemporaneous exchange. There are only four transfers at issue and they all took place within a four-day period. Defendant's response was inadequate, boilerplate and non-substantive.

The Opposition defends Defendant's response as identifying documents in accord with Fed. R. Civ. P. 33(d). (*See* Opp. at 23) However, Defendant does not actually comply with Rule 33(d). Instead, it states, "McKesson objects to specifically identifying each supporting document, other than to confirm that all supporting documents have been produced in the course of discovery, are referenced in Mr. Berk's expert report, or are referenced in McKesson's motion for summary judgment and supporting papers." (*See* Op. at 23.)

This Response does not and cannot comply with Rule 33(d). Interrogatories 2 and 3 ask for documents and information concerning Defendant's contentions and, accordingly, Plaintiff cannot identify them simply by "examining…business records."

12

Moreover, Rule 33(d) requires the responding party to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Defendant provides no identifying information at all. It should therefore be compelled to provide a proper response.

3. <u>Documents concerning a cost of goods sold adjustment, Document Requests 18-20</u>. As the Memorandum explains, certain documents that Defendant has produced indicate that, after Defendant imposed next-day payment terms on A&P approximately one week before its bankruptcy, A&P was entitled to a "cost of goods sold" price reduction that it appears it did not receive. The issue relates to whether Defendant complied with the parties' contract and whether A&P's payments were in the ordinary course of business. Accordingly, three of Plaintiff's document requests ask about the issue. Yet Defendant refused any documents about it.

Defendant's Opposition appears to misunderstand the issue, because it asserts that the "inquiry is beyond the scope of the pleadings," "irrelevant," and "waived" under the Extension Agreement, which Defendant does not quote, and does not even arguably waive relevant rights. In any event, Plaintiff asked for these documents because they relate to the question of whether Plaintiff's final payments were made in the ordinary course of business. Accordingly, Defendant's inapplicable, belated and ill-explained objections provide no excuse for refusing to produce them. Plaintiff's Motion to Compel their production should be granted.

4. <u>Documents concerning submissions in other bankruptcy proceedings, Requests 26-27</u>. As discussed in the Memorandum at 33, Document Requests 26 and 27 seek documents submitted in other bankruptcy proceedings from 2015 forward which accuse Defendant of contributing to their bankruptcy or discuss Defendant's business, credit or payment terms. These requests seek what Plaintiff believes to be a very small number of documents, and they relate directly to the issue of whether A&P paid Defendant on ordinary business terms. Defendant agreed to produce two

13

documents, but did not specify whether those were all of the responsive documents it has, or whether it is simply agreeing to produce the two responsive documents that it considers most helpful. Accordingly, Plaintiff moved to compel.

Defendant's Opposition states that it has actually produced 4 documents but should not be compelled to produce more.  It states, "McKesson should not be required to attempt to locate every declaration it has filed in every bankruptcy case or adversary proceeding over the last six years. McKesson is involved in hundreds of bankruptcy cases."  (Opp. at 22.)

That is, of course, correct, and Plaintiff would not benefit by asking it to do so.  However, that is no justification of Defendant's original response to these document requests, which Plaintiff has been forced to raise by motion to compel.  Also, Defendant has not stated, either in its original response or its Opposition, what criteria have determined which documents it produced.  Accordingly, Defendant should be compelled to produce documents in response to Requests 26 and 27. However, Plaintiff agrees to limit their scope to proceedings involving very large volume "significant customers," except that the term should not be restricted to customers of Defendant.

For the foregoing reasons, Plaintiff's Motion to Compel should be granted in all respects.

### Point IV
### Defendant's "Legal Points" Do Not Change the Foregoing Conclusions

Defendant includes a "Legal Points" section in its Opposition.  That section makes no points that affect the validity of the conclusions stated above or in Plaintiff's Memorandum for the reasons stated below.

First, Defendant spends three pages arguing that discovery requests must be relevant and proportional.  (Opp. at 23-26.)  Agreed, with recognized exceptions.  Yet all of Plaintiff's requests have been both relevant and proportional, and Plaintiff has always stood ready to limit any unduly broad requests.

14

Defendant's further argument that the Rebate and Medturns issues are irrelevant has already been addressed.  Defendant's argument that its misconduct cannot support an unclean hands defense because the issue is purely one of contract is, as discussed above and in Plaintiff's Motion to Amend, an untenable mischaracterization. Also, Defendant should know better than to contend that this Court's preliminary decision that its 503(b)(9) claim could be set off against preference liability precludes a later decision that Defendant's inequitable conduct bars it from exercising a setoff.

Next, Defendant argues that its boilerplate objections have not been waived.  (Opp. at 26-27.) Defendant's argument is wrong, and it fails to address some of the key authorities cited in Plaintiff's Memorandum. (*See* Pl. Mem. at 16.)  However, Defendant does make an argument that would be astonishing from anyone other than McKesson:  it argues that the lack of detail in its objections is actually ***Plaintiff's*** fault, because Plaintiff should have ignored Defendant's refusal to provide any documents or information at all in response to its requests and asked for more details about Defendant's other objections.  As Defendant put it:

> McKesson did not detail the facts to support the burden of responding to the requests
> or why the requests were not proportional, but…to the extent, this specific detailed
> information is now required, the proper action for Plaintiff to have taken was to
> request this information as part of its meet and confer.  Plaintiff, however, never
> sought this information in its meet and confer.

(Opp. at 26.)

Unfortunately for Defendant, the Local Rules of this Court placed the requirement of specificity squarely on Defendant: "If an objection…is made with respect to any document request or portion thereof, the objection…shall state all grounds with specificity.  Any ground not stated in the objection…within the time provided…shall be deemed waived."  S.D.N.Y. Local Bankruptcy Rule 7034-1.

Defendant's argument that its boilerplate objections are Plaintiff's fault is not, unfortunately, a one-off.  Defendant also attempts to blame Plaintiff for its refusal to provide deposition testimony.

15

According to Defendant, "'Before or promptly after the [30(b)(6) deposition] notice . . . is served, the serving party and the organization must confer in good faith about the matters for examination.' Fed. R. Civ. P. 30(b)(6). But Plaintiff never sought such a meeting, before or even after the deposition." As a result, "Plaintiff did not meet its obligations." (Opp. at 28.)

Apparently, Defendant wants this Court to believe that Plaintiff waived its right to further deposition testimony by taking a full day of testimony from a Rule 30(b)(6) witness without discussing objections that Defendant did not make. Defendant also seems to ignore the fact that Rule 30(b) imposes a duty on **both** sides not to confer, not just on the noticing party.

Further, Defendant's assertion that Plaintiff "never sought such a meeting…even after the deposition" is false. Plaintiff's letter of August 4, 2021 requesting further testimony concludes, "if McKesson would prefer to provide written responses as suggested above, we are willing to discuss that with you so that we can agree whether a deposition will be necessary..." (Milin Decl. Exh. 15.) Plaintiff did attempt to discuss the 30(b)(6) issue with Defendant during its weeks of subsequent negotiations. The problem was, Defendant offered, and provided, nothing at all.

Finally, Defendant sets out several boilerplate rules about contention interrogatories, but does not and cannot relate them to any flaws in Plaintiff's narrowly tailored Interrogatories 2 and 3. (*See* Opp. at 28-29.) Defendant also argues that Plaintiff's 11 interrogatories are actually much more because of subparts, but it cites no authority that would excuse its failure to respond on that ground. In any event, Plaintiff only seeks to compel a response to six interrogatories, and three of them overlap.

**Point V**
**The Court Should Require Defendant and Its Counsel to Pay for**
**the Reasonable Costs of This Motion, Including Attorney's Fees**

Defendant should be ordered to pay the reasonable costs of this Motion, including attorney's fees. Defendant's Opposition does nothing to justify its flat refusals to provide documents in

response to 30 of 39 document requests, adequate interrogatory responses, or any further deposition testimony about anything.  To the contrary, the Opposition shows Defendant's continued intransigence, its willingness to misrepresent the facts, and its insistence on arguments that are obviously untenable.  Defendant's unreasonable and improper conduct has forced Plaintiff to seek judicial relief, and Defendant, not Plaintiff, should bear the cost.

Defendant's response to Plaintiff's argument for sanctions, unfortunately, is yet another indication of why sanctions are appropriate.  The Opposition makes only two points.  One is a straight assertion that no sanctions are appropriate because Defendant's "objections were substantially justified."  (Opp. at 30.)  Defendant is wrong for the reasons discussed above, but it does not elaborate.

Defendant's second point is, once more, an attempt to turn the tables by making a false statement blaming Plaintiff:  "Plaintiff moved to compel before meeting and conferring in good faith. In particular, here, Plaintiff refused to meet and confer with McKesson 'item-by-item,' notwithstanding the Court's directive to the contrary. Fed. R. Civ. P. 37(a)(5)(i)."  (Opp. at 30.)

Once again, Defendant does not elaborate, and nothing could be further from the truth.  The Court granted Plaintiff permission to move to compel because Plaintiff demonstrated that efforts to meet and confer had failed.  Also, the parties' letters to Court after permission was granted, with their exhibits, show that Plaintiff was willing to confer with Defendant item by item or in any other way – so long as Defendant offered at least ***something*** to help resolve the parties' dispute.  It never did.  (See Plaintiff's letters to Court dated August 23 and 27, 2021, Adv. Pro. Docket Nos. 74, 76.)

17

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety,

grant it an order compelling discovery responses, awarding sanctions, and granting such other and

further relief as may be just and proper.

Dated:  September 17, 2021

GRIFFIN HAMERSKY LLP

By: /s/ **Richard Milin**
Scott A. Griffin
Michael D. Hamersky
Richard K. Milin
420 Lexington Avenue, Suite 400
New York, New York 10170
rmilin@grifflegal.com
Telephone: (646) 998-5580
Facsimile:  (646) 998-8284

*Counsel for The Official Committee of*
*Unsecured Creditors on behalf of the*
*bankruptcy estate of The Great Atlantic &*
*Pacific Tea Company, Inc., et al.*

18